Conspirators again tampered with the computer & flash
drive that at places "<=>" got replaced by "[?]" & don't know
if they tampered with more things, after written up.

IN THE USDCWPA, COURT OF APPEALS, 1ST AND 3RD CIRS, CCC

Abbreviations: USDCWPA is US District Court of Western PA;

USDC is US District Court;                                    COAF is

US Court of Appeals in the federal system;                   CCC is

Cambria County Courthouse;                                   WCC is

Westmoreland County Courthouse;                                    USSC is

US Supreme Court;

Docket Nos: (0)(a) USDC ME 11-278-JAW[?] COAF1st 12-1042, 13-
2416COAF1

(0)(b)USDC ME 1:13-mc-00148-JAW <=>COAF1 13-2417

(1) COAF3rd 11-1032[?]USDCPa 09-CV-275 with corresponding
docket nos in CCC with comment as stated in 8/10-/2011
pleading in the caption

(2) COAF3rd 11-1390[?]USDCPa 00-CV-314

(3) " 11-2184[?] " 3-11-CV-63 [?]CCC1366-
11[?]USDCPa 12-26 [?] COAF3rd 2012-2777[?]USSC Application
No 12A546

(4) COAF3rd 10-3683 [?] USDCPa 3-10-184

(5) " 11-2710 [?] USDCPa 3-11-116

(6) " 08-4711 " " 01-135J [?] CCC1985-2043 case
joined with (a)1985-1496, (b)1985-2040, (c)1985-2041,
(d)1985-2112, (e)1985-690 or 890 as cannot remember the
exact docket nos on it of CCC as it was against Norman
McGough Insurance Co. on his fleet of 14 to 15 vehicles.

(7) COAF3rd 10-1676[?]USDCPa3:09-cv-283 and if federal court
system did not want to process it as RICO case, they should
have transferred it to the right court for damages as my
Cadillac car was damaged very, very, very badly, while legally
parked on Sherman St adjacent to Krisay's warehouse and
Krisay's personnel are witnesses to the fact that my car was
always legally parked, each and everytime including on the
day, it was hit by Fisher, and when hit, blow moves the car,
out of its place showing that car was hit at great speed
willfully, purposely to deprive Vora of her property, right to
travel etc ., as all was in furtherance of conspiratorial
activities of all kinds &/or in furtherance of several open
ended schemes so Carother's was lying too, all race biased,
antitrust, predatory acts.

(8) Vora v. Conspirators COAF3rd 12-2776 [?] USDCPa 11-
253[?]USSC Application No. 12A546

(9) Incident No. 20120725M3950, then withdrawn & dismissed
& replaced by citation no. P 8397660-5, NT-438-2012 [?]
USDC 12-151 [?] CCC78-12 or maybe 178-12  nos get
interchanged even by USDCPa [?] COAF3rd 13-1774

IN THE USDCWPA, COURT OF APPEALS, 1ST AND 3RD CIRS, CCC

Abbreviations: USDCWPA is US District Court of Western PA;

USDC is US District Court;

COAF is US Court of Appeals in the federal system;

CCC is Cambria County Courthouse;

WCC is Westmoreland County Courthouse;

USSC is US Supreme Court;

Docket Nos: (0)(a) USDC ME 11-278-JAW⇔ COAF1st 12-1042, 13-2416COAF1

(0)(b)USDC ME 1:13-mc-00148-JAW <=>COAF1 13-2417

    (1) COAF3rd 11-1032⇔USDCPa 09-CV-275 with corresponding docket nos in CCC with comment as stated in 8/10-/2011 pleading in the caption

    (2) COAF3rd 11-1390⇔USDCPa 00-CV-314

    (3)    "      11-2184⇔   "     3-11-CV-63 ⇔CCC1366-11⇔USDCPa 12-26 ⇔ COAF3rd 2012-2777⇔USSC Application No 12A546

    (4) COAF3rd 10-3683 ⇔ USDCPa 3-10-184

    (5)    "      11-2710 ⇔ USDCPa 3-11-116

    (6)    "     08-4711 "   "     01-135J ⇔ CCC1985-2043 case joined with (a)1985-1496, (b)1985-2040, (c)1985-2041, (d)1985-2112, (e)1985-690 or 890 as cannot remember the exact docket nos on it of CCC as it was against Norman McGough Insurance Co. on his fleet of 14 to 15 vehicles.

    (7) COAF3rd 10-1676⇔USDCPa3:09-cv-283 and if federal court system did not want to process it as RICO case, they should have transferred it to the right court for damages as my Cadillac car was damaged very, very badly, while legally parked on Sherman St adjacent to Krisay's warehouse and Krisay's personnel are witnesses to the fact that my car was always legally parked, each and everytime including on the day, it was hit by Fisher, and when hit, blow moves the car, out of its place showing that car was hit at great speed willfully, purposely to deprive Vora of her property, right to travel etc .. as all was in furtherance of conspiratorial activities of all kinds &/or in furtherance of several open ended schemes so Carother's was lying too, all race biased, antitrust, predatory acts.

    (8) Vora v. Conspirators COAF3rd 12-2776 ⇔ USDCPa 11-253⇔USSC Application No. 12A546

    (9) Incident No. 20120725M3950, then withdrawn & dismissed & replaced by citation no. P 8397660-5, NT-438-2012 ⇔ USDC 12-151 ⇔ CCC78-12 or maybe 178-12 nos get interchanged even by USDCPa ⇔ COAF3rd 13-1774

(10)Vora v. Conspirators as an antitrust case listed in all prior cases against city (28USCAss1441-1448 in IFP & pursuant to 28

1

USCAs1446 & Justice Stevens opinion in City of Greenwood v. Peacock, 384 US808, state courts cannot proceed any further, as their proceedings are stayed automatically and they are forbidden to enter any kind of judgment) including 11-253, 11-1390, 3-11-116 etc with docket no : 12-159 ⇔ COAF3rd 13-1775 (wrongly put by clerk as Vora v. Com)

Docket Nos of CCC 409-00, 2644-06, SA97-06, 476or496-07, 1470-07, 1913-07, 2602-07, 2793-07, SA1-162-07, SA-001-8, SA171-08, all these were joined to (1), (4) with illegal demand of CCC for cost, fines, everything done by them without jurisdiction, without remand order coming from federal court system by **CMRR directly to State courts &/or certified copy filed by DA's office within allowed time, making all decisions null and void & all proceedings with their decisions subject to dismissal as per case law quoted earliar in one of Dr. Vora's pleadings, as all proceedings must take place officially after certified remand order gets filed in State courts officially by people required to do so, as Dr, Vora was defendant and is defendant in practically more than 55 cases filed by these cops on fabricated charges of theirs and as of right Dr. Vora removed these cases to federal court pursuant to 28USCA ss1441-1448 in IFP & pursuant to 28USCAs1446, and Justice Stevens opinion in City of Greenwood v. Peacock, 384US808, state courts cannot proceed any further, as their proceedings are stayed automatically and they are forbidden to enter any kind of judgment in such cases and even destruction of evidence took place that was exculpatory, in favor of Vora and there was clear error of law or fact or to prevent manifest injustice, all these cases of CCC filed by cops should be dismissed, when all 3 factors are present in Vora's cases filed by cops against her. (11)85-141<=> COAF3rd

(12) Cannot remember the docket nos of all cases, however they can be obtained from US court computer by putting my name in in all 3-4 or more ways to get all docket nos. for consolidation as I am homeless and have no records after what conspirators with city did.

IN THE US COURT OF APPEALS, 1ST AND 3RD CIRS, CCC, Docket Nos: (0)(a) USDC ME 11-278-JAW ⇔ COAF1st 12-1042, 13-2416COAF1

(0)(b)USDC ME 1:13-mc-00148-JAW <=>COAF1 13-2417

    (1) COAF3rd 11-1032⇔USDCPa 09-CV-275 with corresponding docket nos in CCC with comment as stated in 8/10-/2011 pleading in the caption

    (2) COAF3rd 11-1390⇔UDDCPa 00-CV-314

    (3)    "     11-2184⇔    "     3-11-CV-63 ⇔CCC1366-11⇔USDCPa 12-26 ⇔ COAFrd 2012-2777⇔USSC Application No 12A546

(4) COAF3rd 10-3683 ⇔ USDCPa 3-10-184
(5)   "       11-2710 ⇔ USDCPa 3-11-116
(6)   "      08-4711  "     "     01-135J ⇔ CCC1985-2043
case joined with (a)1985-1496, (b)1985-2040, (c)1985-2041,
(d)1985-2112, (e)1985-690 or 890 as cannot remember the
exact docket nos on it of CCC as it was against Norman
McGough Insurance Co. on his fleet of 14 to 15 vehicles.
(7) COAF3rd 10-1676⇔USDCPa3:09-cv-283 and if federal
court system did not want to process it as RICO case, they
should have transferred it to the right court for damages as
my Cadillac car was damaged very, very badly, while legally
parked on Sherman St adjacent to Krisay's warehouse and
Krisay's personnel are witnesses to the fact that my car was
always legally parked, each and everytime including on the
day, it was hit by Fisher, and when hit, blow moves the car,
out of its place showing that car was hit at great speed
willfully, purposely to deprive Vora of her property, right to
travel etc ., as all was in furtherance of conspiratorial
activities of all kinds &/or in furtherance of several open
ended schemes so Carother's was lying too, all race biased,
antitrust, predatory acts.
(8) Vora v. Conspirators COAF3rd 12-2776 ⇔ USDCPa 11-
253⇔USSC Application No. 12A546
(9) Incident No. 20120725M3950, then withdrawn & dismissed
& replaced by citation no. P 8397660-5, NT-438-2012 ⇔
USDC 12-151 ⇔ CCC78-12 or maybe 178-12  nos get
officeinterchanged even by USDCPa ⇔ COAF3rd 13-1774
(10)Vora v. Conspirators as an antitrust case listed in all prior
cases against city 28USCAss1441-1448 in IFP & pursuant to 28
USCAs1446 & Justice Stevens opinion in City of Greenwood v.
Peacock, 384 US808, state courts cannot proceed any further, as
their proceedings are stayed automatically and they are forbidden
to enter any kind of judgment including 11-253, 11-1390, 3-11-
116 etc with docket no : 12-159 ⇔ COAF3rd 13-1775 (wrongly
put by clerk  as Vora v. Com)
Docket Nos of CCC 409-00, 2644-06, SA97-06, 476or496-07,
1470-07, 1913-07, 2602-07, 2793-07, SA1-162-07, SA-001-8,
SA171-08, all these were joined to (1), (4) with illegal demand
of CCC for cost, fines, everything done by them without
jurisdiction, without remand order coming from federal court
system by CMRR directly to State courts &/or certified copy
filed by DA's office within allowed time, making all decisions
null and void & all proceedings with their decisions subject to
dismissal as per case law quoted earlier in one of Dr. Vora's
pleadings, as all proceedings must take place officially after
certified remand order gets filed in State courts officially by
people required to do so, as Dr, Vora was defendant and is

defendant in practically more than 55 cases filed by these cops on fabricated charges of theirs and as of right Dr. Vora removed these cases to federal court pursuant to 28USCA ss1441-1448 in IFP & pursuant to 28USCAs1446, and Justice Stevens opinion in City of Greenwood v. Peacock, 384US808, state courts cannot proceed any further, as their proceedings are stayed automatically and they are forbidden to enter any kind of judgment in such cases and even destruction of evidence took place that was exculpatory, in favor of Vora and there was clear error of law or fact or to prevent manifest injustice, all these cases of CCC filed by cops should be dismissed, when all 3 factors are present in Vora's cases filed by cops against her. (11)85-141<=> COAF3rd

(12) Cannot remember the docket nos of all cases, however they can be obtained from US court computer by putting my name in in all 3-4 or more ways to get all docket nos. for consolidation as I am homeless and have no records after what conspirators with city did.


Vora v. all conspirators some of which are listed here
(1)Don Michaels, Codes Dept Supervisor at the time of incidents, boarding up & then illegal demolition of the 511-5111/2 Robb Ave., City Hall, Johnstown, PA 15901
(2)Mr. J. White, Director of Codes Dept at the time of illegal demolition, city Hall then resides now at 508 S. St., Johnstown, PA 15901
(3)Police Chief Craig Foust, 401 Washington St., Johnstown, PA 15901.
(4)Police cop Killinger, 401 Washington St., Johnstown, PA 15901.
(5)Police cop Janciga,      "             "   "            "
"      "
(6)    "     " Christ,      "             "   "            "
"      "
(7)    "     " Sgt Kiefer,  "             "   "            "
"      " (retired) Home address unknown to Vora, police dept & city will not give it, so service has to be conducted on Secretary of State of PA, Carol Aichele, 302 North Office Building, Harrisburg, PA 17120, as well as on behalf of all other people involved whose addresses are not known to Vora, as earlier list disappeared from everywhere including federal court computer.
(7)(b) cop Carothers, JPD

4

(8)Kristen Denne, City Hall, Johnstown with home address unknown, one person was saying she has a room on top of next building called Vault.

(9)City was represented by Ronald Repak Jr. in Grecek's courtroom & they are refusing to give his home address in Johnstown & his address then was that of David P. Andrews, Solicitor of City of Johnstown, 3366 Lynnwood Drive, P.O. Box 1311, Altoona, PA 16603-1311.

(10)Judge Creany, Chief Judge of CCC, Ebensburg, PA 15931

(11)    "    Krunemacker, CCC, Ebensburg, PA 15931

(12)    "    Kiniry(earliar was asst DA who conducted DIOMEC, then DA), CCC, Ebensburg, PA 15931.

(13)Mayor Trigona of cty of Johnstown, Johnstown, PA 15901, city Hall

(14)DA Kelly Callihan, CCC, Ebensburg, PA 15931

(15)Asst DA Joseph Green, earliar represented City of Johnstown who claimed he authorized taking of my 2 trailors of 2003, 2005 which were sitting in my driveway with license plates on them, illegally by Gallucci Sanitation, then claimed they were sold & now they are sitting in city's storage lot & had refused to give it to me to put on my property to this date) CCC, Ebensburg, PA 15931

(16)President of Memorial Hospital(henceforth MH), 1086 Franklin St., Johnstown, PA 15905

(17)Dr Patel, Director of Psychiatric Ward of MH with their staff in 2011 & earliar too,  Good Samaritan Hospital, 7th Floor, Johnstown, PA 15905

(18)Dr. Jan Savit, 422 Main St #202, Johnstown, PA 15901

(19)Ex Judge Abood of CCC, 709 Franklin St, 2nd Floor, Johnstown, PA 15901

(20)Mag Barron, 110 Sunray Dr., Johnstown PA 15905

(21)Mag Musulin, Central Park complex Bldg basement, Johnstown, PA 15901

(22)Mag Grecek, 1340 Franklin St., Johnstown, PA 15905

(23)Curt Davis, former city manager, 345 Main St, topmost Floor, Bldg is adjacent to City Hall, Johnstown, PA 15901

(24)Gallucci Sanitation, which became part of INS on Tire Hill, 1900 Soap Hollow Rd., Tire Hill, Johnstown, PA 159__

(25)Former city atty Green who is Asst DA now, I think

(26) Don Palmerine of Tribune Review, in Greensburg

5

(27)Tribune Review Director, 622 Cabin Hill Dr. Greensburg, PA 15601

(28)    "    Democrat Director, 425 Locust St, Johnstown, PA 15901

(29)WJAC TV6 Director, 49 Old Hickory Lane, Johnstown PA 15904

(30) Dr. Rowland & Health Center of OSU, address unknown now, will have to serve on Secretary of State of Ohio, Jon Husted, 180 E. Broad St, 16th Floor, Columbus, OH 43215

(31)Dr. J. Madara, CEO, American Medical Association, 515 N. State St., Chicago, Ill 60659

(32) Dr. P. Respet, address unknown, so serving on Secretary of State of PA,

(33)Schrader's Flower Shop, owner as Maryann Grabish, 510 Vine St., Johnstown, PA 15901

(34) M. Grandinetti, earliar was Code Enforcement Officer, Johnstown, Pa 15901, believe is still a city employee in some capacity, havent seen him for a long time, library says A. Grandinetti died in 2008 who was code enforcement officer & M. Grandinetti is ordinance officer now with address 164 Spring St, Johnstown, PA 15906

(35) Cannot remember the names of two code enforcement officers involved in next 2 cases after Grandinetti, however their names appear in court cases filed by them in State courts which Vora removed them to Federal court so they are in one of the federal court papers files, & city in cohorts with conspirators vanished with all my pleadings & possessions, time & again, ever since 1178 Milford St, Johnstown, PA 15905 which are common practices in Cambria County, all in furtherance of antitrust, RICO etc schemes & everything was done to restrain competition, trade in the market of remedies & services of which Vora was not aware of at all & major class attorneys dont do anything for minority group person like Vora & just go for major class people.

(36)Tom Oldham, earliar was Code enforcement officer of city of Johnstown, so will be serving on Secretary of State of PA

(37)President, St. Francis College, Lorretto, PA 15941 Christian Oravec died on 7/20/2014, however some others got hired after he retired too, so service on present President is good too.

(38)Some unknown legislatures including J. Murtha, so will be

serving on Secretary of State too as AMA is involved too, no question about it, as even definition of medical practice changed from 80 decay since 1997, pursuant to their open ended schemes & my trade secrets are not for sale at all, & shows their ulterior motives & are trying to get my trade secrets even by illegal means & are going about lobbying, as well as enacting totally unconstitutional ordinances, statutes, which are totally unreasonable, arbitrary etc., by giving definitions likewise of practice of medicine, for eg. in State of PA by changing them too from earliar ones like those of "drug" etc.

(39)Judge Tuwoliski, earliar was DA of CCC, Ebensburg, PA 15931

(40)Late Dr. Anthony Gergeley, 514 Napoleon St, Johnstown, PA 15901

(41) Shomo, earliar was Director of  Code Enforcement, City Hall, Johnstown, PA 15901

(42) Ron W. Repak, 173 Gerry LN, 15904 (formerly Director of JRA, when 511 Robb Ave Duplex was demolished illegally etc.)

(43)  Warren Gates, 177 Iron St, Johnstown, PA 15906

(44)(a)Cop Kanuch, with one Italian origin cop involved, German origin person involved claiming I hit Schrader's Flower shop vehicle when I did not as there was no scratch at all when I popped my head out to see the damage & double checked it when cops came to Auto Zone & they took my car with trailor containing the door all tied up safely making 6' high wall on it, too to their impound lot for which I had to pay over $400 for each vehicle to be taken out of impound lot & do recall that I went back to Schrader's Flower Shop to check again & found that there was no scratch on the black pick up truck vehicle they claimed I hit & there was no side mirror that was damaged at all, but what he had on that vehicle that side mirror could be folded & just a speck of paint off on the right rear light frame of the breaklights, & got the impression that a tape recording was used to create the sound which I heard, so feel Schrader's Flower Shop(henceforth SFS) people are not that innocent & was quite well planned as I saw the same black pick up truck parked in front of their shop on 7/15/2012, telling me quite clearly that conspiratorial activities are continuing as telling SFS vehicle with the license plate they

7

showed in CCC was not parked on the Street at all &
everything was fabricated telling me quite clearly that Hitler,
Musulini, Stalin era is on the way trying to create a 2nd
Ramanujan in my life, extract whatever they can then take my
life as done to Ramanujan & that era is in the making here in
USA, as big white vanlike vehicle whose license plate was
used claiming damages etc. was not there at all with side
mirrors, front pane not matching at all with those of the
scratched vehicle picture they produced in CCC showing clear
frudulent, antitrust etc. activities of these conspirators.
(45)Anthony Kovacic, Fire Dept Chief of Johnstown, PA
15901.
(46)David P. Andrews & his representative Ron Repak Jr,
Soliciter of City of Johnstown, 3366 Lynwood Drive, P.O. Box
1311, Altoona, PA 16603-1311
(47)Rick & Donna Williams, 939 Menocher Blvd., Johnstown
(48)Cop Kanuch, 401 Washington St., Johnstown PA  15901
(49)Codes Dept Head Renne Daley taking place of J. White,
Johnstown, PA 15901
(50)Atty Kraft, 427 ParknAve., Johnstown, PA
(51) Howard Messer,  100 Ross St., Suite 101, Pittsburgh,
PA15219
(52)Nationwide Insurance, headquarter's address: 1
Nationwide Plaza, Columbus, OH 43215
(53)PA with all their involved Depts like Bureau of Motor
Vehicle, Penndot
(54)N. McGough, died on 06/13/2012, owned Mount Lake
Lumber Co. P.O. Box 966, Duncansville, PA so for successors
of his estate, sertvice on Secretary of State is good.
(55)G. Toth present address unknown so will be neccessary to
serve Secreary of State of PA
(56) G. Toth's father William Toth, present address unknown
so will be neccessary to serve Secreary of State of PA
(57) C. McGough married to William Toth, present address
unknown so will be neccessary to serve Secreary of State of
PA
(58)Earthmover's Unlimited Inc., 930 Old State Rt. 53,
Kylertown, PA 16847
(59)Verizon Inc., headquarters is 140 West St, New York,
NY10013
(60)R. Fisher (who damaged my Cadillac badly& Carothers

rigged it completely)

(61)Courier Express, 172 S. 21st St., Pittsburgh, PA 15203

(62)Free Clinic Head, Loretta Opila, 320 Main St, Johnstown, PA 15901

(63)Dr W. Eillien , address unknown, so will be serving Secretary of State

(64)Dr. Jopinder Harika, address unknown, so will have to serve Secretary of State

(65)Beverly Yanick of CC, cannot recall at all in respect toaddress, & in what sense he/she was liable, incident or anything like that now as of 7/13/2014

(66) Dr Azwin J Murn,   "                    "                         "

(67)Dr Steinman          "                    "                         "

(68)Dr. Suryakant Shah,  1086 Franklin St, Johnstown, PA 15905

(69)R. Huber & Family, address unknown, so will have to serve Secretary of State

(70) Officer page, JPD, 400 Washington St, Johnstown, PA 15901

(71)W.E. Sabo, address unknown, so service on Secretary of State.

(72)Donald Robertson, Cannot remember at all without access to my pleadings which city took illegally so holding city for it, probably was a cop of JPD

(73)Badge 105, JPD

(74)  Badge 110, JPD

(75)   Badge 115, JPD

(76) Masterovich was cop of JPD, cannot recall events without my pleadings which city took illegally so holding city for it as all were acting pursuant to city's orders & antitrust motives of city

(77) Veronica Klocko, address unknown,  secretart of State service is good

(78) Kimberly Zidik, cannot remember events without access to my pleadings which city took time & again

(79) Camtran, Administrative Offices, 726 Central Ave, Johnstown, PA 15902

(80)John Signa in his capacity as a broadcaster with KDKA Radio, KDKA-AM 1020 News Radio, 651 Holiday Dr. Foster Plaza, Pittsburgh, PA 15220, died 2011

(81)Police Officer E. Smith,

(82)Borro of Loraine, 503 Green Valley St., Johnstown, Pa

15902.,

(83)Police Officer Solomon,

(84)Police Chief then in 1997 & now is Craig Foust,

(85)Com of PA, Dept of Transportation, Bureau of Motor Vehicle & driver Licensing address as DOT/DMV 1101 South Front St, Harrisburg, PA 17104; PennDot Address is 400 North St., Harrisburg, PA 17120-

(86) Martin A. Kovacs,

(87)B. A. Emerick,

(88)Santucci Family that was in Lorain Borro from 1996-2001,

(89) Don Zucco was mayor of Johnstown earliar

(90)800-911 center with its former director  Robbin

(91)PASC with Italian origin Prothonotary in 2001

(92)CC Prison Authorities with their doctors then in 2001 and subsequently until July, Aug 2012

(93)Ragor Family of 513 Robb Ave,

(94) City Mayor Trigona,

(95)Motorist Mutual Insurance Co., headquarters: 471 East Broad St., Columbus, Oh 43215, local co. 2674 Monroeville Blvd, Monroeville, PA 15146.

(96) John Ayres M R, 132 Gazebo Park, Johnstown, PA 15901

(97)L.A. Lorditch,

(98)Rudolph Miller,

(99)Spencer Custer Saylor Wolf & Rose, 216 Franklin St., Johnstown PA 15901

(100)Sanford of Waste Management, then worked for Gallucci Sanitation when Johnstown switched garbage pick up co.,

(101) Daniel Siegel, (worked earliar for Mr. Messer, now has his own Law firm I believe), address unknown as Pittsburgh Phone book does not give it so service on Secretary of State would be good.

(102)S. Masih,

(103)R. A. Smith.

(104)M. Fink,

(105) Mortgage Co of (103), (104)

(106) Atty Daniel R. Lovette, was asst D.A. in 2001 of CCC & all they did was to force him to resign for destruction of evidence of 800 -911 center tapes conspiratorially with conspirators when not a single 911 call was made in the period in question, 360 Stonycreek St., Johnstown, PA 15901

(107)Susan Schall,
(108)Joe Billedeaux, 515 Pine St, Johnstown, PA 15904
probably whom Gergeley had identified as Billy Dew
(109) cop Carothers, JPD,
(110)Traveller's Ins. Co  Corporate Office Headquarter's, The
Travelers Companies, Inc., 485 Lexington Ave., NY, NY
10017, USA
(111)Local address for Travelers Insurance Co is 700 Two
Chatham Center(5th Ave), Pittsburgh, PA 15219 ph:(800)252-
4633, with Pittsburgh Claim Center: Ph:800.238.6285,
FAX412.471.0329. Personal Home & Auto, P.O. Box 1538,
Pittsburgh PA15230-1538, Business Liability P.O.535200
Pittsburgh, PA 15253-5200.
(112)(a) Mr Himes of 1178 Milford St, Johnstown PA 15905 in
cohorts with CCC personnel appointing him as Foster parent
for children of criminals to achieve their illegal goals of
antitrust with Atty Kraft, (b) judge Weiss of federal system in
PA failing to process my appeal which was filed in 30 days
from the date order was docketed of judge Diamond with
burning of my forehead, making me homeless forcing me to
prepare my scarfree burnremedy in front of the Bethlehem
Haven shelter staff of black Jamaican lady, by manager
incharge then Donna Sisco that they got my trade secret on it
especially the black Jamaican Supervisor there who lives now
in JHA complex on Vine St close to Market st & her relatives
got that from her & trying to do the same thing all over again to
get my gene therapy & procedures etc., all pursuant to their
illegal antitrust etc schemes & pursuant to preserve the
achieved monopoly of M.D.s in the market of remedies &
services, as my remedies are far superior than medical world
remedies & is perse violation of antitrust laws, quite
conspiratorially which are still continuing, so I have no money
left from my income for anything else, cannot afford to spend
another 20 years searching for a brick duplex in business
zone suitable for my business needs & I had worked slowly
with adjustments fixing things on 511 Robb Ave duplex which I
cannot do anymore as my condition became & have become
very bad with more injuries since then with severe aggravation
of preexisting injuries & a person cannot get a petrfect brick
house in tax sales at all as they need a lot of work which took
plenty of my time, money etc for it from 2001 Dec to 2010 &

11

was in the process of fixing rear deck with all the wood purchased for it which city personnel took etc & was going to fix outer floring on shed too & I had purchsed all tools for it & had all theser expensive tools in the house which city took & there was no garbage there at all & they will do it asgain as they have done it 4 times or more by now, so cannot take any chances.

(113) Theory Perry

(114) Progressive Insurance Co.

(115) Geisinger Insurance Co as they are refusing to pay for my remedies of Naturopathy without which I cannot survive at all & cannot even walk without a babycart for more than a block & still hurts bad even walking a block.

COMPLAINT AT LAW ON ANTITRUST, RICO, CIVIL RIGHTS Statutes OF ALL KINDS, ETC. with Motion for (1) Injunction on these conspirators to prevent repetition of Hitler, Musulini, Stalin, etc type era &/or trying to create 2nd Ramanujan in my life with irreparable harm to Vora, (2)order of federal system to build my brick duplex of 2 bedrooms on each side with attic as 3rd bedroom on each side, back up on 511 Robb Ave duplex with rear deck, solid steal fence as it was surrounding the property as the right remedy for their illegal deeds of demolishing it when I refused to sell it at all saying it was not for sale at all as it was in business zone, very suitable for my business of naturopathy & reselling used goods after fixing them, (3) damages of all kinds including punitive, exemplary etc in treble the amount, (4)getting CAG repeats test done on my blood which nobody is capable of doing it in PA, X-Ray of the brain with contrast to see exactly what damage got done & to see if the internal bleeding that had taken place when I fell down from 1st floor all the way to basement injuring my head, back, chest, & probably fractured ribbs too as Mr McMinn fractured 6-7 Ribbs when he fell down 14 steps at his place of abode as U-Haul worker had said that the spot I pointed out to him by plcing my finger there turns red practically 1 square inch in size, so needed to detect what happened to the trapped blood whether it transformed into abnormal blood vessels as the case law that was at 535 Oakland Ave said that which was removed by these conspirators from there too, giving me 100% proof that AVMs are caused by injuries to the brain & not that they are born with them, as in 83 my brain was injured very badly putting me in neurologic condition & statute of limitation does not start running until injury is discovered with the cause for it , just if taken as accident case when it was antitrust predatory act and the accident cases of 83 as well as last two cases in 3rd cir too, as judgement was never received by Vora to this date even if court does not want to take as antitrust predatory illegal act, & all cases from 1983 have to be reopened & SFC is not that innocent; (5) Reopening all cases from 1985 on as antitrust cases (6)Injunction on these conspirators

Now comes Vora & avers as follows:-

(1) Vora is not an attorney, in very bad injured condition since 1983 etc & is a resident of Cambria County since 1981 Dec

13

with resident alien card with nos
101945, A17807748, PIT P36
on it on front side in 3 rows & back having nos  with words:-
ALIEN REGISTRATION RECEIPT CARD
PERSON IDENTIFIED BY THIS  CARD IS ENTITLED TO
RESIDE PERMANENTLY AND WORK IN THE US
17807748    11    19    545    742    36178
A. NUMBER   ISS/T   CK    M 1    M 2    PARITY 1
4732    05510    01319    20245    33729
PBD    IDW 1    IDW 2    IDW 3    PARITY 2
011282    247    063    22600    6060895
ADM/ADJ DATE    COB    ISS CODE    SOUNDEX
PARITY 3    BUREAU OF ENGRAVING AND PRINTING
FORM I-551 JAN. 77    Vora has been residing in
Johnstown, PA since 1983 and presently has mailing address
of c/o Ed, Budget Transmission, 340 Bedford St, Johnstown
PA 15901 for letters, legal mail on court cases etc. to which
Vora can walk with the help of babycart to get it.
(2) Defendants are residents of different states, with antitrust
motives spread throughout USA & practically world over with
illegal motives to severely restrain competition, trade in the
market of remedies & services practically world over,
especially so in USA & are part & parcel conspirators, to
preserve illegally achieved monopoly in the market of
remedies & services especially by people with the tag of M.D.,
with insurance cos. who will just pay for their services & not
others especially Naturopathist, homeopathist etc when some
of their remedies are far superior than medical world remedies
& is per se violation of antitrust laws & have committed
genocide & are continuing to commit genocide of especially
neurologic people in the market of remedies & services. As a
matter of fact, Vora's gene therapy is practically good for all
conditions except where the gene is absent & even though
millions & billions of dollars have been spent for stem cell
research, medical world got nowhere any closer to what Vora
discovered & has no fee paying clients at all due to predatory
acts of these conspirators, who diabled Vora very badly, did
not put loss of wages for life to this date & fraudulently
spreading rumours, viciously, egregiously in order to maintain
their illegally achieved monopoly in the market of remedies &
services took Vora's all types of property time & again to

14

achieve their illegal goals, trying to extract it out of Vora to severely restrain competition by trying to create circumstances & have created such circumstances in Vora's life that she is not eligible for any benefits in this land, always telling & doing things that Vora's business will not see the light of the day as threatened by 3 white girls in Pittsburgh claiming to be relatives of Duquesne University faculty members with illegal motives of tying agreement to eliminate Vora completely from the competition, saying " give us 50% of the business profits otherwise business will not see the light of the day" & no matter what these activities are still continuing even after dsabling Vora thoroughly that Vora has to walk with the use of babycart to reduce pain etc. Whatever Vora could find the addresses recently ofr some of them, Vora has listed them as everything was taken & removed by these conspirators even by illegally evicting her & taking everything of Vora whereever & whenever they can find it anywhere.

(3)All the egregious, illegal acts, misdeeds of all kinds which includes antitrust motives were done willfully, maliciously etc by these conspirators in the particulars given by Dr. Vora in all her pleadings throughout in the courts of law in USA like USDCWPA, USDCBME, USCOAF1 & 3, CCC, WCC, State court Magistrates court etc all of which are being set forth here as if in full by reference thereto which is permitted by law in antitrust cases as any court can access them thro their computer as law permits them to do so, as quoted by Vora in her pleadings of 1st, 3rd cirs etc, however 3rd cir did nothing to docket them etc which 1st cir did telling Vora clearly that they are more knowledgeable & they have not been infiltrated so far by these conspirators to Vora's knowledge, however one never knows.

(4)Dr Vora is enclosing the brief sent to 1st cir & copy was sent to 3rd cir too to get relief & can be taken as complaint unless court wants it in the style of CCC, & if court says so explicitly then only Vora will try to write it, however in antitrust cases, law permits antitrust plaintiff to set all the pleadings anywhere in USA in any court here as if in full by reference thereto, so Vora is invoking that as Vora cannot remember anything withouit the pleadings which city took illegally, everything from 511-5111/2 Robb Ave, so Vora is entitled to dismissal of all charges with treble the amount of damages &

15

city should be ordered to build the duplex brick structure back up again on 511, 5111/2 Robb Ave grounds for their wilful, malicious misdeeds, just targetting Vora to achieve their illegal goals & severely restraining trade, comptition.

(5)Note with particularity that Dr. Vora has achieved the status of Full Professor with tenure ever since Dec 75, so Vora knows what she is talking about & what she is doing with remedies of her own that are naturopathy with no chemical drugs in them, so as per Reisinger v. Com...., 399A.2d1160 medical practice licence is not required & Vora's business license suffices for it, however until Insurance cos. pay charges for Vora's services, Vora will not have fee paying clients which is severe injury to trade, competition etc in the market of remedies & services & is per se violation of antitrust laws .

(6)MH withtheir Drs have done severe harm to Vora as part of their genocide trends & tactics that again found that rectum leaked dirtying Vora's underwear again on 7/6/2014, 9th time, 7/15/2014 10th time, 7/17/2014, 11th time, 7/23/2014, 12th time that Vora had to resort again to intensive care of taking & using her gene therapy every hour practically, & got some relief from it & so far it did not happen so far, so Injunction is an absolute must on these conspirators.

(7)Predatory antitrust acts of these conspiratos have not stopped yet as again after I talked to Mr. Smith at 1-617-748-4273, case manager for (0)(a), (0)(b) cases with consideration if court will take jurisdiction of all antitrust motivated cases anywhere in USA, he said send it in writing, my one babycart with papers & things was taken & moved from the tarred ground of area which Michelle workman claimed to be belonging to 625Main St lady & not St DePaul Vincent DeSociety Family Kitchen people as I was trying to get this out, & Michelle said she moved it on the backside where I had my some things on Greg Larcher telling her to do that & was no longer there when I came from the library when it closed at 4P.M. to try to move the cart from there, & found the babycart with some things dumped in the Family Kitchen dumpster of Pro Disposal & none of the people working at 625 Main st wanted to help me to get it out of dumpster& it took all my time from 4:45P.M. to sleeping time to save the cart with any of my possessions there & found some tools like Phillip screw driver

16

etc were gone too, showing to me clearly conspirators are conspiratorially working together to try to defeat all my genuine antitrust etc claims at crucial times thro their stooges as Gergeley was one of them too, in dumping my babycarts in dumpsters as I have to keep anything on babycarts to prevent damage to any of the items as when it rains, everything gets wet, ruins clothes etc. & Greg Larcher says that he cannot watch his cameras all the time to find the culprit who did it as he has no time for such things, so even though his camera would have identified the culprit he does not want to do it. (8)Medical world is incapable of testing the fact that Psychiatric, Psychotic drugs etc is responsible for worsening the condition of neurologic people who cannot control, excretary motions at times & medical world is unable to do anything for them is quite obvious as they did not succeed worldwide in controlling the problem of bedwetting from 1975 Dec to 1998 fall when Vora brought it in control using her own discoveries & it happened once again after injection of Psychiatric & psychotic drugs in my body by force intravenously when I refused to take them voluntarily, orally & worsened it much more that rectum started leaking with stools which had never happened in my adult life before prior to it, so far 11 times, & does show my gene therapy is able to give quite a bit of relief with intensive care on it too, so injunction is a must on these conspirators which includes M.D.s as well as insurance cos should be made to pay my charges as even MH Drs with insurance cos refusing to pay my charges, are giving trouble to preserve their illegally achieved monopoly as Dr Wasseem with whom I had appointment to try to get C.A.G. repeats test done on my blood, with Brain X-ray taken with contrast, Xrays of my toes, foot, chest back & front on LHS as it hurts very badly still, & I have to use my gene therapy in massive amount every hour practically or when it hurts to give some relief & try to avoid uncontrollable spasms as soon as I get one or two spasms, which medical world does not have at all & I have no intention to give such things to abusers & they have to come to me & until my fee is paid everytime, practically every hour & since it is individualized, there is no one such remedy for all as it has to be prepared for each person separately at intervals, as it varies in looks too, dependent all, on the condition of person as each preparation

17

differs even for the same person, & after what I have been put thro in my life, with no nproper rank, proper salary given to me at any time, with no earned income no benefits of any kind after putting me in this disabled condition since 1983 with no loss of wages put in my pockets at all with insurance coverage for the rest of my life as I do not have work on resident alien card for more than 11/2 year, & welfare is no good as it does not even pay a person to live independently in a decent place, & likewise is SSI as Christy Herzog hardly got $580 p.m. last I had seen her practically 2 years ago that she could not afford an independent place for herself & Jo Ann of rm 1007 of Vine Towers informed me that Christy she knew is dead, & if she is the same person, she died quite young so cannot be banked on as such at all, & with such antitrust motives of these conspirators I have no intention to take any chances & cannot afford to risk my trade secret at all & my fees should be paid to even seek my remedies for anything, that is final as all the degrees are just good for major class people who get paid properly for anything, so my business with my trade secrets is best hope for myself & for my family for generations of my brother & sisters with their children, & for preservation of Jain religion with my family values, so I have no intention to yield on that & it will at some stage will bring decent livelihood for us otherwise it shall go to my grave that is final & nothing is going to change that, & since I had very bad experiences with this date with landlords, I am taking no chances knowing quite well that my income is not sufficient for Platinum solutions 2 of Geisinger Ins. with storage charges as I cannot afford to loose anything in storages of my documents, evidence on damaged vehicles as proof what they tried to do to me as all money on photographs etc went waste too as conspirators got them even by intruding into my house when I had it, took possession of my property, time & again by evicting me illegally etc all as seen in all the cases that were removed by me to federal court, not knowing antitrust laws & their motives then, etc all of which are being set forth here as if in full by reference thereto.            (9)Dr Wasseem is the director of internal medicine of Family Clinic of MH in Johnstown, & she did not show up at all on the date of the appointment, instead, Dr Astergash, with one other Dr. took over & told me that they will do all the needed X-Rays as per my request as they have

18

all such macines there & I wont be charged anything as he is
sending me there. However they did nothing other than
useless procedure of catscan for which I did not care for, &
wasted all my time, entire afternoon, evening and the released
me past 9P.M. telling me to make another appointment with
Wasseem & see if I can get all this done what I want them to
do, in spite of me paying all insurance premiums out of my
pockets of $656.13p.m. beghinning 6/1/2014 & they have
done nothing so far, did not tell me anything on catscan too, &
found that next day these conspirators tampered with my
babycart on Saturday, Sunday removing papers given to me
by the hospital, Dr Astergash saying he is sending me to go
thro emergency room for all the X-Rays etc and found some
other papers got substituted with another Drs name on them,
telling me very clearly that M.D.s with hospital has no good
motives at all as hospital billing dept sent me a bill of $200 to
pay out of my pockets & I did call the billing dept that I am not
going to pay it as Dr. Astergash told me that they will do all the
X-rays the way I want it with blood test etc. but nothing was
done, & emergency room people telling me Dr Astergah just
ordered catscan, a useless procedure as far as I am
concerned, so injunction is a must as I am incurring heavy
premiums which I cannot afford to pay out of my pockets, so
may need court orders for it too.  On 7/23/2014 I got letter
from MH saying that MRA of the brain I can get it done in
Altoona, so need to travel to Altoona for it & do not know if
they will get X-Rays with contrast on it too or not as it was
done in 1995 at MH & do not know if what they did in 2005
was genuine or not as have seen Xrays of pudding like
fractures on my heal pad disappear totally from everywhere &
another X-ray was there in the records de p  t that was given
to me not showing that.
(10)No more time to even find all the Motions I sent to 1st cir
after briefs of 4/21/2014, 4/30/2014 as found conspirators
were in my computer again, deleted certificate of service of
4/21/2014, however I had a copy of it on paper so created it
again & probably deleted all the motions later on, however
since federal court can access papers in any courts in USA
being antitrust cases, & law permits antitrust case litigant to
set them as if in full by reference thereto, Vora is doing that as
Vora has no more time left as Vora wants to keep her

19

appointment of 1:30P.M. with Dr Wasseem on 7/24/2014 at
1:30 P.M. as the caselaw that I had at 535 Oakland Ave had
said very clearly that when internal bleeding takes place in the
brain, invariably person dies, however in rare cases, trapped
blood transforms into abnormal blood vessels which the expert
Dr called membranes in that case whose testimony was on
the record because the person had died, & I do not have the
cite at all as it got removed by the conspirators.

(11)Many people in Johnstown do say that city was very
wrong in demolishing my house which all of they say was
illegal & do say that "Gergeley's house of 514 Napolean St
was burnt very badly that there is practically no rooftop on it
whereas my house never showed any such thing & could be
fixed for minor fire damage, when Gergeley's house should
have been demolished, & do show antitrust motives clearly,
why dont they demolish that house and say city bought
Gergeley's house for $1000 & shows all types od
discrimination against me too besides RICO etc.

(12) Briefs of 4/21/2014, 4/30 /2014 attached here as part of
complaint & all pleadings of Vora in almost all cases of Vora
are being set forth here as if in full by reference thereto.

20

Case 3:14-cv-00154-D    Document 6-2    Filed 07/24/14    Page 22 of 320

Table of Contents

**Nos are just for that topic to facilitate counting of pages for payment & Vora has stapled them separately practically"

(2)Jurisdiction                    1pg 2lines with (3) on it
(3)Table of Authorities with no as (1)(a)      same as on pg of (2)
(4)QUESTIONS PRESENTED total pges on it is 48
(5)Appj(ii) Cases Quoted in Questions Presented    total 40 pges
(not serving duplicates on some parties as they were served already)
(6)Statement of Case or cases resulting from ME, Sanford incident total pges 9
(7) My notes for cts on 15uscas26p1 verbatim opinions total 5 pges with 2 pges for case law listings
(8)Notes on FRCP9 to be sent to cts  total pges 21 with 5 pges of case law listing for parties.
(9) Jurisdictional Statement as Petition for Certiorari or as Brief 45pges with opinions following it set as if in full by reference thereto
(10)My notes on 42 USCAs1985  total pges 16+20
(11) "      "      "  FRAP4 total 22 pges with 8 pges of caselaws listing
(12) Conclusion                          2pges total
(13) Certificate of Service

Jurisdiction
(b)US Court of Appeals (henceforth COAF) have jurisdiction under
28USCAs1291

(1)(a)                    Table of Authorities
Vora is setting all the opinions quoted here, opinions quoted at
various stages in all her pleadings to this date in federal court system
on 15USCAss1-27, 18USCAss1961-1964, Hobbs Act, Civil Rights
Statutes 42USCAss1981-1988, 2000 etc, FHA, FHAA, ADA, i.e. all
types of civil rights statutes etc, FRAP4, FRCP9, etc Amends 1, 4-8,
13, 14, see pges 15USCAs15, 5(b)-31 with Table of authorities
given in 5/30/2012 brief too of COAF. here as if in full by reference
thereto and this is permitted in antitrust cases as mentioned in one of
the opinions Vora came across in antitrust case laws as there is
severe lack of time due to the misdeeds of these conspirators
working together as described in all prior pleadings injuring Vora,
time and again & nobody wants to cooperate with Vora out of fear
for their lives etc. and will take pleading pages promising they will
do it & will do nothing & cannot trust Alpha Printing telling me that
they charge $35 per page to even type it on the computer & they
wont give estimate how long they will take to type 60 pges and
claim they cannot do it until 7/5/2013 & dont know how long they
will take as even previously they backed out of getting pages copied
on last day it was to be put in US mail, so cannot trust them at all
and was not able to get anything out on time.
Note that Vora discovered on 4/15/2014 that her Notes on opinions
to be sent to 1st cir on 42USCAs1985 as listed in case laws got
wiped out completely by these conspirators from my flash drives at
6:20P.M. & there is very much lack of time, so do not know if
opinions with numberings Vora will be able to send or not.

1

QUESTIONS PRESENTED

(0) Can Vora be granted IFP and be allowed to proceed in IFP in USSC(to avoid irreparable harm to Vora,  knowing very well that Vora will never be eligible for cash benefits on welfare &/or SS programs, as Vora does have nontransferable assets in India now after JHA had denied fraudulently section 8 Housing in the years 1992-1996 by lying that Vora had assets in India when I had none then other than personal belongings which could be used by the family especially parents in their old age & I had left it there as I was not, sure whether I will get the F-1 visa after what catholic priest did in Bombay at the consular generals office of US consulate there, coming later than me, crossed the line of Hindus standing in line for a visa to USA & purposely, wilfully, maliciously, conspiratorially etc with antitrust, RICO motives came & stood behind me & everything was preplanned by these conspirators that when I submitted my papers on offer of assistantship with admission etc of University of Toledo in Industrial Engineering I think at that time (as I had 3 offers of Assistantships with Admission then, one was from IU, Bloomington, IN in Computer Science Dept,, another one was from University of Wyoming in Computer Science Dept too,) Indian catholic guy I believe who was at the window, asked the time when I came in & then purposely asked the catholic priest at what time he came in & the catholic priest spoke a lie, giving time earliar than me when he had come much later than me & blocked my visa, as the christian fellow at the window tells me, 1st come 1st serve. which blocked my visa with consular general's office telling me that I needed Justice Dept clearance to get visa back to USA as I was there in USA before etc; & courts of law did nothing on it for me to get section 8 housing & looking at prior experiences I had with the Christian world that Vora entered into agreement with Govt of India thro banks run by them to get higher interest rate that anything I invest for it will be nontransferable & that interest will be transferred to USA in dollars for my use & knowing fully well that I am horribly disabled & cannot work in my field of training in Math & not eligible for any kind of benefits of SS, & courts had done nothing to compensate me adequately & not go for fraud, as fraud is very commom practice in USA; I had no choice but to go for it to be even able to survive as welfare pays nothing practically that a person cannot even rent an independent place to be able to live without person's trade secrets &/or work getting stolen & knowing quite well how my work has been stolen throughout my life even when I was living in independent places in academic fields & how employers use that as a tool for even a job & unless a person like me is willing to give credit for my research & creative work to them or agree with their demands of tying agreement which can put me in prison for remaining years in my life, there is no job for me with adjustments as I just cannot work, as I have to use intensive care practically most

1

year round to be able to live, & one of the conspirators is SFC, as I
got solid proof on it from soup kitchen manager Greg Larcher, when
he told me people at SFC telling him, I am braggy when they
themselves are like that with murders that have been committed by
them like that of Mrs. M.E. Criste, CCC Judges McWilliams,
O'Kicki, Dr & Mrs G. Bostert, Phils Camera shop owner, Dr. B.
Wadhwa, Dr S.L. Gugalia etc.; CCC Judges & present personnel
there, city personnel etc: so let alone the job of proper rank, proper
salary as minority group person like me have to work like a slave
which I just could not take it at all for which I was disabled too
conspiratorially by these conspirators and Vora has no intention to
violate any laws of any lands & Vora was forced to enter into
agreement with State Bank of India that the principal once converted
into rupees would be nontransferable out of India in 1996 when State
did everything illegally, & to prevent loss of my scientific library,
was forced to move from 609 Franklin St. house on Mag Musulin's
orders and seeing prior experiences, had to call my brother from
India to move me and my things, as federal court system failed to put
injunction on them &/or design right remedy for it & State Courts
doing everything illegally without jurisdiction with no remand order
coming from Federal System at all after having put them on Notice
of Removal in IFP to Federal Court, etc. & US Courts &/or State
Courts did not do anything justly as they do for major class people,
as.Vora's income is nowhere closer to Kelsey vs. Milwaukee
Technical College 825FSupp.215 with take home pay of $9.50 per
hour for entire year with 40 hours a week which amounts to greater
than $17,000 per year as such and Vora never got to work more than
1½ years on resident alien card & was used like a slave until Dec.
1981 & never was given right rank and right salary at all & Vora
does recall seeing the figures of $1680 per month as income in this
case in some publication which Vora got from Duquesne University
while at 511 Robb Ave. which was in the basement & removed I
think, when Fire Dept. was there on 12/6/2010 as all efforts were
made to defeat justice for me and all conspirators were motivated to
remove evidence in my favor for their conspiratorial, antitrust,
RICO, civil rights violation, etc. activities, and so never got to work
at all on resident alien card for requisite number of years and have to
live on what ever Vora has, & do not know, how long I will live, so
have to consider at least for another 23 years or more & cannot use
principal at all as it generates income which is not even enough to
live decently and cannot  risk it at all knowing nobody will help to
pay anything or to live decently at all, as life is worse than what I
was used to in India under my parents roof when they were alive &
my income never came even close to Griffin vs. Tedesco of $860 per
month to this date on received income in USA since 1984, so far, &
zeroxing, postage, computer printouts, expert reports, etc. cost
money, all beyond Vora's income & had to deplete assets for it too,

2

so can USSC look at IFP grant situation freshly rather than their outdated decision of 2007 with Irish catholic origin lady as case manager & Irish origin catholics, Polish origin people etc. stick together? Answer: yes.

(1) Can cases from 1985 onwards by Vora and against Vora with all these conspirators involved, be consolidated, so that court can look at the character and effect of continuing conspiracy &/or conspiracies as a whole with all the acts of these conspirators in furtherance thereof, of all kinds including those of civil rights, RICO and antitrust activities, so court can examine all elements of acts, panorama of all acts and circumstances, on whatever papers, pleadings that are there in courts, as these conspirators went about destroying those too everywhere including in courts, and/or on their computer showing to Vora, computers are not very reliable as such? Ans: Yes. Appjii (9), (10),

(2) Did these conspirators conspire to foreclose Vora from substantial market of services to human health condition and remedies for it with no use of chemical drugs at all, which are much superior than chemical drugs of medical world? Ans: Yes, See App j(ii) (14)

(3) Did conspirators conspire to drive Vora out of business markets of all kinds including in those markets with use of logic and/or Mathematical Sciences, as my knowledge of Topology, with knowledge in various scientific branches led me to my gene therapy, makiing scarfree burn remedy practical, and even fixing inoperative things that can be fixed and sold requires logic too? Ans: Yes. See App j(ii) (15).

(4) Were parties opposite to Vora i e conspirators motivated to restrain competition by predatory tactics in the markets of mathematics teaching and in the markets of services and remedies for human health condition, knowing quite well far superior quality of services and remedies of Vora, with threats like "Give us 50% of the business profits otherwise business will not see the light of the day", even by use of predatory, egregeous, willful acts of all kinds, conspiratorially, fabricating Vora, even by enacting totally unreasonable, whimsical, illogical, economically detrimental, and/or environmentally detrimental statutes and/or ordinances to target Vora family and the way Vora family did things in India uptil 1967, like cooking on wood inside the house with vessels with no handles at all, which come spotlessly clean, unlike vessels with handles which never come spotlessly clean at all by any means with germs collecting on them & Indian vessels without handles can easily be handled with the Indian gadget called "Sandsi" with no possibility of burns at any time, which millions do in India, is nothing, but concerted action directed against Vora family with millions of others who do likewise in India, as well as in USA without any fires as such and all of us are getting hurt by such enaction of totally

3

unreasonable statutes and ordinances which are whimsical too, that is , unconstitutional, calling aluminium cans, recyclable property as garbage, prohibiting, as interperated by Johnstown city personel, even lighting wood, charcoal , coal and /or anything else in containers etc. inside houses, when people cook on wood, charcoal, coal, inside houses, as well as use for heat whenever temperatures in winter went below 40 degrees Fahrenheit, with no problems of any kind giving rise to no such fires as such that would condemn houses, went about fraudulently condemning my place with minor fire damage taking my property claiming damaged etc, filing conspiratorial fabricated charges against Vora, taking her civil rights away time and again, illegally imprisoning her for their lies, mounting illegal fraudulent costs, fines for their lies and total fraud as Vora's house could not have been condemned at all just for one electric wiring shot as everything was intact in the house & there was no roof damage at all unlike Gergeley's house which city personnel did not condemn it at all & would cost over $20,000 to even fix it which they are trying to make me buy?  Ans: Yes.

(5)  Can continuing conspiracy and/or conspiracies to restrain trade and commerce by driving Vora out of business in all respects in the mathematical sciences field at graduate level or 4 year college level, in the market of services and remedies for human health in violation of 15 USCA ss1-27, violating civil rights of Vora of all kinds, continuously, time and again, as well as pursuant to RICO statutes 18 USCA ss1961, 1962 1964 be inferred from what was done in light of natural consequences flowing from such predatory, malicious and/or willful acts discribed throughout my pleasings since 1985 with EEOC report of Pittsburgh, which Vora had written to support her cause of action against St. Francis College(henceforth SFC), as neither the fact that conspiracy and/or conspiracies may be intended to promote the public welfare, or that of industry, nor the fact that it is designed to eliminate unfair, fraudulent and unlawful practices is sufficient to avoid the penalities of SS1-7, 12-27 of 15 USCA, 18 USCA ss 1961, 1962, 1964, Hobbs Act and/or other statutes given in US court books that can be taken as predicates for antitrust, RICO; civil rights statutes of all kinds, including 42 USCA ss 1981,1983,1985, ADA, FHA, FHAA, age too now, Amends 1,4,5,14,8,13 etc. ?  App j (ii) (14), (15) (a).

(6)When M.D.s, hospitals with their conventional products that is chemical remedies, Insurance Cos. enter into conspiratorial activities with others who may not be traders too,  for their discriminatory treatment of Vora (as Vora is seeking staff privileges too in hospitals without M.D. degree); to suppress competitor's like Vora's new and innovative remedies like gene therapy, scarfree burn remedy, remedies to sooth pain, headaches etc., to drive Vora out of business by their predatory tactics, like those of  M.D.s with their workers labelling Vora as paranoid, schizophrenic, history of psychiatric

4

illness, psychiatric illness etc. & forcing on Vora drugs for it, in spite of her refusal to take those drugs,; like Progressive Ins. Co., Nationwide Ins. Co.(even earliar & now), Blue Cross Blue Shield(henceforth BCBS) in 1991,1992 saying I did not seek services & remedies of M.D.s for my injuries; will it give rise to liability under Antitrust, RICO, civil rights, etc statutes? Ans: Yes, see Appj(ii)(19), 21(a), 23(d), (83), just like what Medical Association of America tried to do to Chiropractors, & have monopolized the market of services & remedies for human health Appj(ii)(85) when Vora"s remedies are far superior to theirs with no side effects at all once allergies to plant life are specified in writing. (7)Did Vora state federal antitrust claim based on allegations that physicians with M.D.s in cohorts with conspirators, hospitals in PA area, engaged in restraint of trade by conspiring with others to label Vora as paranoid, schizophrenic, history of psychiatric illness, psychiatric illness & forcing drugs for it on her, in order to eliminate Vora totally from competition &/or limit competition by reducing no. of people at hospital & outside too, in the market of remedies & services available to people seeking remedies in the relevant market of remedies, soothing such conditions, including scarfree appearance from burns, looks better than what plastic surgeons can do in some fields like burns etc. as given in website of Vora *http://home.earth link.net/~chandansvora" , Facebook pages of Vora by clicking on Chandan S. Vora and fact remains that M.D.s & hospitals have monopolized the market of remedies & services for human health in USA completely, see Appj(ii)(21)(b), (83), (86)? Ans: Yes. (8) Are insurance cos. actions, like those of BCBS telling me in 91, 92 years that they just pay for services of M.D.s {when my forehead was burnt) & not for my services & remedies, likewise Nationwide did not pay monthly living expenses at all until suits go to legal conclusion fairly & justly as insurance co. of Criste in whose car I was passenger on 8/12/1983, as per State Police & Loretto Police reports & even now also in this accident Nationwide Insurance Co. told me to get it out of opposite parties who injured me & my car & Progressive Ins. Co of Perry in 2005, telling me that, they will just pay $300 at most, see Appj(ii)(84) too, for not seeking services of M.D.s, hospitals & instead I used my own innovative services & remedies; which is unreasonable as well as restraint of trade, violates Sherman Act, as it does affect price, quality or choice of services available to consumers as my remedies on several conditions of human being like pain, burns etc. are far superior(see Appj(ii)(31)(c))than what medical world can provide & medical world with other conspirators,  including Insurance Cos did conspire to use unfair, predatory competitive means to eliminate Vora as competitor & that Vora's elimination from market place in that fashion (Appj(ii)(29)(b)) imposed illegal restraint on trade under rule of reason analysis & will do so in future as it is decrease in quality of

5

services afforded to consumers to be scarfree definitely from burns etc, pain relief better than morphine definitely for neurologic people, as pain can make person dizzy, loose conciousness as happened to Vora on 4/29/2012 when she found herself on the floor next to the chair 1hr 45mins later

& just could recall that nothing helped Vora from going down on the floor after she suffered severe neurological pains in her thigh, all the way to the knee & she decided to see if she could reach bathroom where there was massive quantity of home remedy as Vora could not find her remedy bottle handy next to her, & Vora did not make it to the bathroom at all & fact remains that I had to use my own remedy to treat my forehead after it suffered 3rd degree burn wounds in the ongoing conspiratorial activities of conspirators & as part of it was, also the controversy of 1178 Milford St, from where I was evicted illegally in Dec 1991, made homeless for 6 mths, that my trade secret on practical scarfree remedy for burns then known to me as that was gotten by black Jamaican Supervisor of Bethlehem Haven as I was told everything has to be done in front of her at the shelter by Manager Donna Sisco & was forced to prepare the remedy in front of her in my homeless state, hoping that my techniques would make it practical & see if I succeed on it to prevent irreparable harm to me knowing quite well that medical world is totally unsuccessful on it & severe consequences on health could follow otherwise, & same tactics are being used again by these conspirators to get my trade secret of gene therapy, good for all conditions except where the gene is absent Appj(ii)(31)(d), (32) & such offer of Progressive Ins. in fact constitutes horizontal agreement among competitors like Vora, physicians & hospitals, by providing two-tier reimbursement system, under which physicians are & were reimbursed at higher rate for services than Vora with a Ph.D. with very wide scientific background including that of having an offer to do M.D. with Assistantship in Physiological Optics, Vora's likely evidence of overt conspiratorial activities would not destroy claim under Sherman Antitrust Act, since such horizontal agreement would be unlawful per se, Appj(ii)(84), so can Vora be compensated for her own superior services & remedies with no side effects & better than M.D.s, as even on Oct 2,2011, medical world could not have done any better than Vora when possibility existed that I could go blind totally in my right eye when I fell from 4th step on sidewalk on South St where I had rested on the porch there at nighttime, as something similar happened as on 4/29/2012, however I did not loose conciousness then at all, and I was using the remedy even thro February 2013 to get rid of pain totally there? Ans:, Yes, Appj(ii)(84).

(9)Allegations of Vora, Ph.D. in Algebraic Topology, from IU, Bloomington, IN, one of the top 10 schools in the Nation; with very wide scientific background in subjects like Statistics, Industrial

6

Engineering, Optometry Division, Computer Science programming in PL-I, Fortran, Cobol besides Math, with research in Law, neurological pain relief, as Vora is suffering severely from it ever since 1983 tortious interference in contract action accidents of 83 with SFC in cohorts with them, in spite of the fact that things dont stay in Vora's head that easily after 1983 accidents; when I had suffered uncountable fractures rendering my condition neurologic for life; that exclusive rights & privileges granted to M.D.s & hospitals to provide services, remedies etc., to consumers & denying that to Vora with her kins (having some knowledge on it) to help her, privileges of rendering services, remedies for headaches, burns, pain etc better than those of M.D.s, better than plastic surgean especially for burns ( as specified in Facebook pages with my website "http://home.earthlink.net/~chandansvora" showing that, for minor good scars, injuries too & research is continuing on it on all types of worse conditions to see if permanent relief can be obtained for it or not as presently it is soothing such conditions and requires continuous use of it for life for threatening neurological conditions for which medical world just give few years to live, (quite a total fraud of medical world and as a matter of fact, shows motives of M.D.s & conspirators to preserve achieved monopoly by M.D.s in the market of services & remedies just for themselves with no consideration at all for human life &/or client care); as Vora does not get time at all for such importat **things due to continuing activities of Antitrust RICO,Vora's civil rights violation activities of these conspirators, etc to injure Vora, & her services are better than M.D.s in many respects & are superior in quality than theirs; even if all privileges of M.D.s are not granted like hospital admission for her client's care & Vora is requesting courts to grant all the privileges that are granted to M.D.s as Vora's gene therapy is good for all conditions except where the gene is absent & intensive care brings faster results even though it is for more than 6 months, so Vora is requesting courts to grant all the privileges that M.D.s are granted,just like Chiropractors, including admitting her clients to hospitals in walking distance as Penndot has again suspended my driving privileges since many years on medical grounds & dont get time to fight for it as last time they did that, it was an expensive battle for more than 10yrs. all working conspiratorially together; produced & do produce anticomprtitive effects, decrease in quality of services being rendered by preventing Vora & her kins from entering market Appj(ii)(57) for providing such services. does it not state cause of action for violation of Sherman's Act prohibition against restraint of trade, competition as that market has**

7

been totally monopolised by M.D.s, hospitals, legislatures & only courts can break that monopoly by letting Insurane cos. pay for my services to consumers & myself, on grounds of continuing antitrust RICO, civil rights violation schemes, activities of these conspirators, restraining Trade, commerce, competition in the market of services & remedies, See Appj(ii)(31)(e) as preserntly, it is M.D.s privileges of having clients admitted in hospitals, which Vora would like to have too in nearby hospitals with nurses (which requires driver's licence too, to get promptly to the hospitals too, which PA Bureau of Motor Vehicles is denying to Vora illegally, as a person can control a car in town, with even a finger on steering wheel & a person can stop the car when needed, conspiratorially too as they were part of the conspiratorial activities ever since 1963 when they commissioned the Loretto road to be 30' wide which was not the case until past 1984 when Vora did mention in one of the pleadings or to somebody that uptil 1983 Lorretto road was not 30' wide at all & refusing to pay Loss of wages to this date with courts, from 1983 injuries, fraudulently, as I am alright otherwise for damage claims as per them & for driver's licence, I am not alright as per them, showing clear antitrust, RICO etc., activities & motives) to look after people with burns, pain etc with remedies of Vora using intensive care to bring faster results instead of many years as Vora cannot do it alone on intensive care at all & needs courts going fot it 1st, with kins cooperation & they getting resident alien cards in this land &/or alternatively, clients will have to rent a room for themselves, as well as for me, in a private motel like Econo Lodge in downtown Johnstown near Vora's lot of 511 Robb Ave duplex & courts have to order my brick duplex house to be built back up as it was demolished, illegally, in 2 years, by putting me in prison on fabricated charges, on July 25th 2013 solely to restrain trade, competition etc., by throwing Hocker out, in furtherance of their anttrust, RICO, civil rights violation schemes of these conspirators, as Vora will need it to keep her papers, remedies etc for each person nearby as 511 Robb Ave duplex just had minor fire damage on 511 Robb Ave side, done by these conspirators on 12/6/2010 & refusing to let me fix it in cooperation with others &/or thro contractors like Hocker, & wilfully, maliciously, illegally demolished it taking everything inside my house & refused to let me get anything out of it when there was property worth over

8

$100,000 in it and I could not get anything on my legal pleadings, research etc. out of it, as Vora could have walked easily to Econo lodge to render her services to people seeking them & could have carried all necessary items very easily to Econo Lodge & of course people seeking my remedies & services would have had to hire private people or family members to look after them on injuries at critical stages or if they were bedridden; & if courts grant all the privileges of M.D.s with admission priveleges for her clients, at least they will not have to find private people to look after them as nurses in hospitals would be doing that job & they will have enough time to find private people to look after them for few more months while going thro intensive care, to bring faster results or if their family members or they themselves could do it, then only Vora would be able to go for rendering services with remedies for all types of clients, as the market of services & remedies have been totally monopolized by M.D.s, hospitals, legislatures, insurance cos who pay for services of M.D.s & only courts can overturn it on grounds of continuing antitrust, RICO, Civil rights violation activities of all these conspirators, restraining trade, competition in the market of services & remedies for human health? Ans: Yes, see Appj(ii)(31)(e)

(10)Are city of Johnstown with conspirator's involved, tactics of filing fabricated, fraudulent etc., charges on me &/or creating wilful, malicious accidents intending to eliminate the competitor Vora, from competition in tne market of remedies &/or services for human beings including of scarfree appearance, better than plastic surgeons; even if they have to take her life &/or horribly disable her for Vora's refusal to give 50% of the business profits to these conspirators, to trap her by misuse, misinterpretation of laws &/or unreasonable, whimsical etc laws getting enacted for that, try to, as always trying to trap her by various laws including those of Antitrust, RICO &/or civil rights or digging holes for her to fall into them, as part of conspiratorial activities that are continuing, otherwise business will not see the light of the day &/or refusal of Vora to go along with their predatory, wilful, fraudulent misdiagnosis to injure Vora motivated to restrain trade, competition with their hope to get Vora's trade secrets for their own benefits, business profits, at any cost, with such predatory tactics restraining competition in the market of remedies & services, including those of setting my or their own

9

places on fire, boarding Vora's places up with valuable information hoping to get her trade secrets, pretextually & did it again on 12/6/2010, just for a small fire, & for their fraudulent, wilful, malicious, illegal tactics to restrain trade, competition in the market of services, remedies, with all sorts of illegal motives, claimed falsely, pretextually on 2/1/2011 that there was large fire with dense smoke on 2/1/2011 when no such things were there, making totally unreasonable demands to move everything out of the house in 30 days, (knowing quite well that house was full of valuable property) with all expenses & liability resulting from their such demands with nothing given in writing to me on it, ordering falsely, maliciously, wilfully etc. to clean up the place, claiming fraudulently, wilfully, maliciously, etc., that place is full of garbage, when it had all my personal belongings, court papers on ongoing cases with evidence that could have landed them in prison for a long time etc. with just smoke settling on them, as my place was double plated on windows, doors for cold etc to be kept out & smoke settling on them is not garbage, with all expenses to be paid out of my pockets for their such unreasonable demands, when duplex was full of valuable property with sufficient pathway to accomplish & fix minor fire damage & needed no unnecssary expenses of renovation as such, motivated to injure Vora including to violate all types of rights, civil rights of Vora by creating more criminal charges against me by making me put all that property outside, so that they can steal & take it by invoking unreasonable, whimsical ordinances that were enacted, solely to target Vora, to restrain trade , competition in the market of remedies, services, of fixing things that can be fixed & resold & always unreasonably interpreting them against Vora claiming not permitted, so that they can get the property, and refusing to do anything logically, resonably, economically, as done previously many times, including the deeds of Grandinetti, when I was unloading U-Haul truck to empty storages out & use the duplex other side as storage, looking far into the future, knowing that I am horribly, totally disabled with nobody to bank on & inflation keep going up, & not compensated adequately with what I would have earned, absent discrimination of all kinds, illegal schemes,so figured will keep it, as an emergency use things & the good cop who had arrived there, when Grandinetti called him & commanded him to file charges on me which he refused to do saying that I am unloading

10

U-Haul & putting my property in the yard to be taken slowly inside by me, being disabled, badly injured person for which he got fired by city personnel & Grandinetti himself went & filed fraudulent, wilful, malicious, unreasonable etc. charges on me; & Hocker & myself were able to enter the place to get his estimate & he was willing to do the work without moving anything out of the duplex, showing city's bad faith, predatory antitrust, RICO, conspiratorial activities of all kinds etc. & city was & is part of conspirators to hound, harrass me because of their antitrust motives to restrain trade, competition etc in the market of remedies, services, fixing things to be resold, trying to force me into tying agreement of giving 50% of the business profits to their favourites, otherwise the business will not see the light of the day as threatened in 1992 Jan. & are set on their path to accomplish their goals by their predatory tactics of all kinds, so that they can get everything I own, create severe financial strains on me, thereby restraining trade, competition in the market of services, remedies, fixing things that can be fixed & resold, by eliminating me totally from the market, Appj(ii)(58), showing clearly city is working with conspirators, jointly when nothing had to be moved out of the building & there was no fire at all on the other side & could have been fixed efficiently with efficient, economical means & logic, so that market of services, remedies, of fixing things is not retrained as the duplex met all my requirements for my business & was & ground is in business zone Appj(ii)(59), & trying to get me bedridden totally etc with hope to extract my inventions, discoveries, severely restraining competition, trade, claim credit for my discoveries for them to make millions on it, as by their tactics, they succeeded in getting my practical burncure thro their black supervisor at Bethlehem Haven as I had to prepare it in front of her my remedy for it otherwise I would not have been able to prepare it at all & would have suffered very destructive irreparable harm & destruction of competition, so that they could monopolize the market of remedies, services, & then metting the same fate as was done to Ramanujan when he was forced to return to India by circumstances created there, with conjecture that he was indulging in homosexual activities with Professor Hardy, & U.K. had enacted laws against it imprisoning such people for 10 yrs, which is still in effect in India, restraining competition, commerce, in the market of Mathematical Sciences & inflicted penalty of death in very

11

sophisticated fashion; & trying to do same thing to me and in fact restraining competition, trade severely in those markets given above? Ans: Yes.

(11) Enterprise consisting of medical Drs., hospitals, with some unknown legislatures, some judicial people like Creany, Krunemacker, Long, Tuwoliski, Abood, Kiniry, Weiss with some unknown Clerks, Prothonotary of PASC at the time of Italian origin as per her last name, likewise from Boston, ME, going along with total fraudulent misdiagnosis of M.D.s conspiring to label Vora as paranoid, schizophrenic, history of psychiatric illness, psychiatric illness to restrain trade, competition in the markets mentioned throughout, even by enacting totally unreasonable, whimsical statutes, ordinances too & interpreting them in their own favour when no chemical drugs are used, as services, remedies for human health is interstate commerce in combination with enterprises defined earliar at the pleading stages in lower courts of people involved with institutions like SFC, OSU, attorneys involved like Ayers etc, with people like Williams, Himes, Galbraith, Fink, Smith, with their Mortgage cos etc named as conspirators in earliar cases on house in USDC in PA, all of which are being set forth here as if in full by reference thereto, with Perry etc, as these conspirators evict Vora illegally, destroy evidence, pleadings etc as Vora cannot remember the names of all without her papers, taking the 3rd enterprise consisting of city personnel, cops involved in CC, elsewhere, DA's office personnel involved against Vora's interests on fabricating charges, evidence, suppressing true facts, omitting involved parties, elimination of witnesses from the world like Criste, Bosterts, Gugalia S. L., etc., with insurance cos. in USA making another enterprise refusing to pay for services of Vora, her remedies other than for the remedies of M.D.s, all forming combinations in restrain of competition, trade, in a very destructive way, is it not as Vora,s remedies are superior than those of M.D.s, so their conduct do fall under the penalties of Antitrust laws, etc., & here, hospital on 5/26/2012, retracted their quoted charges of $168 for C.A.G. repeats test given to D. Ickes to find the total truth, as I came to distrust medical world totally after seeing their destructive, fake, fabricated diagnosis claiming that they detected venereal disease of Trichomonasis in a virgin like me, solely for the reason to retraint trade, competition, to use me like a slave, in the above mentioned markets, monopolizing those markets with

12

intent to maintain that monopoly, even by eliminating them totally from this world e.g. Criste, Gugalias(2 of them with 1st name beginning with P. & S.L.); Bosterts etc. & these antitrust activities have spread worldwide, originating in PA, claiming then at OSU that Trichomonasis can be cured by Flagyl about which S. Gugalia had written to me in Tehran that he uses it for curing Amoebiosis in his patients who get it by drinking impure water, a common widespread problem in India, so penalties of antitrust, RICO etc Statutes are very appropriate as they are commiting genocide of neurologic people in a very sophisticated fashion, is it not as my conscience does not go for such fraudulent, unfair, competition at all in any market on principles of Jain religion? Ans:Yes

(12)Intent is immaterial when monopoly is achieved which is the case in above mentioned markets with M.D.s getting paid for their services by Ins cos., Chiropractors now, as the combination of various enterprises defined earliar in foregoing pars. & earliar pleadings, resulted in restrain of trade, competition in foregoing mentioned markets which was their aim & everything is being done to preserve that monopoly by predatory tactics, including of murders, who would have testified on that thro' Affidavits &/or in person, as Vora was not able to make those Advertising trips at all with advertisement painted on her vehicles, especially Ford Fairmont, an excellent running car, to promote commerce, trade, competition as they damaged it very badly as a total loss with rear door on it not opening at all on passenger side after that & Progressive Ins. Co refusing to fix it at all when it just had hardly 70,000 miles on it as I bought that car from Personnel Division Head at IU, Bloomington whose father used it just for going to Grocery stores, & could not get a like car for the little amount they paid for it, (putting my hands, fingers full of pain with cops involved in Johnstown, impounding it pretextually putting it out of order that it will not even start at all after that as it would start after the 2005 accident after making sure that starter connections are intact & the car had never failed me at all until JPD impounded it & dont know what they did to it that it would not start now, knowing quite well that Vora cannot work in her field of training of teaching in mathematical sciences with Bureau of Motor Vehicle in PA suspending my driver's license on medical grounds, even without making sure that I get the written notice in advance on it from them; that I was forced to

13

put it in storages after they totally put it out of order, that it would not even start now & I had to preserve that evidence seeing how thoroughly US people lie on such things against minority & seeing ongoing antitrust, RICO, etc activities of these conspirators etc. knowing Vora cannot do anything like a normal person & cannot work in her field of training in Math with Bureau of Motor Vehicle in PA suspending my driver's licence again on medical grounds which was done earliar too in 1990, to restrain competition, commerce etc to prevent my advertising trips, enjoy it, to put me totally out of business in the foregoing mentioned markets & at this age of 68, in Oct I will be 69, nothing will bring SS benefits except thro my own services, remedies in the foregoing mentioned markets, as indicated in Vora's pges on Facebook, & the website http://home.earthlink.net/~chandansvora with exact address put in there unlike that of Gugalia family which just pops up, on just putting the name of Kantilal Gugalia on the computer  which is not the case with  Vors's website as Vora was unable to get the website on until 2011 due to conspiratorial activities of all kinds, schemes of all kinds in furtherance thereof &/or in furtherance of several open ended schemes of antitrust, RICO. civil rights, etc restraining competition, trade, etc, which are still continuing, as these conspirators are hoping, by creating such stringent financial conditions, & other predatory, wilful, malicious acts as described throughout in her pleadings, even by murders, hoping to force her into some kind of illegal tying agreement &/or out of business totally as threatened by 3 white girls in Pittsburgh at Mariam center in 1992 beginning claiming to be relatives of Duquesne University faculty members saying "Give us 50% of the business profits otherwise business will not see the light of the day" & did not identify themselves at all, knowing quite well that because of their predatory activities  to this date, Vora is not eligible for practically any benefits in this land even to survive decently & not die a torturous death without the trade secrets getting stolen or taken by these conspirators which is one of the aims of these conspirators), as that car never failed anywhere, which had just 27000 miles on it when Vora bought it, which was within Vora's means & suitable for her disabled condition to be able to use it with heat in it & suited her business needs too, so all their conspiratorial activities, with all types of activities described throughout my

14

pleadings, has it not resulted in restraint of trade, competition with inferior quality of services only available to consumers from these combinations with others, with monopoly achieved in foregoing described markets by M.D.s, hospitals, & insurace cos. paying them for it & chiropractors had to fight all the way to USSC to get the same privileges as M.D.s including of admission for their clients in hospitals, with insurance cos. paying for it & for their services & fees etc. just like what M.D.s were paid for them, see Appj(ii)(35), so Vora is seeking same privileges too, so is Vora entitled for payment of her services & remedies to anybody including herself, as their antitrust, RICO, civil rights violation schemes etc., against Vora are still continuing, as usually such injuries are for lifetime & requires remedy for lifetime to soothe pain etc. and isnt Vora entitled to damages of all kinds including punitive, exemplary, compensatory damages with invalidation of condemnation orders, with other illegal, fraudulent orders of lower courts including in PA, with brick duplex rebuilt by them, especially city of Johnstown who is part of it.? Ans: Yes

(13)Is the medical association of America(henceforth MAA) with enterprise of conspiratorial medical doctors, most of them with few exceptions with catholic world, Italian, British, Greek, German, Polish origin people involved with their supporters & workers, hospitals with their trustees, etc. and enterprises as defined earlier, boycotting Vora (with Ins. Cos. claiming that they just pay for services of M.D.s & hospitals), thro their predatory tactics of labelling Vora as paranoid, schizophrenic, history of psychiatric illness, psychiatric illness & imposing harmful drugs on Vora when condition of Vora is neurologic since 1983 & no such thing is there as labelled by them & such drugs kill neurologic people torturously, as was done to W. Guthrie, & fraudulently claiming, too many blood vessels to the brain, since 1996, &/or Vora is dirty, stinks etc & insurance cos. enterprise refusing to pay for Vora's services, superior remedies having no chemical drugs in them with no side effects at all, once allergies to anything are given in writing to Vora; & medical world & insurance cos are doing exactly what was done to Chiropractors uptil 1990 decay, as well as what was being done to nonmember Osteopaths Appj(ii)(83) & is not motivated by concern for "patient care" & thus this kind of boycott is unresonable restraint of trade, competition, & are murderous, destructive as was tried on Vora by MH, doctors there in

15

1996, ever since 1983, demanding from me scarfree burn cure & when I refuse to give it to them, tried to take my life on pretext of neurosurgery to preserve achieved monopoly by them in the foregoing described markets, by cutting blood vessels off to my brain, that I was forced to demand release from Harika, who released me at my own risk though he lost his job for it at the hospital & they do not follow logic, &/or scientific method in patient care & none of them put me thro C.A.G. repeats test in spite of neurologic symptons, to arrive at correct diagnosis when I had full coverage of BCBS & they could have adequately satisfied its concerns for scientific method in patient care by doing that test as at that time Vora was paying BCBS out of her pockets, as soon afterwards, she could not afford their payments on premiums at all for coverage, & even now refusing to do it by quoting figure of $1000-$2000 for C.A.G. repeats test, orally by Free Clinic, & MH prior to May 2012, had given to me, as well as to Donna Ickes, price of $168 for it if it has to come out of Vora's pockets & backed out of it later on, & in May 2012, made & are making a fuss that they do not know, how much it will cost, in spite of me telling them that it cannot be done in pa at all, & Free Clinic had then stated that they cannot afford it at all & will not pay for it then & now since I am above 65, I am not eligible at all for their services & still not going thro with or without charge to Vora as MH telling me it has to go thro a medical doctor and cannot take Patterson's request for it which was more than 2 years ago when he used to come to Free Clinic, & I cannot spend another 20 years arguing with them and try to get a doctor write for C.A.G. repeats test knowing quite well that medical world could have & can adequately satisfy their concerns fot Vora in manner less restrictive of competition than worldwide &/or nationwide conspiracy to eliminate Vora, her services & remedies especially in USA as they have & had substantial market power, & produced anticompetitive effects which are destructive, as well as of causing adverse public reactions against Vora by such fraudulent tactics & is continuing destructive conspiracy in restraint of trade, competition under rule of reason, & they intended to contain & eliminate Vora, her services, remedies, in the foregoing described markets, no question about it & if Vora had not walked out of the hospital agaist medical advice in 1996 March, Vora would have been dead by now, & even now, forced chemical drugs for it in 2011 & trying to do it, in spite of

16

her refusal to take them with destructive effects on all the recuperative care that Vora did for herself by use of her remedies from 1983 to 2011, got wiped out in 1-2 weeks by these M.D.s & Hospital with courts going for frivolous, trash, stereotype rulings of J. Diamond with Appellate courts upholding them & all of them participating in it, even by making orders disappear totally, replacing it with substitue orders, & everything was done by these M.D.s to preserve achieved monopoly in spite of my refusal to consent for those deadly drugs for neurologic people, then, & were forced into my body thro intravenous injections with the help of their security or other personnel, holding me down for it by force, when I refused to take them in the pill form thro mouth swallowing claiming I was hospitalized involuntarily so they can do it? Ans: Yes

(14)The deeds of Perry with her Irish origin catholic girl from N.J., they all conspiratorially working together with Insurance cos., SFC, people around here of Italian origin with their supporters & workers supporting them & working for them, some Duquesne University personnel with their relatives, M.D.s, Medical Association of America, other mathematical sciences people etc., boycotting Vora's superior services & remedies, even by threats like "give us 50% of the business profits otherwise business will not see the light of the day" & doing everything possible for it, to force Vora into some sort of illegal tying agreement, knowing Vora's services & remedies are far superior than M.D.s, is it not pe se violation of Antitrust Laws by refusing to pay Vora fot it, & Progressive Ins, Co. claiming that they will just pay $300 for aggravation of preexisting. injuries, bruises, pain, suffering, swollen fingures etc resulting from ME accident, as I did not seek M.D.'s services, when I know for a fact from all prior experiences including from 1949, 1983 that medical world cannot do anything to bring injured person like Vora to normal at all & from 1949 experience, of being burnt severely, showed to me that my only hope is my own remedies, research & innovative discoveries as never got compensated for medical expenses for life from 1983 total disablement, which takes lot of my time to even get relief from pain, suffering caused by it & seeing the medical bills of the Irish origin catholic girl, who sent them to me because Progressive Ins, Co did not pay fot it, then, at that time, knew that they will do the same to me & all my experiences after 83 were like this with JPD, & by now I know definitely that

17

my remedies are superbly effectve than any chemical
drugs given by M.D.,s when I have no Medical coverage
at all, why should I go for such destructive drugs,
intended to eliminate neurologic people like Vora
completely from competirion by removing her totally
from the world & earliar even in 1991 Dec BCBS had
done the same thing when my forehead was burnt & at
that time I never knew the word Antitrust &/or Antitrust
statutes at all & what they meant & even around
4/29/2012, on 4/19/2012 earthlink sent me a warning e-
mail that unusual attempts were made to log into my
computer, when I discovered on 4/29/2012 that my
basement window on 5111/2 Robb Ave was broken, with
many working items disappearing from there that I had
fixed or were bought new like 4 electric weed cutters, 10
large stainless steel pots, large aluminium pots, folding
bed on which & underneath it were huge stacks of court
pleadings etc., reems of paper, etc., my brand new
circular saw hardly used once or twice, etc were gone
from the basement where I had placed them, in the
flashlight that I could see of cop Repak & cannot recall
all the items that were there had over $1000 worth of
electric, manual tools too alone there in the basement,
Canon copier(new one) covered up, & did not know if it
was there or not, & there were many items on 1st, 2nd,
3rd floors too, like electric lamps, fans, tools, 2 Tiffany
lamps which I had fixed worth over $3000 each, all ins.
papers on many different cos. including Progressive,
Nationwide, my bank records many pleadings, etc all
were there & they did not permit me at all in the structure
& found that every week in cohorts with city personnel of
city hall, Gergeley of 514 Napolean St were dumping &
kept on dumping more garbage in my yard from city's
rental property as well as from his property with some
heavy stones that came out of his yard when the pathway
for his basement door was created with door erected fot
it, with all rotten wood etc., 5 of his no good truck tires
out of 8 which Fazenbaker had retrieved from my yard &
3 were on the fence where he had dumped it earliar, & 3
that I could see on the fence place had specifications
matching his truck tires, as my fence was also broken by
him by removing aluminium &/or stainless steel poles
that got taken by him, sold and both J. Meadows &
Fazenbaker confirmed that all 8 truck tires had the same
specifications as his truck tires on his wheels and that
they are his and there were other small tires too
belonging to his wagon hauling things, & contractor told

18

me he is going to set Gergeley straight on it, however he dumped all back into my yard, witnessed by Meadow that Gergeley was doing it, & I had no choice but, to leave message on Friar's phone as cops refused to take report on it under Janciga as it takes 2 hrs to go there & come back with time not counted for cops as they had done that earlier too many times, so I was not going to walk again & again as I have very limited mins as I make international calls on my phone & have to meet court deadlines, as it takes 2 hrs each time to walk to Police Station & back again, & same holds on calls given to them for just report to be taken by them & can wait for even 4 hrs or longer & sometimes they dont even show up, & even cop Repak had not shown up for 3-4 hours & I had to sit under the bridge that long for him to come, just to take a report & he showed up only after I called somebody else, probably FBI & cannot remember now when I called Fazenbaker again as he did manage to put the broken fence back up using wooden Poles temporarily & said he will help me to fix the house & get me back into my house of 511 Robb Ave duplex, as he was working for Gergeley then to fix his rooftop on 4 corners that was falling apart & also note that absence of allegations of public injury is not fatal to maintainance of action under 15USCAss1-7 where there is allegedly per se violation such as group boycott Appj(ii)(37) & deeds of these conspirators including Gergeley with city personnel is causing public injury too & can be disastrous as cholera, plaque are water born diseases from such conditions, rats infest the place, & Gergeley had covered my fence to make sure that nobody sees them, what they are doing & then breaking of my house windows occurred, all added up with valuable items stolen with bills, papers dealing with Perry, Irish origin girl's bill's copies, making sure with city personnel that they dont exist anywhere & that was the another reason for refusal to let me fix my house, demolished it taking all my prperty and even got U-Haul driven more than 80 miles after putting me in prison on false arrest with property taken from 511 duplex with Earthmovers in cohorts with them, & are doing it even now, taking everything from everywhere, where I put the property of any kind including where I had permission of the representative of bank who had come to cut the grass & told me that they will let me know when they want me to move my things when they took over the property of the owner who had consented that I can keep the property

19

there, as even on 7/27/2013 found that all stainless steel vessels, electrical cables, extension cords, suitcases containing good clothes of mine, for winter, summer, gloves, coats etc were taken, & even on 3/17/2014, I put some of my property including 2 red umbellas underneath some black plastic bags & a cloth cover at noon time & by 5:30P.M. found that it was ransacked & the 2 umbrellas were gone, large & small one, both, & replaced with total broken black umbrella, etc & all are stifling competition too working conspiratorially together &/or by understanding, as I cannot do any kind of business at all as even a white male, in car had approached me several times for Tiffany lamps, but could not show him the lamps because they were boarded up & I was not permitted in my own house at all fraudulently, conspiratorially & had to move things by 5/30/2013 from 104 Franklin St to my property &/or to property of others who were willing to let me keep it there as Ickes wanted to retire & put the building on sale as he said he cannot do it anymore and said his equipment is outdated now and was good in his time of young age when he bought it to earn his living however his daughter moved all the equipment to her place, so she has no room for anything else, & city did it again at Budget Transmission & Ed gave ne a notice to move everything from the Van & yard by 6/21/2013 morning, otherwise he was going to call the cops claiming dumping? Ans: Yes

(15) Note with particularity that deeds of SFC with T. Perry with her Irish origin girl friend from N.J., Duquesne University faculty members with their relatives of 3 white girls in Pittsburgh who had threatened me at Mariam's center as indicated in the earliar questions & pleazdings, they have been doing everything possible to accomplish their goals uptil now, damaging my car & declaring it as a total loss & the fact that rear passenger side door could not be opened at all on it with Bureau of Motor vehicle suspending my driver's license without even informimg me on medical grounds with Penndot as part of them as they were joined by atty Rose in accident cases of 83 as party to it as Lorretto road was not 30' wide then with respect to the tar width when it was commissioned in 1963 until I complained in 1984, discovering all this from CCC records, then only tarwidth got widened to 30', with Camtran buses refusing to give me rides on their buses fraudulently with CCC Judges like Krunemacker, landlords like Williams claiming I stink, smell of

20

kerosene, paste kerosene over my body respectively, perpetuating total fraud, prejudicing public opinion with federal judges opinions against me, that I do not have access to any records, law books in CCC &/or in CC anywhere etc, however Westmoreland County buses do give me rides to Greensburg, so do show conspiratorial activities of all kinds including efforts to force tying agreement on me, trying to put me in prison for the rest of my life, reducing my assets by their such conspiratorial activities of all kinds, fabricating charges on me, time & again, that at everystep I have to think twice, what they are upto, thus restraining trade, competition completely by eliminating me completely from the markets mentioned earliar, with many M.D.s in cohorts with them too, doing predatory acts of eliminating M.D.s who go along with me like Bosterts, Gugalia who was practising medical Dr. & witness to the fact that OSU white nurse broke my hymen on pretext of testing my kidneys to control urination problem & at times having low fever & then fraudulently a. fabricating venereal disease of Trichomonasis in me & then claiming to have cured it by Flagyl about which S.Gugalia had written to me in Tehran, saying he uses it to cure amoebiosis which a person gets by drinking impure water, with news that R. Gugalia, my nephew, disappeared from Jabalpur University campus on Oct. 30th, 1973 & then taking Dr's life & b . when I brought RICO suit on these conspirators & still was not familiar with Antitrust statutes then to which Krunemacker, city retaliated by fabricating charges on me thro Killinger, claiming fraudulently that I was on Gates porch on Iron St, stealing cans from his recyclable bin container, claiming it was on his porch beyond reach, when it was on his only step & he had said I could get his cans, & probably city intimidating him that in CCC, he changed his testimony from that in Mag. courtroom that nothing was on the floor & I had his permission to get his cans, so do show quite well preplanned conspiratorial activities of all kinds, intimidating people, pushing & forcing them by some means to change their testimony from Mag. courtroom in my favour then changing it to that to benefit prosecutors which is tampering with witnesses, & still saying that, he saw 3 cans on the floor, when nobody had touched his bag of recyclable property & nothing was on the floor & can bag was on the 1st step & not against the wall where nobody could reach it without being on the porch, a total fraud, as his porch is hardly 2 & 1/2' wide,

21

& do show quite well, preplanned conspiratorial activites
of all kinds, including boycott of my services & superior
remedies than M.D.'s forming combinations designed to
influence coersively, the competition & trade practices
of boycott victim Vora, & it is quite clear, their desire to
eliminate Vora as competitor too, in the market of
services & remedies too, besides professional boycott as
a mathematician by injuring me severely that Vora
cannot even take a step at times without her babycart &
that too at times do not help at all &/or at times Vora
cannot write at all because of improper use of IVP
needles in 1983 & much more so now with swollen
fingers, since 2005 ME preplanned accident & hoped my
gene therapy would be able to bring it to normal, but has
not succeeded to this date & have to suffer for it &
cannot use my hands, at times, to write or type, & have to
suffer pain even to write or type & cannot type that easily
at all & their predatory activities are both, primary &
secondary boycotts, & tying claim is there too of forcing
chemical drugs into my body, prescribed by M.D.s for
which insurance cos. claim that they just pay for the
services of M.D.s when covered by them on payment of
premiums every month & not for services of mine at all,
however head of Free Clinic in 2012 said they will let me
use my remedies in coordination with theirs when I was
eligible for their services, while hospital Drs. would not
allow it at all, & now Free Clinic will not render their
services to me because I am 68 now & will be 69 in Oct.
2014, claiming I am above 65 & law does not permit them
to give any medical services to me, as my remedies can
take several months for a person in neurologic condition
like mine & have to counter the effects of fraudulent,
chemical drugs of M.D.s, prescribed by them for
conditions that dont exist & are detrimental to human
body like those of psychiatric &/or psychotic drugs given
to a neurologic person which worsens the neurologic
persons condition like Vora, illegally  forcing into her
body by force, in spite of refusal to take them & courts
going for them, which is nothing but outrageous torture,
that in 1 & 1/2 week, at most, wiped out all improvement
in my health condition which had taken me to improve it
with my remedies uptil 1998 fall & made it worse that
could not even control excretory motions from human
body for a short time, until I reach gas station bathroom,
in a short time, in my homeless state, that I had no
choice, but to start taking it internally, knowing that no
chemical drugs are used, at least 2 times a day, & after

22

what I was put thro in CC prison by Krunemacker on fraudulent charges of Killinger, being on Gates porch to get his cans when I had not even touched his can bag & nobody else had, & can bag was on his 1st step & only step from sidewalk, & Killinger had stopped me 2 houses away from Gates house & was riding his vehicle parallel to me, intimidating me, all the time & defeat RICO suit installed by me against all conspirators, including CCC Judges, by exposing me to severe cold in prison; found on 5/13/2012, 5/27,29/2012 that cough gained since then had not gone at all completely, so had to start using my gene therapy internally 3 or 4 times a day, as I had no choice, as I even fainted on 4/29/2012 & had found myself lying on the floor next to chair, when I had suffered terrible pains & had forgotten to take my gene therapy internally that evening & the deeds of these conspirators including Judges of CCC, with JPD personnel, city personnel with their supporters & workers, doing everything without certified remand order getting filed in CCC by certified mail with return receipt which was & is the practice of federal court system as seen in accident cases of 83 when they were processed illegally by the Greek clerk individually & not as joined cases to CCC1985-2043 case in which I was defendant and Messer had joined all the cases resulting from accident to it; was quite disastrous, trying to eliminate me totally from competition & have achieved monopoly in the foregoing described markets as even pleading of 2/21/2012 with quotations of case laws, opinions on which I was going to bank on, on RICO statutes, antitrust laws, 18USCAss1961-1964 was not given earliar as I was still going thro it, was totally wiped out from federal court computer & discovered that only when pg33 on it was not there in my pleading when I was trying to look at it in 1st week of May 2012 & took all my time to search thro' federal court computer, in all cases that were on federal court computer to find in which case federal court clerk Karina put it as I never got time to check in what federal court case clerks put them in &/or what they do with it after they have made a zerox copy of it to be scanned &/or scan it, as I figured they are responsible for their jobs after that, as well as because of lack of time on it on my part & because of so many ongoing cases in my severe health condition, as well as notice to move my things from Conemaugh Engraving & they did not transport my recyclable property whenever they got time to Rollocks Inc, as they were planning to retire, sell the

23

business & told me on 5/25/2013 that dumpster will be coming on 5/29/2012 for them to move everything out of the building other than business items, so people will be able to come to look at the place with their real estate agent at any time they want to & I found that I cannot move more than 2 items on weekends only & it takes entire afternoon from 1 P.M. to 8 P.M. just to do that & cannot afford to pay anybody for such services knowing that I have to live on whatever I have & found that as I am not a normal person at all since 1983 accidents, was never compensated adequately at all like a white person after disabling me totally & having put me in neurologic condition since then in spite of having pain 24 hours a day & don't have money to pay for such services knowing that I have to live on whatever I have, to live on for the rest of my life, & found that T. Perry, her Irish origin catholic girl friend from N.J. with cops involved with other conspirators trying to do exactly what was done by C. & N. McGough with other conspirators like SFC etc as N. McGough had given his car to eliminate Vora totally from competition with SFC's attorney Fisfis, Professor at Duquesne University with 3 white girls threatening me at Mariam Center in the beginning of 90 decay claiming to be relatives of Duquesne University faculty members, saying "Give us 50% of the business profits otherwise business will not see the light of the day", all fits in as conspiratorial actvities of all kinds with tie in & boycott of theirs, on my services & remedies, & business practices, knowing how cunning, cruel, continuously discriminatory with continuing RICO, antitrust etc., motives of these conspirators is, I am taking no chances & I have no intention to budge from my practices, services & remedies etc., being a business as my services & remedies are naturopathy for which medical practice license not required as per Reisinger v. Com. et al, & knowing that they lie horribly & do nothing but stealing & get away with their such practices being major class people, so does it not show per se violations as at 4 York St, Sanford, ME, CMRR service addressed to T.Perry got accepted earliar & on 4/28/2012 pleading requesting extension of time, &/or in the alternative take it as a brief, sent to Perry to the same address, there was just black pen marks crossing out all postal stamps on it with postal strip at the bottom showed that envelope probably never left Johnstown post office as there was nopostal stamp of Sanford on it indicating that it was received there, which I had seen on envelope of OSU health clinic

24

records with fabrications of Trichomonasis in it, still not knowing then that it was a venerial disease, with date 8/11/1983 stamped on it by Loretto post office, which I got after being released from the hospital on 10/1/1983; so gave it back to post office supervisor on 5/7/2012 telling him so & deliver it to T. Perry or who was taking mail for her at 4 York St as once when service by CMRR is accepted at Appellate stage, service requirements of personal jurisdiction are met & opposite parties to Vora are required by law to notify me and courts of correct address whereever they move, showing they are dodging now with predatory tactics as done by C. & N McGough for their own benefits when their vehicle was covered under fleet Insurance of his of 15 or more vehicles on 8/12/1983 & each of the vehicle had coverage of $300,000 on it individually, & conspiratorially, they went & cancelled the insurance on it after 8/12/1983 accident after knowing that none of their loved ones &/or friends were injured for their conspiratorially planned deeds of eliminating Vora & her witness totally from the markets mentioned earliar, & made it effective prior to accident of 8/12/1983;

showing total fraud, predatoruy tactics to injure competition, as well as Vora by eliminating her totally from the market & the world, as eliminating Vora from the world will automatiocally eliminate her from the competition, so does it show clear antitrust injuries of all kinds including per se violatoions with other injuries under various laws of US &/or States, as well as conspiratorial activities of all kinds, see Appj(ii)(38) & M.D.s & Hospitals have sufficient economic & market power in tying market too, restraining appreciably competition in tied product market of my services & remedies which are much more superior to services & remedies of M.D.s on many conditions and amount of commerce affected is not insubstantial as I cannot even survive and live without my remedy & major ingredient in it is imported from India of very good quality & price, unlike from any other place, even though it takes longer to prepare it and get good quality ingredients for it? Ans: Yes

(16)Vora asserts & claims per se rule of illegality for violation of restrain of trade & competition section of antitrustlaws in excluding Vora from all types of privileges, including of staff privileges of hospitals for her services with remedies, even by insurance cos. for payments for such services & remedies to anybody

25

including herself, which are far superior than medical world remedies; would apply, rather than rule of reason analysis, even if they defend against damage claims in the market of services & remedies by hospital, or any other member or nonmember, insurance cos. on grounds of lack of professional capacity or unprofessional conduct when Vora is quite well qualified in scientific fields, & was in fact admitted with full fledged Assistantship in Optometry Division for M.D. in physiological optics at IU, Bloomington in 1972, 1973 years, Appj(ii)(38(k), as seen from her website "http://home.earthlink.net/~chandansvora", & updated Facebook pages of Chandan S. Vora which are not there in earthlink website pages, pages of website were enclosed for 1st cir. too and in antitrust cases it is permitted to refer to websites as if in full by reference thereto, being homeless, in very bad health condition since 1983 as seen by some medical records that Vora managed to get out from 511 Robb Ave, some of which got stolen too & could not get any medical records from 535 Oakland Ave at all due to predatory, conspiratorial tactics of all these conspirators involved, including to restrain competition, eliminate Vora from it totally as competitor, so is Vora entitled to all such privileges with reimbursements from insurance cos & parties involved on damages of all kinds, triply, even though they are using unfair, predatory, wilful, antitrust, RICO, etc., tactics mentioned earliar and it is apparant from all pleadings in all cases to this date, to eliminate Vora as competitor, which are being set forth here as if in full by reference thereto as Vora does not have all of them at all, for which Vora was evicted illegally, time and again by these conspirators from her places of abode by fraudulent, predatory, illegal &/or wilful, antitrust, RICO, etc. tactics, even by setting places on fire to accomplish their goals, to get it all &/or destroy Vora's evidence, pleadings, papers etc., to prevent Vora to resort to antitrust statutes at any time in her life, knowing quite well thro' witnesses who witnessed the forehead of Vora coming out scarfree & thro' intelligence, that Vora's business is efficient business which can capture unsatisfied customers from inefficient rivals, including of medical world who cannot bring out burn victims scarfree &/or sooth pain without any side effects &/or prolong neurologic people's life like those of people suffering from uncontrollable movement of leg going vertically upward which the person cannot control at all

26

once it starts & medical world has no remedy for it other than kill them using predatory, fraudulent tactics solely to preserve their acheived monopoly in the market of remedies & services, especially in USA; & whose own ability to compete may suffer as a result, & does violate the concept of 15USCAss1-7, 12-27 to promote consumer interest in protecting competition & Congress delegated to courts, the duty of fixing standard for each case, including all types of violations under civil rights statutes, RICO, antitrust, accident, diversity of citizenship statute 28USCAs1332, as behaviour of opposite parties to Vora, as shown in all cases to this date  was & is monopolisation & have monopolysed it thoroughly in the market of services & remedies for human body, thro such conspiratorial, predatory, wilful, fraudulent, antitrust, RICO, etc activities of all kinds, Appj(ii)(39)-(45)? Ans: Yes

(17)Combinations of conspirators involved consisting of evil, antitrust, RICO, civil rights violators of most minority group people like Vora's group people etc., people with enterprises defined earliar, which thro their unfair, predatory, wilful, monstrous practices eliminated competitor like Vora in Mathematical Sciences in the market of teaching in USA, fraudulently, unfairly; in the long run, very disastrous to the world by their practices of getting fees from rich students with connections & investing that money to keep it afloat in the same business, & passing them even if they are cheating, ruining lives of very moral, saintly, very well qualified professors like Vora of most minority group in every corner of the world who came from poor communities & lands like that of Vora from Dassa Oswal Rajasthani Jain from India and even by destroying and/or depriving them of their Scientific personal library, handwritten notes on techniques used with worked out examples, (disabling them badly & not compensating them adequately at all, as even to be able to get $1000 p.m. from their compensation to generate interest of $1000 p.m. requires courts to award damages in excess of $24,000,000 when they are not eligible for SSBs for not having worked for requisite no of years on a resident alien card as E. Catlin is getting more than that in SSBs even though he never worked even for 1 hr in his life), etc and/or taking it for their own use on pretextual reasons, knowing quite well that Vora was very severely injured in 1983 gaining very debilitating condition of neurologic from it which makes their memory function useless, that

27

without their notes to bank on, they cannot use the knowledge they had gained earliar on tehniques etc., as Mathematical Sciences is a very precise science with precise techniques; as SFC expected Vora to pass such students like D. Stevenson &/or give good grades to millionaires daughter like Jennifer Gatto when they demonstrated no such capability in any of exams &/or any homework of theirs, & Vora just couldnt do it at all seeing how much her mother suffered for it that she could not read & write properly at all in any languages that were common in the region in India; & disabling such professors like Vora totally, physically, with terrible pain & suffering, etc., conspiratorially when she resorted to legal means of filing complaints with local govt agencies like PA Human Relations Commission & EEOC, not aware then of any laws on RICO, antitrust, civil rights etc. & was ready to move out & take up position at University of MI, Ann Arbor, for further advancing her knowledge & research to accomplish her goals to be independent from such job markets which do not do anything on merits as such, other than connections, vice of sexual activities, &/or stick with their own groups &/or just use them as slaves for their own benefits &/or benefit of their group people as such etc; so that Vora can succeed in the market of remedies & services, which was Vora's aim, to be able to live a decent, moral life preserving values of her religion & family, with decent earning & be able to pass it onto her kins, knowing quite well that it is very difficult for us to enter any markets in any part of the world that easily at all and can perish, knowing the past history of major class world and people of my group; entering any markets is practically an impossible task in racist, RICO, antitrust etc. motivated world & have practically succeeded so far to eliminate Vora as competitor in the market of services & remedies by making her homeless by fraudulent, predatory, RICO, antitrust motivated tactics by setting my places of residence on fires, boarding it up and taking everything from there pretextually, refusing to even give my property, belongings to me, to be fixed & anything to be done at my slow pace & declaring, I have 30 days to clean evrything inside the house for just smoke settling on them, by taking everything out which could not be done at all without anything getting damaged with no finances, no cooperation from anybody; for them to inspect the place to give permission to fix it by any contractor when 2 contractors had already visited & did

28

say place can be fixed & Hocker was ready to fix it, so created another fraudulent, farce episode of large fire & dense smoke on 2/1/2011 when nothing of that sort was true, & demolished my houise for just 1 electric wiring shot in the truest sense, by putting me in prison again on fabricated charges again that I was illegally inside my own structure stealing my own property claiming that it was their property with the contractor Earthmover's property, to prevent my urgent Motion for Injunction, etc invalidation of illegal, fraudulent condemnation order of these conspirators to go out to 3rd cir. etc., all totally unreasonable demands & excuses in order to create a monopoly worldwide and to preserve it to just M.D.s for the benefit of their supporters & workers in the markets mentioned earliar, & because I had invited some more contractors to give me the best estimate to fix it without moving anything out just like Hocker, as moving anything out was unneccessary, predatory, unfair tactics & practices too, & filed fabricated, lying charges again pursuant to their illegal RICO, antitrust. etc schemes of all kinds; arresting me & putting me in prison on fabricated charges, demolished my house right after that, illegally, all motivatd to acheive their goals by creating severe financial strains on Vora, to eliminate Vora in inter state competition in the markets of services & remedies, used goods that can be fixed and resold, & has & had adverse effect on the markets & competition with inferior quality of goods & services. as medical world cannot match the quality of Vora's services & remedies at all on burn victims &/or good scars, neurologic people, etc., as specified in the webpages, Facebook pages of Vora, so there is definitely adverse effect & does constitute unreasonable restraint of trade, competition under any rules, criteria as there is per se violation too, boycotting Vora's services & remedies, & fraudulently labelling Vora as paranoid, schizophrenic, history of psychiatric illness, psychiatric illness, motivated to eliminate Vora from competition totally, is it not, see Appj(ii)(117) as there is harmful effect on generalized market of services, remedies, as well as Vora in all respects that Vora is not eligible for any benefits & is homeless as Vora was not compensated adequately with Loss of wages for life with last paycheck from SFC that got cashed after Vora's release from hospital when Vora was able to collect it in Oct. 1983, & Vora is not taking any chances with the kind of landlords Vora had to this date in USA, ruining everything & all

29

aqspects of my life by taking away everything I had in coordination with these conspirators as Vora wants her brick duplex house back that city demolished illegally, taking everything in it, so Vora does not have sufficient income at all as Vora has to pay all her bills on storage rents, internet provider earthlink, on telephone, zeroxing court pleadings &/or after putting it on computer, to get it printed, more expensive than zeroxing, which Vora is not able to do that easily anymore, with medical records that need to be zeroxed too, postage etc, so there is no money at all for renting a place independently to prevent her trade secrets getting stolen &/or divulged to anybody, which Vora just cannot afford to loose on principles of Jain religion & its values, after which all these conspirators are bent to get my trade secrets, Vora cannot yield at all to such unfair, predatory, wilful, conspiratorial, etc., tactics after what Vora has been put thro in her life, fraudulently, predately, murderous etc. tactics with murders taking place of witnesses who would have testified in courts of law thro some means for the real truth to emerge, so no way Vora has the intention to give such discoveries to abusers at all, knowing quite well it will be abused, & is for the welfare of my kins & families of my kins, for generations to come with preservation of Jain values, principles of Jain religion, competition, fairly, & cannot be passed to kins at all that easily without them getting resident alien cards, staying with me so there is no written or spoken words at all, as conspirators predatory, unfair etc. tactics do suppress, destroy competition, by even destroying competitors, their abilities etc. as done by SFC, MH(Memorial Hospital) here, Jan Savit etc. in 1996 February under catholic President Casey of hospital here and same was done in 1983 horribly with not a single protestant present in both vehicles involved on 8/12/1983 incident in which Vora & Mrs. M.E. Criste suffered irreversible harm; see Appj(ii)(49) & does show potential harm if conspiracy is successful as M.D.s, hospitals, Ins. Cos.have been successful to this date in monopolizing the market with dangerous chemical drugs with some side effects always, Appj(ii)(50)-(55) as Vora has been left completely secluded in CC, not even be able to travel to CCC to check records, anything like that because of ongoing conspiratorial, predatory etc. tactics of Camtran, CCC personnel including Judges like Krunemacker, Creany, Long, Tuwoliski, Kiniry etc., landlords liken Williams, claiming fraudulently, that I

30

stink, I am dirty, smell of kerosene, paste kerosene over my body, as there are many Americans worse than me, riding buses, public transportation etc., who stink, that I cannot even stand near them & dont like to be touched at all as per Jain custom of people of my group, who dont touch anybody else even for greetings by their custom of doing Mujra to elders & Vora thus has been left outside of the social &/or all types of organizations including that of courts for records, libraries, legal materials etc in CC & if such restraints which have been applied even to one person like Vora in interstate market, as Vora's business of services, remedies is interstate, even her bank is interstate, free competition is hurt & damaged Appj(ii)(53) & my place of 511 Robb Ave duplex satisfied all my business needs, to be able to prepare gene therapy for any individual & could have stored it in 511 & 1/2 Robb Ave side, as it is individualized & just good for that person until next preparation & as seen by my structural engineer's report which I had to pay out of my pockets in the vicinity of $1500 approximately, that there was no necessity at all to put condemn sign on it & such policies as expressed by J. Meadows earliar than 5/15/2012 by city personnel to him, as well as to me of putting condemn sign on places until property is sold (&/or fixed having all utilities on, &/or in working condition when nobody is there to live in it, due to city's tactics & practices when it comes to minority group people like Vora) & did see on 5/15/2012, all orange colored marks on 511-511 1/2 Robb Ave, 513 Robb Ave roadway saying condemned, trying to force owners like Vora to sell the property & when they did not succeed in forcing Vora to sell it, demolished it illegally, though was not permitted to demolish it in 2yrs when it could have been fixed, as portrayed in the statute that existed then at the time atty Repak presented to Grecek, which they made it disappear totally from everywhere? Ans: Yes (18)Legislature &/or American Medical Association consisting of M.D.s with M.D.'s insurance cos. have sufficient market power to harm competition thro' its setting of standards of having an M.D. tag for persons in the market of services & remedies & insurance cos. covering expenses for human body health, to just pay for such services when billed by people with tag of M.D. & such unconstitutional laws &/or policies do unreasonably restrain trade & competition, does it not, as approximately 99.99% of licensed practtioners worldwide have M.D.s to whom insurance cos. pay for

31

their services & remedies when people who seek remedies for their body & services of people who can give them relief, there are significant barriers to entry in the market of services & remedies because of no tag of M.D., & converts their market share into merket power & exclusion &/or destroying competitor Appj(ii)(116) like Vora & well qualified Ph.D.s with very wide scientific background including that of biological sciences, services & remedies for human body with no chemical drugs in them, as a result not at all detrimental once allergies to anything including plant life are written down & as a matter of fact are much more efficient & better quality than chemical drugs of M.D.s, Appj(ii)(57), (59) & such practices of not paying for services & remedies of such well qualified Ph.D.s with very wide scientific background including in biological sciences to some extent, are antcompetitive & lacking in any redeeming virtue when it can further none of the goals of antitrust statutes especially 15USCAss1,2, as well as of 3-7, 12-27 & when it operates to deny to consumers the opportunity to choose among alternative offers without offering the powssibility of any joint efficiency producing economic activities, Appj(ii)(59)-(65), (112), (114), (115)? Ans: Yes & is monopoly too.

(19)(a)Are these conspirators with city of Johnstown doing everything in bad faith as there is & was intent too to eliminate Vora from competition totally, even by taking her life, &/or trying to force Vora into illegal tying agreement motivated to put Vora behind bars for life, just to preserve their monopoly & falsehoods, severely restraining competition, as Vora will never agree to give anybody 50% of the business profits, when it is just going to be a family business, & so not going into illegal tying agreement with anybody in spite of threats that otherwise business will not see the light of the day; as Vora just does not want to get mixed up with such people, not knowing what they will do next, & under 15USCAs1-s7, intent as well as conspiracy can be inferred from circumstantial evidence & acts performed, as well as from explicit declarations of purpose or words uttered by parties involved, with many predatory, wilful, egregious misconduct of parties opposite to Vora including that of Gergeley with attorney Joseph Green whose sister Gergeley was dating earlier, & it was & is Gergeley with city & its personnel who had been dumping garbage in my yard, attracting worms, rats, with possibility of plaque, Cholera & again Gergeley

32

dumped his 5 truck tires back in my yard, after contractor Fazenbaker removed 8 of his truck tires on 4/24/2012 after 12:30 P.M. which J. Meadows witnessed Gergeley doing that, & even though I left message on Captain Friar's phone because Janciga & cops working under him wont do anything even to come, look at it & take report &/or take action of arresting them & file charges on them, so did call the city on it & with the fact that certified electrician & contractor Dave Fazenbaker, then living at 722 Somerset St then, with phone no. 814-539-0420 offered to work with me to get my place fixed under my supervision & that I will be able to live in my house of 511 Robb Ave duplex & city said thro their replacement secretary that day Mary Ann, they will call back thro Mary Ann with no results at all, instead she told me going along with purposeful fraud & fabrications of these conspirators that I must keep the place clean for the deeds of these conspirators with city, in furtherance of conspiratorial activities of all kinds including those of antitrust, RICO, civil rights, conspiratorial schemes when it was completely clean, earliar, & trying everything possible to get Vora, totally bedridden with hope to extract all my inventions & discoveries, claim credit for it & make millions on it, severely restraining competition; & then do exactly what was done to Ramanujan, restraining competition & commerce, creating nightmares of 1916 Plaque, 1956 Cholera, in which my grandparents had perished, trying to monopolize the market of services & remedies 100% & have monopolized the market of services & remedies at least in USA & it is interstate? Ans:Yes

(19)(b)Enterprise consisting of M.D.s, hospitals, insurance cos. with some unknown legislatures, some judicial people giving exclusive rights to M.D.s for services & remedies for human body, even by enacting totally unreasonable, whimsical, etc., that is(i.e.), unconstitutional statutes & interpreting it that way, even when no chemical drugs are used in services & remedies for human body, which is interstate commerce, in combination with enterprise defined earliar which includes Sheriff's Dept people of CCC & not including these people in the definition of this enterprise & taking the 3rd enterprise consisting of cops, city personnel involved with others against Vora's interests on fabricating charges against Vora, committing murders of witnesses of Vora in federal system, suppressing true facts as logic points to that, ommitting parties involved,

33

witnesses involved or who were there with Camtran bus people; 4th enterprise of insurance cos. forming combinations with intent to restrain trade, commerce, competition in the earliar mentioned market, wilfully, egregiously, maliciously, totally unreasonably, where object of combination is unlawful, does it not make acts of parties thereof unlawful, see Appj(ii)(68), (69)? Ans: Yes.

(20) With the ME preplanned accident that way with intent & motive to restrain trade, competition, to prevent Vora's advertisement, as well as, to put Vora out of business totally, resulted in restraint of trade, competition, as Vora could not make advertising trips with advertisement painted on Vora's car to promote trade, competition & her business, by damaging Vora's good running Ford car & declaring it as a total loss, that right rear door could not be opened at all & Progressive Ins. Co. refusing to fix it claiming total loss with hardly 70,000 miles on it & cannot buy a like car for money they paid for it then, consequence of this accident was & is swollen fingers, hands full of pain, suffering, with nightmares created by their continuing antitrust, RICO etc., deeds, restraining commerce, competition, to prevent her advertising trips, enjoy travel with intent to put her totally out of business of soothing pain, bringing minor injuries which has no overlapping skin, good scars with other good scars, scarfree, as indicated in her website "http://home.earthlink.net/~chandansvora" & Facebook pages of Chandan S. Vora, & the website pops up only upon exact full address put in, unlike that of K. Gugalia which pops up with just the name of Kantilal Gugalia put in, in the address column & Vora was unable to get the website on until 2011, when she got time to do it herself thro webhosting thro somebody else's computer having such a knowledge, as Vora was severely duped in 2001 by Verizon Inc with Italian origin lady who had taken the money in advance of $1080, for complete 1 year, promising that website will be put on exactly the way I want it with burncure Affidavit signed by 28 witnesses, etc., IU grade sheet etc., when it was Bell Atlantic, knowing quite well that it will become Verizon Inc. in a short time, which was not done in spite of hassling with them for 6 months lying willfully, maliciously, that it cannot be done at all in reduced version, other than what they have done,  trying to put me in prison for 20 years illegally, by putting there a picture of a male wearing stethescope with a medical

34

Dr's gown without even providing a proof copy on it to me, without my consent, due to conspiratorial activities of all kinds & in furtherance thereof &/or in furtherance of several open ended schemes of antitrust, RICO, civil rights violation of Vora, which are still continuing, as they were & are hoping to force her into some kind of illegal tying agreement, &/or out of business if Vora does not go along with their proposal, knowing quite well that Vora is totally disabled physically as well has memory problems ever since 1983 & that Vora is not eligible for any benefits practically, even to survive decently in this land without risk of her trade secrets getting stolen by these conspirators, which is one of the aims of these conspirators. My Ford Fairmont was good running car, at the time of impoundment, (even though physically it had suffered damage & restored, not having the looks of a physically new car;) by Janciga, Friar & Killinger, & do not know what was done to it by these conspirators, Janciga in particular, as shown by exhibits produced in CCC by DA's office that Janciga worked on my car while in impound lot of Brat towing, that it would not even start now once I got it out of impound lot, & that car was suitable for my needs in disabled condition, to be able to use it with heat in winter times & never failed at any time, anywhere, & such predatory tactics of these conspirators, resulted in restrain of trade, competition in the market of remedies & services & making sure that monopoly that has been achieved due to conspiratorial activities of all kinds & in furtherance thereof &/or in furtherance of several open ended schemes, by these M.D.s in this market is going to be preserved, in combination with others, & as such intent is immaterial or may be inferred. Appj(ii)(69) So motive to restrain trade, competition is quite clear & has resul;ted in severe restrain of trade, competition as consumers are getting inferior services and remedies from M.D.s as such as seen from Vora's website http://home.earthl;ink.net/~chandansvora or from updated Facebook pages of Chandan S. Vora, has it not? Ans: Yes

(21)Is medical world in combination with local hospitals & other enterprises involved, boycotting Vora which is group boycott, see Appj(ii)(78), thro' predatory tactics like the one in 1996 of Dr. Savit's with most of the Drs there, then, with the MH's malicious, inhumane, etc., behaviour of antitrust, RICO, etc., then on Feb 29th 1996, when I ended up in hospital on Feb23rd 1996, practically

35

with no memory at all & severe spasms, demanding my trade secrets, (& my memory had started just prior to that with grace of Supreme Devotee of God as per my religion), which I refused to give, in response to which he tells me I have too many blood vessels to the brain & MRA machine will show that & put me thro MRA machine after that & tells me it shows that & I distrusted him totally since then with catholics involved as Casey was catholic president of the hospital then, since then due to their predatory, antitrust, RICO etc., motives & Savit tells me after that, that he was planning to transfer me to Allegheny General Hospital & cut the blood vessels off to my brain, as part of neurosurgery etc. when it is nothing but sophisticated murder, so that they can eliminate me totally from competition in the markets described earliar especially in the market of services & remedies Appj(ii)(112) causing chilling effects & deters potential entrants into this market & is suppression of competition & much more Appj(ii)(71) & was not motivated at all by concern for "patient care" & thus this continuing boycott was & is unreasonable restraint of trade & was sufficiently supported by evidence that medical world's & hospital's concern for scientific method in patient care had not been objectively reasonable throughout relevant period, & lack of evidence that medical world could not have adequately satisfied its concern for scientific method in patient care in manner less restrictive of competition than nationwide conspiracy to eliminate Vora's superb services & remedies that have no chemical drugs at all, Appj(ii)(70) & medical world with other conspirators as a combination, had & have substantial market power & produced anticompetitive effects by taking lives of Vora's truthful witnesses in federal court proceedings like M.E.Criste, Dr. & Mrs. G.Bostert, Dr.S.L.Gugalia, Phil's Camera Shop owner who had told Vora that Jan Savit is Italian origin name, who shortened his name from Savito to Savit, died in 30 days after he had said that, which is quite terrifying & need not be proved for per se violations Appj(ii)(73)-(75) & such acts involved, are considered so repugnant to antitrust laws that they create presumption of anticompetitive effect, Appj(ii)(76), (111)? Ans: Yes. (22) Are there both types of restraints present in Vora's cases, horizontal as well as vertical as M.D.s agreeing with MH & Drs. involved on such practices of M.D.s against Vora as described earliar (otherwise they seem to suffer too like Drs. Bostert & his wife, Harika, Gugalia

36

etc.) are horizontal & MH with legislatues, others going along with such M.D.s are vertical resraints Appj(ii)(77)-(79) & is actionable group boycott with insurance cos. & others, as a combination to eliminate competing seller Vora, of services & non chemical remedies (which are far superior than those of M.D.s) from market of services & remedies App.j(ii)(80), (112)? Ans: Yes.

****Note: Dr. Vora just does not have anymore time to elaborate on tying claims unless court puts injunction on these conspirators again wiping out my Questions presented which was finished typing to the last page on it, time & again which they did again what got sent to ME court on 2nd case, while I was printing medical records from my flash drive of 83 medical records as well as of Free Clinic when ME clerk said they want it too, and then again wiped out par (22) part of which was typed to send it to ME state after Woodcock assigned new number of 13-148-JAW etc & most uptodate horrible nightmare created on Oct5 2013 of my friend Mrs Geisel, who was taking messages for me, in the week of Oct 5, 2013, getting swollen up from top to bottom, cause being generic drugs, reminding me of the death of Kamla Bai Gandhi on Jan20th, 1977, when I received a telegram from Iran, saying please join, your position has been kept vacant & 1 hr. later another telegram was put in my hands from Chanda saying "Kamla Bai expired" that I could not sleep that night at all, seeing the havoc being created by these chemical drugs in peoples lives & still courts have not acted in any antitrust cases of Vora, requiring insurance cos. to pay for services of Vora with her remedies far superior than what medical world can provide, as nothing can be done on it until insurance cos. are ordered to pay for such nonchemical remedies. & can take very, very long usually several months & usually people cannot afford to pay for services of mine out of their pockets in USA & medical records of 83, 96 were provided to all courts & Free Clinic records got sent to USDCME when she got them recently in 2013 September I think for the 1st time & they do show total disablement of Vora with very painful injuries for life & even Mrs. Geisel was not suffering from pain like this when she died after chemicel drugs were stopped on her as per her daughters, even though when Vora had talked to her on phone while she was at home taking chemical drugs that she was suffering from severe pains & not well, & it is grace of Supreme Devotee of God & Vora's good karmas, that Vora is surviving in such great pain at times

37

& suffering & not adequately compensated to this date for those injuries, even for medical expenses for life as such, which set Vora on the path, in the market of services, remedies to soothe her condition & be able to live, & still no loss of wages were put in Vora's pockets to this date, pursuant to total fraudulent, illegal, anticompetitive RICO, antitrust, civil rights violation schemes to undermine, injure Vora, competition in the market of services & remedies & medical records do show these preexisting injuries & to this date Vora never heard again from 3rd cir & being very busy trying to get 1st cir cases thro 1st, so never got time to check on them yet, so cannot elaborate on tying claims right now, as Vora never got to read case laws yet on civilrights statutes & have to seek extraordinary writ in USSC, combined with all prior cases, as under antitrust statutes, court in any state can assume jurisdiction of all cases, where even one act falling under these statutes was done by any of these conspirators.*****

(23)Are competitors to Vora combining &/or contracting in such a way as to put artificial handicaps in the way of intelligent, totally disabled energetic competitor like Vora, who would thus be deprived of the opportunity to serve the public interest with her services & remedies, see Appj(ii)(87)-(99) & have monopolized the market of services & remedies, have they not & have been doing everything possible to prevent people to seek services of Vora & her remedies defeating the purpose of competition with the parties opposite to Vora, conspiratorially, & Vora is alleging & have alleged that the conduct had prevented "competition in the relevant product market of services & remedies within the relevant geographic market especially that of USA" are sufficient to state a claim for antitrust injury, Appj(ii)(92) as even on 5/18/2012, CCC Sheriff's Dept people, city personnel were at 104 Franklin St & dont know what was dragged by them across Bonnie's car sitting inside in the doorway, scratched her car & trying to get the blame put on Vora, when Vora never used that entrance at all for her babycart around that time, after Ickes said he did not want me to put the cans in his garage as city is giving trouble with CCC courthouse people too, & there were no scratches at all on it prior to it & I did not take can bags in other than thro side door when they permitted it in 2012-, with other garage door broken, as I have a hard time opening those garage doors manually & one door on Franklin St could not be opened at all & beginning

38

5/29/2012, I was not putting any cans at 104 Franklin St at all & Sheriff's Dept people told Ray Asfar, partner of Mr. Ickes, that all recyclable property must be removed from 104 Franklin St & Ickes told me that they had come to take inventory of their printshop gadgets & machinary, in case another business wants to put lean on it & Westmoreland County's Sheriff's Dept officer at the scanning machine at the entrance, told me on 5/25/2012 that such a thing is rare & not usually done, showing they are indulging in unfair practices & these conspirators are the culprit on federal court pleadings of mine disappearing totally from USDCWPA Johnstown & my computers as well as from my place earliar & even now, example 2/21/2012 pleading with RICO case laws of several pages long, & page 39 onwards missing on 4/19/2012 etc. with intent to restrain commerce or to monopolize or have monopolized that relevant market, & maintain that achieved monopoly & does not confine itself to skill, foresight & industry in improving or maintaining its market position,it violates 15USCAss1-7,S12-27; Appj(ii)(94). (101)-(108) & in Vora's case there are severe entry barriers too discussed earliar with no M.D. tag? Ans:Yes.

(24)Disparaging Vora's products including remedies &/or used goods that Vora fixed or fixes claiming them to be trash as even when Ed Fabo said they are efficient goods for sale, city personnel of Codes dept retaliated, to get it illegally, by giving him a notice that I must move everything out of his place & out of his van within a week to prevent certiorarri from 1st cir. case going to USSC & even earliar R. Williams with others declared that I paste kerosene all over my body &/or that Vora stinks, done by Krunemacker, Camtran people with their supporters & workers, & Krunemacker is trustee of Memorial Hospital &/or that Vora's aluminium cans & Vora's products are nothing but complete garbage as done by city personnel too including Johnstown Police dept personnel, when they are worth money as Vora had fixed some of them & were running in perfect condition, etc.,; all such deeds of theirs are illegal under 15USCAss1-27 when coupled with opposite partie's, that is, conspirator's power to control prices or exclude competitor's ability to compete &/or exclude competition, even if action is based on disparagement alone, would not be permissible, is it not,

39

Appj(ii)(117)? Ans: Yes.

(25)Isn't the conduct to reimburse physicians for their services, remedies  by insurance cos.  & not Vora for her superior services & remedies, a monopoly conduct, aiding & abetting monopolists with their supporters & workers, that amoumts to defacto exclusive dealing contracts having power to foreclose competition in the market of services & remedies with other foregoing mentioned markets, for far superior remedies & services compared to remedies of chemical drugs of physicians for human body; by not paying Vora cost, expenses for making it with time required to find the ingredients, to prepare it, use it, quite time consuming, just like those of physicians, hospitals or anybody else for intensive care; & not paying Vora for it unless billed by certified registered physicians in US States,  & Vora has to use them more than 6 months to years or even for lifetime on some things like neurologic condition when body condition is bad & it cannot be brought to initial condition (for which medical world does not give more than 10 years to live), prior to injuries or illness, see Appj(ii)(118)? Ans: Yes.

(26)(a)Isn't Vora stating monopoly leveraging claim against hospitals, M.D.s, Medical Association of America(henceforth MAOA) with other conspirators, when hospitals with M.D.s, MAOA with M.D.s as members there, have monopoly power in market for short term, acute care, that they used that power, with specific intent of foreclosing competition, competitor like Vora from the market,  to gain unfair competitive advantage in the market of services & remedies, by labelling Vora as paranoid, schizophrenic, psychiatrically ill &/or history of psychiatric illness, when such condition is not there at all & drugs for it do eliminate the person from the market & the world as such (as happened to W. Guthrie) & to monopolize it & have monopolized it & to preserve that monopoly & this is engaging in exclusionary & predatory conduct that forecloses the superior supplier like Vora from dominant share of those markets, as Vora defied these conspirators & is still alive & was making progress in the progress of this condition, until MH with Dr. Patel &

40

his Associate Drs forced these chemical, nogood drugs in my body ruining my body condtion, severely, that I could not control excretory motions 6 times so far, since then & have to rush to bathroom that it will not be embarrasing etc., & ME conspirators are part of it too & that was the sole reason why the identity of Irish origin girl from NJ is being suprressed, see Appj(ii)(119)-(124)? Ans: Yes.

(26)(b) With MH billing dept lady giving me & D. Ickes orally, earliar, estimate of $168 to $ 170 at most, for C.A.G. repeats test on my blood & Free Clinic(henceforth FC) giving me orally estimate of $1000 to $2000, not knowing what is correct, & then MH backed out on their estimate several months later & likewise FC did, saying that they will not get this test done as the Director there will not do it at all even though Patterson ordered it more than 3-4 years ago after I had convinced him on it, however FC says now, he retired soon afterwards & likewise MH says that it has to be ordered thro practising doctor and cannot be more than few months old, less than 6 months at least, so they wont do the test and giving me the same rigmerole on it which had taken me practically more than 15 years to get any Dr. to order it in writing, which can take very long again, when I do not have the time for it at all, knowing that conspirators against Vora have monopolized the market on services & remedies on short term, acute care as well as remedies for human body, by predatory tactics, labelling Vora, fraudulently, paranoid, schizophrenic, history of psychiatric illness, psychiatric illness which is not present at all including that of possible predatory pricing & second, that it would sustain that position after it wields its power in the  market of services & remedies 100% including those not using any kind of drugs & therefore are they not  violating 15USCAss1-7, 12-15, Appj(ii)(125)-(131) & is group boycott too & MH's dept's another lady retracted the earliar estimate given orally to me & D.Ickes on 5/25/2012 after  these questions questions got written down in rough form & since all of them  are keeping tabs on Vora & Vora being an alien, every single spoken & written word of an alien is a public

knowledge, so they retracted it & still refusing to give anything in writing & found on 5/28/2012, later too uptil 3/17/2014 that RICO, antitrust & all types of conspiratorial activities are continuing still by these conspirators when I told Mrs. Geisel on 5/26 or 27/2012 on phone that Vora will produce the offer of 71 by Optometry Division in Bloomington, offering me full fledged Teaching Assistantship around $3800 p.y., which was twice the amount what was offered by them in 1972, on which a person cannot live at all properly, as offer of 71 by Optometry Division even though not proper, was similar to what Math dept was paying me; in 1st cir. to show that Vora is quite qualified to be able to render services & remedies,  & all these offers were in my briefcase & these conspirators made it disappear totally, & did find later on that these conspirators made it disappear from federal court files, when earlier in 2012 or 1/24/2012  I did not know this due to lack of time, so cannot produce it, however the offer of 72 year was put by these conspirators last in my briefcase that was inadequate, showing clearly, Italian origin people with their supporters & workers are the culprit on it, especially in PA with all these conspirators including Progressive Ins. Co. so that they will not have to pay me for my services & remedies? Ans: Yes.

(26)(c) Insurance cos. have sufficient economic power in the market described earlier with respect to reimbursements &/or payments for expenses incurred on cost, purchasing cost of remedies's ingredients, making the remedies to soothe pain, injuries &/or take care of people needing it, &/or restoring a person as he/she was prior to injuries by any means, methods or techniques by anybody in the world & insurance cos. restricting themselves for payment to M.D.s for their services & remedies & their reccommended products of chemical drugs for it etc.,that are far inferior in its effects as a whole, in USA, is totally unreasonable, & offer of Progressive ins. co. saying that " we will pay $300 for everything if you sign the form relieving us in all respects with respect to all types of liabilities from everything in all respects" & orally telling me "you did not seek

42

services of medical world of M.D.s & hospitals", and confined & restricted themselves to the services of such people in which earliar Chiropractors were not included until USSC &/or US Court of Appeals ruled otherwise, is the tied product, with itself as the relevant product market wih geographical market as USA or the world; is trying to force a person into tying agreement in the geographic market of USA or the world, as well as amounts to sort of offering bribe, taking advantage of strenuous financial situation of injured person who uses economically any kind of services available for it including even their own genious of coming up with discoveries that are more superb than those of M.D.s, are they nothing but predatory acts violating antitrust statutes, rendering person homeless on pretextual excuses, by all these conspirators etc., is illegal under 15USCAss1-7, 12-27 (making illegal demands like "give us 50% of the business profits otherwise business will not see the light of the day" with other unfair, predatory, unreasonable, wilful, malicious etc. deeds due to conspirstorial activities of all kinds, including of continuing antitrust, RICO, civil rights violation open ended schemes to injure Vora, in all respects including in her business which has not seen the light of the day as threatened by them, as well as competition, trade etc., as well as indulging in exclusionary unfair conduct as signing such paper form is exclusionary dealing arrangement, just like what was done by Abood, P. Kiniry, Ayers law firm with all accident parties of 83, totally fraudulently, as settlement agreement forced upon Vora by declaring her incompetent illegally on just Respet's diagnosis ignoring all other well qualified Drs over him with no renumeration of any kind monthly, to live on other than whatever Vora had in her disabled condition & made everything disappear or took them on pretextual excuses, time & again, related to it with all her personal scientific, private property of Vora, trying to repeat the same events all over again in Vora's life, it is also a group boycotting Vora to exclude Vora from the market of services & remedies or to accomplish some other anticompetitive objective or both, see Appj(ii)(132)-

43

(142)? Ans: Yes.                    (27)Even though person is not currently conducting large amount of business in market allegedly encumbered with illegal conduct, aggrieved person like Vora does retain sufficient interest to seek & obtain injunctive relief against violation of antitrust laws as there is significant threat of injury, as a matter of fact wholesale injury in all aspects of life which includes genocide being committed of neurologic people sophisticatedly, repeating Euro-Asian history of Hitler, Musulini, Stalin era &/or trying to create a 2nd Ramanujan in Vora's life; including Vora's life as well as consumer's life, just to preserve illegally achieved monopoly of M.D.s in the market of remedies especially in the European origin white world, & by eliminating Vora, would eliminate competition in all respects with respect to services & remedies as Vora's remedies & services would be far superior than those of M.D.s, as well as from impending violation of antitrust laws, wilfully, maliciously etc just to preserve illegally achieved monopoly of M.D.s in the market mentioned earlier or from contemporary violation likely to continue or recur & is continuing & recurring & city of Johnstown in cohorts with conspirators, even demolished my 511 Robb Ave duplex with storage shed, took all my property including all my papers, time & again, preplanned &/or planned condemnation of my Robb Ave duplex house etc in which I lived, etc to eliminate competition in all types of markets including in the market of services & remedies for human body, see Appj(ii)(143), (144) & did it illegally by throwing Hocker out, putting Vora in prison illegally on total fraud etc., so can injunction be granted against such antitrust etc activities of these conspirators & future recurrence of same kind of events once court orders the right remedy of rebuilding my brick duplex designed the way it was with all her property restored &/or order treble the amount of damages of all kinds & fact remains that some of that property was & is totally irreplaceable, besides damages of all kinds? Ans: Yes. (28) Is injunctive relief with damages of all kinds available to Vora thro federal court system & is it proper relief at such critical stage of Vora's life at the age of 68,

as courts & people around here in USA wasted entire life of Vora with highest qualifications from reputable institutions in the world with 4 degrees, 1 B.Sc. degree from Nagpur University, likewise M. Sc. from there, M.A. & Ph.D. from IU, Bloomington, IN, USA, all in P. Math with very wide scientific background with course work even at graduate level in most branches & found that degrees are no use at all to earn a decent job with right rank, right salary when it comes to most minority group person like Vora in every corner of the world other than getting the satisfaction of achieving knowledge, training in very efficient, logical branch & accomplishments, especially when there are ongoing antitrust, RICO, civil rights violation schemes of most minority group person in every corner of the world like Vora, by conspirators as such & until the goals of these conspirators are achieved, it will continue pursuant to their open ended schemes, however it did bring unparalleled results in the history of mankind, whether major class world is willing to accept it or not & if they are willing to accept it thro' courts of law, in USA, right now, is Vora entitled to her charges on remedies which Vora prepares herself , service charges as all of it is time consuming too, with all sorts of damages tripled with brick duplex house built back in design, structure as it was by city of Johnstown who demolished it illegally in 2 years by throwing contractor Hocker out who was willing to fix it when it could have been fixed as it suited Vora's all business needs, which had taken Vora 20 years to find the right house & Vora invested considerable money & worked on many things herself of double plating, doors, windows etc, & was in the process of fixing rear broken deck which was broken by Pat McKight & his workers who wanted to put practically no good referigerator as it did not even last 6 mths when he wanted to put it by dragging it across the deck from 5111/2 Robb Ave side claiming that they cannot get it up the steps on 511 Robb Ave side at all claiming it is a very good referigerator that belonged to him, so that even I will be able to use it too; & therefore couldn't be taken & demolished by fraudulent, illegal, illegitimate means, schemes thro' continuing

45

conspiratorial activities of all kinds, including pursuant to their antitrust, RICO, civil rights violation of Vora, etc schemes against Vora, beyond imagination of a just Society, so Vora requests injunctive relief with treble damages of all kinds to be granted to Vora with city ordered to build the brick duplex back on 511 Robb Ave duplex back, with condemnation order put on it as an illegal order and must be invalidated by federal court system, which could have been done earliar too prior to demolition of it, taking all my property in it worth over $100,000 as federal court system can do that as indicated in the brief of 5/30/2013 with all its supplements and injunction Motion of 1/23/2013 that was sent to US Supreme court, all of which are being set forth here as if in full by reference thereto, even if Judge Diamond or 3rd cir failed to do so timely? Ans: Yes

(29)Was 1st cir. judgement clearly erroneous when Vora had requested extension of time to file petition for rehearing in her injured condition with severe aggravation of preexisting injuries by these conspirators thro' Susan Schall & Billy Due, another stooge of the city of Johnstown & conspirators on 3/18/2013 probably fracturing my hip again & injuring my toes on the left leg with the leg too & later on did it again thro' Billy Due, another white colored, very cunning racist thief, stealiong my aluminium cans, time & again, lyingly claiming always that they are his & even on 6/31/2013-7/1/2013 evening, somebody either the white young man living closeby where I put the cans, hidden in bushes as he saw where I was standing having 2 large bags of cans in my hands & probably saw me putting it there, or another white young guy claiming to be in US Military, asking me where he should get his friend who lives in Roxbury should drop cans for me & I gave him the place to drop it in bushes & afterwards occurred to my head that it is not a safe place as my winter, summer clothes with electric wiring etc. were stolen from there which I had discovered only 2 weeks ago, & he had told me, he is getting cheese Pizza for me from Sheetz gas station and told me not to move from Econo Lodge yard until he gets back there, so I did go to Sheetz to tell him to drop it off

46

at Rollock's Inc. in the fence there where they take cans
& let them know that they are mine, so they will process
it at their convenience, & hold the money for me, but
found that as soon as I approached the gas station, they
just took off & did find that all my six big bags of cans
worth $30 at most were stolen by one of the above
people, & I think probably the person who saw me there
did it, I think Beblar might be his name, showing clearly
antitrust activities have not stopped yet as I do recall the
name Beblar involved either as a cop, or on some
fabricated charges of Dale Borro cops, where I was
threatened again by one of the cops on 6/30/2013 that
they will cite me when I put a small bag with a small hole
which was on the ground inside the container which did
not have very many cans in them, telling me I have to put
the bags exactly in the same fashion as I found it as lid
could not be shut on the conatainer & bag was not torn
apart at all with the white lady claiming there that she
has to wash the container with everything spilling out of
the bags with no logical thinking at all when I did tell
them when there is a small hole at the top of the bag,
nothing spills, still ignored it, so are motivated to restrain
trade, commerce, competition as such severely, to
prevent anything going out on time because I put in a
letter, asking USDCMe & 1st cir what can be done by
them to get wiped out certiorari out to USSC in a timely
fashion using extraordinary writ as one of the USSC
Clerks had said there is no time limit for it when Fossum
had left his phone number on his answering machine to
contact him if necessary so figured let me check what
USDCMe & 1st cir. can do to give other options if any
knowing quite well that they can vacate erroneous
orders at any time, as payment by Insurance cos. for my
services & remedies, just like what M.D.s get paid, has to
go thro USSC, who did grant those privileges to
Chiropractors in 1990 decay, so all of them are
retaliating again to make sure that it does not go thro'
showing clearly that they are conspiratorially working
together as it was just the 1st time I had even bothered to
look at the bags at that ladies place when I was testing
the 3-wheeler babycart to see if it will climb that hill or

47

not on Arthur St when somebody told me that they have can bags for me at some place on Jacobi St or closeby which I could not remember the exact address, so just wanted to see if I can find it, so had to climb that hill to come back to test the 3 wheeler baby cart can do it or not, & to see if I can find any on the way, as one of the cops in Dale Borro had told me on David St that I can get cans from the bags on sidewalks as they are finder's property, so took his words in good faith & know for a fact that is also the federal court ruling in some of the cses I had come across earliar & I was deprived of all my research in all fields, time & again pursuant to their open ended schemes as under no circumstances I will sell my inventions & discoveries to anybody or give them to anybody after what I have been put thro in my life to this date; however there is always others creating trouble for me & do not have a place of my own, other than carry them around with my personal belongings which are very heavy & fills my babycart, so very many cans cannot be carried at all as such on 3 wheeler as it topples very fast; always creating obstructions for anything important matters like the one in 1st cir., doing everything possible to retrain competition & put me behind bars to eliminate me totally from it; & ist cir. woman judge with the clerk there did likewise, by taking my Motion for extension of time to file Petition for Rehearing as Petition for Rehearing & denied it & knowing from one of the case laws at pleading stages that antitrust issues can be raised at any time, even at appellate stage & there was switching or ommission of antitrust words to RICO at US District Court level too & Vora had never received IFP grant order with words saying "Amended complaint should be filed" & got the impression that it got substituted after atty Dinan put it in his pleading as all I heard from person with whom I had talked to on the phone when I had called USDC in Bangor, ME that IFP was granted & nothing more was said than that? Ans: Yes                                        (30)Was invalidation of condemnation order, the right remedy prior to illegal demolition of my house, for which these conspirators put me in prison to prevent urgent injunction motion to be

put in US mail to 3rd cir. & something to 1st cir. too, when I had called 3rd cir. & they said, please do it as fast as possible, if possible rightaway, is it not, as D. Michaels, Code Supervisor then here, was of British origin, just like T. Perry? Ans: Yes, as T. Perry with her Irish origin friend, Progressive Ins. Co., City of Johnstown etc. they are working together, no question about it as proof of Irish origin girl friend from N.J. of T. Perry who was in the car at the time of Sanford, Me incident was in 511 Robb Ave duplex when she had sent me all the bills she incurred demanding payment for them from me & city of Johnstown refused to let me get anything out of it, giving me just 5 mins to remove anything I want from it & would not give me more time to remove anything more from it etc., when they allowed Gergeley to remove everything from his house, even uptil 4/26/2013 when he suffered a heart attack & died as per news & letting his children to remove his antique collection in the basement even now as I understand from his workers & former tenant who is able to sleep there with his possessions even now upon consent of his daughter as I understand from the his former tenant, who is waiting for permission of Johnstown Housing Authority(JHA henceforth) to let him get into JHA Towers, when Gergeley's house was burnt very badly that it will be very expensive to fix at all, & denied me all the privileges on my own property with minor fire damage of 1 electric wiring shot as I saw it, & all of them went about conspiratorially taking all my property which I had purchased &/or fixed, destroying &/or taking all legal papers, evidence etc., that is everything in the duplex, so does show that all my assertions are very, very true & they will do it all over again, due to open ended schemes, so Vora cannot afford to take any kind of chances until courts order the right remedy of rebuilding my brick duplex back up, with all my property restored back to me with all types of damages awarded to me, as seeing all this does tell me that I was very wise not to have changed citizenship as Blacks of African origin & whites of European origin do get all the rights & privileges which are being denied to me ever since 1967

49

? Ans: Yes                                        (31) Since City of Johnstown in cohorts with conspirators demolished my house illegally within 2 years, when it could have easily be fixed, in spite of written estimates given to them by contractor Hocker & one other contractor too on electric etc., isnt the right remedy now is to order the city of Johnstown to build the brick duplex back up as part of restitution for their misdeeds, when they did not have to go along with the conspirators, so they should be made to pay fully for it with all types of damages awarded to me from all conspirators involved? Ans: Yes                                  (32)Since antitrust claims can be processed even now as statute of limitaion does not start running until last antitrust act takes place which are still continuing as to severely restrain trade, commerce, competition in the market of remedies etc, to prevent claims going thro on it in 1st cir on all misdeeds of conspirators, Vora found on 3/7/2014 evening that lots of things these conspirators manage to delete from my computer as well as flash drives from Questions Presented, JS, Conclusion, Appendices etc that was put together after they had deleted most uptodate cert of USSC still with old date for 1st cir brief, hoping to prevent tampering on it & still they tampered with it, as found that date of S. Schal drove over my foot wilfully, maliciously was on 3/18/2013 & was backdated to 3/14/2013 by cop Slisz & found it in my handwriting on the accident report that got deleted from my computer, my scanned pages on it as well as that done by scanning co was switched in the scanned papers by the Alpha printing too, which got deleted on 3/8/2014 by one of these conspirators which include city personnel, Alpha printing seems to be part of them or who can access their equipment, as 3/18/2014 on the cop report of Slisz which was not the case at all & was put in JS too, as page on computer opened up right there telling me clearly that these conspirators are accessing my computer remotely too & changing wordings, dates too, & it brought stark reality to my head that on 1/28/2014 I did sufer trauma wiping out dates of incidents totally on 3/18/2013 incident of S. Schal so I may have to read everything & since it is

50

all very voluminous they will do it again & again, & when anything is due in 1st cir. to prevent anything going there, they ransack my belongings practically where they can lay hands on especially behind Family Kitchen when I have to put anything out for 1st cir. & tried to fabricate theft charges on me when I had to put "Letter to COAF1 on brief of extraordinary length etc." out etc after dismissal motion of Dinnan all this is in furtherance of their illegal antitrust, RICO etc activities &/or in furtherance of several open ended schemes as white girl Ayisha with her son,who was staying here at 657 Main St uptil 3/5/2014 claimed that her $50 was stolen from her coat pockets, J. Weaver claimed all cotton got pulled out of his sofa to take all money that was in there as he said S. Shay was stashing money in there & same thing was done on my cart behind Family Kitchen which I did not discover until Friday 2/28/2014 after I had put everything in mail & served all the parties with amended letter & Family Kitchen director was saying it was done on Wednesday 2/26/2014 previous to it & I had to get my digital camera out of storage on 2/28/2014 to get the pictures taken of what they were doing & did take the pictures on 3/1/2014 & found that it got stolen too from my coat pockets at 657 Main St, same night which I discovered later on when I tried to see them & get them printed for courts & I brought to their attention that black dog of that lady did not bark when he was sleeping in the living room so it has to be the person whom the dog knows & previous day I saw the lady making phone calls for a car to be bought & asking Weaver to check it out for her & next day after the incident of Sofa being ripped apart, Weaver telling me he bought Mercedes Benz, & heard Ayisha telling her son she cannot afford something I do not know what is the truth on that, but on Wednesday on 3/5/2014, I did see a white lady taking can bags from inside the white fence of 657 Main St, putting them out & a white male putting them in dark Blue closed Van just like Family Kitchen's earliar big van, when I never had put them there at all, as I was coming to put my food for evening there inside the house, & saw Weaver on the porch of 657 Main St & when the white male with white

51

lady saw me coming they hurriedly took off as they had finished putting bags there, & I could not get the license plate no on the Blue van as they took the way from alley after Feder Canal Building, so after putting the food in, I checked the Shed & found that all can bags were gone from there except one then, which they carried it away later after I called authorities so knew these conspirators took the can bags from the shed, transported across to 657 Main St inside the fence all done in 1-2 hrs & stole all my cans worth over $80 & found on 3/7/2014 that my 5 big can bags from another place opposite to Piljay's storage were stolen too by the same people as I met the landlord on 3/12/2014 at 1:15P.M. of that place who told me that it was dark blue van with black truck accompanying it telling him that I authorized them to take them when I did not & lied thoroughly to the landlord there & he told me that unless I call he is not going to let anyone take them as he had saved some brass things for me too & told me if they do it again he is going to grab them as cops do nothing & in spite of calls to 1-800-281-1680, 3 times since then with calls to 814-533-2074 twice, once to 814-533-2067, once to 814-533-2075 to catch them red handed nobody came even to take report telling me clearly all of them are conspiratorially working together to prevent anything going thro 1st cir as total value on theft of my things including red Digital camera of mine with evidence of pictures on ransacking my babycart was over $100 & to this date nobody gave a ruling on all types of antitrust etc activities previously, so appeal on it has been rightly taken & Dinan claiming thro fraud that the case was closed on everything is incorrect as there was total fraud also on everything earliar too as there was Irish origin girl from N. Jersey too in T. Perry's car on the date of incident in ME & Progressive Ins. Co had come to pay for the damages on Ford Fairmont as total loss according to them from ME incident which I put it in storage after JPD impounded it & disabled it totally that it would not start at all after I put it in my driveway & seeing how they evict me illegally, take over everything, destroy all evidence etc, I had never signed at all release papers saying that for $300 payment of theirs which was

52

never paid, everything was settled which they wanted me to sign to relieve them of everything including for expenses for injuries which I refused to sign & moreover it is also presentation of illegal tying agreement by Progressive Ins. co. in Johnstown & Mag Kravachuk abusing her discretion totally claiming that I stated that, a total fraud lending credence to my claims of several open ended schemes trying to repeat history of Hitler, Musulini, Stalin era in this land & world over &/or trying to create a 2nd Ramanujan in my life, trying to get away under the cloak of immunity for wilful, malicious, destructive, continuing antitrust, conspiratorial etc misconduct of all kinds, so appeal is correctly taken to process antitrust etc claims, is it not?  Ans: Yes
(33) Was everything filed by Vora timely in all courts as per FRAP4 opinions quoted verbatim here as no more time to elaborate on it? Ans: Yes

Appj(ii)Cases Quoted in Questions Presented (not serving duplicates on anybody as these case laws &/or Opinions were given to courts & parties in 5/30/2012 brief of 1st , 3rd cirs., USDCWPA etc.)

(1)Paramount Pictures v. United Motion Picture Theatre Owners of Eastern PA, Southern N.J. & Delaware, C.C.A.3(Pa) 1937, 93 F.2d714.

(2)US v American Optical Co., N. D Ill. 1951, 97 F. Supp.66

(3(a))Northern Pac. Ry. Co. v US, Wash. 1958, 78S.Ct. 514, 356US1, 2LEd 2d545

(b)Norman's on the Waterfront, Inc. v Wheatley, D.C.Virgin Islands 1970, 317 F Supp 247, affirmed 444F2d1011

(4)Revere Camera Co v Eastman Kodak Co. D.C.S.C. 1966, 259 F, Supp358

(5)Ayers v Pastime Amusement Co., D.C.S.C. 1966, 259 F Supp358                              (6)Thompsen v. Cayser, US NY1917, 37SCt353, 243US66, 61LEd597

(7)1st Act, Inc v Brook Mays Music Co., D. Mass.2004,311F.Supp2d 258

(8)Industrial Bldg Materials, Inc v Interchemical Corp,C>D> Cal.1967, 278 F. Supp938

(9)*The character and effect of a conspiracy are not to be judged by dismembering itand viewing its separate parts, but only by looking at it as a whole.  U.S. v.Armour & Co., C.C.A.Okl.1943, 137 F.2d 269.  Conspiracy k   23.1 ( 4/19-/2012-9)**.

(10)(a)*While a conspiracy is not to be viewed from consideration of its component parts, which may be unobjectionable in themselves and taken separately, but from examination of all elements or panorama of all acts and circumstances, such parts cannot be ignored.  U.S. v. L.D. Caulk Co., D.C.Del.1954, 126 F.Supp. 693, 103 U.S.P.Q. 372. Conspiracy k   1.1  ( " ..."-10)**

136. Anticompetitive effect

(10)(b)*Standard for conspiracy in restraint of trade requires something more than parallel behavior, and it is not enough to prove that alleged co-conspirators have merely exchanged information, but liability may be established by proof of either unlawful purpose or anticompetitive effect.  Alabama Sportservice, Inc., v. National Horsemen's Benev. & Protective Ass'n, Inc., M.D.Fla.1991, 767 F.Supp.1573.  Antitrust And Trade Regulation k   537

(11)*Antitrust plaintiff may prove existence of combination or conspiracy by providing either direct or circumstantial evidence sufficient to warrant finding that conspirators had unity of purpose or common design and understanding, or meeting of minds in unlawful arrangement.  ES Development,

1

Inc. v. RWM Enterprises, Inc., C.A.8 (Mo.) 1991, 939 F.2d 547, rehearing denied, certiorari denied 112 S.Ct. 1176, 502 U.S. 1097, 117 L.Ed.2d 421.  Antitrust And Trade Regulation k 977(1) ("..."-11)**

(12)*Agreement or conspiracy in restraint of trade or to monopolize need not be in writing or formalized in other fashion;  rather, the behavior or conduct of the alleged conspirators may sufficiently evidence the existence of a tacit agreement or conspiracy to commit the illegal acts.  U. S. v. Chas. Pfizer & Co., Inc., S.D.N.Y.1973, 367 F.Supp. 91. Antitrust And Trade Regulation k620; Antitrust And Trade Regulation k1014  **("..."-12)

(13)In prosecution of labor union, electrical contractors' association, individual contractors and others, for conspiracy to restrain trade and commerce in electrical equipment through suppression and  elimination of competition in sale and installation of such equipment in violation of ss 1 to 7 of this title, direct evidence of agreement forming basis of conspiracy was not essential and conspiracy could be inferred from what was done in light of natural consequences flowing from such acts.  Local 175 of Intern. Broth. of Elec. Workers v. U.S., C.A.6 (Tenn.)1955, 219 F.2d 431, certiorari denied 75 S.Ct. 606, 349 U.S. 917, 99 L.Ed. 1250. Antitrust And Trade Regulation k   1018  **(".......".-13)

(14)Specific intent to restrain trade or build monopolies is not necessary for finding of antitrust law violation, and it is unreasonable per se to foreclose competitors from any substantial market.  U. S. v. Northern Pac. Ry. Co., W.D.Wash.1956, 142 F.Supp. 679, affirmed 78 S.Ct. 514, 356 U.S. 1, 2 L.Ed.2d 545.  Antitrust And Trade Regulation k   560. **("….."-14)

(15)(a)*Neither the fact that a conspiracy may be intended to promote the public welfare, or that of an industry, nor the fact that it is designed to eliminate unfair, fraudulent and unlawful practices is sufficient to avoid the penalties of ss 1 to 7 of this title.  American Medical Ass'n v. U.S., App.D.C.1942, 130 F.2d 233, 76 U.S.App.D.C. 70, certiorari granted 63 S.Ct. 44, 317 U.S. 613, 87 L.Ed. 497, affirmed 63 S.Ct. 326, 317 U.S. 519, 87 L.Ed. 434.  Antitrust And Trade Regulation k  1014 **(4/30-/2012-15(a))

(15)(b)*For purposes of sections 1 to 7 of this title fact that defendants' anticompetitive motive may have been primarily founded in personal animosity did not require rejection of plaintiffs' antitrust claims;  if defendants did conspire to drive plaintiffs out of business, then a combination in restraint of trade existed even though the motivation may have been personal malice rather than economic self-interest.  Fount-

2

Wip, Inc. v. Reddi-Wip, Inc., C.A.9 (Cal.) 1978, 568 F.2d 1296. Antitrust And Trade Regulation k 582. **(4/19/2012-15), (4/30-/2012-15(b))

(16)*In establishing claim of conspiracy in restraint of trade, plaintiffs need not establish that each act was illegal; it is only necessary that acts, whether legal or illegal, be in furtherance of common plan or conspiracy in restraint of trade, and significant issue is whether defendants were motivated to restrain competition; that motivation may be inferred from character and effect of conspiracy. Juneau Square Corp. v. First Wisconsin Nat. Bank of Milwaukee, E.D.Wis.1977, 435 F.Supp. 1307, affirmed 624 F.2d 798, certiorari denied 101 S.Ct.571, 449 U.S. 1013, 66 L.Ed.2d 472. Antitrust And Trade Regulation k 537 **("…"-16)

(17)*Act which might be done lawfully by one may, when done by many acting n concert, take on form of conspiracy and become public wrong violative of legislative policy and thus prohibited by law if result be hurtful to public or to individuals against whom such concerted action is directed. Prairie Farmer Pub. Co. v. Indiana Farmer's Guide Pub. Co., C.C.A.Ind.1937, 88 F.2d 979, certiorari denied 57 S.Ct. 925, 301 U.S. 696, 81 L.Ed. 1337, rehearing denied 58 S.Ct. 5, 302 U.S. 773, 82 L.Ed. 599. See, also, American Tobacco Co. v. U.S., C.C.A.Ky.1944, 147 F.2d 93, affirmed 66 S.Ct. 1125, 328 U.S. 781, 90 L.Ed. 1575. Antitrust And Trade Regulation k 537 **("…."-17)

(18)*Parallel concerted action may support a finding of a combination or conspiracy in violation of s 1 of the Sherman Anti-Trust Act. Sun Dun, Inc. of Washington v. Coca-Cola Co., D.Md.1990, 740 F.Supp. 381. Antitrust And Trade Regulation k 977(1) **("…."-18)

(19)(a)*Before inference of antitrust violation can be drawn from conscious parallel business behavior, a plaintiff in antitrust action must also show that defendants acted in contradiction of their economic interests and that defendants had motive to enter into an agreement. Schoenkopf v. Brown & Williamson Tobacco Corp., C.A.3 (Pa.) 1980, 637 F.2d 205. Antitrust And Trade Regulation k 975 **("…."-19), (4/30/2012-19(a))

(b)Sections 1 to 7 of this title condemn every means, no matter how novel, to accomplish the objective of carrying out a conspiracy to restrain or monopolize trade, and it is the result to be achieved, and not the form of the combination or the particular means used, that is condemned. U.S. v. New York Great Atlantic & Pacific Tea Co., C.C.A.5 (Tex.) 1943, 137 F.2d 459, certiorari denied 64 S.Ct. 191, 320 U.S. 783, 88 L.Ed. 471.

3

(c) See, also, American Tobacco Co. v. U.S., C.C.A.Ky.1944, 147 F.2d 93, affirmed 66 S.Ct. 1125, 328 U.S. 781, 90 L.Ed. 1575. Antitrust And Trade Regulation k 560; Antitrust And Trade Regulation k 650 (4/30/2012-19(b)).

(d) Even if separate elements of a combination in restraint of trade are lawful when they are bound together by common intent as part of an unlawful scheme to monopolize interstate commerce, the plan may make the parts unlawful. U. S. v. Mountain States Lumber Dealers Ass'n, D.C.Colo.1941, 40 F.Supp. 460. Antitrust And Trade Regulation k 650

(e)When an established producer of conventional products enters into a conspiracy to suppress competitor's new and innovative product, that conspiracy will give rise to liability under this section and section 2 of this title, assuming all other elements of causes of action under those sections are present. Impro Products, Inc. v. Herrick, C.A.8 (Iowa) 1983, 715 F.2d 1267, certiorari denied 104 S.Ct. 1282, 465 U.S. 1026, 79 L.Ed.2d 686. Antitrust And Trade Regulation k 592; Antitrust And Trade Regulation k 687

(f)Exclusion of a competitor by collaborative action having the necessary effect of restraining trade violates sections 1 to 7 of this title, and no additional showing of "public injury" is necessary in such a situation to support a private action for damages. Helix Milling Co. v. Terminal Flour Mills Co., C.A.9 (Or.) 1975, 523 F.2d 1317, certiorari denied 96 S.Ct. 782, 423 U.S. 1053, 46 L.Ed.2d 642. Antitrust And Trade Regulation k 560; Antitrust And Trade Regulation k 958

20.(a)*When a combination or association restrains trade in interstate commerce, any act done or anything said or written by any member of the combination in furtherance of its object is the act of all. U.S. v. American Column & Lumber Co., D.C.Tenn.1920, 263 F. 147, affirmed 42 S.Ct. 114, 257 U.S. 377, 66 L.Ed. 284.

(b)See, also, Theatre Inv. Co. v. R.K.O. Radio Pictures, D.C.Wash.1947, 72 F.Supp. 650. Antitrust And Trade Regulation k 537; Antitrust And Trade Regulation k 920 **("…."-20).

 (c)One who learns of a conspiracy or unlawful combination after it is formed, and then joins it, or knowingly aids in the execution of the scheme, and shares in its profits, becomes from that time as much a coconspirator as if he were one of those who originally designed it. U.S. v. Lake Shore & M.S. Ry. Co., D.C.Ohio 1912, 203 F. 295. Conspiracy k 40.3; Antitrust And Trade Regulation k 543

(d)Noncompetitors may conspire to restrain unreasonably the interstate trade and commerce of third parties and thereby

subject themselves to the prohibitions of the antitrust laws. U.S. v. General Motors Corp., C.C.A.7 (Ind.) 1941, 121 F.2d 376, certiorari denied 62 S.Ct. 105, 314 U.S. 618, 86 L.Ed. 497, motion granted 62 S.Ct. 124, 314 U.S. 579, 86 L.Ed. 469, rehearing denied 62 S.Ct. 178, 314 U.S. 710, 86 L.Ed. 566.  Antitrust And Trade Regulation k 543

(e)For there to be a cause of action under sections 1 to 7 of this title prohibiting conspiracies to restrain trade and monopolize, all conspirators do not have to be competitors of antitrust plaintiff but liability may be imposed on parties who conspired with plaintiff's competitor to destroy plaintiff's business by discriminating between plaintiff and competitor in terms of their dealings.  Van Dyke Ford, Inc. v. Ford Motor Co., E.D.Wis.1975, 399 F.Supp. 277.  Antitrust And Trade Regulation k 968 s.n.250. Traders

(f)The alleged conspirators need not all be traders in order to bring their conspiracy within this section.  Nash v. U.S., U.S.Ga.1913, 33 S.Ct. 780, 229 U.S.373, 57 L.Ed. 1232. Antitrust And Trade Regulation k 1014

(g)Criminal liability of a corporation, arising from the acts or omissions of its agents, may attach without proof that the conduct was within the agent's actual authority, and even though it may have been contrary to express instructions.  U. S. v. Hilton Hotels Corp., C.A.9 (Or.) 1972, 467 F.2d 1000, certiorari denied 93S.Ct. 938, 409 U.S. 1125, 35 L.Ed.2d 256. Corporations k 529

(h)Corporate officers, directors and agents are personally liable for acts of corporation that violate antitrust laws if they participate in those actions or authorize them.  Bergjans Farm Dairy Co. v. Sanitary Milk Producers, E.D.Mo.1965, 241 F.Supp. 476, affirmed 368 F.2d 679.  Antitrust And Trade Regulation k 968

(i)Officers or employees of the same firm do not provide the plurality of actors required for antitrust conspiracy but officers or employees acting on their own behalf may be subject to liability for antitrust conspiracy;  central question is whether ultimate interests of the company and the alleged coconspirators are identical.  Bhan v. NME Hospitals, Inc., E.D.Cal.1987, 669 F.Supp. 998, affirmed 929 F.2d 1404, certiorari denied 112 S.Ct. 617, 502 U.S. 994, 116 L.Ed.2d 639. Antitrust And Trade Regulation k 545;  Antitrust And Trade Regulation k 546

21.(a)If corporate officers who are employees act for their own interest, and outside interests of corporation, they are legally capable of conspiring with their employer for purposes of restraint of trade.  Weiss v. York Hosp., C.A.3 (Pa.) 1984, 745

F.2d 786, certiorari denied 105 S.Ct. 1777, 470 U.S. 1060, 84 L.Ed.2d836.  Antitrust And Trade Regulation k   545
*Hospital medical staff was a combination of individual doctors, rather than one entity with hospital, so that any action taken by medical staff would satisfy the "contract, combination, or conspiracy" requirement of restraint of trade. Weiss v. York Hosp., C.A.3 (Pa.) 1984, 745 F.2d 786, certiorari denied 105 S.Ct. 1777, 470 U.S. 1060, 84 L.Ed.2d 836.  Antitrust And Trade Regulation k   593 **("…."-21)
(b)Physician stated federal antitrust claim based on allegations that other physicians in area engaged in restraint of trade by conspiring to secure nonrenewal of her admission privileges at hospital in order to limit competition by reducing number of physicians in her specialty area available to patients in relevant market.  Mahmud v. Kaufmann, S.D.N.Y.2007, 496F.Supp.2d 266. Antitrust And Trade Regulation k   593
*While conspiracy under this section is technically ripe when agreement to restrain competition is formed, it remains actionable until its purpose has been achieved or abandoned and statute of limitations does not run so long as coconspirators engage in overt acts designed to accomplish its objectives.  U. S. v. Inryco, Inc., C.A.9 (Cal.) 1981, 642 F.2d 290, certiorari dismissed 102 S.Ct. 1045, 454U.S. 1167, 71 L.Ed.2d 324.  Criminal Law k   150 **("…."-22)
23(a). The generic character of the prohibitions of antitrust laws against combinations in restraint of interstate or foreign trade or commerce, and monopolization or attempts to monopolize any part thereof, covers every conceivable act which can possibly come within the spirit or purpose of the condemnation of the laws, without regard to the garb in which such acts are clothed.  Loewe v. Lawlor, Conn.1908, 28 S.Ct. 301, 208 U.S. 274, 52 L.Ed. 488, 13 Ann.Cas. 815.  See, also, U.S. v. American Tobacco Co., N.Y.1911, 31 S.Ct. 632, 221 U.S. 106, 55 L.Ed. 663; U.S. v. Kellogg Toasted Corn Flake Co., D.C.Mich.1915, 222 F. 725, Ann.Cas.1916A, 78;  U.S. v. Du Pont De Nemours, C.C.Del.1911, 188 F. 127;  Darius Cole Transp. Co. v. White Star Line, Mich.1911, 186 F. 63, 108C.C.A.165, certiorari denied 32S.Ct.837, 225U.S. 704, 56 L.Ed. 1265.
23 (b) Under Supreme Court ruling, a forbidden restraint would be monopolization, group boycotts, price fixing, or the like, not mere intent to reduce competition;  a person violates the antitrust laws when either he commits a per se violation or performs some innocuous acts which are intended to have the same effect as would a per se violation.  Borman's, Inc. v. Great Scott Super Markets, Inc.,

E.D.Mich.1975, 433 F.Supp. 343. Antitrust And Trade
Regulation k 534; Antitrust And Trade Regulation k 560;
Antitrust And Trade Regulation k 567; Antitrust And Trade
Regulation k 621; Antitrust And Trade Regulation k 821
(c) 340. Voluntary or involuntary restraints
*This section is not confined to voluntary restraints, as where
persons engaged in interstate trade or commerce agreed to
suppress competition among themselves, but includes as well
involuntary restraints, as where persons not so engaged
conspire to compel action by others, or to create artificial
conditions, which necessarily impede or burden the due
course of such trade or commerce or restrict the common
liberty to engage therein. U.S. v. Patten, U.S.N.Y.1913, 33
S.Ct. 141, 226 U.S.
525, 57 L.Ed. 333.
(d). s.n.383. Hospitals and physicians
*Allegations by obstetrician/gynecologist, that other physicians
and their professional association set about driving him out of
business in a city, that they obtained agreements from medical
center administrators to utilize medical staff procedures in bad
faith and exclude obstetrician/gynecologist, and that they
falsely asserted objections and obstacles to his clinical
privileges at the medical center as a tool to drive
obstetrician/gynecologist from his practice and eliminate
competition from him did not adequately state antitrust injury,
as required for violation of the Sherman Act, absent assertions
that the defendants controlled or dominated the market for
obstetrical or gynecological services, that other obstetricians
or gynecologists were also excluded from the relevant market,
or that defendants' challenged activities caused an increase in
the cost of specific medical services or a reduction in quality of
specific medical services in the relevant area. Perry v. Rado,
E.D.Wash.2007, 504 F.Supp.2d 1043. Antitrust And Trade
Regulation k 593
(e)*Physician sufficiently alleged affect on interstate
commerce to maintain action under s 1 of the Sherman Act by
alleging that hospital where he lost privileges, purchased
medical supplies and equipment, and received insurance
revenues from out-of-state sources, that the hospital, given its
proximity to O'Hare International Airport, served non-Illinois
patients, and that termination diminished his ability to obtain
staff membership in any hospital in the United States. Pudlo
v. Adamski, N.D.Ill.1992, 789 F.Supp. 247, affirmed 2 F.3d
1153, certiorari denied 114 S.Ct. 879, 510 U.S. 1072, 127
L.Ed.2d 75. Antitrust And Trade Regulation k 972(3)
(24)*When plaintiff, as well as defendants, is alleged to be
engaged in interstate commerce, it is manifest that conspiracy

aimed at driving plaintiff out of business, and succeeding in that aim, would affect interstate commerce and confer jurisdiction under Sherman Act.  Hammes v. AAMCO Transmissions, Inc., C.A.7 (Ind.) 1994, 33 F.3d 774, rehearing and suggestion for rehearing en banc  denied. Commerce k 62.10(1) **("...."-24)

(25)*In dealing with per se violations of antitrust laws, no substantial effect on interstate commerce need be shown. Cooperativa De Seguros Multiples De Puerto Rico v. San Juan, D.C.Puerto Rico 1968, 289 F.Supp. 983.  Commerce k 62.10(1); Antitrust And Trade Regulation k   583 **("....-25)

(26)(a)*Insurance is interstate commerce.  Cooperativa De Seguros Multiples De Puerto Rico v. San Juan, D.C.Puerto Rico 1968, 289 F.Supp. 983.  Commerce k  62.3 **("....-26)

(26(b)). *Insurance business, conducted across state lines, constituted interstate "commerce" within meaning of ss 1 to 7 of this title.  U. S. v. New Orleans Ins. Exchange, E.D.La.1957, 148 F.Supp. 915, affirmed 78 S.Ct. 96, 355 U.S. 22, 2 L.Ed.2d 66, rehearing denied 78 S.Ct. 329, 355 U.S.908, 2L.Ed.2d262. Commerce k62.3 464.

(27)*Where a newspaper, as an essential element of its being, was engaged in the obtaining, dissemination and interpretation of national and world-wide news, and interstate advertising affected the paper and its readers to an appreciable extent, and to place such news and advertising in the hands of New Jersey people required continuous interstate transmission of materials and payments, distribution of the newspaper, as a complete newspaper containing such news items and advertisements, to its reading public, constituted engaging in "interstate commerce", even though major portion of sales of the newspaper were in New Jersey. Evening News Pub. Co. v. Allied Newspaper Carriers of N. J., C.A.3 (N.J.) 1959, 263 F.2d 715, certiorari denied 79 S.Ct. 1449, 360 U.S. 929, 3 L.Ed.2d 1544. Commerce k   82.20 **("....-27)

27(b)s.n. 472. Radio and television

*Action by the United States of America under ss 1 to 7 of this title against the National Football League and football teams to enjoin enforcement of provisions of by-laws of the National Football League limiting televising and radio broadcasting of football games was not required to be dismissed because professional football is allegedly not commerce or interstate commerce, since radio and television clearly are in whether professional football is or is not commerce or interstate commerce.  U. S. v. National Football League, E.D.Pa.1953, 116 F.Supp. 319. Antitrust And Trade Regulation k   995

(28)*A restraint of trade is "unreasonable" and violates

Sherman Act if it adversely affects price, quantity, quality or choice of goods or services available to consumers. Lifeline Ltd. No. II v. Connecticut General Life Ins. Co., E.D.Mich.1993, 821 F.Supp. 1201, modified on other grounds 821 F.Supp. 1213. **("….-28)

(29)(a)*Concerted effort to exclude outsiders from the market is regarded by its very nature as an "undue or unreasonable restraint of trade" and an illegal destruction of the free operation of competitive forces. Quemos Theatre Co v. Warner Brothers Pictures, D.C.N.J.1940, 35 F.Supp. 949. Antitrust And Trade Regulation k  560 **("….-29)

s.n. 574. Means of restraint--Generally

(b)*In order to establish violation of restraint of trade provision of Sherman Act, plaintiff must prove that defendant conspired to use unfair and predatory competitive means to eliminate plaintiff as competitor, and that plaintiff's elimination from marketplace in that fashion imposed illegal restraint on trade under rule of reason analysis. Southern Business Communications, Inc. v. Matsushita Elec. Corp. of America, N.D.Ga.1992, 806 F.Supp. 950. Antitrust And Trade Regulation k  535;  Antitrust And Trade Regulation k 561

(30)*Combination of distributors, which through unfair practices eliminates a competitor and leaves it in such a condition that it lacks ability to continue business as an interbrand competitor, has adverse effect on the market place and may constitute unreasonable restraint of trade. Coleman Motor Co. v. Chrysler Corp., C.A.3 (Pa.) 1975, 525 F.2d 1338. Antitrust And Trade Regulation k  560 **("….-30)

(31)(a)Purpose of ss 1 to 7 and 12 to 27 of this title is to protect interstate market from illegal restraints, and if such restraints are applied to even one person in interstate market, then free competition is hurt and damaged. Richfield Oil Corp. v. Karseal Corp., C.A.9 (Cal.) 1959, 271 F.2d 709, certiorari denied 80 S.Ct. 590,361 U.S. 961, 4 L.Ed.2d 543. Antitrust And Trade Regulation k528 **("….-31)

(b)*There is an actionable wrong whenever restraint of trade or monopolistic practice has an impact on market, and it matters not that the complainant may be only one merchant. Wurzberg Bros., Inc. v. Head Ski Co., D.C.N.J.1967, 276 F.Supp. 142. Antitrust And Trade Regulation k  560;  Antitrust And Trade Regulation k  650

s.n.597. ---- Quality affected

(c)*Radiologists' group failed to show that their exclusion from independent practice association, which had contracted with health maintenance organization (HMO), constituted unreasonable restraint of trade, which was fact required to

9

establish alleged antitrust conspiracy; there was no showing that group's exclusion had resulted in any increase in price or decrease in quality of radiology services to HMO's patients, and HMO had only de minimis market share. Capital Imaging Associates, P.C. v. Mohawk Valley Medical Associates, Inc., C.A.2 (N.Y.) 1993, 996 F.2d 537, certiorari denied 114 S.Ct. 388, 510 U.S. 947, 126 L.Ed.2d 337. Antitrust And Trade Regulation k  977(2)

s.n.601. ---- Hospitals and physicians

(d)Allegations of doctors formerly employed by medical schools that schools' exclusive contract to provide radiation oncology services to hospital produced anticompetitive effects and injured doctors by preventing them from entering market for providing such services stated cause of action for violation of Sherman Act's prohibition against restraint of trade. Higgins v. Medical College of Hampton Roads, E.D.Va.1994, 849 F.Supp. 1113. Antitrust And Trade Regulation k 972(3)

(32)*Joint policy by two Blue Shield plans to refuse to pay for services rendered by clinical psychologists unless billed through physicians was in restraint of trade as proscribed by sections 1 to 7 of this title, since policy forced two independent economic entities, psychologists and psychiatrists, to act as one, with necessary result of diminished competition in health care field. Virginia Academy of Clinical Psychologists v. Blue Shield of Virginia, C.A.4 (Va.) 1980, 624 F.2d 476, on remand 501 F.Supp. 1232, certiorari denied 101 S.Ct. 1360, 450 U.S. 916, 67 L.Ed.2d 342. Antitrust And Trade Regulation k  873

**(....-32)

****(intent was to eliminate Vora as a competitor from competition by taking her life for failure to go along with their predatory, willful misdiagnosis, refusal to give my trade secrets for their own benefits motivated to get it out of me by predatory tactics of setting my places on fire, boarding it up pretextually on 12/6/2010 and then pretextually ,falsely claim on 2/1/2011 as large fire with dense smoke when no such things were there, making totally unreasonable demands to move everything out of the house when it is full of things on both sides with sufficient pathway to accomplish and fix the minor fire damage, motivated to create another criminal charges on me by making me put it outside so they can steal and take it and then invoke ordinances claiming not permitted as done by Grandinetti when I was unloading cans from U Haul truck to empty storage out looking into long future that I am disabled totally with nobody to bank on and inflation keep going up and not compensated adequately so figured keep it as en emergency use wand I with Mr Hocker were able to enter the place to get his estimate and he was willing to do the

10

work without moving anything from the place showing city was predating activities of all kinds was motivated to create additional charges on me so that they can get everything I own, create severe financial strains on me so that they can restrain competiion by eliminating me totally from the market place   unless I agree to give 50% of the business profits otherwise business will not see the light of the day showing city is workink jointly with conspirators when it is not necessary at all and place can be fixed efficiently with efficient means or trying to get me totally bed ridden severely with hope to extract all my inventions discoveries to make millions on it with destruction of competition and then do what was done to Ramanujan, restraining competition and commerce, try to monopolize it in interstate remedies of services for a human body)

(33) Intent necessary for violation of s 1 of Sherman Anti-Trust Act must be anticompetitive intent and may not simply be inferred from unlawful or "immoral" acts designed to injure plaintiff.  SI Handling Systems, Inc. v. Heisley, E.D.Pa.1986, 658 F.Supp. 362.  Antitrust And Trade Regulation k   560; Antitrust And Trade Regulation k976 **("….-33)

***s.n.619.*** (enterprise consisting of medical doctors, hospitals, with some unknown legislatures, some judicial people giving exclusive rights to MD's for various remedies to treat various ailments, to soothe various conditions of human body,  enacting such statutes and interpreting it that way (even when no chemical drugs are used), conditions of human body which is interstate commerce in combination with enterprise defined earliar and not including these people in the definition of this enterprise and taking the 3rd enterprise consisting of cops involved against Vora's interests on fabricating charges , suppressing true facts as logic points to that, omitting parties involved, witnesses involved or who were there forming combinations)

(34)*Where object of combination is unlawful, acts of parties thereof, though innocent, become unlawful.  Majestic Theatre Co. v. United Artists Corp., D.C.Conn.1930, 43 F.2d 991. Antitrust And Trade Regulation k   537 **("….-34)

(b)*If the dominating primary purpose of a combination is to restrain trade, or do things unlawful in themselves, and which by reason of their inherent nature operate to restrain trade, such purpose is unlawful, and may not be carried out, even by means that otherwise would be lawful.  U.S. v. Railway Employees' Department of American Federation of Labor, D.C.Ill.1922, 283 F. 479.  Antitrust And Trade Regulation k 537;  Antitrust And Trade Regulation k   560

11

***( resulted in restraint of trade as Dr. Vora could not make advertising trips with advertisement on her car that was painted on it to promote commerce i.e. trade by damaging it as a total loss, that right rear door could not be opened at all and insurance people refusing to fix it claiming total loss with hardly 70,000 miles on it and cannot buy a like car for money they paid for it since then, putting her fingers hands full of pain to restrain commerce to prevent her advertising trips, enjoy it to put her totally out of business of soothing pain, bringing good scars of burn, with other good scars as indicated in her website http://home.earthlink.net/~chandansvora sometimes with www put in it to get it on the computer to be popped up with exact address put on it as keywords with just my name does not make it pop up as done in Kantilal Gugalia case as Vora was unable to get it put it on until 2011, due to conspiratorial activities of all kinds and in furtherance thereof and in furtherance of several open ended schemes which are still continuing, hoping to force her into some kind of illegal tying agreement or out of business knowing quite well that she is not eligible for practically any benefits even to survive in this land decently without her trade secrets getting stolen or taken by these conspirators which is one of the aims of these conspirators) a car in good running condition  within Vora's means and suitable for her disabled condition to be able to use it with heat in it that never failed at all).

(35)(a) *If an actual restraint of trade results from a combination, or a monopoly is achieved by an individual acting alone or in combination with others, the intent is immaterial, or may be inferred;  however, where no restraint of trade or monopoly results from the acts and conduct complained of, then such acts must be accompanied by a specific intent to restrain trade or monopolize before there is a violation of ss 1 to 7 of this title.  Scott Pub. Co. v. Columbia Basin Publishers, Inc., W.D.Wash.1959, 180 F.Supp. 754, affirmed 293 F.2d 15, certiorari denied 82 S.Ct. 382, 368 U.S. 940, 7 L.Ed.2d 338. Antitrust And Trade Regulation k  560;  Antitrust And Trade Regulation k  621;  Antitrust And  Trade Regulation k   976

**("….-35)

(35)(b)*Where unreasonable restraint of interstate commerce is shown, the intent to monopolize such commerce is inferred from the unlawful effects, and good intent is no defense to a charge of illegal combination or conspiracy in restraint of trade and commerce in violation of ss 1 to 7 of this title except in non per se violations where unreasonable restraint is not shown.  U. S. v. New Orleans Ins. Exchange, E.D.La.1957, 148 F.Supp. 915, affirmed 78 S.Ct. 96, 355 U.S. 22, 2 L.Ed.2d 66, rehearing denied 78 S.Ct. 329, 355 U.S. 908, 2 L.Ed.2d

12

262.  Antitrust And Trade Regulation k   560;  Antitrust And Trade Regulation k   621; Antitrust And Trade Regulation k 976

(36)(a)*Finding that national medical association's boycott of chiropractors was not motivated by concern for "patient care," and thus that boycott was unreasonable restraint of trade, was sufficiently supported by evidence that association's concern for scientific method in patient care had not been objectively reasonable throughout relevant period, and lack of evidence that association could not have adequately satisfied its concern for scientific method in patient care in manner less restrictive of competition than nationwide conspiracy to eliminate chiropractic.  Wilk v. American Medical Ass'n, C.A.7 (Ill.) 1990, 895 F.2d 352, rehearing denied, certiorari denied 110 S.Ct. 2621, 496 U.S. 927, 110 L.Ed.2d 642, rehearing denied 111 S.Ct. 6, 497 U.S. 1046, 111 L.Ed.2d 822, certiorari denied 111 S.Ct. 513, 498 U.S. 982, 112 L.Ed.2d 524. Antitrust And Trade Regulation k 977(2) **a("....-36)

(b)(*National medical association's boycott of chiropractors by informing association members that chiropractors were unscientific practitioners and that it was unethical to associate with them was conspiracy in restraint of trade under rule of reason, even though association had never sanctioned or disciplined member for violation of principle that made it unethical for physician to associate with unscientific practitioner;  medical association intended to contain and eliminate chiropractic profession, had substantial market power, and produced anticompetitive effects.  Wilk v. American Medical Ass'n, N.D.Ill.1987, 671 F.Supp. 1465, affirmed 895 F.2d 352, rehearing denied, certiorari denied 110 S.Ct. 2621, 496 U.S. 927, 110 L.Ed.2d 642, rehearing denied 111 S.Ct. 6, 497 U.S. 1046, 111 L.Ed.2d 822, certiorari denied 111 S.Ct. 513, 498 U.S. 982, 112 L.Ed.2d 524. Antitrust And Trade Regulation k   593 **b("....-36)

(37)(a)*Absence of allegation of public injury is not fatal to maintenance of action under ss 1 to 7 of this title where there is allegedly per se violation, such as a group boycott.  Ricci v. Chicago Mercantile Exchange, C.A.7 (Ill.) 1971, 447 F.2d 713, certiorari granted 92 S.Ct. 1173, 405 U.S. 953, 31 L.Ed.2d 230, reconsideration denied 92 S.Ct. 1248, 405 U.S. 984, 31 L.Ed.2d 451, affirmed 93 S.Ct. 573, 409 U.S. 289, 34 L.Ed.2d 525, rehearing denied 93 S.Ct. 1411, 410 U.S. 960, 35 L.Ed.2d 697.  Antitrust And Trade Regulation k   972(5) **("....-37)

*(37)(b)While improper motives may render unlawful certain otherwise legal practices, activities subject to a per se condemnation are judged independently of defendant's

13

motives, particularly when a practice tends to stifle competition. U. S. v. Serta Associates, Inc., N.D.Ill.1968, 296 F.Supp. 1121, 160 U.S.P.Q. 142, affirmed 89 S.Ct. 870, 393 U.S. 534, 21 L.Ed.2d 753, 160 U.S.P.Q. 832, rehearing denied 89 S.Ct. 1303, 394 U.S. 967, 22 L.Ed.2d 571. Antitrust And Trade Regulation k 534

713. ---- Malice

(38)(a)*Intent element of criminal anti-trust violation did not require any finding of malice; nothing more was required than showing that defendant intentionally engaged in conduct that was per se violation of section 1 to 7 of this title. U. S. v. Koppers Co., Inc., C.A.2 (Conn.) 1981, 652 F.2d 290, certiorari denied 102 S.Ct. 639, 454 U.S. 1083, 70 L.Ed.2d 617. Antitrust And Trade Regulation k 1013 **("....-38a") (b)s.n. 716 *Proof of specific intent is not required in tie-in cases. Capital Temporaries, Inc. of Hartford v. Olsten Corp., C.A.2 (Conn.) 1974, 506 F.2d 658. Antitrust And Trade Regulation k 569 **("....-38b")

(c )s.n.743. ---- Types of boycotts generally

Three types of group boycotts have been recognized as per se violations of the antitrust laws: (1) horizontal combinations among traders at one level of distribution, whose purpose is to exclude direct competitors, (2) vertical combinations among traders at different marketing levels, designed to exclude direct competitors of some members of the combination and (3) combinations designed to influence coercively the trade practices of boycott victims rather than to eliminate them as competitors. West Texas Utilities Co. v. Texas Elec. Service Co., N.D.Tex.1979, 470 F.Supp. 798. Antitrust And Trade Regulation k567

(d)s.n.746. ---- Secondary boycotts

An attempt of association of independent motion picture theater owners to secure better terms in contracts with film producer by using cruising trucks carrying placards appealing to public to support association's strike against producer's pictures by refusing to patronize any theater playing producer's pictures, constituted an enjoinable "secondary boycott" and unlawful combination in restraint of interstate trade, where, though defendants denied intention of picketing in front of theaters displaying producer's films, there was no denial of intent to picket from the sky, to circularize all towns, to have trailers on 300 screens, to have ads in newspapers, to enlist help of local labor unions, and engage in radio broadcasts to peacefully persuade public not to patronize producer's pictures. Paramount Pictures v. United Motion Picture Theatre Owners of Eastern Pennsylvania, Southern

14

New Jersey & Delaware, C.C.A.3 (Pa.) 1937, 93 F.2d 714.
Antitrust And Trade Regulation k 580
(e)s.n.749. ---- Commercial boycotts
Rule that group boycotts are per se violations of ss 1 to 7 of
this title is not limited in application to only commercial
boycotts, meaning presumably boycotts directed against other
traders. Washington State Bowling Proprietors Ass'n v.
Pacific Lanes, Inc., C.A.9 (Wash.) 1966, 356 F.2d 371,
certiorari denied 86 S.Ct. 1590, 384 U.S. 963, 16 L.Ed.2d 674.
Antitrust And Trade Regulation k 567
(f)s.n.750. ---- Professional boycotts
Although alleged group boycott by physicians did not escape
analysis merely because it was entered into by professionals,
the professional group boycott was less amenable to analysis,
and more appropriately analyzed under the rule of reason
because of the ethical considerations binding physicians in
state medical society who allegedly conspired with health
insurer to restrain the practice of chiropractic services.
Johnson v. Blue Cross/Blue Shield of New Mexico,
D.N.M.1987, 677 F.Supp. 1112. Antitrust And Trade
Regulation k 593
(g).s.n.780.   Elements of per se tying claim are tying
arrangement between two distinct products or services, seller
having sufficient economic power in tying market to restrain
appreciably competition in tied product market, and amount of
commerce affected which is not insubstantial. Virtual
Maintenance, Inc. v. Prime Computer, Inc.,
C.A.6 (Mich.) 1993, 11 F.3d 660, rehearing and suggestion for
rehearing en banc denied , certiorari dismissed 114 S.Ct.
2700, 512 U.S. 1216, 129 L.Ed.2d 829. Antitrust And Trade
Regulation k 569; Antitrust And Trade Regulation k 570;
Antitrust And Trade Regulation k 571
(h)*To establish a per se illegal tie-in, plaintiff must establish
three things: first, he must establish that the conduct in
question was a tie-in, i.e., an agreement by a party to sell one
product but only on the condition that the buyer also
purchases a different, or tied, product; second, he must
establish that the seller has sufficient economic power with
respect to the tying product to appreciably restrain free
competition in the market for the tied product, and
third, he must establish that a not insubstantial amount of
interstate commerce is affected. SmithKline Corp. v. Eli Lilly &
Co., C.A. 3 (Pa.) 1978, 575 F.2d 1056, certiorari denied 99
S.Ct. 123, 439 U.S. 838, 58 L.Ed.2d 134. See, also, Blanton
Enterprises, Inc. v. Burger King Corp., D.S.C.1988, 680
F.Supp. 753. Antitrust And Trade Regulation k 569;

Antitrust And Trade Regulation k  570; Antitrust And Trade Regulation k  571

(i)* Elements of per se tying claim are tying arrangement between two distinct products or services, seller having sufficient economic power in tying market to restrain appreciably competition in tied product market, and amount of commerce affected which is not insubstantial.  Virtual Maintenance, Inc. v. Prime Computer, Inc., C.A.6 (Mich.) 1993, 11 F.3d 660, rehearing and suggestion for rehearing en banc denied , certiorari dismissed 114 S.Ct. 2700, 512 U.S. 1216, 129 L.Ed.2d 829. Antitrust And Trade Regulation k 569;  Antitrust And Trade Regulation k 570;  Antitrust And Trade Regulation k  571

(38)(j)* Illegal tying claims brought by digital map maker against competitor under Sherman Act, Clayton Act and California law proffered sufficient detail to survive competitor's motion to dismiss for failure to state claim; complaint specifically averred that competitor threatened infringement suit to coerce navigation device entities into purchasing licenses under embedded device patent, and that competitor controlled 75% to 95% of device markets.  Tele Atlas N.V. v. Navteq Corp., N.D.Cal.2005, 397 F.Supp.2d 1184.  Antitrust And Trade Regulation k 972(3)

(38)(k) 802. Hospitals and physicians

Where hospital and members of hospital medical staff offered no public service or ethical norm rationale for their discriminatory treatment of osteopaths with respect to staff privileges, per se rule of illegality for violation of restraint of trade section of antitrust law in excluding osteopaths from staff would apply, rather than rule of reason analysis, except to extent that hospital and medical staff defended as to damage claims of individual osteopath bringing antitrust suit on his own behalf and on behalf of class of osteopaths in medical service area served by hospital, or any other class member, on grounds of lack of professional capacity or unprofessional conduct.  Weiss v. York Hosp., C.A.3 (Pa.) 1984, 745 F.2d 786, certiorari denied 105 S.Ct. 1777, 470 U.S. 1060, 84 L.Ed.2d 836. Antitrust And Trade Regulation k  593

(39)* Conduct of a single firm is governed by this section and is unlawful only when it threatens actual monopolization, and it is not enough that a single firm appears to "restrain trade" unreasonably, for even a vigorous competitor may leave that impression and, applying restraint of trade analysis to an efficient firm which captures unsatisfied customers from an inefficient rival, whose own ability to compete may suffer as a result, would violate the concept of sections 1-7 of this title to promote consumer interest in protecting competition.

16

Copperweld Corp. v. Independence Tube Corp., U.S.Ill.1984, 104 S.Ct. 2731, 467 U.S. 752, 81 L.Ed.2d 628, on remand 753 F.2d 1076.  Antitrust And Trade Regulation k  537; Antitrust And Trade Regulation k  625 **("...-39)

(40)(a)*Determination of what combinations constitute unlawful monopolies is ordinarily legislative function, but Congress, by incorporation changing common law standards into ss 1 to 7 and 12 to 27 of this title, delegated to courts duty of fixing standard for each case.  U.S. v. Associated Press, S.D.N.Y.1943, 52 F.Supp. 362, affirmed 65 S.Ct. 1416, 326 U.S. 1, 89 L.Ed. 2013, rehearing denied 66 S.Ct. 6, 326 U.S. 802, 90 L.Ed. 489, rehearing denied 66 S.Ct. 7, 326 U.S. 803, 90 L.Ed.489.  Constitutional Law k  2403;  Antitrust And Trade Regulation k  625**("...-40)

(b)*A refusal to sell or deliver essential goods as part of a combination or a  conspiracy to eliminate competition constitutes an actionable violation of the antitrust laws. Athletes Foot of Delaware, Inc. v. Ralph Libonati Co., Inc., D.C.Del.1977, 445 F.Supp. 35.  Antitrust And Trade Regulation k   563 **("...-40b")

(41)*There is nothing unlawful under ss 1 to 7 of this title or any other antitrust act in trying to acquire even 100% of the market through skill, efficiency, superiority of product, or like entirely laudable steps.  Cape Cod Food Products v. National Cranberry Ass'n, D.C.Mass.1954, 119 F.Supp. 900.  Antitrust And Trade  Regulation k  610** ("...-41")

 (42)s.n.. 553 15USCA s1* General presumption favors application of rule of reason standard in antitrust cases, except in those cases in which alleged agreement or activity is "manifestly anticompetitive." U.S. v. Cooperative Theatres of Ohio, Inc., C.A.6 (Ohio) 1988, 845 F.2d 1367.  Antitrust And Trade Regulation k  535                              (43)  Not every restraint of trade is illegal, and, in case of property owner, crucial question, absent any monopoly, attempt or conspiracy to monopolize or any other agreement or practice regarded as illegal per se, is not whether owner's use of or retention of various rights in his property restrains trade, but, rather, whether it does so unreasonably.  Clarke v. Amerada Hess Corp., S.D.N.Y.1980, 500 F.Supp. 1067.  Antitrust And Trade Regulation k  534; Antitrust And Trade Regulation k 535;  Antitrust And Trade Regulation k   653

44. s.n.562. ---- Market share or power Established position in the market is not the sine qua non to a suit for wrongful restraint of trade under ss 1 to 7 of this title, a mere finding of unreasonable restraint on interstate commerce is sufficient.  Metal Lubricants Co. v. Engineered Lubricants Co., C.A.8 (Mo.) 1969, 411 F.2d 426, 162 U.S.P.Q. 584.

17

Antitrust And Trade Regulation k 535
45. s.n. 567. ---- Exclusion of outsiders
Concerted effort to exclude outsiders from the market is regarded by its very nature as an "undue or unreasonable restraint of trade" and an illegal destruction of the free operation of competitive forces.  Quemos Theatre Co v. Warner Brothers Pictures, D.C.N.J.1940, 35 F.Supp. 949. Antitrust And Trade Regulation k 560
46. s.n.574. Means of restraint--Generally
*In order to establish violation of restraint of trade provision of Sherman Act, plaintiff must prove that defendant conspired to use unfair and predatory competitive means to eliminate plaintiff as competitor, and that plaintiff's elimination from marketplace in that fashion imposed illegal restraint on trade under rule of reason analysis.  Southern Business Communications, Inc. v. Matsushita Elec. Corp. of America, N.D.Ga.1992, 806 F.Supp. 950.  Antitrust And Trade Regulation k 535;  Antitrust And Trade Regulation k 561
47.s.n. 575. ---- Unfair practices
*Combination of distributors, which through unfair practices eliminates a competitor and leaves it in such a condition that it lacks ability to continue business as an interbrand competitor, has adverse effect on the market place and may constitute unreasonable restraint of trade.  Coleman Motor Co. v. Chrysler Corp., C.A.3 (Pa.) 1975, 525 F.2d 1338.  Antitrust And Trade Regulation k 560 Under rule of reason test, it is unfair means which have been employed by defendants that fall within purview of Sherman Act, and question is whether those means lessened competition;  mere allegation of loss of individual competitive ability are not sufficient, and there must be some allegation of public injury to competition, i.e., harmful effect on more generalized market and not merely on single supplier or purchaser.  Blaine v. Meineke Discount Muffler Shops, Inc., D.Conn.1987, 670 F.Supp. 1107.  Antitrust And Trade Regulation k 535
48.s.n.578. *Not every restraint, effect upon, or even interference with interstate commerce comes within this section, but only certain kinds of effects on market, such as restraints having an effect upon competition which, as a result, deprive purchasers of advantages of a free, competitive market, come within this section, and, therefore, private litigant must show that both he and public interest have been injured. Northern Cal. Monument Dealers Ass'n v. Interment Ass'n of Cal., D.C.Cal.1954, 120 F.Supp. 93.  Antitrust And Trade Regulation k 560; Antitrust And Trade Regulation k 972(5)
49.s.n.580.* True test of legality of restraint in trade is whether

restraint is such as merely regulates and perhaps thereby promotes competition or whether it is such as may suppress or even destroy competition.  U. S. v. Utah Pharmaceutical Ass'n, D.C.Utah 1962, 201 F.Supp. 29, appeal dismissed 306 F.2d 493, affirmed 83 S.Ct. 119, 371 U.S. 24, 9 L.Ed.2d 96. Antitrust And Trade Regulation k   560

50.s.n. 583. ---- Potential anticompetitive effect

*Because essence of any violation of Sherman Act section prohibiting agreements in restraint of trade is illegal agreement itself  rather than overt acts performed in furtherance of it-- proper analysis for determining sufficiency of jurisdictional allegations focuses, not upon actual consequences, but rather upon potential harm that would ensue if conspiracy were successful.  Summit Health, Ltd. v. Pinhas, U.S.Cal.1991, 111 S.Ct. 1842, 500 U.S. 322, 114 L.Ed.2d 366. Antitrust And Trade Regulation k   560                Sections 1 to 7 of this title proscribe restraints of potential competition as well as restraints of actual competition.  U S v. American Smelting & Refining Co, S.D.N.Y.1960, 182 F.Supp. 834.  Antitrust And Trade Regulation k   560

51.s.n. 584. ---- Tendency to obstruct competition

*If inherent tendency of combination, agreement, or concert is substantially to lessen, hinder, or suppress competition in channels of trade or commerce, such combination, agreement or concert comes within sweep of this section.  Shotkin v. General Elec. Co., C.A.10 (Colo.) 1948, 171 F.2d 236. Antitrust And Trade Regulation k   537

52. s.n. 587. ---- Persons considered

In determining whether a combination unreasonably restrains interstate commerce, it is not only the effect upon consumers which is to be considered, but as well the effect upon others in the business, who from choice or necessity are left outside of the organization.  Chesapeake & O. Fuel Co. v. U.S., C.C.A.6 (Ohio) 1902, 115 F. 610, 53 C.C.A. 256.

53.s.n.588* Purpose of ss 1 to 7 and 12 to 27 of this title is to protect interstate market from illegal restraints, and if such restraints are applied to even one person in interstate market, then free competition is hurt and damaged.  Richfield Oil Corp. v. Karseal Corp., C.A.9 (Cal.) 1959, 271 F.2d 709, certiorari denied 80 S.Ct. 590,

361 U.S. 961, 4 L.Ed.2d 543.  Antitrust And Trade Regulation k   528

*To establish violation of ss 1 to 7 of this title, it is not necessary to show that challenged arrangement suppresses all competition between parties, but interest of public in preservation of competition is primary consideration. William Goldman Theatres v. Loew's, Inc., C.C.A.3 (Pa.) 1945, 150

F.2d 738. Antitrust And Trade Regulation k  560

54.* Conspiracy between officers and agents of competitor to restrain single shipment by another competitor is covered by this section.  Patterson v. U. S., C.C.A.6 (Ohio) 1915, 222 F. 599, 138 C.C.A. 123, certiorari denied 35 S.Ct. 939, 238 U.S. 635, 59 L.Ed. 1499.  Conspiracy k  30;  Antitrust And Trade Regulation k   606

55.* There is an actionable wrong whenever restraint of trade or monopolistic practice has an impact on market, and it matters not that the complainant may be only one merchant. Wurzberg Bros., Inc. v. Head Ski Co., D.C.N.J.1967, 276 F.Supp. 142. Antitrust And Trade Regulation k  560;  Antitrust And Trade Regulation k  650

56* The prohibitions of this section are equally applicable to combinations in restraint of trade that stifle only a part of commerce.  U. S. v. Timken Roller Bearing Co., N.D.Ohio 1949, 83 F.Supp. 284, 81 U.S.P.Q. 28, modified 71 S.Ct. 971,341 U.S. 593, 95 L.Ed. 1199, 89 U.S.P.Q. 462.  Antitrust And Trade Regulation k 560

57.s.n. 589. ---- Market share or power

Nonprofit state trade association for licensed dentists possessed sufficient market power to harm competition through its setting of standards for members in area of advertising, supporting determination, under quick look rule of reason, that association's policies unreasonably restrained trade; approximately 75% of licensed dentists in state were members, significant barriers to entry tended to convert association's market share into market power, and membership offered sufficient benefits that exclusion appeared to present significant hardship for some dentists. California Dental Ass'n v. F.T.C., C.A.9 1997, 128 F.3d 720, certiorari granted 119 S.Ct. 29, 524 U.S. 980, 141 L.Ed.2d 789, vacated 119 S.Ct. 1604, 526 U.S. 756, 143 L.Ed.2d 935, on remand 224 F.3d 942.  Antitrust And Trade Regulation k 920

58.* Lessees seeking compensation from state land board for improvements on property after lease was not renewed were required to offer evidence that state land board exercised market power or that its conduct had anti-competitive effects to establish that land board participated in anticompetitive activity under Sherman Act.  Harper v. Colorado State Bd. of Land Comm'rs, C.A.10 (Colo.) 2007, 248 Fed.Appx. 4, 2007 WL 2430122, Unreported.  Antitrust And Trade Regulation k591

59.*s.n. 590. ---- Efficiency

To evaluate the effect of a practice on competition under this section, one must look not only to competitive rivalry but to

20

economic efficiency as well; practice is anticompetitive and lacking in any redeeming virtue when it can further none of the goals of this section and when it operates to deny to consumers the opportunity to choose among alternative offers without offering the possibility of any joint, efficiency-producing economic activities. U.S. v. Realty Multi-List, Inc., C.A.5 (Ga.) 1980, 629 F.2d 1351. Antitrust And Trade Regulation k 535

60.* s.n. 592. ---- Prevention of competition

An agreement which forecloses competitors from a substantial market violates antitrust laws, since antitrust laws may be violated by prevention as well as by destruction of competition. Pennsylvania Water & Power Co. v. Consolidated Gas, Elec. Light & Power Co., C.A.4 (Md.) 1950, 184 F.2d 552, certiorari denied 71 S.Ct. 282, 340 U.S. 906, 95 L.Ed. 655, certiorari denied 71 S.Ct. 282, 340 U.S. 906, 95 L.Ed. 656. Antitrust And Trade Regulation k 537

61.*s.n.593. Restraints on competition or on the course of trade in the merchandising of articles moving in interstate commerce are not illegal under antitrust laws unless the restraints are shown to have or are intended to have an effect on prices in the market or otherwise to deprive purchasers or consumers of the advantages which they derive from free competition. Apex Hosiery Co. v. Leader, U.S.Pa.1940, 60 S.Ct. 982, 310 U.S. 469, 84 L.Ed. 1311. Antitrust And Trade Regulation k 560

62.* Radiologist and provider of diagnostic imaging services adequately alleged that they had suffered an antitrust injury caused by competitors' anticompetitive conduct where they alleged that competitors' illegal conduct harmed them in their business and had decreased the price, quality, and output of the provision of diagnostic imaging services, and that their claimed injuries, harm to their goodwill and reputation, the elimination from the market of their competing services, and decreased revenue and profits, were caused by competitors' allegedly anticompetitive conduct. New York Medscan LLC v. New York University School of Medicine, S.D.N.Y.2006, 430 F.Supp.2d 140. Antitrust And Trade Regulation k 972(5)

63.*s.n.595. 595. ---- Regulation

The true test of legality is whether the restraint imposed is such as merely regulates and perhaps thereby promotes competition or whether it is such as may suppress or even destroy competition. Board of Trade v. U.S., Ill.1918, 38 S.Ct. 242, 246 U.S. 231, 62 L.Ed. 683. See, also, U.S. v. National Football League, D.C.Pa.1953, 116 F.Supp. 319; U.S. v. Swift & Co., D.C.Colo.1942, 46 F.Supp. 848, remanded on other grounds 63 S.Ct. 684, 318 U.S. 442, 87 L.Ed. 889; U.S. v. Aluminum Co. of America, D.C.N.Y.1941, 44 F.Supp. 97,

affirmed in part, reversed in part on other grounds 148 F.2d 416; Edwin K. Williams & Co., Inc. v. Edwin K. Williams & Co. East, D.C.Cal.1974, 377 F.Supp. 418, affirmed and remanded on other grounds 542 F.2d 1053, 191 U.S.P.Q. 563, certiorari denied 97 S.Ct. 2973, 433 U.S. 908, 53 L.Ed.2d 1092, 195 U.S.P.Q. 93.

64.s.n.597.* Physician whose hospital staff privileges were terminated, allegedly because he had set up clinic that competed with hospital, failed to establish that hospital unreasonably restrained trade in violation of Sherman Act; physician failed to show rise in price of medical services above competitive level, decrease in supply of doctors in relevant market, or decrease in quality of medical services provided. Miller v. Indiana Hosp., W.D.Pa.1992, 814 F.Supp. 1254, affirmed 975 F.2d 1550, certiorari denied 113 S.Ct. 1366, 507 U.S. 952, 122 L.Ed.2d 744, rehearing denied 113 S.Ct. 1883, 507 U.S. 1045, 123 L.Ed.2d 501. Antitrust And Trade Regulation k 593

65.*s.n. 602. ---- Insurance
Joint policy by two Blue Shield plans to refuse to pay for services rendered by clinical psychologists unless billed through physicians was in restraint of trade as proscribed by sections 1 to 7 of this title, since policy forced two independent economic entities, psychologists and psychiatrists, to act as one, with necessary result of diminished competition in health care field. Virginia Academy of Clinical Psychologists v. Blue Shield of Virginia, C.A.4 (Va.) 1980, 624 F.2d 476, on remand 501 F.Supp. 1232, certiorari denied 101 S.Ct. 1360, 450 U.S. 916, 67 L.Ed.2d 342. Antitrust And Trade Regulation k 873

66.s.n. 618. ---- Presumption or inference of intent
****(intent was to eliminate Vora from competition by taking her life for failure to agree to give 50% of the business profits with many predately willful egregious misconduct of parties opposite to Vora which are still continuing like Gergeley dumping again 5 no good tires that fit his vehicle time and again in my yard blocking my pathway on my own property and he did it again after 12:30 p.m. on 4/24/2012 when his contractor took it out 8 of them, he dumped 5 back which J. Meadows witnessed Gergeley doing that and even though I left a message on Captain Friars phone and did call the city on it with the fact that certified contractor and electrician is willing to work with me to get my place fixed and I will be able to live in the house of Robb Ave, city said they will call back thro Mary Ann with no results at all instead tells me I must keep the place clean for the deeds of their coconspirators in furtherance of conspiratorial activities of all kinds aincluding antitrust when it was completely clean earlier or getting her totally bed ridden

severely with hope to extract all her inventions discoveries to
make millions on it and then do what was done to Ramanujan,
restraining competition and commerce, creating nightmares of
1916 of plague, cholera of 1956 in which my grandparents had
perished,  try to monopolize it in interstate remedies of
services for a human body) Intent necessary for violation of s
1 of Sherman Anti-Trust Act must be anticompetitive intent
and may not simply be inferred from unlawful or "immoral"
acts designed to injure plaintiff.  SI Handling Systems, Inc. v.
Heisley, E.D.Pa.1986, 658 F.Supp. 362.  Antitrust And Trade
Regulation k   560; Antitrust And Trade Regulation k   976
(67)* Under ss 1 to 7 of this title, intent, as well as conspiracy,
may properly be inferred from circumstantial evidence and act
performed, as well as from explicit declarations of purpose or
words uttered by parties involved.  Mt. Lebanon Motors, Inc. v.
Chrysler Corp., W.D.Pa.1968, 283 F.Supp. 453.  Antitrust And
Trade Regulation k   977(1)
(68) s.n.619. 619. ---- Lawful or unlawful activities
*** (enterprise consisting of medical doctors, hospitals, with
some unknown legislatures, some judicial people giving
exclusive rights to MD's for various remedies to treat various
ailments, to soothe various conditions of human body,
enacting such statutes and interpreting it that way (even when
no chemical drugs are used), conditions of human body which
is interstate commerce in combination with enterprise defined
earlier and not including these people in the definition of this
enterprise and taking the 3rd enterprise consisting of cops
involved against Vora's interests on fabricating charges ,
suppressing true facts as logic points to that, omitting parties
involved, witnesses involved or who were there forming
combinations)Where object of combination is unlawful, acts of
parties thereof, though innocent,
become unlawful.  Majestic Theatre Co. v. United Artists
Corp., D.C.Conn.1930, 43F.2d 991.  Antitrust And Trade
Regulation k   537
(69)s.n.621. ***( resulted in restraint of trade as Dr. Vora could
not make advertising trips with advertisement on her car that
was painted on it to promote commerce i.e. trade by damaging
it as a total loss, that right rear door could not be opened at all
and insurance people refusing to fix it claiming total loss with
hardly 70,000 miles on it and cannot buy a like car for money
they paid for it since then, putting her fingures hands full of
pain to restrain commerce to prevent her advertising trips,
enjoy it to put her totally out of business of soothing pain,
bringing good scars of burn, with other good scars as
indicated in her website
http://home.earthlink.net/~chandansvora sometimes with www

put in it to get it on the computer to be popped up with exact address put on it as keywords with just my name does not make it pop up as done in Kantilal Gugalia case as Vora was unable to get it put it on until 2011, due to conspiratorial activities of all kinds and in furtherance thereof and in furtherance of several open ended schemes which are still continuing, hoping to force her into some kind of illegal tying agreement or out of business knowing quite well that she is not eligible for practically any benefits even to survive in this land decently without her trade secrets getting stolen or taken by these conspirators which is one of the aims of these conspirators) a car in good running condition within Vora's means and suitable for her disabled condition to be able to use it with heat in it that never failed at all).

If an actual restraint of trade results from a combination, or a monopoly is achieved by an individual acting alone or in combination with others, the intent is immaterial, or may be inferred; however, where no restraint of trade or monopoly results from the acts and conduct complained of, then such acts must be

accompanied by a specific intent to restrain trade or monopolize before there is a violation of ss 1 to 7 of this title. Scott Pub. Co. v. Columbia Basin Publishers, Inc., W.D.Wash.1959, 180 F.Supp. 754, affirmed 293 F.2d 15, certiorari denied 82 S.Ct. 382, 368 U.S. 940, 7 L.Ed.2d 338. Antitrust And Trade Regulation k 560; Antitrust And Trade Regulation k 621; Antitrust And Trade Regulation k 976 (70)s.n.628. 628. ---- Patient care or health

(Dr. Savit's with hospital's behaviour in 1996 Feb demanding my trade secrets which I refused to give in response to which he tells me I have too many blood vessels to the brain and MRA machine will show that and put me thro MRA machine and tells me it shows that. I distrusted him totally since then due to his predatory etc motives and this case law applies to all involved then as he told me he was planning to transfer me to Allegny general hospital and cut the blood vessels off to my brain as part of neurosurgery…etc and since long time their deeds were predately etc)Finding that national medical association's boycott of chiropractors was not motivated by concern for "patient care," and thus that boycott was unreasonable restraint of trade, was sufficiently supported by evidence that association's concern for scientific method in patient care had not been objectively reasonable throughout relevant period, and lack of evidence that association could not have adequately satisfied its concern for scientific method in patient care in manner less restrictive of competition than nationwide conspiracy to eliminatechiropractic. Wilk v.

24

American Medical Ass'n, C.A.7 (Ill.) 1990, 895 F.2d 352, rehearing denied, certiorari denied 110 S.Ct. 2621, 496 U.S. 927, 110 L.Ed.2d 642, rehearing denied 111 S.Ct. 6, 497 U.S. 1046, 111 L.Ed.2d 822, certiorari denied 111 S.Ct. 513, 498 U.S. 982, 112 L.Ed.2d 524. Antitrust And Trade Regulation k977(2)

(70)(b)s.n.636.****(same comment) National medical association's boycott of chiropractors by informing association members that chiropractors were unscientific practitioners and that it was unethical to associate with them was conspiracy in restraint of trade under rule of reason, even though association had never sanctioned or disciplined member for violation of principle that made it unethical for physician to associate with unscientific practitioner; medical association intended to contain and eliminate chiropractic profession, had substantial market power, and produced anticompetitive effects. Wilk v. American Medical Ass'n, N.D.Ill.1987, 671 F.Supp. 1465, affirmed 895 F.2d 352, rehearing denied, certiorari denied 110 S.Ct. 2621, 496 U.S. 927, 110 L.Ed.2d 642, rehearing denied 111 S.Ct. 6, 497 U.S. 1046, 111 L.Ed.2d 822, certiorari denied 111 S.Ct. 513, 498 U.S. 982, 112 L.Ed.2d 524. Antitrust And Trade Regulation k 593

(71)s.n.638. A conspiracy, purpose of which was to monopolize fur dressers' business, divide it among members of trade corporation, raise prices of services performed, and suppress competition, was in "restraint of trade" within antitrust laws. U.S. v. International Fur Workers Union of U.S. and Canada, C.C.A.N.Y.1938, 100 F.2d 541, certiorari denied 59 S.Ct. 642, 306 U.S. 653, 83 L.Ed. 1051. See, also, Lucchi v. U.S., 1939, 59 S.Ct. 642, 306 U.S. 653, 83 L.Ed. 1051. Antitrust And Trade Regulation k 1014

(72)s.n. 703. Presumption of unreasonable restraint
Activities that are per se unlawful under the Sherman Act include agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to precise harm they have caused or business excuse for their use. O.S.C. Corp. v. Apple Computer, Inc., C.A.9 (Cal.) 1986, 792 F.2d 1464. Antitrust And Trade Regulation k 534; Antitrust And Trade Regulation k 976

(73)s.n. 709. Effect of restraint
"Public injury" charge to effect that conspiracy which was reasonably calculated to prejudice public interest by restraining trade must be proved was improper, where petitioners pleaded concerted refusal to deal with them by respondents, price fixing conspiracy, and allocation of

customers, all per se violations of this section.  Continental Ore Co. v. Union Carbide & Carbon Corp., U.S.Cal.1962, 82 S.Ct. 1404, 370 U.S. 690, 8 L.Ed.2d 777.  Antitrust And Trade Regulation k981

(74) Absence of allegation of public injury is not fatal to maintenance of action under ss 1 to 7 of this title where there is allegedly per se violation, such as a group boycott.  Ricci v. Chicago Mercantile Exchange, C.A.7 (Ill.) 1971, 447 F.2d 713, certiorari granted 92 S.Ct. 1173, 405 U.S. 953, 31 L.Ed.2d 230, reconsideration denied 92 S.Ct. 1248, 405 U.S. 984, 31 L.Ed.2d 451, affirmed 93 S.Ct. 573, 409 U.S. 289, 34 L.Ed.2d 525, rehearing denied 93 S.Ct. 1411, 410 U.S. 960, 35 L.Ed.2d697.  Antitrust And Trade Regulation k  972(5)

(75) Price-fixing, certain concerted refusals to deal, horizontal market division, and tying arrangements, constitute per se violations of provision of Sherman Act prohibiting concerted activity which results in unreasonable restraint of trade, and thus plaintiff need not show specific anticompetitive effects in relevant product and geographic market.  Sewell Plastics, Inc. v. Coca-Cola Co., W.D.N.C.1988, 720 F.Supp. 1186.  Antitrust And Trade Regulation k   821; Antitrust And Trade Regulation k   563;  Antitrust And Trade Regulation k 552;  Antitrust And Trade Regulation k   569

(76)*Per se violations of this section governing unlawful restraints of trade do not require a showing of deleterious impact on competition;  acts involved are considered so repugnant to policies underlying antitrust law that they create presumption of anticompetitive effect.  Gianna Enterprises v. Miss World (Jersey) Ltd., S.D.N.Y.1982, 551 F.Supp. 1348.  Antitrust And Trade Regulation k   976

(77)s.n. 724. Horizontal or vertical restraints generally Restraint imposed by agreement between competitors are denominated as horizontal restraints, while those imposed by agreement between firms at different levels of distribution are vertical restraints;  restraint is not horizontal because it has horizontal effects, but rather because it is product of horizontal agreement. Business Electronics Corp. v. Sharp Electronics Corp., U.S.Tex.1988, 108 S.Ct. 1515, 485 U.S. 717, 99 L.Ed.2d 808.  Antitrust And Trade Regulation k   540; Antitrust And Trade Regulation k   541

(78)s.n. 735. -- Underlying conduct considered(conduct of 1996 of Drs and refusal to give me my medical records for which I incurred expenses to call my brother from India to USA)

Group boycotts are considered a per se violation of this section only if they are used to enforce agreements that are themselves illegal per se.  Car Carriers, Inc. v. Ford Motor

Co., C.A.7 (Ill.) 1984, 745 F.2d 1101, certiorari denied 105 S.Ct. 1758, 470 U.S. 1054, 84 L.Ed.2d 821.  Antitrust And Trade Regulation k  567

(79)s.n. 737. ---- Individual or concerted action

Allegation of agreement or "conspiracy" between seller of transportation services and automobile manufacturer to drive competing seller out of business by no longer buying his services did not allege actionable group boycott or collective refusal to deal where there was no allegation that seller of transportation services acted in concert with other auto transport carriers to eliminate competing seller from market. Dunn & Mavis, Inc. v. Nu-Car Driveaway, Inc., C.A.6 (Mich.) 1982, 691F.2d 241.  Antitrust And Trade Regulation k  972(4)

(80) s.n. 750. ---- Professional boycotts

Although alleged group boycott by physicians did not escape analysis merely because it was entered into by professionals, the professional group boycott was less amenable to analysis, and more appropriately analyzed under the rule of reason because of the ethical considerations binding physicians in state medical society who allegedly conspired with health insurer to restrain the practice of chiropractic services. Johnson v. Blue Cross/Blue Shield of New Mexico, D.N.M.1987, 677 F.Supp. 1112.  Antitrust And Trade Regulation k  593

(81)s.n.780.* Elements of per se tying claim are tying arrangement between two distinct products or services, seller having sufficient economic power in tying market to restrain appreciably competition in tied product market, and amount of commerce affected which is not insubstantial.  Virtual Maintenance, Inc. v. Prime Computer, Inc., C.A.6 (Mich.) 1993, 11 F.3d 660, rehearing and suggestion for rehearing en banc denied , certiorari dismissed 114 S.Ct. 2700, 512 U.S. 1216, 129 L.Ed.2d 829. Antitrust And Trade Regulation k 569;  Antitrust And Trade Regulation k 570;  Antitrust And Trade Regulation k  571

(82) Requisite elements of a violation under this section are the presence of market power sufficient to enable seller to raise prices or to require purchasers to accept burdensome terms that could not be exacted in a completely competitive market and sales of the tied product resulting from the tie-in that are not insubstantial;  while the presence of either is enough under Clayton Act, section 14 of this title, this section requires both.  Sargent-Welch Scientific Co. v. Ventron Corp., C.A.7 (Ill.) 1977, 567 F.2d 701, certiorari denied 99 S.Ct. 87, 439 U.S. 822, 58 L.Ed.2d 113.  Antitrust And Trade Regulation k  553;  Antitrust And Trade Regulation k  569;  Antitrust And Trade Regulation k  571

(83) s.n.802. Hospitals and physicians

Where hospital and members of hospital medical staff offered no public service or ethical norm rationale for their discriminatory treatment of osteopaths with respect to staff privileges, per se rule of illegality for violation of restraint of trade section of antitrust law in excluding osteopaths from staff would apply, rather than rule of reason analysis, except to extent that hospital and medical staff defended as to damage claims of individual osteopath bringing antitrust suit on his own behalf and on behalf of class of osteopaths in medical service area served by hospital, or any other class member, on grounds of lack of professional capacity or unprofessional conduct. Weiss v. York Hosp., C.A.3 (Pa.) 1984, 745 F.2d 786, certiorari denied 105 S.Ct. 1777, 470 U.S. 1060, 84 L.Ed.2d 836. Antitrust And Trade Regulation k   593

(84)s.n. 803. Insurance

If health plan in fact constituted horizontal agreement among competitors, by providing two-tier reimbursement system, under which physician members were reimbursed at higher rate for services than nonmember podiatrists, podiatrists' likely evidence of overt conspiracy would not destroy claim under Sherman Anti-Trust Act, since such horizontal agreement would be unlawful per se. Hahn v. Oregon Physicians' Service, C.A.9 (Or.) 1988, 868 F.2d 1022, certiorari denied 110 S.Ct. 140, 493 U.S. 846, 107 L.Ed.2d 99. Antitrust And Trade Regulation k873;  Antitrust And Trade Regulation k 883

(85)15usca s2 s.n.1,5  * Very raison d'etre of ss 1 to 7 of this title was to secure equality of opportunity for small businessman as well as to protect public against evils incident to monopolies, but it was not to compel competition. John Wright & Associates, Inc. v. Ullrich, C.A.8 (Minn.) 1964, 328 F.2d 474.  Antitrust And Trade Regulation k   528

(86) 15usca s2 s.n.4. Construction with other laws

Congress distinguished between concerted action and independent action, in ss 1 of the Sherman Act, which applies only to concerted action that restrains trade, and in ss 2 of the Sherman Act, which, by contrast, covers both concerted action and independent action that monopolizes or threatens actual monopolization, to deter anticompetitive conduct and compensate its victims, without chilling vigorous competition through ordinary business operations, and the distinction also avoids judicial scrutiny of routine, internal business decisions. American Needle, Inc. v. National Football League, U.S.2010, 130 S.Ct. 2201, 176 L.Ed.2d 947, 94 U.S.P.Q.2d 1673, on remand 391 Fed.Appx. 564, 2010 WL 3398843.  Antitrust And

28

Trade Regulation k 537; Antitrust And Trade Regulation k 620; Antitrust And Trade Regulation k 631

(87) ) 15usca s2 s.n.5* Sections 1 to 7 of this title were enacted to prevent competitors from contracting or combining in such a way as to put artificial handicaps in the way of intelligent and energetic competitors, who would thus be deprived of the opportunity to serve the public interest. U.S. v. Parker-Rust-Proof Co., E.D.Mich.1945, 61 F.Supp. 805. Antitrust And Trade Regulation k 528

(88)15 uscas2 s.n.10 * The crime under s 1 of this title, declaring illegal every contract, combination, or conspiracy in restraint of trade or commerce, is legally distinct from that under this section though the two sections overlap in the sense that a monopoly under this section is a species of restraint of trade under the first. U.S. v. Socony-Vacuum Oil Co., Wis.1940, 60 S.Ct. 811, 310 U.S. 150, 84 L.Ed. 1129, rehearing denied 60 S.Ct. 1091, 310 U.S. 658, 84 L.Ed. 1421. See, also, William Goldman Theatres v. Loew's Inc., C.C.A.Pa.1945, 150 F.2d 738; American Tobacco Co. v. U.S., C.C.A.Ky.1944, 147 F.2d 93, affirmed 66 S.Ct. 1125, 328 U.S. 781, 90 L.Ed. 1575; White Bear Theatre Corporation v. State Theatre Corporation, C.C.A.Minn.1942, 129 F.2d 600; Montrose Lumber Co. v. U.S., C.C.A.Colo.1941, 124 F.2d 573; Monarch Tobacco Works v. American Tobacco Co., C.C.Ky.1908, 165 F. 774; U.S. v. Columbia Steel Co., D.C.Del.1947, 74 F.Supp. 671, affirmed 68 S.Ct. 1107, 334 U.S. 495, 92 L.Ed. 1533, rehearing denied 68 S.Ct. 1525, 334 U.S. 862, 92 L.Ed. 1781; U.S. v. Pullman Co., D.C.Pa.1943, 50 F.Supp. 123, supplemented 53 F.Supp. 908; U.S. v. National Retail Lumber Dealers Ass'n, D.C.Colo.1941, 40 F.Supp. 448. Antitrust And Trade Regulation k 1014

(89) *Intent to restrain trade is not essential to violation of s 1 of this title, but specific intent to destroy competition or build monopoly is crucial to charge of attempting to monopolize under this section. Bank of Utah v. Commercial Sec. Bank, C.A.10 (Utah) 1966, 369 F.2d 19, certiorari denied 87 S.Ct. 1374, 386 U.S.1018, 18 L.Ed.2d 456. Antitrust And Trade Regulation k 560; Antitrust And Trade Regulation k 715 **

(90) *There may be an unreasonable restraint of trade which does not constitute a monopoly though there can be no monopoly which does not constitute an unreasonable restraint of trade. U.S. v. Whiting, D.C.Mass.1914, 212 F. 466. **

(91)*"Monopoly power" in context of monopolization provision of the Sherman Act, like market power in context of restraint of trade section of the Act, is generally defined as the ability to control price and exclude competition within the relevant

product and geographic markets and is usually determined by examining extent of alleged monopolist's market share. Queen City Pizza, Inc. v. Domino's Pizza, Inc., E.D.Pa.1996, 922 F.Supp. 1055, affirmed 124 F.3d 430, rehearing and rehearing en banc denied 129 F.3d 724, certiorari denied 118 S.Ct. 1385, 523 U.S. 1059, 140 L.Ed.2d 645.  Antitrust And Trade Regulation k   645;  Antitrust And Trade Regulation k   646 **

(92)15 usca s2 s.n.70*****Physician's allegations that hospital and other physicians prevented plaintiff physician and others from engaging in practice of general vascular trauma surgery in the relevant market and prevented other hospitals in the relevant market from employing or granting medical staff privileges to the plaintiff physician for the purpose of competing with the defendants and who alleged that the conduct had prevented "competition in the relevant product market within the relevant geographic market" was sufficient to state a claim for antitrust injury. Brader v. Allegheny General Hosp., C.A.3 (Pa.) 1995, 64 F.3d 869.  Antitrust And Trade Regulation k   972(5)*****

(93)15uscas2 s.n. 71* Health plan demonstrated antitrust injury element of monopolization claim under Sherman Act by showing that its HIV patients faced a "Hobson's choice" of either paying more for competing regimens boosted by defendant drug manufacturer's older protease inhibitor versus paying less for manufacturer's newer protease inhibitor while accepting the newer drug's harmful side effects; health plan was not required to come forward with a patient who wanted to purchase a drug that competed with manufacturer's newer protease inhibitor but could not afford to do so.  In re Abbott Laboratories Norvir Anti-Trust Litigation, N.D.Cal.2008, 562F.Supp.2d 1080, reversed 571 F.3d 930.  Antitrust And Trade Regulation k   689

(b)Essential elements to successful claim of s 2 monopolization are possession of monopoly power in relevant market, willful acquisition or maintenance of that power, and causal antitrust injury.  Blaine v. Meineke Discount Muffler Shops, X Inc., D.Conn.1987, 670 F.Supp. 1107.  Antitrust And Trade Regulation k   644*

(94)15uscas2s.n.72**If monopolist resorts to any unfair practice with intent to restrain commerce or to monopolize and does not confine itself to skill, foresight and industry in improving or maintaining its market position, it violates ss 1 to 7 and 12 to 27 of this title, but practices intended only to resist deterioration of its own position are not unfair under ss 1 to 7 of this title.  Bailey's Bakery, Limited v. Continental Baking Co., D.C.Hawai'i 1964, 235 F.Supp. 705, affirmed 401

F.2d182, certiorari denied 89 S.Ct. 874, 393 U.S. 1086, 21 L.Ed.2d 779, rehearing denied 89 S.Ct. 1304, 394 U.S. 967, 22 L.Ed.2d 570.  Antitrust And Trade Regulation k  560; Antitrust And Trade Regulation k  621**
(95)15uscas2s.n.73* Specific intent is not necessary to establish a purpose or intent to create a monopoly, but the requisite purpose or intent is present if monopoly results as a necessary consequence of what was done.  U.S. v. Paramount Pictures, N.Y.1948, 68S.Ct. 915, 334 U.S. 131, 92 L.Ed. 1260.  See, also, Twentieth Century Fox Film Corp. v. Goldwyn, C.A.9 (Cal.) 1964, 328 F.2d 190, certiorari denied 85 S.Ct. 143, 379 U.S. 880, 13 L.Ed.2d 87;  Spears Free Clinic and Hospital for Poor Children v.Cleere, C.A.Colo.1952, 197 F.2d 125.  Antitrust And Trade Regulation k  621
(96)*Uses of monopoly power to restrict or eliminate competition or competitors permit inference to be drawn of intent to monopolize as required in actual monopolization cases and specific intent to monopolize need not be established;  rather, plaintiffs need only prove general intent, that is that defendant intended to engage in practices which reduce competition.  Paschall v. Kansas City Star Co., C.A.8 (Mo.) 1982, 695 F.2d 322, on rehearing 727 F.2d 692, certiorari denied 105 S.Ct. 222, 469 U.S. 872, 83 L.Ed.2d 152, rehearing denied 105 S.Ct. 406, 469 U.S.1001, 83 L.Ed.2d 340.  Antitrust And Trade Regulation k  621;  Antitrust And Trade Regulation k   976
(97)* This section may be violated without a specific intent to restrain trade or to build a monopoly if restraint of trade or monopoly results as consequence of defendant's conduct or business arrangements, and specific intent in common law sense is necessary only where conduct or business arrangements fall short of results condemned by this section.  U.S. v. Paramount Pictures, S.D.N.Y.1949, 85  F.Supp. 881, 82 U.S.P.Q. 291, affirmed 70 S.Ct. 1032, 339 U.S. 974, 94 L.Ed. 1380, rehearing denied 71 S.Ct. 70, 340 U.S. 857, 95 L.Ed. 627, affirmed 70 S.Ct. 1032, 339 U.S. 974, 94 L.Ed. 1380, 85 U.S.P.Q. 527.  Antitrust And Trade Regulation k  537;  Antitrust And Trade Regulation k   620
(98) 15uscas2s.n.74* Monopoly power is not condemned by this section only when it was unlawfully obtained, but is condemned by reason of its mere existence together with purpose or intent to monopolize.  Schine Chain Theatres v. U.S., N.Y.1948, 68 S.Ct. 947, 334 U.S. 110, 92 L.Ed. 1245, petition denied 68 S.Ct. 1343, 334 U.S. 809, 92 L.Ed. 1758.  See, also, Bendix Corp. v. Balax, Inc., C.A.7 (Wis.) 1972, 471 F.2d 149,  176 U.S.P.Q. 33, certiorari denied , 94 S.Ct. 43, 414 U.S. 819, 38 L.Ed.2d 251, 179 U.S.P.Q. 321;  Deesen v.

Professional Golfers' Ass'n of America, C.A.9 (Cal.) 1966, 358 F.2d 165, certiorari denied 87 S.Ct. 72, 385 U.S. 846, 17 L.Ed.2d 76, rehearing denied 87 S.Ct. 738, 385 U.S. 1032, 17 L.Ed.2d 680; Kansas City Star Co. v. U.S., C.A.Mo.1957, 240 F.2d 643, certiorari denied 77 S.Ct. 1381, 354 U.S. 923, 1 L.Ed.2d 1438; Mackey v. Sears, Roebuck & Co., C.A.Ill.1956, 237 F.2d 869, certiorari dismissed 78 S.Ct. 114, 355 U.S. 865, 2 L.Ed.2d 70; Kobe, Inc. v.Dempsey Pump Co., C.A.Okl.1952, 198 F.2d 416, certiorari denied 73 S.Ct. 46, 344U.S. 837, 97 L.Ed. 651; United Banana Co. v. United Fruit Co., D.C.Conn.1965, 245F.Supp. 161, affirmed 362 F.2d 849; U.S. v. Chas. Pfizer & Co., S.D.N.Y.1963, 217F.Supp. 199; U.S. v. General Elec. Co., D.C.N.J .1953, 115 F.Supp. 835. Antitrust And Trade Regulation k   641
(99) 15uscas2s.n75.  75. ---- Inferences, monopoly power, monopoly generally
 *Existence of "monopoly power," defined as power to control prices or exclude competition, may be inferred from predominant share of market.  U.S. v. Grinnell Corp., U.S.R.I.1966, 86 S.Ct. 1698, 384 U.S. 563, 16 L.Ed.2d 778. Antitrust And Trade Regulation k 64**
 (100) 15uscas2s.n76**Material issues of fact existed as to whether laser printer manufacturer enjoyed monopoly power in remanufactured toner cartridge market and whether manufacturer engaged in its cartridge return program to achieve total control over remanufactured cartridge market, precluding summary judgment for manufacturer on monopolization claims asserted against it under Sherman Act by toner cartridge remanufacturers.  .  Static Control Components, Inc. v. Lexmark Intern., Inc., E.D.Ky.2007, 487 F.Supp.2d 861.  Federal Civil Procedure k  2484**
(101)* Allegation that defendant had monopolized world market for float glass technology, as well as various regional markets for production and sale of flat glass, were sufficient to state claim for which relief could be granted;  complaint adequately described existence of monopoly power or dangerous probability of monopolizationin particular regional markets. PPG Industries, Inc. v. Pilkington plc, D.Ariz.1993, 825 F.Supp. 1465.  Antitrust And Trade Regulation k  972(3)*
(102) 15uscas2s.n77.  In addition to proving monopoly power in relevant market, antitrust plaintiff bringing action under this section must also show that defendant willfully acquired or maintained that power.  Weiss v. York Hosp., C.A.3 (Pa.) 1984, 745 F.2d 786, certiorari denied 105 S.Ct. 1777, 470 U.S. 1060, 84 L.Ed.2d 836. Antitrust And Trade Regulation k 620

(103) 15uscas2s.n77*In determining whether there has been willful acquisition or maintenance of monopoly power in violation of s 2 of the Sherman Act, proper inquiry is whether the conduct in question is unreasonably anticompetitive. Gaines v. National Collegiate Athletic Ass'n, M.D.Tenn.1990, 746 F.Supp. 738.  Antitrust And Trade Regulation k   620**

(104) 15uscas2s.n79**Size is itself an earmark of monopoly power, and the fact that power created by size was utilized in the past to crush or prevent competition is potent evidence that the requisite purpose or intent attends the presence of monopoly power.  U.S. v. Paramount Pictures, Inc., U.S.N.Y.1948, 68 S.Ct. 915, 334 U.S. 131, 92 L.Ed. 1260, 77 U.S.P.Q. 243, on remand 85 F.Supp. 881, 82 U.S.P.Q. 291. Antitrust And Trade Regulation k   641**

(105)* Though mere size and wealth of a corporation do not alone constitute an illegal monopoly, such factors may be considered in connection with other evidence bearing on alleged monopolistic practices because of opportunity afforded thereby for abuse of power existing by reason thereof, particularly where it appears that in the past the opportunity has been utilized.  American Tobacco Co. v. U.S., C.C.A.6 (Ky.) 1944, 147 F.2d 93, certiorari granted 65 S.Ct. 864, 324 U.S. 836, 89 L.Ed. 1400, certiorari granted 65 S.Ct. 865, 324 U.S. 836, 89 L.Ed. 1400, rehearing denied 65 S.Ct. 1021, 324 U.S. 891, 89 L.Ed. 1438, affirmed 66 S.Ct. 1125, 328 U.S. 781, 90 L.Ed. 1575.  Antitrust And Trade Regulation k   1018

(106)*There is no limit in this country to the extent to which a business may grow, and the acquisitions of property standing alone would not be deemed an illegal monopoly;  but when such acquisitions are accompanied by an intent to monopolize and restrain interstate trade by an arbitrary use of the power resulting from a large business to eliminate a weaker competitor, then they no doubt come within the meaning of this section.  U.S. v. Eastman Kodak Co., D.C.N.Y.1915, 226 F. 62, final decree entered 230 F. 522, appeal dismissed 41 S.Ct. 321, 255 U.S. 578, 65 L.Ed. 795.

(107) Although monopoly power may be inferred from firm's predominant share of market, size alone is not synonymous with market power, particularly where entry barriers are not substantial.  U.S. v. American Tel. and Tel. Co., D.C.D.C.1982, 552 F.Supp. 131, affirmed 103 S.Ct. 1240, 460 U.S. 1001, 75 L.Ed.2d 472.  Antitrust And Trade Regulation k   641

(108) Bigness, as such, is not prohibited by this section, but monopolistic power of itself constitutes an evil and is to be

condemned whether the acts creating it have been lawful or unlawful.  U.S. v. Besser Mfg. Co., E.D.Mich.1951, 96 F.Supp. 304, 88 U.S.P.Q. 421, affirmed 72 S.Ct. 838, 343 U.S. 444, 96 L.Ed. 1063, 93 U.S.P.Q. 321.  Antitrust And Trade Regulation k  620

(109) 15uscas2s.n94* Anticompetitive dangers that implicate Sherman Act are not present if monopolist has lawful monopoly in one market and uses its power to gain competitive advantage in second market, unless monopolist uses its power in first market to acquire and maintain monopoly in second market or attempts to do so.  Alaska Airlines, Inc. v. United Airlines, Inc., C.A.9 (Cal.) 1991, 948 F.2d 536, certiorari denied 112S.Ct.1603, 503U.S.977, 118L.Ed.2d316.  Antitrust And Trade Regulation k620
(110)It is a violation of sections 1 to 7 of this title to use monopoly power in one market to gain a competitive advantage in another albeit without an attempt to monopolize second market.  Berkey Photo, Inc. v. Eastman Kodak Co., C.A.2 (N.Y.) 1979, 603 F.2d 263, certiorari denied 100 S.Ct. 1061, 444 U.S. 1093, 62 L.Ed.2d
783.  Antitrust And Trade Regulation k  620
(111) ) 15uscas2s.n95  Elimination or exclusion of competition, monopoly generally
*Complaint charging monopolization by agricultural cooperative by allegedly threatening and undertaking diverse actions to induce or compel milk dealers to purchase milk from cooperative and inducing and assisting others to acquire dealer outlets which were not purchasing milk from cooperative, and by excluding, eliminating, and attempting to eliminate others, including producers and
producers' agricultural cooperative associations not affiliated with defendant cooperative, from supplying milk to dealers, was sufficient to state a cause of action for violation of antimonopolization provisions of this section.  Maryland & Va. Milk Pro. Ass'n v. United States, U.S.Dist.Col.1960, 80 S.Ct. 847, 362 U.S.
458, 4 L.Ed.2d 880.  Monopolies k  24(10.1);  Monopolies k 28(6.3)**
(112) To sustain claim of violation of Sherman Anti-Trust Act through monopolization or attempt to monopolize based on chilling effect of anticompetitive conduct that prevented potential competitors from entering relevant market, plaintiff must show that defendant's conduct actually caused potential entrants to refrain from competing in the relevant market and must demonstrate that alleged chilling effect harmed competition and injured consumers.  Datagate, Inc. v. Hewlett-Packard Co., N.D.Cal.1987, 672 F.Supp. 1288.  Antitrust And

34

Trade Regulation k   647; Antitrust And Trade Regulation k 713

(113) *To meet the minimum requirements of proof in a market exclusion case in which lost profits are sought, plaintiff must normally produce evidence falling into one of these categories: (1) comparison of plaintiff's performance before and after the wrongful conduct under otherwise similar conditions;  (2) comparison of
performance in restrained and unrestrained markets which are otherwise comparable; or (3) loss of specific business or customers.  Murphy Tugboat Co. v. Shipowners &Merchants Towboat Co., Ltd., N.D.Cal.1979, 467 F.Supp. 841, affirmed 658 F.2d 1256, certiorari denied 102 S.Ct. 1713, 455 U.S. 1018, 72 L.Ed.2d 135.  Antitrust And Trade Regulation k 963(1)**

(114) 15uscas2s.n96**For purposes of monopolization claim, "entry barrier" may be defined as either additional long-term costs which are not incurred by incumbent firms but must be incurred by new entrance, or factors that deter entry into the market while
permitting incumbent firms to earn monopoly returns.  Los Angeles Land Co. v.Brunswick Corp., C.A.9 (Cal.) 1993, 6 F.3d 1422, certiorari denied 114 S.Ct. 1307, 510 U.S. 1197, 127 L.Ed.2d 658.  Antitrust And Trade Regulation k   647

(115 )Factors that court must consider in antitrust case to determine market power, in addition to market share, are strength of competition, probable development of industry, entry barriers, and consumer demand.  Energex Lighting Industries, Inc.v. North American Philips Lighting Corp., S.D.N.Y.1991, 765 F.Supp. 93.  Antitrust And Trade Regulation k   641**

(116) 15uscas2s.n 97. Lawful or unlawful conduct, monopoly generally
*Use of monopoly power, however lawfully acquired, to foreclose competition, to gain a competitive advantage, or to destroy a competitor, is unlawful under this section.  U.S. v. Griffith, Okl.1948, 68 S.Ct. 941, 334 U.S. 100, 92 L.Ed. 1137. See, also, American Federation of Tobacco Growers v. Neal, D.C.Va.1950, 183 F.2d869, affirmed 72 S.Ct. 181, 342 U.S. 143, 96 L.Ed. 162;  U.S. v. Lorain Journal Co., D.C.Ohio 1950, 92 F.Supp. 794.  Antitrust And Trade Regulation k   560; Antitrust And Trade Regulation k   650**

(117) 15uscas2s.n 103*Though no conspiracy was present, disparagement of plaintiffs' products was illegal under sections 1 to 7 of this title when coupled with defendant's power to control prices or exclude competition, even if action based on disparagement alone would not be permissible.  Power

IN THE US COURT OF APPEALS, 1ST AND 3RD CIRS, CCC,
Bureau of Hearings & Appeals
Docket Nos: (0)(a) USDC ME 11-278-JAWó COAF1st 12-1042, 13-
2416COAF1
(0)(b)USDC ME 1:13-mc-00148-JAW <=>COAF1 13-2417

(1) COAF3rd 11-1032óUSDCPa 09-CV-275 with corresponding
docket nos in CCC with comment as stated in 8/10-/2011
pleading in the caption

(2) COAF3rd 11-1390óUDDCPa 00-CV-314

(3)    "      11-2184ó    "      3-11-CV-63 óCCC1366-
116óUSDCPa 12-26 ó COAFrd 2012-2777óUSSC Application
No 12A546

(4) COAF3rd 10-3683 ó USDCPa 3-10-184

(5)    "      11-2710 ó USDCPa 3-11-116

(6)    "      08-4711  "    "      01-135J ó CCC1985-2043 case
joined with (a)1985-1496, (b)1985-2040, (c)1985-2041,
(d)1985-2112, (e)1985-690 or 890 as cannot remember the
exact docket nos on it of CCC as it was against Norman
McGough Insurance Co. on his fleet of 14 to 15 vehicles.

(7) COAF3rd 10-1676óUSDCPa3:09-cv-283 and if federal court
system did not want to process it as RICO case, they should
have transferred it to the right court for damages as my
Cadillac car was damaged very, very badly, while legally
parked on Sherman St adjacent to Krisay's warehouse and
Krisay's personnel are witnesses to the fact that my car was
always legally parked, each and everytime including on the
day, it was hit by Fisher, and when hit, blow moves the car,
out of its place showing that car was hit at great speed
willfully, purposely to deprive Vora of her property, right to
travel etc ., as all was in furtherance of conspiratorial
activities of all kinds &/or in furtherance of several open
ended schemes so Carother's was lying too, all race biased,
antitrust, predatory acts.

(8) Vora v. Conspirators COAF3rd 12-2776 ó USDCPa 11-
2536óUSSC Application No. 12A546

(9) Incident No. 20120725M3950, then withdrawn & dismissed
& replaced by citation no. P 8397660-5, NT-438-2012 ó
USDC 12-151 ó CCC78-12 or maybe 178-12  nos get
officeinterchanged even by USDCPa ó COAF3rd 13-1774

(10)Vora v. Conspirators as an antitrust case listed in all prior
cases against city 28USCAss1441-1448 in IFP & pursuant to 28
USCAs1446 & Justice Stevens opinion in City of Greenwood v.
Peacock, 384 US808, state courts cannot proceed any further, as
their proceedings are stayed automatically and they are

1

forbidden to enter any kind of judgment including 11-253, 11-1390, 3-11-116 etc with docket no : 12-159 ó COAF3rd 13-1775 (wrongly put by clerk  as Vora v. Com)
Docket Nos of CCC 409-00, 2644-06, SA97-06, 476or496-07, 1470-07, 1913-07, 2602-07, 2793-07, SA1-162-07, SA-001-8, SA171-08, all these were joined to (1), (4) with illegal demand of CCC for cost, fines, everything done by them without jurisdiction, without remand order coming from federal court system by CMRR directly to State courts &/or certified copy filed by DA's office within allowed time, making all decisions  null and void & all proceedings with their decisions subject to dismissal as per case law quoted earliar in one of Dr. Vora's pleadings, as all proceedings must take place officially after certified remand order Dr, Vora was defendant and is defendant in practically more than 55 cases filed by these cops on fabricated charges of theirs and as of right Dr. Vora removed these cases to federal court pursuant to 28USCA ss1441-1448 in IFP & pursuant to 28USCAs1446, and Justice Stevens opinion in City of Greenwood v. Peacock, 384US808, state courts cannot proceed any further, as their proceedings are stayed automatically and they are forbidden to enter any kind of judgment in such cases and even destruction of evidence took place that was exculpatory, in favor of Vora and there was clear error of law or fact or to prevent manifest injustice, all these cases of CCC filed by cops should be dismissed, when all 3 factors are present in Vora's cases filed by cops against her.
(11)85-141<=> COAF3rd
(12) Cannot remember the docket nos of all cases, however they can be obtained from US court computer by putting my name in in all 3-4 or more ways to get all docket nos. for consolidation as I am homeless and have no records after what conspirators with city did.

2

Supplement to Brief of COAF1(i.e. US Court of Appeals 1st cir) of 04/21/2014 for 13-2416, 13-2417 cases in 1st cir. joined with all cases resulting since 1985 due to ongoing continuing antitrust, RICO, civil rights violation schemes against Vora as Vora suffered severe harm in all aspects of life as well as business, with request to consolidate all cases resulting from antitrust etc. motives because they are in realty antitrust cases, as it should have been delivered & filed in COAF1 on 04/21/2014, however Polish clerk said they will accept it, and found on 4/26/2014 thro USPS.com that it was fault of Post office &/or COAF1 as they claimed there was nobody to sign for Express Mail on 4/21/2014, as shown by USPS.com tracking enclosed & with caselaws quoted under FRAP4 that courts take it as filed timely, with Question Presented on no. one question presented amended as follows as IFP should be granted for PACER too listed as case (0)(b) above to avoid such kind of problems too & the 1st 2 pages added containing docket nos to Briefs & discovered on 4/29/2014 that conspirators tampered with my JS when it was getting printed or they substituted it everywhere, as cannot easily figure out why it got delivered on 4/22/2014 as ulterior motives of antitrust etc are cause for it as theyseem to have infiltrated the system everywhere.

QUESTIONS PRESENTED

(0) Can Vora be granted IFP and be allowed to proceed in IFP in COAF1 in case (0)(b) for use of PACER, USSC.....

Note with particularity that conspirators wiped out following par. completely from Jurisdictional statement(JS henceforth as part of brief) & went about renumbering tha paragraphs that Vora did not notice it until 3:30 p.m. on 4/29/2014 that it was deleted by conspirators until Vora was going thro previous  JS of USSC, so numbering it as last par. of JS of 4/21/2014 as par 47 below:-
(47)At no time Vora was inside 511 Robb Ave duplex & neither anyone in U-Haul was inside it on 7/25/2012, all was fabricated by city personnel, Killinger, Mellissa Komar, with their supporters & workers, so total egregious, manifest, injust fraud with Antitrust, RICO motives, to preserve achieved monopoly by M.D.s in the market of remedies worldwide, especially in USA is the real cause of it as house was going to be fixed by Hocker of 711 Kennedy Ave, whose estimate was given to city as well as courts on paper on house cases & there was no large fire & dense smoke at all on 2/1/2011 as seen from pleadings with exhibits & they keep on

3

messing with my babycart & Mag Grecek's totally unreasonable ruling that I must have just one babycart at my place of abode when it is an absolute must for me to be able to walk & get around as I need a small baby cart to be able to use public library, as they dont permit big one with my possessions or things on it & just want me to bring what I need in the library for my cases. Antitrust motives are quite clear of these conspirators to demolish my house that was in business zone & I do not have the money to meet unreasonable demands of city that even to erect a shed there survey must be done when they took my good shed which could have been laid down on the ground & was not shot at all & I had purchased all the wood to fix the deck hooked up to the house & just outer flooring had to be reinforced as a precaution & Me conspirators in cohorts with city working conspiratorially together with other conspirators were responsible for what they did to such a solid brick structure when I dont have enough income to even pay rent to anybody as what ever little I get goes for fighting fabricated charges & to preserve my right to earn independently, irrespective of job market especially when I have discovered it myself which took practically all my life to this date and is naturopathy & I am entitled to use my remedies for it without which I cannot even pass a day as such and since it is individualized, it cannot be marketed at all & does require intensive care for faster & good results as such & is not unpractical at all & looking at the characteristics of major class people, I cannot afford to give anything to anybody and they have to make visits at my place or rent a room for me as well as for themselves until city is ordered to build the duplex back.                         (48) No more time as court did not extend the time, so I do not have time to go thro entire JS prepared for USSC & what got sent to USDCME. (49) Note with particularity that Vora was not at all at fault, so should not be penalized & enclosing USPS tracking here of express mail envelopes that it was put in express mail on 4/19/2014, & I am going to see postoffice on it too as my money should be refunded or reimbursed back by just taking charges for priority mail as it took them the same time, when it should have been delivered next day:-
"Tracking Number: EK055783965US
delivered
Scheduled Delivery Day: Monday, April 21, 2014, 3:00 pm
Money Back Guarantee
Signed for By: N OHIJPCD // BOSTON, MA 02210 // 12:45 pm
Product & Tracking Information
Postal Product:
Priority Mail Express 2-Day™
Features:

4

$100 insurance included
PO to Addressee

| Date & Time | Status of Item | Location |
|---|---|---|
| April 22, 2014 , 12:45 pm | https://tools.usps.com/go/TrackConfirmAction!input.action?tRef=qt&tLc=1&tLabels=EK055783965USDelivered<br>Your item was de | BOSTON, MA 02210 |
| April 22, 2014 , 9:20 am | Available for Pickup | BOSTON, MA 02205 |
| April 22, 2014 , 8:55 am | Notice Left (No Authorized Recipient Available) | BOSTON, MA 02210 |
| April 21, 2014 , 11:50 am | Notice Left (No Authorized Recipient Available) | BOSTON, MA 02210 |
| April 21, 2014 , 8:21 am | Out for Delivery | BOSTON, MA 02205 |
| April 21, 2014 , 8:11 am | Sorting Complete | BOSTON, MA 02205 |
| April 21, 2014 , 7:18 am | Arrival at Post Office | BOSTON, MA 02205 |
| April 21, 2014 | Depart USPS Sort Facility | BOSTON, MA 02205 |
| April 21, 2014 , 3:26 am | Processed through USPS Sort Facility | BOSTON, MA 02205 |
| April 19, 2014 , 11:21 pm | Processed at USPS Origin Sort Facility | PITTSBURGH, PA 15290 |
| April 19, 2014 | Depart USPS Sort Facility | JOHNSTOWN, PA 15904 |
| April 19, 2014 , 6:22 pm | Processed at USPS Origin Sort Facility | JOHNSTOWN, PA 15904 |
| April 19, 2014 , 12:10 pm | Acceptance | JOHNSTOWN, PA 15901 |

USPS Tracking™

 Customer Service ›

Have questions? We're here to help.

https://www.usp

Only applicable to visual users.More Details
Tracking Number: EK055783863US

**delivered**

- Scheduled Delivery Day: Monday, April 21, 2014, 3:00 pm

- Money Back Guarantee

- Signed for By: N OHIJPCD // BOSTON, MA 02210 // 12:45 pm

**Product & Tracking Information**

**Postal Product:**

- Priority Mail Express 2-Day™

**Features:**

- $100 insurance included

- PO to Addressee

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| April 22, 2014 , 12:45 pm | https://tools.usps.com/go/TrackConfirmAction.action?tRef=fullpage&tLc=1&text28777=&tLabels=EK+055783863USDelivered  Your item was de | BOSTON, MA 02210 |
| April 22, 2014 , 8:55 am | Notice Left (No Authorized Recipient Available) | BOSTON, MA 02210 |
| April 21, 2014 , 10:00 am | Notice Left (Business Closed) | BOSTON, MA 02205 |
| April 21, 2014 , 8:21 am | Out for Delivery | BOSTON, MA 02205 |
| April 21, 2014 , 8:11 am | Sorting Complete | BOSTON, MA 02205 |
| April 21, 2014 , 7:18 am | Arrival at Post Office | BOSTON, MA 02205 |
| April 21, 2014 | Depart USPS Sort Facility | BOSTON, MA 02205 |
| April 21, 2014 , 3:26 am | Processed through USPS Sort Facility | BOSTON, MA 02205 |
| April 19, 2014 , 11:53 pm | Processed at USPS Origin Sort Facility | PITTSBURGH, PA 15290 |
| April 19, 2014 | Depart USPS Sort Facility | JOHNSTOWN, PA 15904 |
| April 19, 2014 , 6:22 pm | Processed at USPS Origin Sort Facility | JOHNSTOWN, PA 15904 |
| April 19, 2014 , 5:26 pm | Acceptance | JOHNSTOWN, PA 15904 |

**Available Actions**

EK055783863US  2014-04-19 16:3

Proof of Delivery

USPS Text Tracking™

**Confirmation  "**
**(50) Found no updates or any caselaws on PACER in spite of taking**
**my whole day for it as I have to take bus to Greensburg to access**

6

any law material as Ebensburg CCC has nothing in their library & CAMTRAN buses will not give me rides at all since several years on pretextual, predatory reasons of these conspirators as they are part & parcel of these ongoing conspiratorial, antitrust, RICO, civil rights violation schemes against Vora, so not easy to access law material that easily at all.

(51) All the events to this date show that Vora should be granted IFP privileges on PACER as it will save all the trouble of delivering papers on time to courts as well as will allow Vora to check on what is on records in courts of law & with such important cause for the benefit of public in general as well as be able to curb the trends of Hitler, Musulini Stalin etc era too, as it is being done very sophisticatedly now, sending neurologic people to their graves untimely, in a very bad, inhumane fashion.

(52) Vora has been suffering same kind of tactics by these conspirators of ransacking my things spreading them around, stealing whatever they can lay hands on, wetted my sleeping bags too by uncovering the plastic covers on them & Vora has been suffering severely on left hip, left leg ever since what S. Schall did that Vora could not & cannot walk easily at all & even while getting this out, Vora suffered severely today 4/29/2014 at the time 3:30 P.M. that reference librarian noticed it & she came to help to open the lady's room door for me to be able to paste my own remedy on my left side of the body on hip, thigh, toes etc including on my chest, back, head as my remedy takes at least 6 months to show any relief on injuries as such & when it is neurologic damage, it is continuing care to be done for lifetime which seems to be the case on injuries caused by S. Schall etc.

(53) Fact is quite obvious that if Vorta had access to PACER in IFP, Vora would have seen what was in the court files in ME, however at thet time Vora never knew anything about PACER at all until COAF1 case manager happened to mention it to Vora that use of PACER for Vora especially will be very useful & I should try to get access to it & she was under bthe impression that IFP grant carries IFP for PACER use, with which Judge Woodcock apparantly disagrees on that, is quite obvious.

(54)One additional order of Woodcock that conspirators deleted from the folder which Vora found so enclosing here & Vora is taking appeals from practically all orders from A-Z in all the cases which are being set forth here as if in full by reference thereto as permitted in antitrust cases to set records as if in full by reference there to.

Following words should be added to conclusion to briefs in 13-2016, 13-2017 cases joined with all cases resulting since 1985 due

7

**to continuing conspiratorial, antitrust, RICO, civil rights** violation schemes against Vora, etc. activities of all these **conspirators.**

"Due to continuing conspiratorial, antitrust, RICO, civil rights violation schemes against Vora, etc. activities of all these conspirators, Vora should be granted IFP for PACER use to access court records, file documents etc without any charge as requires access to law material too, relevant legal cases too as cause is very important for the benefit of mankind too.  Vora is taking appeal from all orders from A-Z & since what conspirators have been doing, cases should be processed all over again from A-Z with use of PACER in IFP allowed for Vora."

APPENDIX SUPPLEMENTED WITH July 19th 2013 order of Woodcock on both cases of ME (0)(a), (b) not written on separate document, so applicable for both cases & no ruling was given at all on all antitrust motivated cases since 1985 when any USDC Judge can assume jurisdiction of all antitrust, etc motivated cases even if one antitrust act takes place in his jurisdictional area.

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

IN RE:        Motion for Exemption
              of Electronic Public Access Fees              Case No. 1:13-mc-00148-JAW
              by Chandan Vora

<u>ORDER</u>

Before the Court is Chandan Vora's motion for a waiver of fees for Public Access to Court Electronic Records (PACER). *Motion*, ECF No. 1. Fees of the Electronic Public Access Fee Schedule were adopted by the Judicial Conference of the United States Courts and are to be charged for providing electronic public access to court records. Dr. Vora describes herself as a "pro se litigant in IFP"[1] but she does not currently have a pending case before the Court. She has had prior filings in civil case number 2:11-cv-00278-JAW, but that case is closed. According to what can be interpreted from the motion, Dr. Vora requests a waiver of the fees ("[m]otion to grant IFP for use of PACER...") in order to "get needed pages printed out...including medical records...as required by various courts...." *Id.* p. 2.

Courts may, upon a showing of cause, exempt certain classes of individuals, including indigent persons. 28 U.S.C. § 1914 and *Electronic Public Access Fee Schedule (Eff. 4/1/2013)*, § 9. An exemption, if granted, applies only to the grantee's access to the records of the Court that issues the exemption order. In determining whether to grant an exemption, courts should be satisfied that the exemption satisfies two elements. First, the Court must find that the applicant has demonstrated that the exemption "is necessary in order to avoid unreasonable burdens." *Id.* Second, the exemption "must promote public access to information." *Id.* In addition, the Judicial Conference has made it clear that

---

[1] IFP is assumed to mean *in forma pauperis*, a Latin term that generally denotes permission given to an indigent person to proceed without liability for court fees or costs.

Page **1** of **2**

"exemptions should be granted as the exception, not the rule." 28 U.S.C. § 1914, *Judicial Conference Policy Notes.*

In her motion, Dr. Vora indicates that her "income is not sufficient at all" and that she "cannot afford zeroxing (sic) and printing charges." While her motion is unclear, she seems to indicate that she is "homeless...being disabled since 1983." ECF No. 1, p. 2. This description, as it is, does not demonstrate with any specificity her indigency or how an exemption is necessary for her to avoid unreasonable burdens, particularly a financial burden.

As to the second element that the Court must find in order to grant an exemption, i.e. whether the exemption will "promote public access to information," Dr. Vora indicates that she will use the exemption to gather medical records in connection with her cases that she has pending in other courts. *See* ECF No. 1, p. 2. In this way, Dr. Vora does not demonstrate how the exemption would promote public access to the information if she were to obtain the exemption. If the Court were to grant Dr. Vora an exemption, it would effectively confer upon her a private benefit that it does not benefit to the public generally.

The Court finds that the basis for Dr. Vora's request for exemption fails to specifically set forth why the exemption is necessary to avoid unreasonable burdens and does not explain how the exemption would be benefit anyone in the public beyond herself. For these reasons, the motion is accordingly DENIED.

So ORDERED.

/s/ JOHN A. WOODCOCK, JR.
Chief U.S. District Judge

Dated this 19th day of July, 2013.

**Page 2 of 2**

10

Respectfully Submitted,
Chandan Vora_

Certificate of Service
I, Dr Chandan S. Vora do certify that this "Supplement to briefs of 4/21/2014 in all the cases in 1st cir" was put in 1st class ordinary mail, postage prepaid or served in person on following on 4/30/2014 (relevant pages on order of Woodcock for relevant 1st 5 parties.)                                    (1)Clerk thro T. Smith, USCOAF1, , 1 Couthouse Way, Boston, MA 02210
(2)Clerk, thro case manager(unknown name), US Court of Appeals, 3rd cir; US courthouse, 601 Market St., 21400 US Courthouse, Philadelphia, PA 19106(1 copy sufficient for both cases & others too as they scan it as per prior case managers)
(4)E. Holder, US attorney General, 950 PA Ave, Washington DC 20530
(5)PA Attorney General, Strawberry Sq, Harrisburgh, PA17120
(6) Atty Dinan, 95 Exchange Rd., Portland ME 04112
(7)DPW office, 625 Main st, Johnstown PA, 15901   who was also served 2/12/2014 motion, however did not get to list their name in that motion.
(8) City manager with all their personnel of JPD, Codes, Fire depts etc, corner of Main Market st, Johnstown, PA 15901
(9) Psychiatric Ward Director, Dr Patel with all their staff doctors etc, Good Samaritan Hospital, 7th Foor, as per 814-534-9000 no., Johnstown, PA 15905
(10)DAs with its staff, CCC, 2nd Floor, Ebensburg, PA 15931
(11) Ex Judge of CCC Caram Abood, 709 Franklin St., 2nd Floor, Johnstown, PA 15901
(12)Mag Grecek, 1340 Franklin St., Johnstown, PA15905
(13)James L. Madara, M.D., C.E.O. & Executive Vice President, American Medical Association(henceforth in future pleadings as AMEA ) 515 N. State St, F115, Chicago, Ill60654
(14)President Commissioner, Incharge of CC, CCC, Ebensburg, PA15931
(15)Clerk of Courts including CCC Judges like Krunemacker, Creany, Tuwoliski, Kiniry, Long, etc CCC, Ebensburg, PA 15931
(16)President, CEO, Scott Becker, Memorial Hospital, 1086 Franklin St., Johnstown, PA 15905
(17)Mag Musulin, Central Park Complex basement, Johnstown, PA 15901
(18)Ron W. Repak, 173 Gerry LN, 15904 (formerly Director of JRA, when 511 Robb Ave Duplex was demolished illegally etc.)
(19)Director & CEO of Johnstown Redevelopment Authority, 4th Floor, Public Safety Building, 401 Washington St, Johnstown, PA 15901

11

(20)Secretary, delivered to The Director, Bureau of Hearings &
Appeals, P.O. Box 2675, Harrisburg, PA 17105-2675
(21) clerk USDCWPA, Rm 208, PennTraffic Bldg, Johnstown PA
15901 on 7/24/2014 to prevent any kind of Statute of limitation
running out whichever way courts take it & interpret it.

*chandan Vora*

CHANDAN VORA , with mailing address: c/o Budget Transmission,
340 Bedford st, Johnstown, PA 15901

---

IN THE US COURT OF APPEALS, 1ST AND 3RD
CIRS, CCC, Bureau of Hearings & Appeals
Docket Nos: (0)(a) USDC ME 11-278-JAWó COAF1st 12-
1042, 13-2416COAF1
(0)(b)USDC ME 1:13-mc-00148-JAW <=>COAF1 13-2417

 (1) COAF3rd 11-1032óUSDCPa 09-CV-275 with
  corresponding docket nos in CCC with comment as
  stated in 8/10-/2011 pleading in the caption
 (2) COAF3rd 11-1390óUDDCPa 00-CV-314
 (3)   "  11-2184ó  "  3-11-CV-63
  óCCC1366-11óUSDCPa 12-26 ó COAFrd 2012-
  2777óUSSC Application No 12A546
 (4) COAF3rd 10-3683 ó USDCPa 3-10-184
 (5)   "  11-2710 ó USDCPa 3-11-116
 (6)   "  08-4711 "  "  01-135J ó CCC1985-
  2043 case joined with (a)1985-1496, (b)1985-2040,
  (c)1985-2041, (d)1985-2112, (e)1985-690 or 890 as
  cannot remember the exact docket nos on it of CCC as
  it was against Norman McGough Insurance Co. on his
  fleet of 14 to 15 vehicles.
 (7) COAF3rd 10-1676óUSDCPa3:09-cv-283 and if federal
  court system did not want to process it as RICO case,
  they should have transferred it to the right court for
  damages as my Cadillac car was damaged very, very
  badly, while legally parked on Sherman St adjacent to
  Krisay's warehouse and Krisay's personnel are
  witnesses to the fact that my car was always legally
  parked, each and everytime including on the day, it was
  hit by Fisher, and when hit, blow moves the car, out of
  its place showing that car was hit at great speed
  willfully, purposely to deprive Vora of her property, right
  to travel etc ., as all was in furtherance of conspiratorial
  activities of all kinds &/or in furtherance of several open
  ended schemes so Carother's was lying too, all race
  biased, antitrust, predatory acts.
 (8) Vora v. Conspirators COAF3rd 12-2776 ó USDCPa 11-
  253óUSSC Application No. 12A546
 (9) Incident No. 20120725M3950, then withdrawn &
  dismissed & replaced by citation no. P 8397660-5, NT-
  438-2012 ó USDC 12-151 ó CCC78-12 or maybe 178-
  12  nos get officeinterchanged even by USDCPa ó
  COAF3rd 13-1774
(10)Vora v. Conspirators as an antitrust case listed in all
prior cases against city 28USCAss1441-1448 in IFP &
pursuant to 28 USCAs1446 & Justice Stevens opinion in
City of Greenwood v. Peacock, 384 US808, state courts
cannot proceed any further, as their proceedings are

stayed automatically and they are forbidden to enter any kind of judgment including 11-253, 11-1390, 3-11-116 etc with docket no : 12-159 ó COAF3rd 13-1775 (wrongly put by clerk as Vora v. Com)

Docket Nos of CCC 409-00, 2644-06, SA97-06, 476or496-07, 1470-07, 1913-07, 2602-07, 2793-07, SA1-162-07, SA-001-8, SA171-08, all these were joined to (1), (4) with illegal demand of CCC for cost, fines, everything done by them without jurisdiction, without remand order coming from federal court system by CMRR directly to State courts &/or certified copy filed by DA's office within allowed time, making all decisions null and void & all proceedings with their decisions subject to dismissal as per case law quoted earliar in one of Dr. Vora's pleadings, as all proceedings must take place officially after certified remand order Dr, Vora was defendant and is defendant in practically more than 55 cases filed by these cops on fabricated charges of theirs and as of right Dr. Vora removed these cases to federal court pursuant to 28USCA ss1441-1448 in IFP & pursuant to 28USCAs1446, and Justice Stevens opinion in City of Greenwood v. Peacock, 384US808, state courts cannot proceed any further, as their proceedings are stayed automatically and they are forbidden to enter any kind of judgment in such cases and even destruction of evidence took place that was exculpatory, in favor of Vora and there was clear error of law or fact or to prevent manifest injustice, all these cases of CCC filed by cops should be dismissed, when all 3 factors are present in Vora's cases filed by cops against her.

(11)85-141<=> COAF3rd

(12) Cannot remember the docket nos of all cases, however they can be obtained from US court computer by putting my name in in all 3-4 or more ways to get all docket nos. for consolidation as I am homeless and have no records after what conspirators with city did.

Motion for (1) correction on docket nos which came to Vora's attention on 6/16/2014 as conspirators tampered again replacing equivalent sign <==> with 6 or something else in 4/30/2014 pleading as supplement to breifs while printing, (2) Default Judgment on the part of all conspirators who failed to even file a response to my brief, in spite of service conducted on them legally & briefs served on them & request the court to join all conspirators & get service conducted on all others thro US Marshall with all antitrust motivated cases since 1985 be consolidated as antitrust motivated cases with request to US Court of Appeals to pass an order that will make US District Court judge to assume jurisdiction of all antitrust motivated cases which are practically all cases filed against Vora & that Vora filed without having known at all what antitrust meant until recently & grant judgment in my favour with orders to rebuild my brick duplex house of 511-5111/2 Robb Ave with deck & steel fence around it etc. as many predatory incidents were prior to conspiratorially planned predatory incidents of ME, and some after that & duplex house filled with valuable contents taken over as climax to severely restrain trade, competition in the market of remedies & services especially in USA including to deprive me of records, papers etc with evidence, including the identity of that Irish origin girl from New Jersey who had sent copies of medical bills with her name etc listed there demanding payment for medical expenses etc.; with order to put all my items back in the house as they probably sold them illegally or converting them for their own use, with treble the amount of all types of damages, including punitive, exemplary, all types of damages for their antitrust deeds trying to eliminate Vora completely from the competition & have worsened my condition very badly that I have pains throughout, aggravating all preexisting injuries etc., with my chest, back, legs, hips, head, toes, fingers etc.hurting all the time with involuntarily painful sounds coming of my mouth, was not able to control excretary Motion on stools 7th time on May 30th 2014 morning & all this started only after chemical drugs for psychiatric & psychotic drugs were injected intravenously by force into my body when I refused consent for them as Memorial hospital Drs claimed, I was committed involuntarily to hospital by cops including Patel, so they can do anything & my consent or nonconsent for them makes no difference & federal court & 3rd cir did

nothing on it & they are participants conspiratorially in all such illegal activity of genocide being committed of neurologic people in sophisticated fashion in this land just to preserve illegally achieved monopoly in the market of remedies & services for human beings and cannot be called mercy killing as medical world cannot soothe neurological pains so they are killing them illegally by giving psychotic, psychiatric etc drugs to neurologic people which does not soothe them at all, makes them loose control of excretary motions like stools which is a torture for them & I think either kills them or medical world is killing them when they could have referred them to Naturopathist like Vora with fees paid by them &/or insurance cos made to pay for their welfare of keeping them alive & still be productive withoutb loosing senses, as far as I am concerned & is manifest injustice, so would like 1st cir to act as fast as possible & assume jurisdiction of all their illegal activities including illegal demolition of my brick duplex after minor fire damage just on 511 Robb Ave side & no damage done to 5111/2 Robb Ave side at all from Dec 6th 2010 fire, with all my property taken from the duplex by these conspirators illegally claiming I was inside the duplex when nobody was in there, as 1st cir has not indicated to this date that they will take jurisdiction on all these cases as predatory antitrust acts of these conspirators & I cannot let statute of limitation run on it as dont know how they will take it as other given name cases or antitrust cases & injunction is a must, & as far as I am concerned it is clearcut antitrust deeds of conspirators climaxing to July 25th 2012 incident of demolition beginning of my duplex brick structure taking all my property, to severely restrain trade, competition in the market of remedies & human services hoping that they can eliminate me totally from it by eliminating me from the world & I cannot take chances at all of becoming a pauper & not having compensated me adequately with no loss of wages put in my pockets at all to live for the rest of my life to live decently, comfortably,  ever since 1983 after disabling me very badly due to their ongoing conspiratorial activities with murders, genocide being committed to preserve their illegally achieved monopoly in the market of remedies & services, especially in USA which includes the predatory acts of inserting a rubber tube in my hymen breaking the hymen, then fabricating a venereal disease of Iranian origin, Trichomonasis pursuant to their schemes & conspiratorial activities of all kinds including to appoint a less qualified D. Berghelia to open Topology position at OSU with sponsorship for a resident alien card & claiming to have cured Trichomonasis by "Flagyl" & publishing in Physicians PDR ever since then that it cures

Trichomonasis, taking lives of federal court witnesses of mine at various times including of Dr. S. L. Gugalia, Dr G. Bostert & his wife who had informed me about disappearance of my nephew from Jabalpore University campus on Oct30th 1973 & the fact remains that Gugalia was using Flagyl to cure amoebiosis in his patients & to whom I had written a letter asking him why I bled when they inserted rubber tube in my vagina on pretext of testing my kidneys without any literatue on it being given to me, & he just sent letter to my father, with G. Bostert & his wife telling me the truth on it & Bostert declared that University systems & SFC horribly discriminated against me saying that venereal diseases cannot be cured at all in 1991Dec, 1992 beginning with OSU sending those fabricated records to me at my Lorretto address with Lorretto post office date of Aug11th, 1983 on it which I got after I was released from the hospital in Oct 1983, which they made it disappear too later on, as Bhopal genocide incident of Union Carbide in 1984 killing 43000 people also was done over an empty gasoline can which I had with me to be able to buy gas at cheapest rate on the way back, with K. Grady security guard calling me dum headed claiming it can explode etc, all falsehood to the best of my knowledge as a scientist, etc. so injunction is a must on these conspirators to prevent repetition of the past deeds as antitrust acts have not ceased at all to this date & will continue unless restraint by courts of law to give relief to Vora as well as public for their some health problems as Vora is not well at all, & Vora caught very severe cough & cold, when she had to pull out her small baby carts with big babycart out of Stonycreek river when these conspirators took everything what I had on those babycarts & then dumped them into the river, as Vora had fallen 3 times into the river when she tried pulling the 2 small babycvarts out of the river & city cops did not even come to take a report on these incidents showing clearly that city personnel are part of all this as they did the same thing again on the big babycart given to me by McMinn which I could not pull it out at all, however, soup Kitchen worker helped me to pull it out of the river & found one wheel was not there at all & then got stolen when I had mentioned to FBI that I was going to get it fixed with replacement wheels & that it is a federal crime to dump anything into the river.

  Now comes Vora & avers as follows in support of above:-      (1)Vora gained a severe cough & cold when she could not find anybody to help her to get her 2 babycarts out of the river, as she had to do it herself knowing that she has to use them to walk with to prevent severe pains as well to help me to walk &

knowing quite well that these big baycarts do not last very long when I got that big one from McMinn who did not want it on his porch. Vora's cough & colds don't go away that easily & last more than 3 weeks or more even with chemical drugs from the date Vora contracted it & is still continuing & good or bad weather seems to make no differece & I have to use my gene therapy internally to prevent coughing which I started taking in Dec 2010 as situation had become desperate with cough lasting over a month before fire & had called my older sister on Dec5th 2010 night (& the phone was picked up by my nephew's wife) saying that it soothes cough too .

(2)(a) Insurance cos practically all of them are part & parcel of these conspirators including Gsisinger as I was shocked to see that they don't pay for the charges of Chiropractors, Naturopathy, homeopathy etc practitioners when their remedies are far superior to medical world remedies in many things like burns, neurologic condition, vaccine scars etc. & is per se violation of antitrust laws as indicated in the brief of Vora & fact remains that it is not mercy killing at all of neurologic people as such as M.D.s are refusing to accept the truth that my remedies of Naturopathy are far superior to theirs that my gene therapy brings disastrous pain especially neurologic pain in control very fast without adverse reaction of any kind which can send them into spasms if something is not done rightaway to sooth it which medical world has been unsuccessful to this date & torturing neurologic people with psychiatric, psychotic drugs by fabricating such diagnosis to cover up their deficiencies at the expense of lives of neurologic people as they loose control of excretary motions & are being killed by them for being insanitary or they cannot do anything for them & not referring them to others like Naturopathist with insurance cos paying for their charges for which court ruling is required as insurance cos are refusing to pay anybody else other than M.D.s for their chemical drugs &/or their any kind of services, which is nothing more than genocide & cannot be called mercy killing. (b)Literature of Geisinger says clearly that they don't pay for services of anybody else other than registered M.D.s, & that they pay for generic drugs only, clearly showing that they are all part of conspirators restraining competition severely & era of Hitler, Musulini, Stalin etc is still continuing in a very very sophisticated fashion as generic drugs do have the effect of swollen body parts which chemical drugs cannot reduce & then they die eventually & I am surprised how all this can happen & shows clearly antitrust motives to preserve achieved monopoly in the market of remedies & services by these M.D.s in cohorts with insurance cos paying only for services

by M.D.s as there is no other logical explanation for it ignoring Naturopathist, homeopathist, chiropractors, etc..

(3) Vora was unsuccessful uptil 6/10/2014 to get listing of all in network Drs. From Geisinger & they gave Vora just 5 names with addresses & phone numbers & all of them are not compatible as Vora never wanted a catholic Dr. knowing that catholic church with catholics stick together generally & they go for major class people's version & are not very reliable at all & don't hesitate to kill in sophisticated fashion, as Dr Bostert had catholic family physician & both, he & his wife died when they declared Colleges & Univerwsity system discriminated horribly againt me & that venereal diseases cannot be cured at all & did tell me that a woman bleeds when her hymen is broken & they were pronounced dead in 30 days & were witnesses to what I had at 1178 Milford St, with vast scientific library & was evicted illegally from there by catholic & Jewish people in cohorts with conspirators. One name given by Geisiger is quite far up the hill with no transportation to go there, another one is a catholic in downtown, another one said they are taking no new clients at all, another is a neurologist who retired, another one is orthopedic Dr just for knees & hipps & a person cannot go to them at all that easily, so it seems to be very time consuming with Drs telling me they are not taking new patients & Vora is not getting X-rays taken or get tests done etc.

(4) My other phone battery was switched too, replaced with a dead battery by these conspirators in May 2014 that I cannot use it now & have not been successful to get a battery for it so far & on cell phones even 800 no calls deduct mins.

(5) I would like to bring to the attention of the court its ruling of March 10th 2014 saying "Appellant's motion for leave to extend the time to file a response to the motion to dismiss is denied as moot since Appellee has not filed a motion to dismiss the Case" & court had oedered that my brief should be filed on 4/21/2014 & since the court was closed on that date as oer post office, papers were delivered on 4/22/2014 as they were unsuccessful to get anybodies sinature for them on 4/21/2014 & as Todd Smith said on the phone to me that until the court rules on Dinan's motion to dismiss he is not required to file a response to my brief in 30 days or get an extension of time to answer my brief, which I think is not the case, as by the same token all opposite parties briefs were due on 5/22/2014 or extension of time should have been put in by them & most are represented by attorneys familiar with legal process which they chose not to file as they were not able to contest anything in my brief, so I am putting the Motion for default judgement, as Dinan with others on whom service got

conducted at Appellate stage by me are required to file an answer to my brief in 30 days if they did not file motion to extend the time on which all defaulted.

(6)Note with particularity that Vora has to still write complaint up against these conspirators & hope courts will take my pleadings on it as part & parcel of complaints to prevent statute of limitation running if courts do not want to process them as antitruat case on illegal demolition of my house with all my property taken from there, etc & knowing the characteristics of these conspirators, they will do it again as by now they have done it more than 4 times & Vora is in no position anymore to do any kind of fixing or working on the house etc  which she could do it earliar slowly, so best remedy for Vora by courts is to order the city to build brick duplex back again to prevent manifest injustice & irreparable harm to Vora as they had no right to demolish my brick duplex in 2 years for minor fire damage just on 511 Robb Ave side, that could be fixed & I was willing to do that & even contractor Hocker was ready to go in to start the work as I was ready to pay his charges for it & nothing seems to match the kind of house I had at 511 Robb Ave & in tax sales also, it is difficult to find any property that a person can live in it as usually they require quite a lot of repairs which Vora had done on 511 Robb Ave duplex & Vora was not compensated adequately at all after they disabled her so looking far into the future, considering the fact that not even enough medical expenses got put in my pockets for all the expenses incurred even uptil release point by medical world when I have been using & will be using my remedies for life as pains are horrible & was put in this neurologic condition with AVM's created by them in inoperatable part of the brain, so city with conspirators have done severe irreparable harm to Vora as even the big building at 636 Main St where the coin shop is, has been in state of disrepair since 5-6 yrs & city did nothing on it & coin shop owner tells me city told him they are going to do nothing on that building for another 3yrs showing clearcut horrible discrimination with antitrust motives of extreme kind.

(7)Note with particularity that antitrust activities of these conspirators have not ceased i.e. stopped yet & city personnel are part & parcel of it as on 6/10/2014 when I went to my 511Robb Ave duplex yard to cut the grass around 8:15P.M., found that my babycart with 4-5 pairs of tennis shoes etc on it with probably another babycart on it to steady it with business license in plastic sealed bag even with no tresspassing sign on it was gone & found that my sign was put on 513 Robb Ave bldg by somebody which I found next day as city personnel, who had just cut enough grass of 2 to 3 square yards to reach

my babycart & take all my property on it & surrounding it & did not even cut the grass properly, to reach it & even though Sheetz gas station person at the counter called non emergency number for cops to come, look at it to take the report, nobody even came to take the report & found all the trimming that was done by them of lots of hedges from somebody's fence was dumped in my yard, so on 6/11/2014 around 11:10 A.M. I went to check what else was taken & found that handycapped commode which I was using to sit on it to rest etc was gone too with some pots with soil & seeds that I had planted were gone too. & even though cops were called again for it by me using somebody's landline phone telling them that I will be on 511 Robb Ave duplex for another 45mins after I reach there in at most 15 to 30 mins, no cops came to take report at all around 2P.M. showing clearcut conspiratorial, antitrust activities of city personnel with county personnel, so had no choice but to leave a message by calling 533-2067 hoping that capt Frior will get the voicemail message, however a cop answered & simply said he will give the message to him & I told them to pick their garbage up as city personnel are the culprits as I saw a pickup truck with 2 lawn mowers in it with yellow shirts that city personnel wear when doing job for the city & would like to get my property back as city personnel keep on taking my property wherever they can get it, showing clearly that city personnel were & are the culprits on dumping garbage with conspirators in my yard time & again even when my house was intact, when I was living there & when brick building was there too & found that city personnel with conspirators had cut the wild growing hedge of Rager property of 513 Robb Ave that was blocking the Robb Ave St & dumped it on my property of the yard & thry did nothing in their yard, I had no choice but leave a message for Mr Bernard, FBI agent at 262-9290, & apparantly that made city personnel to clear up their garbage on my property as it was in furtherance of their conspiratorial activities otherwise they would not have done it & city manager C. Denne resiged on 6/11/2014 as all this is & was severely in furtherance of their antitrust activities severely restraining trade competition in the market of remedies & services including for human health, giving me problems in my injured condition by these conspirators with no consideration for me at all & trying to get my property of yard too by hook or by crook to severely restrain trade, competition in the market of remedies & services & probably the Rager owner of 513 Robb Ave iis related to cop Rager for them not showing up at all & even my weed cutter that I bought last year found that it went dead, probably the battery got switched on it replacing it

with dead battery as I dont know if batteries go dead in 1 yr on it which is unlikely as I had called FBI on on all theses happenings too & felt city is doing all the still pursuant to & in furtherance of their antitrust schemes to restrain competition in the market of remedies & services etc & Econo Lodge worker told me cops never show up even if they call sometimes showing clearly severe discrimination of all kinds with antitrust activities in furtherance of their antitrust RICO etc schemes to severely retrain trade, competition in the market of remedies & services, usually at most crucial times.

(8)Practces in PA seem to evict minority people in every corner of the world, most of the time illegally, take their property including their lifetime work pursuant to their antitrust motives to restrain trade, competition in the market of remedies & services & they dont hesitate to intrude into their homes too switch orders too or pages in pleadings illegally to preserve their fraudulent version in furtherance of their antitrust activities to restrain competition in the market of remedies & services & continue genocide tactics of neurologic people in a very sophisticated fashion & to make sure that I do not get to access public library, as even one good tire on  new babycart was stolen early in the morning or at night time on 6/14/2014  which Vora discovered while trying to go to the library & had to return back to get the big babycart to prevent wheels getting torn down as it was done to my small babycart too previous week that its 2 wheels are no good & library people do not want such huge babycarts inside & it cannot go on Westmoreland County buses to Greensburg too as there is no room for it in there. Such wornout babycarts are just good for parts like wheels & tires & have to be thrown out or given to junk yards as recyclable property.

(9)No more time & after Vora gets to put another antitrust suit in PA federal court, then only Vora will get any time to read further on civil rights statutes, Amends of US constitutions & put any supplements if needs to be put in on discovery of some new caselaws unless court acts very fast assuming jurisdiction of all antitrust cases including those in PA including on 511 Robb Ave duplex brick structure as Vora's income is not sufficient at all to meet insurance premiums & rental of a place for herself & cannot live with anybody else to prevent trade secrets getting stolen & did not want to go thro same rigmoralle that I experienced with landlords in Johnstown for their no good places, so Vora is better off staying homeless, sleeping on private porches & try to spend winters in India for which Indian passport is needed as they had stolen it in furtherance of their antitrust schemes to restrain competition in the market of services & remedies & BLS International hired

by Govt of India for passport purposes is giving trouble saying proof of residence is needed with address, so I have not been successful in getting a passport so far from Indian Govt & I am not going to risk anything knowing quite well that I am eligible for no benefits in this land as indicated by the various govt agencies & I cannot give up my morals & values at all & I do not trust anybody anymore in this land as nothing was done fairly & adequately to make me whole & all efforts were to use me like a slave, to restrain trade, competition in the market of remedies & services & will stop at nothing as genocides have been committed & are continuing & after rendering me in such horrible condition, I cannot do anything physically in India & someone has to do things for me as I am not able as even taking steps these days is quite a pain, so hope court will order the city of Johnstown to build my brick duplex structure back up which they had no right to demolish it in the 1st place pursuant to their schemes of all kinds & I have no intention to part with my discoveries as it is for the preservation of Jain religion & my family values & is for the benefit of my family & People of my group seeing what I was put thro & how city of Johnstown enacted unconstitutional, totally unreasonable statutes, ordinances just to target me & accomplish their illegal goals & courts did nothing to this date to correct it as calling aluminium cans as garbage & punishable if they are in garbage is totally unreasonable, whimsical & shows clearcut antitrust motives as they knew in advance how my father survived when his father died when he was 4 yrs old, so have no faith left in anybody as such.

Respectfully

Submitted,

*Chandan Vora.*      Chandan Vora

Certificate of Service
I, Dr Chandan S. Vora do certify that this "Motion for (1).... (2) Default Judgement..." was put in 1st class ordinary mail, postage prepaid or served in person on following on 6/16-/2014
(0)Clerk, USDCWPA, Rm208, PTB, J, PA15901 on 7/24/2014
(1)Clerk thro T. Smith, USCOAF1, , 1 Couthouse Way, Boston, MA 02210
(2)Clerk, thro case manager(unknown name), US Court of Appeals, 3rd cir; US courthouse, 601 Market St., 21400 US Courthouse, Philadelphia, PA 19106(1 copy sufficient for both cases & others too as they scan it as per prior case managers)

(4)E. Holder, US attorney General, 950 PA Ave, Washington DC 20530

(5)PA Attorney General, Strawberry Sq, Harrisburgh, PA17120

(6) Atty Dinan, 95 Exchange Rd., Portland ME 04112

(7)DPW office, 625 Main st, Johnstown PA, 15901  who was also served 2/12/2014 motion, however did not get to list their name in that motion.

(8) City manager with all their personnel of JPD, Codes, Fire depts etc, corner of Main Market st, Johnstown, PA 15901

(9) Psychiatric Ward Director, Dr Patel with all their staff doctors etc, Good Samaritan Hospital, 7th Foor, as per 814-534-9000 no., Johnstown, PA 15905

(10)DAs with its staff, CCC, 2nd Floor, Ebensburg, PA 15931

(11) Ex Judge of CCC Caram Abood, 709 Franklin St., 2nd Floor, Johnstown, PA 15901

(12)Mag Grecek, 1340 Franklin St., Johnstown, PA15905

(13)James L. Madara, M.D., C.E.O. & Executive Vice President, American Medical Association(henceforth in future pleadings as AMEA ) 515 N. State St, F115, Chicago, Ill60654

(14)President Commissioner, Incharge of CC, CCC, Ebensburg, PA15931

(15)Clerk of Courts including CCC Judges like Krunemacker, Creany, Tuwoliski, Kiniry, Long, etc CCC, Ebensburg, PA 15931

(16)President, CEO, Scott Becker, Memorial Hospital, 1086 Franklin St., Johnstown, PA 15905

(17)Mag Musulin, Central Park Complex basement, Johnstown, PA 15901

(18)Ron W. Repak, 173 Gerry LN, 15904 (formerly Director of JRA, when 511 Robb Ave Duplex was demolished illegally etc.)

(19)Director & CEO of Johnstown Redevelopment Authority, 4th Floor, Public Safety Building, 401 Washington St, Johnstown, PA 15901

(20)Secretary, delivered to The Director, Bureau of Hearings & Appeals, P.O. Box 2675, Harrisburg, PA 17105-2675

*Chandan Vora*

CHANDAN VORA , with mailing address: c/o Budget Transmission, 340 Bedford st, Johnstown, PA 15901

**\*\*Note with particularity that Jan Savit is not a podiatrist at all & is pediatric neurologist so hospital should not have even imposed him on me in 1996 showing clearcut antitrust motives to restrain trade, competition in the market of remedies & services   by these conspirators.**

**Chandan Vora after 2sets to 1st & 3rd cirs went in mail.**

IN THE US COURT OF APPEALS, 1ST AND 3RD CIRS, CCC
Docket Nos: (0)(a) USDC ME 11-278-JAW ⇔ COAF1st 12-1042,
13-2416COAF1
(0)(b)USDC ME 1:13-mc-00148-JAW <=>COAF1 13-2417

(1) COAF3rd 11-1032⇔USDCPa 09-CV-275 with
corresponding docket nos in CCC with comment as stated in
8/10-/2011 pleading in the caption

(2) COAF3rd 11-1390⇔UDDCPa 00-CV-314

(3) "        11-2184⇔     "        3-11-CV-63 ⇔CCC1366-
11⇔USDCPa 12-26 ⇔ COAFrd 2012-2777⇔USSC
Application No 12A546

(4) COAF3rd 10-3683 ⇔ USDCPa 3-10-184

(5) "        11-2710 ⇔ USDCPa 3-11-116

(6) "        08-4711 "     "        01-135J ⇔ CCC1985-2043
case joined with (a)1985-1496, (b)1985-2040, (c)1985-2041,
(d)1985-2112, (e)1985-690 or 890 as cannot remember the
exact docket nos on it of CCC as it was against Norman
McGough Insurance Co. on his fleet of 14 to 15 vehicles.

(7) COAF3rd 10-1676⇔USDCPa3:09-cv-283 and if federal
court system did not want to process it as RICO case, they
should have transferred it to the right court for damages as
my Cadillac car was damaged very, very badly, while legally
parked on Sherman St adjacent to Krisay's warehouse and
Krisay's personnel are witnesses to the fact that my car was
always legally parked, each and everytime including on the
day, it was hit by Fisher, and when hit, blow moves the car,
out of its place showing that car was hit at great speed
willfully, purposely to deprive Vora of her property, right to
travel etc ., as all was in furtherance of conspiratorial
activities of all kinds &/or in furtherance of several open
ended schemes so Carother's was lying too, all race biased,
antitrust, predatory acts.

(8) Vora v. Conspirators COAF3rd 12-2776 ⇔ USDCPa 11-
253⇔USSC Application No. 12A546

(9) Incident No. 20120725M3950, then withdrawn & dismissed
& replaced by citation no. P 8397660-5, NT-438-2012 ⇔
USDC 12-151 ⇔ CCC78-12 or maybe 178-12 nos get
officeinterchanged even by USDCPa ⇔ COAF3rd 13-1774

(10)Vora v. Conspirators as an antitrust case listed in all prior
cases against city 28USCAss1441-1448 in IFP & pursuant to 28
USCAs1446 & Justice Stevens opinion in City of Greenwood v.
Peacock, 384 US808, state courts cannot proceed any further, as
their proceedings are stayed automatically and they are forbidden
to enter any kind of judgment including 11-253, 11-1390, 3-11-
116 etc with docket no : 12-159 ⇔ COAF3rd 13-1775 (wrongly
put by clerk  as Vora v. Com)

1

Docket Nos of CCC 409-00, 2644-06, SA97-06, 476or496-07, 1470-07, 1913-07, 2602-07, 2793-07, SA1-162-07, SA-001-8, SA171-08, all these were joined to (1), (4) with illegal demand of CCC for cost, fines, everything done by them without jurisdiction, without remand order coming from federal court system by CMRR directly to State courts &/or certified copy filed by DA's office within allowed time, making all decisions null and void & all proceedings with their decisions subject to dismissal as per case law quoted earliar in one of Dr. Vora's pleadings, as all proceedings must take place officially after certified remand order Dr, Vora was defendant and is defendant in practically more than 55 cases filed by these cops on fabricated charges of theirs and as of right Dr. Vora removed these cases to federal court pursuant to 28USCA ss1441-1448 in IFP & pursuant to 28USCAs1446, and Justice Stevens opinion in City of Greenwood v. Peacock, 384US808, state courts cannot proceed any further, as their proceedings are stayed automatically and they are forbidden to enter any kind of judgment in such cases and even destruction of evidence took place that was exculpatory, in favor of Vora and there was clear error of law or fact or to prevent manifest injustice, all these cases of CCC filed by cops should be dismissed, when all 3 factors are present in Vora's cases filed by cops against her.
(11)85-141<=> COAF3rd
(12) Cannot remember the docket nos of all cases, however they can be obtained from US court computer by putting my name in in all 3-4 or more ways to get all docket nos. for consolidation as I am homeless and have no records after what conspirators with city did.


Motion for Injunction on Johnstown cops as a fat cop claiming to be Janciga lying & telling me that I am not permitted on Econo Lodge premises to get cans from their property even if they are put anywhere near or in their private garbage container anywhere on their property as he claimed I dont have their permission when I have their permission, however Econo Lodge owner Mr. Vijay Patel says he is not going to call Capt. Frior to tell him that as he is too busy & does not want to take time out for it. & submitting it as supplement to facts on brief too.
Now comes Vora & avers as follows:-
(1) Sgt Janciga with other conspirators are extremely racist with antitrust motives to restrain trade, competition in the market of remedies, & they will stop at nothing to defeat jurisdiction of 1st cir to take jurisdiction of all antitrust motivated cases resulting from antitrust predatory acts to

2

severely injure competition in the market of remedies & deeds in furtherance of their conspiratorial activities of all kinds including to restrain trade, competition in the market of remedies & services & they are still continuing as Jo Ann of room 1007 of Vine Towers, a Checkoslavakian origin person tells me as told to her probably by catholics involved or conpirators that if you invest your money in Canadian banks, you do not have to pay taxes in USA which is absolute falsehoods to put me in trouble with the law & to put me in prison to accomplish their goals & tells me that she was raped many times in this land probably in Johnstown including by a black person, & claimed further that Dr Murtha even molested her, & telling me Abood wants her to appoint him as her trustee for whatever she has & she claimed her father gave her $100 per day & admitted people lie horribly in this country, telling me Ihat I was a Professor at UPJ, had a daughter & she died, advising me to go back to India for good to be treated with dignity etc as she admitted, I am getting horrible treatment in this land & I told her I am minority in India too & we have to face same kind of situation & if I had been given Full Professorship with tenure in India in the years 1976-1978 I would not have come to USA at all knowing IU Bloomington experience of administrative assistant telling me in 1971 not to admit more than 30 students & then pointing a finger at me telling Dr Brothers that I did not admit more than 30 students when students went to him to gain admittance in my class of Algebra & Trigonometry, which I never had (& I never trusted India very much hearing from my mother how fiance of her late sister was poisoned, lost his mind became violent like an animal making animal like sounds after he ate betel leave preparation given to him by his female classmate, as he was engaged to her sister & how he was declared 1st class first at B.Sc exams final at Nagpur University, that day & knowing that it could take several years of access to libraries which people of my group never had in India unless you have permanent position in India at the University system in India) as I would have had access to University library in India for life to take care of problem I was having since 1975 & had lasted until 1998 fall if I was given Full professorship with tenure only & knowing quite well how scientific work of minority person like me gets stolen in academic world & seeing catholic priest behaviour in Mumbai in 1978 at American Embassy in Mumbai I could not take chances on anything, keeping in mind the words of Hindu monk in 1957-58 saying "Goddess of learning, you will suffer from a disease between the ages of 30-32 & if it is discovered & if I survive thro it I will live long otherwise I will die" as my illhealth brought me to India in

3

those years of 1976-1978 & medical world did not succeed at all to bring the health problem in control in India, Iran, US too & knowing that in 1964 I was the one had diagnoised Jaundice in my older pregnant sister that I had to resort to libraries & do extensive research in Law, etc & I did manage to bring the problem I was having in control thro my own discoveries by 1998 fall, which medical world conspiratorially set it backwards wiping out all the gains I had made on it & put me in worse condition in 1983 & since 2011 when Janciga, cop Smith, Grecek's office people put me involuntarily in hospital & injecting psychiatric, psychotic drugs as predatory acts in spite of my refusal to take them & were injected intravenously that to this date 7 times In could not control excretary motions & how fabricating charges against me by lying all the time & found on 6/23/2014 that Janciga is Slovakian name from eastern Europe & he is married to British origin lady, daughter of Johnstown cop in high ranks they were & have been fabricating charges, intimidating witnesses too with people & threaten them & their traits do not cease in this land at all. So injunction is a must on them as I did tell that cop that, he has no right to tell or dictate to anybody on anything on private property so he tells me if he sees me again taking anything cans from anywhere on Econo lodge property including from their garbage containers where they put it usually, he will arrest me & get me put in prison as done several times by these cops lyingly in cohorts with PA courts & are invoking unconstitutional, unreasonable city etc ordinance, theft, charges etc what not as done many times previously, which they took all my research, caselaws papers away from 511 Robb Ave duplex & trying to take my life to severely restrain competition in the market of remedies, after having stolen all my scientific library, handwritten notes, techniques etc without which even a normal person cannot do anything when they have no access to those materials for more than 30-40 years & was not given position with right rank, right salary too & I am glad that I pursued the scientific research that led me to the discovery of gene therapy to make myself independent of it & trying to defeat antitrust claims of mine that will bring SS benefits after 8 yrs once courts order them to pay my charges as done for M.D.s, so competition in the market of remedies is not injured, with charges of conspiratorially participating in genocide tactics of Hitler, Musulini, Stalin era which are still continuing as Slovakia was part of communist dominated Russia once upon a time & Krunemacker is trustee of Memorial hospital, part Russian, part German, so injunction is a must as could not get a family doctor so far of Indian origin who know what naturopathy, homeopathy etc is so last week

4

had to go for Pakistani origin Dr. in Johnstown, pursuant to Obama Law & Geisinger Insurance requirements to get any testing done & Duquesne University is Eastern European University too with N. Fisfis from there as attorney of St Francis College keeping in mind threat from 3 white girls claiming to be relatives of Duquesne University faculty members since 1992 beginning saying " give us 50% of the business profits to us otherwise business will not see the light of the day" & seeing how lives of Kamla Bai Gandhi, Mrs M.E. Criste, Dr & Mrs Bostert, Dr. Gugalia, 43000 people in Bhopal in 1984 over an empty gasolin can etc got taken they will stop at nothing to defeat antitrust suit & claims, competition in the market of remedies & services, in 1st cir or any courts anywhere in US & in my condition I cannot do anything physically now since 1983 anywhere & I have not been compensated adequatelly with loss of wages for life after disabling me like this with horrible pains & suffering that cannot even walk easily for a block, cannot even take a step at times, cannot even write at times or use my hands at times & found that Vine St Towers are full of bugs including bedbugs & I found that to be the case in any place I have been in houses when my 511Robb Ave duplex was free of these & never had a bug bitting me there at any time, so I do need the duplex brick house to be built back by the city for them having demolished it illegally severely restraining competition in the market of remedies & seeing how people are suffering from genetic origin conditions including ex President G. Bush Sr are suffering from etc which can possibly be prevented with the use of my gene therapy which is individualized with the persons own gene going in there so should help control such problems as logic & science dictates that to me, etc & at this age of 68, I cannot work anywhere in the world when I cannot take a step at times, cannot walk without a babycart even a block as nothing will bring any kind of benefits anywhere other than what Insurance cos will pay on order of courts as my remedies are far superior to medical world remedies by experience in burns, pains, cough, cold, stroke, controlling spasms, strokes, etc in me that I have not ended up in hospital for such things since 1996 & is per se violation of antitrust laws & I am not a Hindu, Christian, Muslim, Jew, Sikh, Zardostti, Budhist etc that is not any major class person in any corner of the world. So injunction is a must on these conspirators for benefit of mankind, competition in the market of remedies & services as with the help of my family of my brother, only kins who are responsible to take care of me as per traditions & customs of my Society, we should be able to render these services on payment of my charges for the

5

services as they do have some knowledge on it & I have no intention to divulge all these trade secrets to anybody as per principles of my religion & knowing that nothing brought decent living in my life in spite of 4 degrees from reputable institutions & have to protect it to preserve my family & religion values, so do need injunction on these conspirators, even to prevent ongoing genocide of neurologic people as I had seen the word neurologic with my own eyes in my records by very good experienced Drs including L. J. Schrock which these conspirators made it disappear totally from everywhere pursuant to their schemes including to restrain competition in the market of remedies besides the motive that they dont have to pay loss of wages for life to me, so only people who could restrain them is courts of law in USA & be able to prevent it as I have not lost my thinking ability yet, which literature on neurologic conditions say can happen very fast in 10-20 years now, earliar they were saying for 10 yrs & I am still alive since 1983 where I had seen them in the records & I think I saw such a thing while I was at IU Bloomington when I had gone to Indianapolis school of medicine for something, not knowing then what it meant & have no record or papers on it as conspirators vanished with them too, which seems to be the common practice in this land, so it is more than 30 yrs from 1983 & these Drs of Valley surgeons were quite well trained Drs., I know that for a fact & from 1996 it is 18 yrs now.

(2) I did call Capt Friar & FBI too on Jancigas behaviour besides clerk of 1st cir who told me to put all this in writing so sending it in.

Respectfully Submitted,

Chandan Vora

*Chandan Vora*

Certificate of Service

I, Dr Chandan S. Vora do certify that this "Motion for Injunction....&... Supplement to facts on brief...." was put in 1st class ordinary mail, postage prepaid or served in person on following on 6/25-/2014

(0)Clerk USDCWPA, Rm 208, Penn Traffic Bldg, Johnstown PA 15901 on 7/24/2014

(1)Clerk thro T. Smith, USCOAF1, , 1 Couthouse Way, Boston, MA 02210

(2)Clerk, thro case manager(unknown name), US Court of Appeals, 3rd cir; US courthouse, 601 Market St., 21400 US Courthouse, Philadelphia, PA 19106(1 copy sufficient for both cases & others too as they scan it as per prior case managers)

(4)E. Holder, US attorney General, 950 PA Ave, Washington DC 20530

(5)PA Attorney General, Strawberry Sq, Harrisburgh, PA17120

(6) Atty Dinan, 95 Exchange Rd., Portland ME 04112

(7)DPW office, 625 Main st, Johnstown PA, 15901

(8) City manager with all their personnel of JPD, Codes, Fire depts etc, corner of Main Market st, Johnstown, PA 15901

(9) Psychiatric Ward Director, Dr Patel with all their staff doctors etc, Good Samaritan Hospital, 7th Foor, as per 814-534-9000 no., Johnstown, PA 15905

(10)DAs with its staff, CCC, 2nd Floor, Ebensburg, PA 15931

(11) Ex Judge of CCC Caram Abood, 709 Franklin St., 2nd Floor, Johnstown, PA 15901

(12)Mag Grecek, 1340 Franklin St., Johnstown, PA15905

(13)James L. Madara, M.D., C.E.O. & Executive Vice President, American Medical Association(henceforth in future pleadings as AMEA ) 515 N. State St, F115, Chicago, Ill60654

(14)President Commissioner, Incharge of CC, CCC, Ebensburg, PA15931

(15)Clerk of Courts including CCC Judges like Krunemacker, Creany, Tuwoliski, Kiniry, Long, etc CCC, Ebensburg, PA 15931

(16)President, CEO, Scott Becker, Memorial Hospital, 1086 Franklin St., Johnstown, PA 15905

(17)Mag Musulin, Central Park Complex basement, Johnstown, PA 15901

(18)Ron W. Repak, 173 Gerry LN, 15904 (formerly Director of JRA, when 511 Robb Ave Duplex was demolished illegally etc.)

(19)Director & CEO of Johnstown Redevelopment Authority, 4th Floor, Public Safety Building, 401 Washington St, Johnstown, PA 15901

*Chandan Vora*

CHANDAN VORA , with mailing address: c/o Budget Transmission, 340 Bedford st, Johnstown, PA 15901

6/24/2014 06:36:23 PM

**Note: Everything seems to addup, Duquesne University being East European catholic school, Janciga too from around there, 3 white girls threatening me in Pittsburgh, in '92 etc. so do point to conspiratorial etc. activities of all kinds.

(40)Vora is setting the contents of questions presented with short answers given earlier here as if in full by reference thereto, as Vora has formulated them in quite details referring to facts in there & even statement of cases can be inferred from there as Vora just  short version wrote of ME events

(41)Since my flash drive was stolen and files containing opinions etc were stolen &/or wiped out, time & again, I had to take time out to try to put it together, so dont know if I can get most corrected version of Questions Presented typed, prepared on time or not as they were in quite details after doing it again after 7-8-2013, as conspirators are doing everything possible to prevent anything going to COAF1, USSC at all & Vora is sleeping on private porches, whoever permits Vora to do that or dont object on it and Vora has to keep her things, paoers that way too and many times conspirators just vanish with them as on 7/3/2013 when Vora left her big babycart on backside of Family Kitchen when R. Edwards said she will type 1 or 2 pages for me, I was forced to leave my big babycart behind Family Kitchen with all my things and I found on 7/4/2013 that raincoat was stolen and on 7/5/2013 found that one plastic bag containing a big handbag got stolen from big babycart which had some papers in it too with other items and the characteristics of these conspirators is to vanish with things important Notes etc on the last moment and did discover that 15USCAs15 Notes of mine were deleted too from my flashdrive, so had to take time out to put them together and had to number the case laws again, so injunction is an absolute must on these conspirators.  Vora's financial conditions are very stringent & knowing quite well that a person cannot even live properly in an independent place on welfare &/or SSI & Vora will never be eligible for any benefits of Welfare or SSI as such in her lifetime because of nontransferable assets in India when Vora entered into agreement with State Bank of India for higher interesat rate than USA that principal would be non transferable once it get converted into rupees as I was denied section 8 housing in early 90 decay even when I had no such nontransferable assets in India as I had left everything for my parents use in their old age and courts did nothing for me & all money was wasted by taking all that in courts, so I had to do that in my disabled condition as justice does not exist in this land for most minority group person like me in every corner of the world & knowing quite well that M.D.'s are taking lives of neurologic people by giving them pychotic, pyschiatric drugs on pretext of helping them, when it is nothing more than torture, as they loose control of excretary motions which makes their condition oderous, dirty etc., just like a new born

baby, quite embarrassing too subjecting them to depressions etc, including shame in public etc.., pain & suffering etc. (42)Vora asserts again that right remedy now is to order city officials of Johnstown to build my duplex brick structure back at their expense with nothing coming out of my pockets at all, exactly the way it was built on grounds of 511 Robb Ave duplex, to prevent irreparable harm to Vora with respect to everything, business, life, property etc., & compensate Vora for all the property taken by them, pretextually calling it garbage & lying that it went to dumpster when they carried it away at my expense, even using my own rented U-Haul partly on July 25th 2012 & will not give it back to me, so entitling me to treble the damages as it was done illegally in violation of many US, PA Statutes including statute, that was removed from everywhere wilfully, maliciously by these conspirators pursuant to their conspiratorial activities of all kinds, antitrust RICO, civil rights violation of Vora illegal schemes too, as every step is  painful otherwise, usually showing how white people stick together even when they are lying as Sierra Finnelli is not the Manager of 1st floor complex there at all and the way cop Slisz lied then and lied again on 6/18/2013(I cannot recall this date unless JPD & city personnel interferred & remotely accessed my computer switching the date of 3/18/2013 to 6/18/2013 to prevent antitrust claims & injury claims to go thro as by now I know the characteristics of JPD cops,) as done on Schall knocking me down by her vehicle on 3/18/2013 & backdationg it to 3/14/2013 & driving over my foot by backdating the date of S. Schall incident do show serious ongoing conspiratorial activities, and that everything is being done in furtherance of their RICO, Antitrust, civil rights violation of Vora etc schemes restraining trade, competition etc in the market of remedies & services too besides other motives and ongoing open ended schemes.
(43)Note with particularity that dorsal AVM results usually from injuries suffered at some time which was the case in 1983 which medical world failed to detect to this date & all rigged everything to cover up their deeds pursuant to their several open ended schemes, so that Vora will not get compensated at all for ir & had set 535 Oakland Ave on fire & took everything including my vast scientific, law library etc from there on caselaws etc with the caselaw that had said that when closed brain injury occurs, & there is internal bleeding in the brain, invariably person dies, however in rare cases trapped blood  transforms into abnormal blood vessels which the expert M.D. there called it as membranes, however I found

2

that on internet which they made it disappear as I could not
locate it again, however got to make a copy of what it said &
had shown to one of the reference librarian in the public
Library of Johnstown & had mentioned to one other reference
librarian of German origin that I managed to make a copy of it
& it is a fact that every single word spoken & written word of
an alien is practically a public knowledge especially to govt
officers, & was surprised to see on 4/12/2014 that wording
dorsal AVM has been switched to dural AVM on my copy of it
on flash drive, showing clear conspiratorial etc activities of all
kinds, & that antitrust, RICO etc activities are still continuing in
a very bad fashion for this to happen as Vora does recall
seeing the word "dorsal AVM" there so all I can produce is the
tampered version of the AVM literature, so does show I am at
odds with very powerful conspirators etc., determined to
restrain, trade, competition in the market of remedies by all
possible means & I decided to mention this here due to the
fact that Supreme Devotee of God had made an appearance
in 1996 around the time Catlin was charged with arson telling
me clearly that "whatever has happened to this date is due to
conspiratorial activities of Italian origin people with their
supporters & workers & they are still continuing, so be careful
as innocent person is in prison ". . Dural avms, in adults are an
acquired disorder that can occur following an injury. "  Since
the words Dorsal got switched to dural Vora would say that all
AVM's practically are resulting from injuries as that would be
the most logical explanation for it.  Until injury is discovered
statute of limitation does not start running on it, so even if
taken as an accident besides antitrust case, statute of
limitation has not run on it at all as I discovered this while
trying to send brief in 13-2416 case on 4/8/1014 and no
question about it that if sand got plucked out of my face, there
was injury around my head too resulting in an AVM, causing
neurologic pains etc and can cause spasms too, so accident
cases of 1983 needs to be reopened too & Vora must be
compensated with loss of wages for life too, & it was part &
parcel of ongoing antitrust conspiratorial activities too as Vora
does not have adequate income to pay for Insurance
coverage offered by Geisinger for 100% coverage, the way I
had BCBS uptil around 1996, however BCBS does not offer
that anymore under Obama Law & do not have enough

3

income to even rent a decent place to live in at all as all my income goes for storages, acting as my own attorney for court cases & there is nothing left for anything else when I should have been compensated with Loss of Wages for life then they would have had to pay into SS for me to make me eligible for SSB for which I am not eligible at all as never got to work on resident alien card for more than 1 & half year & work on any other visa is not counted for SSB at all.

(44)Vora asserts & setting down verbatim rulings of courts in various cases here as no separate documents were entered by any of the Judges in USDCME in any of the cases & all orders wee combined, so Vora's appeals were taken timely as Vora does not have very much time on it with word limits on it & the antitrust etc. activities of these conspraters &/or parties opposite to Vora are still continuing, that found the applicable case laws opinions for courts with nos on them corresponding to numbers on caselaw listing, got wiped out by these conspirators from my flash drive on 42USCAs1985, so since there is lack of time, if Vora gets time, she will be just sending the opinions on them without numbers as such that are applicable to Vora's cases & causes & Vora asserts them too here as part of Vora's brief & assertions on her causes, see App(j(ii)42USCAs1985(1)-(201) opinions after opinions of FRAP4,& applicable opinions to Vora's cases on FRAP4 are being quoted here verbatim & Vora is asserting these opinions verbatim as all such facts are present in Vora's cases including taking into account papers that were sent by Express mail to USDCME, & were not docketed on the date of receipt by them, which are considered as filed on the date they received them IN USDCME & not as filed in the docket sheets. showing clearly that Vora's appeals were timely, no matter how they look at it & just hope court will act consciensciously & uphold Vora's rights, on payments from Insurace Cos for Vora's remedies & services, including to herself, as Vora just cannot go for inferior remedies & services of medical world, totally beyond Vora's reach & Vora cannot afford them at all with severe risk to Vora's health condition. See Appj(ii)FRAP4(1)-((154) as they were entertained & accepted for filing, so, cases appeals got taken timely. All was wiped out earliar with arguments on it from my most uptodate JS for the cases in USDCME.

4

(45)Note with particularity that atty Dinan seem to be part of these consppirators & not very consciontious as the zip code he provided in his last motion etc turned out to be the zip code of his P.O. Box & not that of 95 Exchange Road, as earliar post office delivered all mail to him with the zipcode he supplied in his pleadings with address as 95 Exchange Rd., but on 4/14/2014, 2 pges of case laws sent to him too on 15USCAs26 caselaws that inadvertantly missed in 1st 5 sets of my 4/4/2014 "Motion..." came back to me saying returned for better address, & when I showed on my computer, the zipcode atty Dinan provided for "95 Exchange rd., P.O. Box ...", post office said it is just for his P.O.Box *& the zip code for 95 Exchange rd is different, & they put a different zip code & told me to put another stamp to deliver it to him. so it was not my fault as any person would take it as the same zipcode for both addresses.

(46) Since conspirators wiped out my most uptodate jurisdictional statement(henceforth JS) with argument & case references on FRAP4, I should not be penalized at all for their deeds, so all I can do is put this in express mail on 4/19-/2014. Respectfully Submitted, *Chandan Vora .*
Chandan Vora , c/o Ed, Budget Transmission, 340 Bedford St., Johnstown, PA 15901.
E-mail: chandansvora@earthlink.net

My notes on 42 USCA s1985 as of 1/30 2013 applicable just for present cases in cts,cert

2. Constitutionality

(1)**Subsec. (3) of this section, was constitutional, under congressional power to protect right of interstate travel, as applied to action in which plaintiffs alleged that they were traveling on highways near interstate border, that conspiracy prevented Negroes from exercising rights to travel, and that conspiracy was inspired by defendants' erroneous belief that out-of-state person was worker for civil rights.  Griffin v. Breckenridge, U.S.Miss.1971, 91 S.Ct. 1790, 403 U.S.88, 29 L.Ed.2d 338.  Commerce k  74.70

(2)When plaintiff alleging conspiracy to interfere with civil rights, pursuant to federal civil rights statute, does not assert any federal interest or involvement with alleged conspiracy, court must conclude that claims are based upon provision of statute proscribing conspiracy to obstruct due course of justice with intent to deny equal protection, or provision proscribing conspiracy to go in disguise on highway or premises of another for purposes of denying another equal protection or equal privileges and immunities under the law.  Santos v. County of Los Angeles Department of Children and Family Services, C.D.Cal.2004, 299 F.Supp.2d 1070, affirmed 200 Fed.Appx. 681, 2006 WL 2521553.  Conspiracy k   18

(3)**This section was designed to prevent deprivation of equal protection of the laws and equal privileges and immunities, not to serve as general federal tort law that would permit suit for fraud or breach of contract.  Jackson v. Cox, C.A.5 (Tex.) 1976, 540 F.2d 209.  Conspiracy k  7.5(1)

*(4)*This section was intended to provide redress for victims of conspiracies impelled by commingling of racial and political motives.  Hampton v. Hanrahan, C.A.7 (Ill.) 1979, 600 F.2d 600, certiorari granted in part ,judgment reversed  in part 100 S.Ct. 1987, 446 U.S. 754, 64 L.Ed.2d 670, rehearing denied 101 S.Ct. 33, 448 U.S. 913, 65 L.Ed.2d 1176, rehearing denied 101 S.Ct. 33, 448 U.S. 913, 65 L.Ed.2d 1177, on remand 499 F.Supp. 640, on remand 522 F.Supp. 140. Conspiracy k  7.5(2)

(5)**In order for private conspiracies to be actionable under s 1985(3), it must be motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus. Byrd v. Hopson, W.D.N.C.2003, 265 F.Supp.2d 594, affirmed 108 Fed.Appx. 749, 2004 WL 1770261.  Conspiracy k  7.5(1)

12. ---- Subject-matter jurisdiction

**District court had jurisdiction of action for damages and injunction against conspiracy to deprive plaintiffs of their constitutional rights to equal protection of the laws and equal

1

privileges and immunities guaranteed by the Constitution and laws of the United States by means of force, intimidation and threats. Condra v. Leslie & Clay Coal Co., E.D.Ky.1952, 101 F.Supp. 774. Federal Courts k  221

13. ---- Personal jurisdiction
**Individuals sued in their personal capacities under s 1983 or s 1985 are not immune from suit in federal court even if performing acts within their authority and necessary to fulfilling governmental responsibilities. Lewis v. Board of Educ. of Talbot County, D.Md.2003, 262 F.Supp.2d 608. Federal Courts k  269

15a. ---- Supplemental jurisdiction
**The s 1985 claims, under federal law, brought by members of spiritual movement against newspapers and individual editors and reporters for conspiracy to interfere with civil rights, and members' state law claims for defamation, defamation per se, and prima facie tort under New York common law and for violation of New York civil rights statute, involved common nucleus of operative fact that would ordinarily be expected to be tried in one judicial proceeding, and thus, federal district court did not abuse its discretion by exercising supplemental jurisdiction over state law claims. Friends of Gong v. Pacific Culture, C.A.2 (N.Y.) 2004, 109 Fed.Appx. 442, 2004 WL 1792080, Unreported, certiorari denied 125 S.Ct. 909, 543 U.S. 1054, 160 L.Ed.2d 777. Federal Courts k  15

16. ---- Pendent jurisdiction
**District court had power to hear pendent local trespass and public nuisance claims in federal litigation against antiabortion activists for conspiring to interfere with travel rights of women seeking abortions, where claims were sufficiently substantial to support federal jurisdiction and where local claims arose out of common nucleus of operative fact such that it would ordinarily be expected that they would be tried in same proceeding with federal claim. National Organization for Women v. Operation Rescue, C.A.D.C.1994, 37 F.3d 646, 308 U.S.App.D.C. 349, on remand 929 F.Supp. 461. Federal Courts k  15

18. Exhaustion of state remedies--Generally
**Threatened injuries to one's civil rights might conceivably be made subject of injunctive relief or relief in federal habeas corpus but extraordinary relief in federal court would, in absence of exceptional circumstances, necessarily be conditioned on petitioner's exhaustion of available state remedies. Burns v. Wilkinson, W.D.Mo.1971, 333 F.Supp. 94. Civil Rights k  1315

24. ---- Adequacy, exhaustion of administrative remedies

2

**Where many of components of wholly adequate administrative grievance procedure were not present, where it appeared that grievance procedures would be futile gesture on part of civil rights claimant, and where claimant alleged immediate threatened discrimination coupled with irrevocable harm, it was not necessary for claimant to further exhaust existing administrative grievance procedures in order to pursue its request for preliminary injunction. Jones v. Niagara Frontier Transp. Authority, W.D.N.Y.1981, 524 F.Supp. 233. Civil Rights k 1316

27. Venue

**Where action is based on an alleged conspiracy within this section relating to conspiracies for purposes of depriving any person or class of persons of equal protection of laws, the action may be brought in the district where the conspiracy was formed or in any district where an overt act occurred. Jones v. Bales, N.D.Ga.1972, 58 F.R.D. 453, affirmed 480 F.2d 805. Federal Courts k 74

28. Stay of proceedings

**Although plaintiff's civil rights action, in which he charged that defendants by action under color of state law subjected and conspired to subject him to deprivation of his constitutionally guaranteed rights by falsely accusing him of criminal charges and causing him to be arrested and confined without probable cause, possessed a common underlying factual genesis with state tort suit for false arrest, in view of fact that the civil rights action presented both issues of fact and of law which state court had not, could not, and would not resolve, civil rights suit would not be dismissed and proceedings would not be stayed pending a final resolution of state court action based upon doctrine of comity and need for judicial efficiency. Luker v. Nelson, N.D.Ill.1972, 341 F.Supp. 111. Action k 69(5); Federal Civil Procedure k 1755

42. ---- Witnesses, standing

**Individual who was witness, but not party in previous federal action, had standing to bring action under civil rights statute prohibiting conspiracy to deter party or witness from testifying in court of United States. Foster v. Pall Aeropower Corp., M.D.Fla.2000, 111 F.Supp.2d 1320. Conspiracy k 17

45. Complaint--Generally

**Complaint alleging civil rights conspiracy claim must allege that defendants did conspire for purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws, then must assert that one or more of conspirators did, or caused to be done, any act in furtherance of object of conspiracy, whereby another was injured in his

3

person or property or deprived of having and exercising any right or privilege of citizen of the United States. Andrews v. Fowler, C.A.8 (S.D.) 1996, 98 F.3d 1069. Conspiracy k   18

**In order to recover for conspiracy to deprive plaintiff of civil rights, plaintiff is required to allege that the purpose of the conspiracy was to deprive plaintiff of equal protection, privileges and immunities, or to obstruct course of justice, that defendants intended to discriminate against plaintiff, that defendants acted under color of state law and authority, and that the acts done in furtherance of the conspiracy resulted in an injury to plaintiff's person or property or prevented him from exercising a right or privilege of a United States citizen. Sykes v. State of Cal. (Dept. of Motor Vehicles), C.A.9 (Cal.) 1974, 497 F.2d 197. Conspiracy k   18

**When plaintiff alleging conspiracy to interfere with civil rights, pursuant to federal civil rights statute, does not assert any federal interest or involvement with alleged conspiracy, court must conclude that claims are based upon provision of statute proscribing conspiracy to obstruct due course of justice with intent to deny equal protection, or provision proscribing conspiracy to go in disguise on highway or premises of another for purposes of denying another equal protection or equal privileges and immunities under the law. Santos v. County of Los Angeles Department of Children and Family Services, C.D.Cal.2004, 299 F.Supp.2d 1070, affirmed 200 Fed.Appx. 681, 2006 WL 2521553. Conspiracy k   18

 48. ---- Specificity or particularity of allegations, complaint

**Former home improvement store employee's complaint sufficiently alleged facts which supported her conspiracy to retaliate claim, while providing fair notice of what claim was and grounds upon which it rested; complaint alleged facts which, if true, suggested reasonable expectation of, and rendered plausible, the existence of agreement to retaliate against her for her assistance in coworker's employment discrimination and retaliation case, and although complaint never used word "agreement," facts employee alleged were sufficient to suggest presence of circumstantial evidence that such an agreement existed. Aque v. Home Depot U.S.A., Inc., N.D.Ga.2009, 629 F.Supp.2d 1336. Conspiracy k   18

**Allegations that community college officials, through law enforcement agents, intimidated and threatened criminal process against professors to suppress their protected opposition to practices were sufficient to state claim for ss 1985 conspiracy. Spector v. Board of Trustees of Community-Technical Colleges, D.Conn.2006, 463 F.Supp.2d 234. Conspiracy k   18

Allegations by property management company, which

provided housing to low income minorities, and its sole shareholder that town and town officials sought to curtail their business by seizing their office space without prior notice, refusing to process their landlord's building permit applications, singling out their minority-occupied properties for inspection, delaying social service applications of their minority clients and issuing false press release about company were of sufficient particularity to state claim against town and town officials for conspiracy to violate civil rights. Pisello v. Town of Brookhaven, E.D.N.Y.1996, 933 F.Supp. 202.  Conspiracy k   18

 54. Estoppel

**Civil rights complaint alleging conspiracy to secure convictions by knowing use of perjured testimony should not have been dismissed on theory of collateral estoppel to claim perjury resulting from criminal convictions based on the allegedly perjured testimony, since court could not know whether veracity of witnesses had been adequately put in issue in the state prosecution, nor whether general verdict of guilty was necessarily based on acceptance of allegedly perjured testimony, without examination of record in state trial. Kauffman v. Moss, C.A.3 (Pa.) 1970, 420 F.2d 1270, certiorari denied 91 S.Ct. 93, 400 U.S. 846, 27 L.Ed.2d 84. Federal Civil Procedure k  1755

58. Limitations--Generally

**While ss 1985 actions have not been expressly limited by rule set forth in Wallace v. Kato that statute of limitations upon ss 1983 claim seeking damages for false arrest in violation of Fourth Amendment, where arrest is followed by criminal proceedings, begins to run at time claimant becomes detained pursuant to legal process, ss 1983 and ss 1985 are usually treated together.  Hargroves v. City of New York, E.D.N.Y.2010, 694 F.Supp.2d 198.  Limitation Of Actions k 58(1)

60. Dismissal

**A simple fact of an unreversed state conviction cannot by itself require dismissal of civil rights action based thereon. Kauffman v. Moss, C.A.3 (Pa.) 1970, 420 F.2d 1270, certiorari denied 91 S.Ct. 93, 400 U.S. 846, 27 L.Ed.2d 84.  Judgment k 559

**Rule 8, Federal Rules of Civil Procedure, Title 28, providing that plaintiff's cause is not to be dismissed for failure to state a claim unless it appears without doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief, applies to civil rights actions.  Gillibeau v. City of Richmond, C.A.9 (Cal.) 1969, 417 F.2d 426.  Federal Civil Procedure k 1773

61. Summary judgment
**Allegations by plaintiff of a series of acts by members of borough police department, directed against black persons, with evidence of racial animus, within period of a few months, and that such facts were known to superior officers of borough and subject to comment and inquiry at meetings of borough council raised issue of material fact as to whether there was a tacit agreement or official policy of acquiescence by the borough, precluding summary judgment in favor of borough on plaintiff's claim that borough conspired to violate plaintiff's civil rights in violation of 42 U.S.C.A. s 1985(3). Gant v. Aliquippa Borough, W.D.Pa.1985, 612 F.Supp. 1139.  Federal Civil Procedure k  2491.5

67. Injunction--Generally
**Action for injunctive relief can be posited upon this section. Mizell v. North Broward Hospital Dist., C.A.5 (Fla.) 1970, 427 F.2d 468

69. ---- Education, schools, and students, injunction
**Eleventh Amendment did not bar relief, under Civil Rights Act, in suit brought by teacher against state education department and high school vice principal, seeking injunction prohibiting future gender and national origin discrimination. Sherez v. State of Hawai'i Dept. of Educ., D.Hawai'i 2005, 396 F.Supp.2d 1138.  Federal Courts k  269;  Federal Courts k 272

 70. ---- Employment, injunction
**Former employee was entitled to proceed with her civil rights claims for injunctive relief against state officials in their official capacities.  Werthman v. Illinois Dept. of Mental Health and Developmental Disabilities, N.D.Ill.1993, 831 F.Supp. 625. Civil Rights k  1359

72. Damages
**Constitutional violations which occurred when plaintiff was allegedly subjected by defendant correctional officers to conditions of confinement which were punitive in nature were redressible by substantial compensatory award independent of actual injury.  Villanueva v. George, C.A.8 (Mo.) 1981, 659 F.2d 851.  Civil Rights k 1462

**Plaintiff who has proven violation of civil rights statutes is entitled to recover nominal, compensatory and punitive damages as well as damages for emotional distress actually caused by deprivation of civil rights;  successful plaintiffs may also obtain equitable relief in form of back pay, reinstatement and injunctive relief.  Perez v. Cucci, D.N.J.1989, 725 F.Supp. 209, affirmed 898 F.2d 139, affirmed 898 F.2d 141, affirmed 898 F.2d 142.  Civil Rights k  1455;  Civil Rights k  1469;  Civil Rights k  1471;  Civil Rights k   1474(1)

6

**In claim for violation of constitutionally guaranteed rights damages are recoverable, nominal damages may be presumed, and nominal damages may in appropriate circumstances support award of exemplary damages. Tracy v. Robbins, D.C.S.C.1966, 40 F.R.D. 108, appeal dismissed 373 F.2d 13. Civil Rights k 1461

## II. ELEMENTS OF CONSPIRACY

**city codes people, conspirators involved** done to Vora of having & exercising rights, privileges of US citizens like Catlin, Hosmer, Vora, etc,

### 101. Elements of conspiracy generally

**To prove existence of civil rights conspiracy to deprive persons of rights or privileges, plaintiffs must prove: that defendants did conspire, for purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, that one or more of conspirators did, or caused to be done, any act in furtherance of object of conspiracy, and that another person was injured in his person or property or deprived of having and exercising any right or privilege of citizen of United States. Larson by Larson v. Miller, C.A.8 (Neb.) 1996, 76 F.3d 1446. Conspiracy k 7.5(1)

**Civil rights conspiracy claim includes four elements: (1) conspiracy; (2) for purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of laws or of equal privileges and immunities under laws; and (3) act in furtherance of that conspiracy; (4) whereby person is either injured in his person or property or deprived of any right of privilege of citizen of United States. Keenan v. Allan, E.D.Wash.1995, 889 F.Supp. 1320, affirmed 91 F.3d 1275. Conspiracy k 7.5(1)

### 102. More than one actor, elements of conspiracy

**This section which in relevant part creates a cause of action for conspiracies to deter any party or witness in any court of the United States from attending such court or from testifying to any matter pending therein is aimed only at conspiracies among two or more persons. Burch v. Snider, D.C.Md.1978, 461 F.Supp. 598, motion denied 87 F.R.D. 546. Conspiracy k 7.5(2)

### 104. Meeting of the minds, elements of conspiracy

**Genuine issue of material fact as to whether ex-wife of plaintiff, who was convicted and later acquitted of molesting his adopted daughter, reached a meeting of the minds with police detective investigating molestation charges to withhold exculpatory evidence from prosecutors and plaintiff precluded summary judgment on plaintiff's ss 1983 conspiracy claim against his ex-wife. White v. McKinley, C.A.8 (Mo.) 2008, 514 F.3d 807, rehearing granted , vacated, on rehearing 519 F.3d

7

806, rehearing and rehearing en banc denied. Federal Civil Procedure k 2491.7

**This section which in relevant part creates a cause of action for conspiracies to deter any party or witness in any court of the United States from attending such court or from testifying to any matter pending therein is aimed only at conspiracies among two or more persons. Burch v. Snider, D.C.Md.1978, 461 F.Supp. 598, motion denied 87 F.R.D. 546. Conspiracy k 7.5(2)

104. Meeting of the minds, elements of conspiracy

**Genuine issue of material fact as to whether ex-wife of plaintiff, who was convicted and later acquitted of molesting his adopted daughter, reached a meeting of the minds with police detective investigating molestation charges to withhold exculpatory evidence from prosecutors and plaintiff precluded summary judgment on plaintiff's ss 1983 conspiracy claim against his ex-wife. White v. McKinley, C.A.8 (Mo.) 2008, 514 F.3d 807, rehearing granted , vacated, on rehearing 519 F.3d 806, rehearing and rehearing en banc denied. Federal Civil Procedure k 2491.7

**Agreement or understanding among defendants to violate plaintiffs' constitutional rights, or to discriminate against them, had to exist to violate civil rights conspiracy statute. Shipley v. New Castle County, D.Del.2009, 597 F.Supp.2d 443. Conspiracy k 7.5(1)

105. Express agreement, elements of conspiracy

**A conspiracy under civil rights conspiracy statute [42 U.S.C.A. s 1985] may be implied from the circumstances; a plaintiff need not show that agreement between two or more persons to commit an illegal act was express. Hunt v. Weatherbee, D.Mass.1986, 626 F.Supp. 1097. Conspiracy k 19

106. Tacit agreement, elements of conspiracy

**For purposes of the federal civil rights conspiracy statute, a conspiracy need not be shown by proof of an explicit agreement but can be established by showing that the parties have a tacit understanding to carry out the prohibited conduct; significantly, the conspiracy must be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action. Abdi v. Brookhaven Science Associates, LLC, E.D.N.Y.2006, 447 F.Supp.2d 221. Conspiracy k 7.5(1); Conspiracy k 19

**"Conspiracy" in context of this section pertaining to conspiracies to interfere with civil rights means that coconspirators must have agreed, at least tacitly, to commit acts which will deprive plaintiff of equal protection of the law. Santiago v. City of Philadelphia, E.D.Pa.1977, 435 F.Supp.

136. Conspiracy k   7.5(1)
107. Concerted acts, elements of conspiracy
**Allegations that executive secretary of Louisiana State Board of Private Security Examiners (LSBPSE) and out-of-state security companies, their owners and insurers, acted in concert with LSBPSE to deprive Louisiana security company and its owner of rights of equal protection and due process on the basis of race, were sufficient to plead causation, as required to establish ss 1983 claim against private defendants, where defendants' actions allegedly damaged company's reputation among its clients, deprived company of jobs and fees for services rightfully theirs, injured company in its future business, and caused company and its owner to incur expenses, fees, costs, and suffer emotional harm.  Able Security and Patrol, LLC. v. Louisiana, E.D.La.2008, 569 F.Supp.2d 617.  Civil Rights k   1396
**Genuine issue of material fact existed as to whether county deputy sheriff and judgment creditor acted in concert in seizing judgment debtor's automobile allegedly without proper authorization, precluding summary judgment for deputy sheriff and creditor on debtor's claim for conspiracy under civil rights statute. Buchanan v. Williams, M.D.Tenn.2006, 434 F.Supp.2d 521.  Federal Civil Procedure k  2491.7
**Complaint which alleged that public defenders conspired to deprive defendant of his constitutionally guaranteed right to be present at suppression hearing and that the public defenders were "entwined in concert" to preclude the defendant from his suppression hearing and that his right to a fair and impartial trial was violated adequately alleged conspiracy to violate civil rights.  Bieros v. Nicola, E.D.Pa.1993, 839 F.Supp. 332.  Conspiracy k   7.5(2);  Conspiracy k 18
**Genuine issue of material fact precluded summary judgment on civil rights conspiracy claim against president and sole shareholder of corporations that contracted to provide nursing and home health care services to mentally disabled residents of adult care home based on his alleged direct participation in scheme to subject them to unnecessary prostate surgeries without their informed consent; while he possessed final policymaking authority with respect to corporate operations, negotiated management services agreement, and visited home on number of occasions, he testified that he was not aware of home's day to day operation. Bowen v. Rubin, E.D.N.Y.2005, 385 F.Supp.2d 168.  Federal Civil Procedure k 2491.7
110. Indifference or omission, elements of conspiracy
**Genuine issues of material fact, as to whether failure of

corporations that contracted to perform nursing and home health care services to adult care home residents to supervise home's "Medical Director" constituted deliberate indifference, precluded summary judgment on claim against corporations for conspiracy to interfere with mentally disabled residents' civil rights arising out of performance of unnecessary and nonconsensual prostate surgeries on them. Bowen v. Rubin, E.D.N.Y.2005, 385 F.Supp.2d 168. Federal Civil Procedure k 2491.7

**A party who acquiesces in illegal behavior which could be regulated by contract, either by not pressing for change in the contract or not complaining about an apparent disregard of its provisions, has impliedly entered into a conspiracy; if a party has the potential to stop illegal activity but fails to act to do so, and sits idly by, then that party may be said to have impliedly conspired in such illegalities. Dickerson v. U. S. Steel Corp., E.D.Pa.1977, 439 F.Supp. 55, reconsideration denied , certified question answered 582 F.2d 827. Conspiracy k 2

111. Knowledge, elements of conspiracy

**Genuine issue of material fact, as to what knowledge could be attributed to corporations that contracted to perform nursing and home health care services to adult care home residents, precluded summary judgment on civil rights conspiracy claims against corporations arising out of performance of unnecessary and nonconsensual prostate surgeries on mentally disabled residents. Bowen v. Rubin, E.D.N.Y.2005, 385 F.Supp.2d 168. Federal Civil Procedure k 2491.7

113. Policy or custom, elements of conspiracy

**Individuals bringing action against municipal defendants arising out of events surrounding demonstrations during ministerial meetings regarding free trade stated a claim for conspiracy under ss 1983 by alleging that the defendants had an unwritten agreement to suppress dissent at the meetings through a show of overwhelming force, thereby violating the First Amendment rights of speech, assembly, and association of the individuals and others, that the agreement was entered into in the course of the planning leading up to the meetings, that the agreement was implemented by the formation of police lines that herded demonstrators and subjected demonstrators to a barrage of tear gas, pepper spray, beanbags, and other projectiles thereby disrupting the lawful First Amendment speech, assembly, and association, and that the conspiracy was the cause of the deprivation of individuals' First Amendment rights. Keating v. City of Miami, S.D.Fla.2009, 598 F.Supp.2d 1315, affirmed in part, reversed in part , dismissed in part 598 F.3d 753, petition for certiorari

10

filed 2010 WL 2693382. Conspiracy k 7.5(2)

**Borough employee's complaint stated cause of action for conspiracy under s1985(3); plaintiff averred that defendants conspired to treat her in a manner different from other employees on account of her sex, created a hostile and discriminatory work environment on account of her sex, and refused to protect her from violations of the law on account of her sex; additionally, plaintiff alleged that actions of chief of police and president of borough council, in failing to investigate possible civil rights violations and sexual assault allegations, constituted policy or custom of borough. Palace v. Deaver, E.D.Pa.1994, 845 F.Supp. 1088. Conspiracy k 18

**Allegations that police officials failed to detain or file criminal complaints against those who attacked persons from India and intentionally discriminated against Indians, and that city engaged in custom or practice of discrimination against Indians, stated viable cause of action under section which creates cause of action for damages for conspiracies which deprive persons of equal protection of law or other federal rights, privileges, and immunities. Mody v. City of Hoboken, D.N.J.1991, 758 F.Supp. 1027. Conspiracy k 7.5(1)

115. ---- Scope of employment, intracorporate exception, elements of conspiracy

**Police officers' purported agreement to conceal assault and battery with false police reports was not product of routine police department decision-making, and thus intracorporate conspiracy doctrine did not bar arrestee's ss 1983 claims against police officers for conspiring to assault and batter him and to cover it up with false police reports. Kivanc v. Ramsey, D.D.C.2006, 407 F.Supp.2d 270.
Conspiracy k 2

**Although it is true that a corporation cannot conspire with itself, a conspiracy may be established where individual defendants are named and those defendants act outside the scope of their employment for personal reasons. Swann v. City of Dallas, N.D.Tex.1996, 922 F.Supp. 1184, affirmed 131 F.3d 140. Conspiracy k 2

**Intracorporate conspiracy doctrine that a corporation or enterprise cannot conspire with its agents acting within scope of their employment should not be extended to civil rights conspiracy statutes; conspiracies to discriminate and to deprive blacks or other minorities of basic rights can only perpetuate inequality, and agreements between business and its employees threaten exactly group danger at which conspiracy liability is aimed. Washington v. Duty Free Shoppers, N.D.Cal.1988, 696 F.Supp. 1323. Conspiracy k 7.5(1)

11

**While violation of s 1985 cannot be alleged between entity and its employees when employees act within scope of their employment, employees who are motivated by racial bias and not acting out of concern for best interests of their employers are liable for violation of s 1985.  Mason v. Twenty-Sixth Judicial Dist. of Kansas, Court Services Div., D.Kan.1987, 670 F.Supp. 1528.  Conspiracy k   7.5(1)

**Intra-enterprise doctrine did not require dismissal of village employee's claim alleging conspiracy to interfere with his civil rights; it was not clear employee could prove no set of facts supporting the notion that village police chief acted upon some personal motive or in  furtherance of a personal, maybe even economic, interest outside of objectives of village police department.  De Litta v. Village of Mamaroneck, C.A.2 (N.Y.) 2005, 166 Fed.Appx. 497, 2005 WL 3557581, Unreported.  Conspiracy k   2

**Intra-corporate conspiracy" exception to civil rights conspiracy liability, even if good law as applied to conspiracies in private business, was not applicable to conspiracy within governmental entity, and thus allegation that black employees of single municipal agency discriminated against business owned and operated by nonblacks was sufficient to state cause of action for conspiracy to violate business owners' civil rights.  Rebel Van Lines v. City of Compton, C.D.Cal.1987, 663 F.Supp. 786.  Conspiracy k   1.1; Conspiracy k   18

116a. ---- Law enforcement, intracorporate exception, elements of conspiracy

**Assistant State's Attorney's ordinary contact with the complaining witness in state criminal prosecution could not be viewed as a conspiracy under civil rights conspiracy statute, for purposes of civil rights suit brought by the accused, absent any indication that the prosecutor and complainant had a joint objective and pursued it through unlawful acts.  Redwood v. Dobson, C.A.7 (Ill.) 2007, 476 F.3d 462.  Conspiracy k   7.5(2)

**There was no evidence that any of the city police officers involved in arrest of robbery suspect had personal stake in falsely arresting him, as would trigger exception to intracorporate conspiracy doctrine, pursuant to which officers, agents, and employees of single corporate entity, each acting within scope of her employment, are legally incapable of conspiring together, and subject officers to liability for conspiracy to commit false arrest, malicious prosecution, and assault and battery under ss 1985.  Hargroves v. City of New York, E.D.N.Y.2010, 694 F.Supp.2d 198.  Conspiracy k   2

**Arrestee's allegations that police officers conspired with each other to deprive arrestee of his constitutional rights were sufficient to invoke the exception to the intracorporate

12

conspiracy doctrine that the actions of police officers were unauthorized, and arrestee therefore stated a cause of action under ss 1983 for conspiracy to violate his civil rights. Chavez v. McIntyre, W.D.Va.2006, 424 F.Supp.2d 858. Conspiracy k 7.5(1); Conspiracy k 18

117. ---- Partnerships, intracorporate exception, elements of conspiracy

**While corporation is generally unable to perform part of civil rights conspiracy, partnership, since it is not distinct from its members, was capable of being party to such a conspiracy. Perry v. Manocherian, S.D.N.Y.1987, 675 F.Supp. 1417. Conspiracy k 2

118. ---- Unincorporated associations, intracorporate exception, elements of conspiracy

**Employees or agents of union could be named as defendants in civil rights action alleging that termination of employment resulted from discriminatory conspiracy where the union was not incorporated and thus its officers could be recognized as individual actors capable of entering conspiracy. Thompson v. International Ass'n of Machinists and Aerospace Workers, D.C.D.C.1984, 580 F.Supp. 662. Conspiracy k 17

122. ---- Schools and school organizations, intracorporate exception,
 elements of conspiracy

**Intracorporate doctrine did not bar ss 1985 conspiracy claim of professors against public community college and officials and employees of some of its departments that would permit showing that individual defendants conspired based on personal motives separate from those of community college itself or that departments were not part of one entity. Spector v. Board of Trustees of Community-Technical Colleges, D.Conn.2006, 463 F.Supp.2d 234. Conspiracy k 7.5(1)

123. ---- Miscellaneous corporations within exception, intracorporate exception, elements of conspiracy

**Under the "intra-corporate conspiracy doctrine," city transit authority could not conspire with supervisor, one of its employees, to prevent employee's advancement and promotion, absent assertion that either supervisor or authority possessed independent, personal conspiratorial purpose in denying employee's promotions, so as to bring claim within purview of exception to intracorporate conspiracy doctrine. Everson v. New York City Transit Authority, E.D.N.Y.2002, 216 F.Supp.2d 71. Conspiracy k 2

IV. OBSTRUCTING JUSTICE OR INTIMIDATING PARTY, WITNESS, OR JUROR

123. ---- Miscellaneous corporations within exception,

13

intracorporate exception, elements of conspiracy
**Under the "intra-corporate conspiracy doctrine," city transit authority could not conspire with supervisor, one of its employees, to prevent employee's advancement and promotion, absent assertion that either supervisor or authority possessed independent, personal conspiratorial purpose in denying employee's promotions, so as to bring claim within purview of exception to intracorporate conspiracy doctrine. Everson v. New York City Transit Authority, E.D.N.Y.2002, 216 F.Supp.2d 71. Conspiracy k   2

IV. OBSTRUCTING JUSTICE OR INTIMIDATING PARTY, WITNESS, OR JUROR
195. Attending court or testifying, obstructing justice or intimidating party, witness, or juror--Generally
**Elements of deterrence claim under s 1985(2)'s prohibition of conspiracy to deter party or witness from testifying in court of the United States, are:  conspiracy; to deter testimony by force or intimidation;  and injury to plaintiff.  Brever v. Rockwell Intern. Corp., C.A.10 (Colo.) 1994, 40 F.3d 1119.  Conspiracy k7.5(2)
**Home improvement store employee sufficiently stated civil rights deterrence conspiracy claim based on her continuing participation in coworker's employment discrimination and retaliation litigation and potential that she would be called as witness in that case.  Aque v. Home Depot U.S.A., Inc., N.D.Ga.2009, 629 F.Supp.2d 1336.  Conspiracy k   18
199. ---- Filing actions, attending court or testifying, obstructing justice or intimidating party, witness, or juror
**Employee who alleged that employer had harassed and discharged him for filing suit in state court seeking to recover for injuries caused by employer's negligence and that, to effectuate its purpose of locking employees out of state courts, employer had conspired to make example of any individual who challenged its decision, illegal under state law, not to compensate workers for injuries caused by employer's own negligence stated cause of action under this section prohibiting conspiracy to obstruct the due course of justice. Britt v. Suckle, E.D.Tex.1978, 453 F.Supp. 987.  Conspiracy k 18
203. Obstructing justice to deny equal protection, obstructing justice or intimidating party, witness, or juror--Generally
**Under this section concerning conspiracy to impede justice with intent to deny a citizen equal protection of law, elements of a cause of action for violation of this section are that defendants conspired, that purpose of conspiracy was to impede or hinder, or obstruct or defeat due course of justice in a state or territory with purposeful intent to deny a citizen

14

equal protection of the law and that acts complained of were done under color of state law or authority and that plaintiff was injured in his person or property or was deprived of having and exercising a right or privilege of a citizen of the United States by the act done in furtherance of the conspiracy. Skolnick v. Campbell, C.A.7 (Ill.) 1968, 398 F.2d 23.

204. ---- Filing actions, obstructing justice to deny equal protection,
 obstructing justice or intimidating party, witness, or juror
**Under this section prohibiting conspiracy to obstruct due course of justice, conspiracy to bar from state courts a class of plaintiffs defined by their desire to vindicate a particular right granted them by state law is sufficiently invidious to fall within proscription of section. Britt v. Suckle, E.D.Tex.1978, 453 F.Supp. 987. Conspiracy k  7.5(2)

205. ---- Summonses, obstructing justice to deny equal protection, obstructing justice or intimidating party, witness, or juror
**Complaint stated claim for relief under this section on theory that landlord had entered into conspiracy to impede justice with intent to  deny tenant equal protection of New York's rent control laws by causing criminal summonses to be issued against tenant's witnesses and prospective witnesses in state eviction proceeding. Mullarkey v. Borglum, S.D.N.Y.1970, 323 F.Supp. 1218. Conspiracy k  18

207. Class-based discrimination, obstructing justice or intimidating party, witness, or juror--Generally
**Class-based discriminatory intent was not required to be shown in order to establish cause of action under this section governing actions for conspiracies to deter witnesses from attending court or from testifying. Rutledge v. Arizona Bd. of Regents, C.A.9 (Ariz.) 1981, 660 F.2d 1345, certiorari granted 102 S.Ct. 3508, 458 U.S. 1120, 73 L.Ed.2d 1382, affirmed 103 S.Ct. 1483, 460 U.S. 719, 75 L.Ed.2d 413. Conspiracy k 7.5(2)

 V. DEPRIVING PERSONS OF RIGHTS OR PRIVILEGES GENERALLY

 257. Causation, depriving persons of rights or privileges generally
Arrestee's allegations that police officer was involved in initial illegal search of his home despite instructions from sergeant to contrary, that illegal search resulted in arrestee's incarceration, and that, as direct and proximate result of officer's actions, arrestee suffered deprivation of liberty and wrongful incarceration, adequately alleged that officer was proximate cause of arrestee's false arrest and malicious prosecution, in action brought under ss 1983 and 1985.

15

Pinder v. Knorowski, E.D.Va.2009, 660 F.Supp.2d 726. Civil Rights k 1395(6); Conspiracy k 18

## VI. CLASS BASED DISCRIMINATION

307. Religion, class based discrimination--Generally

**A religious group which is the object of discriminatory animus may be deemed a class falling within the ambit of this section. Ward v. Connor, C.A.4 (Va.) 1981, 657 F.2d 45, certiorari denied 102 S.Ct. 1253, 455 U.S. 907, 71 L.Ed.2d 445. Conspiracy k 7.5(2)

**This section prohibiting conspiracies to deny equal protection affords protection to one who has suffered injuries motivated by invidiously discriminatory animus toward members of religious group. Rankin v. Howard, D.C.Ariz.1981, 527 F.Supp. 976. Conspiracy k 7.5(2)

**Religious group was class protectible under this section proscribing conspiracies to interfere with civil rights. Cooper v. Molko, N.D.Cal.1981, 512 F.Supp. 563. Conspiracy k 7.5(2)

310. ---- Miscellaneous religions, class based discrimination

**Former city fire fighter could maintain s 1985(3) claim against city, superior officers, and fellow fire fighters for conspiring to deprive him of equal protection of laws on basis of his religion. Diem v. City and County of San Francisco, N.D.Cal.1988, 686 F.Supp. 806. Conspiracy k 7.5(2)

311. Sex, class based discrimination--Generally

**Gender-based animus is encompassed by statutory prohibition of conspiracies to deprive person of equal protection of laws, or equal privileges and immunities under laws; sex is immutable characteristic resulting from fortuity of birth, and women historically have been victims of discrimination. Bedford v. Southeastern Pennsylvania Transp. Authority, E.D.Pa.1994, 867 F.Supp. 288. Conspiracy k 7.5(1)

**Gender-based animus satisfies the "purpose" element of civil rights conspiracy statute. National Organization for Women v. Operation Rescue, E.D.Va.1989, 726 F.Supp. 1483, affirmed 914 F.2d 582, certiorari granted 111 S.Ct. 1070, 498 U.S.1119, 112 L.Ed.2d 1176, reversed in part, vacated in part on other grounds 113 S.Ct. 753, 506 U.S. 263, 122 L.Ed.2d 34. Conspiracy k 7.5(1)

**Private conspiracy motivated by invidiously discriminatory intent based upon sex bias is sufficiently class-based to come within provisions of this section. Reichardt v. Payne, D.C.Cal.1975, 396 F.Supp. 1010, affirmed in part and remanded on other grounds 591 F.2d 499, on remand 485 F.Supp. 56. Conspiracy k 7.5(2)

312. ---- Women, sex, class based discrimination

**Women constitute cognizable class under s 1985(3).

16

Volunteer Medical Clinic, Inc. v. Operation Rescue, C.A.6 (Tenn.) 1991, 948 F.2d 218.  Conspiracy k   7.5(1)
**Women may constitute class for purposes of s 1985 provision against conspiracies to deprive class of persons of equal protection of laws or of equal privileges and immunities under laws.  New York State Nat. Organization for Women v. Terry, C.A.2 (N.Y.) 1989, 886 F.2d 1339, certiorari denied 110 S.Ct. 2206, 495 U.S. 947, 109 L.Ed.2d 532.  Conspiracy k   7.5(1)
**Gender-based animus may support cause of action under civil rights statute authorizing civil conspiracy claim and, thus, teacher stated claim by alleging that school board and its individual members conspired to intentionally deprive teacher of due process and equal protection on basis of gender-based animus. Larson v. School Bd. of Pinellas County, Fla., M.D.Fla.1993, 820 F.Supp. 596. Conspiracy k   7.5(1)
**Complaint allegations of female former village employee that she rejected mayor's sexual advances and because of that rejection he embarked on course of activity to embarrass, discredit, and punish her were sufficient to state claim that mayor and those who conspired with him discriminated against employee because of her sex, and thus stated cause of action for conspiracy to violate employee's right to equal protection.  Bertoncini v. Schrimpf, N.D.Ill.1989, 712 F.Supp. 1336. Conspiracy k   18
**Both women and blacks are cognizable classes under Griffin test to bring action under 42 U.S.C.A. s 1985(3).  Chambers v. Omaha Girls Club, D.Neb.1986, 629 F.Supp. 925, affirmed 834 F.2d 697, rehearing denied 840 F.2d 583.  Conspiracy k 7.5(1)
**It was not necessary for female teacher, alleging conspiracy to deprive her of equal protection by means of sexual harassment/sexual discrimination, to allege that all women were discriminated against;  rather, she was obligated to show only that she was a member of a discernible class within remedial framework of 42U.S.C.A. s 1985(3), which provides that a person injured as result of conspiracy to deprive him of equal protection may have an action for damages against one or more of the conspirators.  Gobla v. Crestwood School Dist., M.D.Pa.1985, 609 F.Supp. 972.  Conspiracy k   18
 319. Arrestees, class based discrimination
***Complaint alleging that arresting officers conspired to obtain conviction by producing false evidence and creating suggestive lineup failed to state cause of action, under civil rights statute barring conspiracies to obstruct course of justice, absent allegation that officers' conduct was motivated by class-based discrimination. LaBoy v. Zuley, N.D.Ill.1990, 747

F.Supp. 1284, motion to vacate denied 749 F.Supp. 184. Conspiracy k 18

322. Corporations, class based discrimination

***For purposes of statute which prohibits conspiracies to deprive persons of equal protection of laws or equal privileges and immunities under laws, corporation can conspire with employees or officers who are acting in individual capacities. Bedford v. Southeastern Pennsylvania Transp. Authority, E.D.Pa.1994, 867 F.Supp. 288. Conspiracy k 2

323. Employees, class based discrimination

**Former employee stated claim against employer and its chief executive officer (CEO) for impairment of equal rights and conspiracy to interfere with civil rights, and Title VII claim against employer, by alleging that he and other African American employees were discriminated against in compensation, promotions, evaluations, terminations, and level of maintenance on vehicles driven by employees, that inadequate vehicle maintenance resulted in hostile work environment for African Americans, and that CEO conspired to create hostile work environment for him and unjustly terminate him because of his race. Matthews v. Marten Transp., Ltd., W.D.Wis.2005, 354 F.Supp.2d 899. Civil Rights k 1395(8); Civil Rights k 1532; Conspiracy k 18

327. Handicapped or disabled individuals, class based discrimination

***Class of individuals with disabilities may be protected by civil rights conspiracy statute. Trautz v. Weisman, S.D.N.Y.1993, 819 F.Supp. 282. Conspiracy k 7.5(1)

344. Physicians, class based discrimination

**Although defendant physicians, individual members of county hospital commission, did not exercise governmental powers of the commission, plaintiff hospital medical staff member could nevertheless maintain an action against the physicians under subsec. (3) of this section, since the complaint charged that they conspired with state officials to deprive plaintiff of equal protection of the laws by applying standards to him different than those applied to other staff physicians. Meredith v. Allen County War Memorial Hospital Commission, C.A.6 (Ky.) 1968, 397 F.2d 33. Conspiracy k 13

367. Miscellaneous classes, class based discrimination

**Owner of horses seized upon allegations of animal abuse was required to allege some racial, or perhaps otherwise class-based, invidiously discriminatory animus to support her civil rights conspiracy claim. Dunham v. Kootenai County, D.Idaho 2010, 690 F.Supp.2d 1162. Conspiracy k 18

VII. RIGHTS OR PRIVILEGES PROTECTED

Plaintiff need not suffer an injury to a constitutionally protected

property interest in order to state a claim for damages under civil rights statute prohibiting conspiracies to intimidate or retaliate against witnesses in federal court proceedings. Haddle v. Garrison, U.S.Ga.1998, 119 S.Ct. 489, 525 U.S. 121, 142 L.Ed.2d 502, on remand 168 F.3d 413.  Conspiracy k 7.5(2)

Right to be free from racial discrimination, right of interstate travel, and right to equal protection of the laws are protected by this section.  Life Ins. Co. of North America v. Reichardt, C.A.9 (Cal.) 1979, 591 F.2d 499, on remand 485 F.Supp. 56.  Civil Rights k  1028;  Civil Rights k  1029

392. Federal rights, rights or privileges protected

This section relating to conspiracy to interfere with civil rights protects only rights embodied in Constitution and laws of the United States.  Johnston v. National Broadcasting Co., Inc., E.D.N.Y.1973, 356 F.Supp. 904.  Conspiracy k 7.5(2)

This section relating to conspiracy to interfere with civil rights runs only to a deprivation of federal right to equal protection of the law or of equal privileges and duties under the law.  Weise v. Reisner, E.D.Wis.1970, 318 F.Supp. 580. Conspiracy k  1.1

Only deprivation of rights derived under Constitution and laws give rise to action under s 1971 et seq. of this title and this subchapter.  Ruark v. Schooley, D.C.Colo.1962, 211 F.Supp. 921.  Civil Rights k  1027

This section forbidding deprivation of constitutional rights requires an invasion of a recognized constitutional right as does s 1343(3) of Title 28 providing for damages against conspirators who interfere with civil rights.  Bryant v. Harrelson, S.D.Tex.1960, 187 F.Supp. 738.  Conspiracy k 7.5(1);  Civil Rights
 k  1027

Under subsec. (3) of this section, relating to conspiracies for purpose of depriving any person or class of persons of equal privileges and immunities under the law, privileges and immunities spoken of are those incident to citizenship in the United States, as distinguished from those incident to citizenship in a state. State of Ark. for Use and Benefit of Temple v. Central Sur. & Ins. Corp. of Kansas City, Mo., W.D.Ark.1952, 102 F.Supp. 444. Conspiracy k  1.1; Conspiracy k 7.5(2)

394. Equality of rights, rights or privileges protected

This section does not attempt to reach a conspiracy to deprive one of rights, unless it is a deprivation of equality, of equal protection of the laws, or of equal protection and immunities under the law.  Collins v. Hardyman,U.S.Cal.1951, 71 S.Ct. 937, 341 U.S. 651, 95 L.Ed. 1253.  See, also, Whittington v. Johnston, C.A.Ala.1953, 201 F.2d 810, certiorari denied 74

S.Ct. 103, 346U.S. 867, 98 L.Ed.377;  McNutt v. United Gas, Coke & Chemical Workers of America, C.I.O.,D.C.Ark.1952, 108 F.Supp. 871.  Conspiracy k  7.5(2)

Subsec. (3) of this section respecting conspiracy to deprive persons of right and privileges does not by its terms give cause of action for conspiracy to deny federally guaranteed rights, including right to due process of law, unless it is a deprivation of equality or of equal privileges and immunities under the law, and to recover plaintiff must show invidious discrimination.  Joyce v. Ferrazzi, C.A.1(Mass.) 1963, 323 F.2d 931.  Conspiracy k  1.1; Conspiracy k  7.5(2)

African-American motorists, who brought action challenging New Jersey State Police practice of racial profiling on the New Jersey Turnpike, alleged colorable claims against Attorney General under Section 1985 and Section 1986; motorists alleged that Attorney General conspired with members of his office staff to conceal the

existence of racial profiling from the judiciary and Justice Department, that such concealment led to the deprivation of their civil rights, that, despite his knowledge of various racially motivated conspiracies within the State Police and power to stop the conspirators from committing discriminatory acts, Attorney

General did nothing to stop the discrimination.  White v. Williams, D.N.J.2002,179 F.Supp.2d 405.  Civil Rights k  1088(1);  Conspiracy k  18

This subchapter governing conspiracies to deprive of civil rights is applicable where object of conspiracy is deprivation of equality, but does not apply to conspiracies to deny due process.  Atkins v. Lanning, N.D.Okla.1976, 415 F.Supp. 186, affirmed 556 F.2d 485.  Conspiracy k  7.5(2)

395. Independent illegality, rights or privileges protected

Right protected by subsec. (3) of this section is the right to be free from being a victim of independent illegality;  to successfully allege a claim under subsec. (3) one must assert that a private conspiracy has as its object and overt acts the independent violation of some other legal rights.  Poirier v. Hodges, M.D.Fla.1978, 445 F.Supp. 838.  Conspiracy k  7.5(1)

399. Thirteenth Amendment, rights or privileges protected

This section is not limited by constraints of U.S.C.A. Const.Amend. 14, and it constitutionally can and does protect, from interference by purely private conspiracies, rights protected by U.S.C.A. Const.Amend. 13 and right to travel guaranteed by the Constitution.  United Broth. of Carpenters and Joiners of America, Local 610, AFL-CIO v. Scott, U.S.Tex.1983, 103 S.Ct. 3352, 463 U.S. 825, 77 L.Ed.2d

1049, on remand 715 F.2d 161, rehearing denied 104 S.Ct. 211, 464 U.S.875, 78 L.Ed.2d 186.  Conspiracy k   7.5(2)
This section proscribing private conspiracies to deprive a person of a constitutionally protected right covers a private conspiracy involving racial discrimination since protection of U.S.C.A.Const. Amend. 13 is not merely against state action.  Cohen v. Illinois Institute of Technology, C.A.7 (Ill.) 1975, 524 F.2d 818, certiorari denied 96 S.Ct. 1683, 425 U.S. 943, 48 L.Ed.2d 187. Conspiracy k   7.5(1)
Conspiracy to violate Thirteenth Amendment may form basis of a suit brought pursuant to civil rights conspiracy statute. Lowden v. William M. Mercer, Inc., D.Mass.1995, 903 F.Supp. 212. Conspiracy k   7.5(2)
Conspiracy to violate Thirteenth Amendment may form basis of suit brought pursuant to s 1985(3).  Baker v. McDonald's Corp., S.D.Fla.1987, 686 F.Supp. 1474, affirmed 865 F.2d 1272, certiorari denied 110 S.Ct. 57, 493 U.S. 812, 107 L.Ed.2d 25.  Conspiracy k   7.5(2)
 400. Fourteenth Amendment, rights or privileges protected--Generally
This section was passed to enforce U.S.C.A.Const. Amend. 14 and to protect from interference the rights secured thereby, as well as other constitutional rights. Mullarkey v. Borglum, S.D.N.Y.1970, 323 F.Supp. 1218.
401. ---- Due process, fourteenth amendment, rights or privileges protected
Suits by tenants in New York City public housing projects alleging deprivations of procedural due process, a civil right, which might ultimately lead to loss of a property right, their tenancy in public housing projects, came within grant of jurisdiction under this section.  Escalera v. New York City Housing Authority, C.A.2 (N.Y.) 1970, 425 F.2d 853, certiorari denied 91 S.Ct. 54, 400 U.S. 853, 27 L.Ed.2d 91.  See, also, Weaver v. Haworth, D.C.Okl.1975, 410 F.Supp. 1032. Federal Courts k   223
Conspiracy to violate Thirteenth Amendment may form basis of suit brought pursuant to s 1985(3).  Baker v. McDonald's Corp., S.D.Fla.1987, 686 F.Supp. 1474, affirmed 865 F.2d 1272, certiorari denied 110 S.Ct. 57, 493 U.S. 812, 107 L.Ed.2d 25.  Conspiracy k   7.5(2)
 400. Fourteenth Amendment, rights or privileges protected--Generally
This section was passed to enforce U.S.C.A.Const. Amend. 14 and to protect from interference the rights secured thereby, as well as other constitutional rights. Mullarkey v. Borglum, S.D.N.Y.1970, 323 F.Supp. 1218.
401. ---- Due process, fourteenth amendment, rights or

21

privileges protected
Suits by tenants in New York City public housing projects
alleging deprivations of procedural due process, a civil right,
which might ultimately lead to loss of a property right, their
tenancy in public housing projects, came within grant of
jurisdiction under this section. Escalera v. New York City
Housing Authority, C.A.2 (N.Y.) 1970, 425 F.2d 853, certiorari
denied 91 S.Ct. 54, 400 U.S. 853, 27 L.Ed.2d 91. See, also,
Weaver v. Haworth, D.C.Okl.1975, 410 F.Supp. 1032.
Federal Courts k   223
This section reaches conspiracy to deprive one of such rights
only when object thereof is deprivation of equality and does
not cover conspiracies to deny due process. Lewis v.
Brautigam, C.A.5 (Fla.) 1955, 227 F.2d 124.  Conspiracy k
7.5(2)
This section and s 1983 of this title create cause of action for
conspiracy to deny equal protection, but to not create cause of
action for conspiracy to deny due process of law, and there
must be actual denial of due process before cause of action
arises. Jennings v. Nester, C.A.7 (Ill.) 1954, 217 F.2d 153,
certiorari denied 75 S.Ct. 888, 349 U.S. 958, 99 L.Ed. 1281.
See, also, Egan v. City of Aurora, C.A. 7 (Ill.) 1961, 291 F.2d
706. Conspiracy k   1.1;  Conspiracy k
7.5(2)
 402. ---- Equal protection, fourteenth amendment, rights or
privileges protected
Complaint alleging that black school officials engaged in race-
based retaliation against black witness for testifying in favor of
white teacher at a state magistrate court hearing where the
court was attempting to determine whether probable cause
existed to arrest white teacher stated a claim under s 1985(2);
although the officials alleged racial animosity was not aimed at
witness's own race directly, it was allegedly aimed at him
because of his testimony, an act that enforced white teacher's-
-a person who officials wished to hinder on account of her
race--right to equal protection of the law. Chavis v. Clayton
County School Dist., C.A.11 (Ga.) 2002, 300 F.3d 1288,
rehearing and rehearing  en banc denied 52 Fed.Appx. 489,
2002 WL 31415801, on subsequent appeal 97 Fed.Appx. 905,
2004 WL 385335.  Conspiracy k   7.5(2)
Even in absence of state action, plaintiffs may make out claim
under this subchapter if they show that defendants conspired
to deprive plaintiffs of equal protection of laws. Askew v.
Bloemker, C.A.7 (Ill.) 1976, 548 F.2d 673. Conspiracy k
7.5(3)
Allegations of subway passengers who were allegedly
wrongfully arrested by transit authority police officers were

22

sufficient to state civil rights claim against officers' supervisors; passengers alleged that supervisors conspired to suppress information critical to their action, interfering with their right to access to the courts. Yeadon v. New York City Transit Authority, S.D.N.Y.1989, 719 F.Supp.

204. Conspiracy k 18

State prisoner's complaint under this section which protects against conspiracies to interfere with civil rights, alleging that state prison officials deprived him of his constitutional right of access to the courts by transferring him to federal penitentiary which had no state legal materials in its law library and by failing to fulfill his written request for certain state law books, thereby preventing him from researching state law and examining legal materials which were relevant to various cases which he was presently litigating in state courts, was legally cognizable. Blake v. Berman, D.C.Mass.1984, 598 F.Supp. 1081. Civil Rights k 1395(7); Conspiracy k 18

This section conferred substantive right to be free from conspiracy formed to keep certain class of persons out of state court just as another section conferred right to be free from conspiracy created to intimidate federal court jurors or witnesses, regardless of whether such intimidation was illegal under state law. Britt v. Suckle, E.D.Tex.1978, 453 F.Supp. 987. Conspiracy k 7.5(1)

413. Employment, rights or privileges protected--Generally

Harm occasioned by third-party interference with at-will employment relationship may give rise to claim for damages under civil rights statute prohibiting conspiracies to intimidate or retaliate against witnesses in federal court proceedings. Haddle v. Garrison, U.S.Ga.1998, 119 S.Ct. 489, 525 U.S. 121, 142 L.Ed.2d 502, on remand 168 F.3d 413. Conspiracy k 7.5(2)

414. ---- Discharges, employment, rights or privileges protected

At-will employee who alleged that his employer and two of its officers conspired to terminate him in retaliation for obeying federal grand jury subpoena and to deter him from testifying at federal criminal trial was "injured in his person or property" and, thus, could state claim for damages under civil rights statute prohibiting conspiracies to intimidate or retaliate against witnesses in federal court proceedings, though employee had no constitutionally protected interest in continued employment. Haddle v. Garrison, U.S.Ga.1998, 119 S.Ct. 489, 525 U.S. 121, 142 L.Ed.2d 502, on remand 168 F.3d 413. Conspiracy k 7.5(2)

Civil rights conspiracy statute contemplates a cause of action not only for preventing a person from testifying, but also for

retaliating against a person for having done so.  Krutchen v. Zayo Bandwidth Northeast, LLC, D.Minn.2008, 591 F.Supp.2d 1002.  Conspiracy k  7.5(2)

Plaintiff sufficiently alleged deprivation of a protected right for purposes of s 1985 claim, based on contentions that because she could only be fired "for cause," she had a property or liberty interest in her job with state contractor, that contractor fired her without cause, and that Commonwealth of Pennsylvania denied her due process when it purposely interfered with her access to grievance procedure.  Seeney v. Kavitski, E.D.Pa.1994, 866 F.Supp. 206, affirmed 107 F.3d 8.  Conspiracy k 18

Genuine issues of material fact existed as to whether officials of District of Columbia mental hospital attempted to blackmail psychologist by threatening to use sensitive information about her son to suppress her subpoenaed testimony at court hearing on patient's conditional release, and as to whether she was retaliatorily transferred, precluding summary judgment as to whether such officials were involved in conspiracy to obstruct justice.  Lerner v. District of Columbia, D.D.C.2005, 362 F.Supp.2d 149, appeal dismissed 2005 WL 3789087.  Federal Civil Procedure k  2491.7

426. Property rights, rights or privileges protected

Fact that employment at will is not "property" for purposes of the Due Process Clause does not mean that loss of at-will employment may not injure employee in his person or property for purposes of stating claim for damages under civil rights statute prohibiting conspiracies to intimidate or retaliate against witnesses in federal court proceedings.  Haddle v. Garrison, U.S.Ga.1998, 119 S.Ct. 489, 525 U.S. 121, 142 L.Ed.2d 502, on remand 168 F.3d 413.  Conspiracy k  7.5(2)

**Property owners and their son could not prevail on claim against town and television company for conspiracy to interfere with civil rights, where they did not identify "protected class" to which they allegedly belonged, and did not allege that defendants acted with race or class-based discriminatory animus.  Carino v. Town of Deerfield (Oneida County, N.Y.), N.D.N.Y.1990, 750 F.Supp. 1156, affirmed 940 F.2d 649.  Conspiracy k7.5 (1);  Conspiracy k 18

Property owner could maintain action under this section seeking recovery of compensatory and punitive damages, right to free use and usufruct of its property, and right to permit to extract sand from the premises, which was allegedly denied by defendant public officials in violation of due process and equal protection, despite contention that this subchapter was not designed to support a cause of action involving property rights.  Cordeco Development Corp. v. Vazquez, D.C.Puerto

24

Rico 1972, 354 F.Supp. 1355.  Civil Rights k   1073
This subchapter permits federal relief where property right is
at stake.  South Cutler Bay, Inc. v. Metropolitan Dade County,
Florida, S.D.Fla.1972, 349 F.Supp. 1205.  Civil Rights k   1071
431. Travel, rights or privileges protected
Allegations by black parents that their son was savagely
beaten to death on the public streets by four or more white
men while traveling from one area to another within the state
stated a claim against the alleged assailants for deprivation of
their son's right to travel under civil rights conspiracy statute,
though state action was not alleged.  Spencer v. Casavilla,
C.A.2 (N.Y.) 1990, 903 F.2d 171, on remand 839 F.Supp.
1014.  Conspiracy k   18
Where complaint alleged that interference with plaintiff's right
to travel was one of the objects of conspiracy to deprive him of
his civil rights, during alleged attempt to "deprogram" him of
his religious beliefs, constitutional right to travel provided
source of congressional power to reach the alleged
conspiracy, under this section prohibiting conspiracy to deny
equal protection, notwithstanding fact that conspiracy
allegedly had other objectives.  Ward v. Connor, C.A.4 (Va.)
1981, 657 F.2d 45, certiorari denied 102 S.Ct. 1253, 455 U.S.
907, 71 L.Ed.2d 445.  Conspiracy k   7.5(2)
Deprivations of right to travel are actionable under s 1985 of
Civil Rights Act with no need to show any state action or
involvement.  Pro-Choice Network of Western New York v.
Project Rescue Western New York, W.D.N.Y.1992, 799
F.Supp. 1417, motion to vacate denied 828 F.Supp. 1018,
affirmed 67 F.3d 359, vacated in part  on rehearing en banc
67 F.3d 377, certiorari granted 116 S.Ct. 1260, 516 U.S. 1170,
134 L.Ed.2d 209, affirmed in part , reversed in part 117 S.Ct.
855, 519 U.S. 357, 137 L.Ed.2d 1.  Conspiracy k   7.5(2);
Conspiracy k    7.5(3)
Section 1985(3) protects the right to travel from encroachment
by private conspiracies.  Portland Feminist Women's Health
Center v. Advocates For Life, Inc., D.Or.1988, 712 F.Supp.
165, reversed  and vacated 34 F.3d 845, amended
andsuperseded on denial of rehearing 62 F. 3d 280, as
amended , on remand.  Conspiracy k7.5(2)
434. Civil rights provision violations, rights or privileges
protected
Violation of federal rights secured by s 1981 may serve the
basis of a claim under civil rights statute governing
conspiracies to interfere with civil rights. Johnson v. Greater
Southeast Community Hosp. Corp., D.D.C.1995, 903 F.Supp.
140, appeal held in abeyance 1996 WL 174379, certiorari
denied 117 S.Ct. 2514, 521 U.S. 1121, 138 L.Ed.2d 1016,

25

vacated in part 1996 WL 377147.  Conspiracy k   7.5(2)
Section 1985(3) claim could be supported by conspiracy to
deny plaintiff rights secured by s 1981.  Vakharia v. Swedish
Covenant Hosp., N.D.Ill.1993, 824 F.Supp. 769, on
reconsideration in part.  Conspiracy k   7.5(2)
Rights created under s 1981 are federal rights that may form
basis of civil rights conspiracy claim.  Alder v. Columbia
Historical Soc., D.D.C.1988, 690 F.Supp. 9. Conspiracy k
7.5(2)
Defendant's violations of s 1981 can serve as substantive
basis for claim under civil rights conspiracy statute.  Nieto v.
United Auto Workers Local 598, E.D.Mich.1987, 672 F.Supp.
987.  Conspiracy k   7.5(2)
In view of clear language of section 1981 of this title and
general legislative history with regard to rights for which
remedy is provided by this section, section 1981 of this title is
a proper substantive basis for a claim of redress
under this section.  Witten v. A.H. Smith and Co.,
D.C.Md.1983, 567 F.Supp. 1063. Conspiracy k   7.5(2)
437. Equal Employment civil rights violations, rights or
privileges protected
This section can play role in employment discrimination case
only when actions of defendant in employment discrimination
violate Constitution and test for violation of Constitution based
on employment discrimination is stricter than test under
section 2000e et seq. of this title.  Wintz v. Port Authority of
New York and New Jersey, S.D.N.Y.1982, 551 F.Supp. 1323.
Conspiracy k   7.5(2)
443. Rehabilitation Act violations, rights or privileges protected
Claim that governor, his assistants, and director and
personnel administrator of state employer conspired to violate
terminated employee's civil rights in discharging him because
he had epilepsy was not precluded by remedy provided by
Rehabilitation Act, since conspiracy to violate civil rights
statute provides cause of action broader in scope than
Rehabilitation Act.  Tyus v. Ohio Dept. of Youth Services,
S.D.Ohio 1985, 606 F.Supp. 239. Conspiracy k   7.5(1)
444. Miscellaneous rights or privileges protected
Genuine issue of material fact as to whether landlord and
architectural firm hired to design fit-out plans for leased
premises as medical offices conspired to deprive tenant and
his businesses of their rights, whether actions of landlord and
firm were motivated by discriminatory animus, whether
landlord and firm acted in furtherance of any conspiracy, and
whether tenant and business were injured by any
such conspiracy precluded summary judgment in favor of
landlord and firm on civil rights conspiracy claims.  Abdulhay

v. Bethlehem Medical Arts, L.P., E.D.Pa.2006, 425 F.Supp.2d 646. Federal Civil Procedure k 2491.7

VIII. MANNER OR METHOD OF DEPRIVATIONS

471. Abuse of process, manner or method of deprivations
Complaint alleging that defendant made false statements which provided basis for criminal process under which plaintiff was arrested alleged malicious use of process only, but where fair reading of complaint suggested that defendant had been member of conspiracy to deprive plaintiff of his constitutional rights after process had been issued and was being abused, plaintiff should be given opportunity to prove that defendant was part of such conspiracy to abuse process, even though his primary role concerned malicious use of process. Jennings v. Shuman, C.A.3 (Pa.) 1977, 567 F.2d 1213. Process k 204

472. Assault and battery, manner or method of deprivations
Complaint alleging that defendants conspired to carry out assault to prevent plaintiffs and other Negro Americans from seeking equal protection of laws and enjoying equal rights, privileges and immunities, and that defendants acted under mistaken belief that plaintiffs' companion was worker for civil rights for Negroes, and alleging detention, threats, and battery, and personal injury resulting therefrom stated cause of action under subsec. (3) of this section. Griffin v. Breckenridge, U.S.Miss.1971, 91 S.Ct. 1790, 403 U.S. 88, 29 L.Ed.2d 338. Conspiracy k 18

  476. Confessions, manner or method of deprivations
Where plaintiff was arrested after a burglary on ground that he had a criminal record, without a warrant and detained for six days without being charged with a crime, was denied privilege of seeing his attorney, his property was taken from him without legal process, and he was coerced to sign a confession later used in court to convict him, plaintiff was deprived of protection of Constitution and laws available to persons in classification of those not convicted of a crime, and entitled to maintain a civil action for conspiracy to deny to plaintiff, equal protection of the laws. Wakat v. Harlib, C.A.7 (Ill.) 1958, 253 F.2d 59. Conspiracy k 1.1; Conspiracy k 7.5(1); Conspiracy k 7.5(2)
Unless and until some use is made of an illegally obtained confession in such a way as to deprive a person of constitutional rights, no claim is stated under this subchapter. Ransom v. City of Philadelphia, E.D.Pa.1970, 311 F.Supp. 973. Civil Rights k 1088(4)

  483. False arrest and imprisonment, manner or method of deprivations
Complaint alleging that sheriff's deputies arrested plaintiff but

27

did not take him before a magistrate and that sheriff and jailer allowed plaintiff to remain in jail without being taken before magistrate stated cause of action against sheriff, deputies and jailer for false imprisonment. Perry v. Jones, C.A.5 (Tex.) 1975, 506 F.2d 778. False Imprisonment k  20(1)

On proof that there was no legal basis for arrest of plaintiffs, the filing of charges against them and their imprisonment, s 1983 of this title authorized relief against each policeman and state official who, acting under color of state law, was responsible for those wrongs;  also, any conspiracy to commit such wrongs was actionable.  Hampton v. City of Chicago, Cook County, Ill., C.A.7 (Ill.) 1973, 484 F.2d 602, certiorari denied 94 S.Ct. 1413, 415 U.S. 917, 39 L.Ed.2d 471, certiorari denied 94 S.Ct. 1414, 415 U.S. 917, 39 L.Ed.2d 471.  Civil Rights k 1326(8);  Conspiracy k  7.5(2)

492. Libel and slander, manner or method of deprivations
White attorney's allegation, that newspaper and others conspired to publish disparaging articles about attorney because of his representation of black clients, adequately stated claim of conspiracy to violate his rights guaranteed by equal protection clause in violation of federal civil rights statute.  Phelps v. Wichita Eagle-Beacon, C.A.10 (Kan.) 1989, 886 F.2d 1262.  Conspiracy k   18

Although slanderous remarks allegedly made by three defendants did not give rise to recovery from the defendants as individuals for deprivation of civil rights where it was not alleged that the remarks were made "under color of law," they could be considered in regard to allegation of conspiracy to deprive plaintiffs of their civil rights.  Azar v. Conley, C.A.6 (Ohio) 1972, 456 F.2d 1382.  Conspiracy k  18

493. Licenses or permits, manner or method of deprivations
Safety committee of city commission, commission, and chief of police in conspiring "under the color of law" to deny liquor license owner and one of proposed transferees of license due process and equal protection of the law constituted violation of this subchapter.  Lewis v. City of Grand Rapids, Mich., W.D.Mich.1963, 222 F.Supp. 349, reversed in part on other grounds 356 F.2d 276,  certiorari denied 87 S.Ct. 84, 385 U.S. 838, 17 L.Ed.2d 71.  Conspiracy k 7.5(3)

496. Perjury, manner or method of deprivations
Evidence supported jury's conclusions that police officers procured false testimony from witness and denied plaintiff a fair trial in a murder prosecution and that officers violated civil rights statutes.  Venegas v. Wagner, C.A.9 (Cal.) 1987, 831 F.2d 1514.  Civil Rights k   1420;  Conspiracy k 19

Alleged giving of false testimony by police officers in a criminal trial which nevertheless resulted in an acquittal did not give rise to an action by person who was defendant in such criminal trial against police officers under this subchapter for deprivation of constitutional rights, where there was nothing to show that prosecution had knowingly used perjured testimony. Symkowski v. Miller, E.D.Wis.1969, 294 F.Supp. 1214.  Civil Rights k   1088(5)

500. Search and seizure, manner or method of deprivations
Actions for unlawful seizure are cognizable under this section. Curtis v. Peerless Ins. Co., D.C.Minn.1969, 299 F.Supp. 429. Civil Rights k   1088(3)

 502. Sex discrimination, manner or method of deprivations
Allegation that female applicant was qualified for employment at factory but was not hired, although 16 males were hired, that she was not hired because she was not referred by state employment commission, that commission did not refer her because potential employer told commission that it did not want any women, and at Equal Employment Opportunity Commission hearing, commission employee falsely denied having admitted to applicant that reason she was not referred was that potential employer did not want women, stated conspiracy claims against potential employer for violation of applicant's civil rights.  Way v. Mueller Brass Co., C.A.5 (Miss.) 1988, 840 F.2d 303.  Conspiracy k   18
Discriminatory conspiracies motivated by sex-based animus are within scope of federal statute proscribing conspiracy to deprive a person of her civil rights. Roybal v. City of Albuquerque, D.N.M.1986, 653 F.Supp. 102.  Conspiracy k 7.5(1)
Sex discrimination was included within categories of class animus prohibited by civil rights provision regarding conspiracies to interfere with civil rights. Marchwinski v. Oliver Tyrone Corp., W.D.Pa.1978, 461 F.Supp. 160.  See, also, Hodgin v. Jefferson, D.C.Md.1978, 447 F.Supp. 804;  Curran v. Portland Superintending School Committee, City of Portland, Me., D.C.Me.1977, 435 F.Supp. 1063;  Beamon v. W. B. Saunders Co., D.C.Pa.1976, 413 F.Supp. 1167. Conspiracy  k  7.5(2)
Conspiracies by private parties resulting in sex discrimination are actionable under this section.  Fannie v. Chamberlain Mfg. Corp., Derry Division, W.D.Pa.1977, 445 F.Supp. 65. Conspiracy k 7.5(2)
Action of former associate professor of anthropology at private college claiming that college wrongfully discharged her from employment in manner involving discrimination because of sex could properly be brought under this section relating to

conspiracies between private individuals to deprive others of constitutional rights. Pendrell v. Chatham College, W.D.Pa.1974, 386 F.Supp. 341.
Conspiracy k   7.5(2)
IX. PERSONS LIABLE
531. Respondeat superior, persons liable
Respondeat superior liability does not exist under civil rights statutes. Meza v. Lee, D.Nev.1987, 669 F.Supp. 325.  Civil Rights k   1336
City's liability under this section can only rest upon its own actions, rather than on theory of respondeat superior. Eiland v. Hardesty, N.D.Ill.1982, 564 F.Supp. 930. Conspiracy k   13
Respondeat superior is not a basis for municipal liability under this section creating cause of action for conspiracy to interfere with civil rights;  in order for city to be liable under this section, it would have to be proved that the city as an entity through policy or custom engaged in a conspiracy. Edmonds v. Dillin, N.D.Ohio 1980, 485 F.Supp. 722.  Conspiracy k  13
In actions under this section and s 1983 of this title, there is no vicarious liability on part of superior officials for actions of their subordinates unless superior actually directed or participated in alleged violation of plaintiff's constitutional rights. Westinghouse Broadcasting Co., Inc. v. Dukakis, D.C.Mass.1976, 409 F.Supp. 895.  Civil Rights k   1355
533. Immunity generally, persons liable Intracorporate conspiracy doctrine did not bar action by employee alleging a conspiracy among corporation and senior management employees to interfere with his civil rights by deterring, by force, intimidation, or threat, his federal grand jury testimony; employee's allegations plainly described criminal conduct and a criminal conspiracy, and the criminal conspiracy exception to the doctrine applied regardless of whether the criminal conspiracy arose under the federal criminal code or the federal civil code. McAndrew v. Lockheed Martin Corp., C.A.11 (Ga.) 2000, 206 F.3d 1031.  Conspiracy k   2
534. Qualified immunity, persons liable--Generally
Public officials do not have qualified immunity in s 1985(3) actions for conspiracy to deprive another of equal protection since statute requires class-based invidious discriminatory purpose for recovery. Burrell v. Board of Trustees of Ga. Military College, C.A.11 (Ga.) 1992, 970 F.2d 785, rehearing denied 978 F.2d 718, certiorari denied 113 S.Ct. 1814, 507 U.S. 1018, 123 L.Ed.2d 445.  Conspiracy k   13
445.  Conspiracy k   13
Public officials cannot raise qualified immunity defense to civil rights conspiracy claim. L.M.P. ex rel. E.P. v. School Bd. of Broward County, Fla., S.D.Fla.2007, 516 F.Supp.2d 1305.

30

Conspiracy k 13
Public officials and private individuals cannot raise qualified immunity defense to otherwise valid claim of intentional, class-based conspiracy under s 1985(3). Saville v. Houston County Healthcare Authority, M.D.Ala.1994, 852 F.Supp. 1512. Conspiracy k 13

535. ---- Scope of authority, qualified immunity, persons liable
A state officer's acts which constitute an abuse of power conferred on him by state are actionable under this section even though acts lie outside scope of state officer's authority. Waits v. McGowan, C.A.3 (N.J.) 1975, 516 F.2d 203. Civil Rights k 1354

536. Judicial immunity, persons liable--Generally

537. ---- Judicial acts, judicial immunity, persons liable
If Kansas judge who issued ex parte guardianship papers knew the jurisdictional allegations to be fraudulent or that valid Kansas statutes expressly foreclosed personal jurisdiction over proposed ward in ex parte proceeding for temporary guardianship, the judge would have acted in clear and complete absence of personal jurisdiction and he would have been stripped of cloak of judicial immunity, and if his acts were part of a conspiracy he would be held properly liable under this section for consequences thereof. Rankin v. Howard, C.A.9 (Ariz.) 1980, 633 F.2d 844, certiorari denied 101 S.Ct. 2020, 451 U.S. 939, 68 L.Ed.2d 326. Civil Rights k 1376(8)

544. ---- Prosecutorial acts, prosecutorial immunity, persons liable
Assistant United States attorneys who allegedly communicated with prosecutors in another district in an attempt generally to prevent Drug Enforcement Administration (DEA) special agent from testifying in any court case were not entitled to absolute prosecutorial immunity in agent's civil rights action; attorneys were not performing an advocacy function in connection with a specific criminal prosecution. Maye v. Reno, D.D.C.2002, 231 F.Supp.2d 332. United States k 50.10(2)

No cause of action cognizable under s 1983 of this title relating to a civil action for deprivation of rights, or under this section relating to a conspiracy to interfere with civil rights, lay against prosecuting attorney in plaintiff's criminal proceeding, where the complaint alleged no acts by the prosecuting attorney that could be construed as falling without the ambit of his authority. Phillips v. Singletary, D.C.S.C.1972, 350 F.Supp. 297. Civil Rights k 1376(9); Conspiracy k 13

Under this section and ss 1981, 1983 of this title, a state prosecuting attorney is immune from liability unless his alleged

31

actions are clearly outside scope of his jurisdiction.  Howard v. Rolufs, E.D.Mo.1972, 338 F.Supp. 697.  Civil Rights k 1376(9)

State's attorneys are not absolutely immune from civil rights liability simply as matter of status or position and without regard to conduct. Peterson v. Stanczak, N.D.Ill.1969, 48 F.R.D. 426.  Civil Rights k   1376(9)

550. Federal officials, persons liable--Generally

Former employee's civil rights conspiracy claims against federal officials were not barred by sovereign immunity, since employee effectively was suing those defendants in their individual capacities, even though he represented to court during status conference that he was seeking relief against defendants in their official capacities only; as set forth in complaint, claims against defendants were not based solely on their status as officials of federal government, but on employee's belief that defendants personally took specific actions in violation of Constitution.  Graves v. U.S., D.D.C.1997, 961 F.Supp. 314, reconsideration denied 967 F.Supp. 572, appeal dismissed 1998 WL 202177, rehearing denied.  United States k 50.10(1)

Federal officials can be sued under civil rights conspiracy statute.  Baird v. Haith, D.Md.1988, 724 F.Supp. 367.  Conspiracy k   13

Federal employees do not have absolute immunity from liability under 42 U.S.C.A. s 1985(3) simply because of their employment status;  federal employee who uses his office to commit a federal constitutional violation is not allowed to claim that office as ground for an absolute immunity defense and, in conspiring to commit such constitutional violation with racially discriminatory animus, the federal official is a "person" within the meaning of s 1985(3). Kenyatta v. Moore, S.D.Miss.1985, 623 F.Supp. 224.  Conspiracy k 13

This section applies to federal officers acting under color of federal law at least where the conspiracy is motivated by racial animus and is intended to deprive a class of their right to interstate travel. Peck v. U. S., S.D.N.Y.1979, 470 F.Supp. 1003.  Conspiracy k   7.5(1)

551. ---- Individual capacity, federal officials, persons liable

Actions of the federal government and its officials are beyond the purview of s 1983, which applies only to state actors acting under color of state law, but federal officials can be sued in their personal capacities under civil rightsconspiracy statute. Benson v. U.S.,  N.D.Ill.1997, 969 F.Supp. 1129.  Civil Rights k  1327; Civil Rights k   1362;  Conspiracy k    13

Where defendant is alleged to have personally committed constitutional violation, such defendant may not rely on

32

doctrine of sovereign immunity, because he or she is being sued in his or her individual capacity.  Graves v. U.S., D.D.C.1997, 961 F.Supp. 314, reconsideration denied 967 F.Supp. 572, appeal dismissed 1998 WL 202177, rehearing  denied.  United States k 50.5(1) Federal officials may be sued in their personal capacities under s 1985.  Kaufmann v. U.S., E.D.Wis.1993, 840 F.Supp. 641.  Conspiracy k   7.5(1);  United States  k  50.10(1)

 552. ---- Federal Bureau of Investigation, federal officials, persons liable

Individual agents of the Federal Bureau of Investigation could be held liable for conspiracy to deprive high school student of civil rights as a result of their investigation despite their contention that they were acting as representatives of a single entity.  Paton v. LaPrade, D.C.N.J.1979, 471 F.Supp. 166.  Conspiracy k  13

 556. States, persons liable

Even if African American tenants's conclusory allegations in amended complaint as to existence of conspiracy alleged actual conspiracy, as required to sustain civil conspiracy claim against District of Columbia under ss 1985 in tenant's discrimination action against landlord, landlord's former attorney and District, tenant could not sustain civil conspiracy claim against District; complaint did not allege that tenant was a party, witness or juror in any matter pending in federal court when allegedly conspiratorial acts were committed, or attribute any act or omission motivated by a racial or class-based discriminatory animus to District.     Burnett v. Sharma, D.D.C.2007, 511 F.Supp.2d 136.  Conspiracy k 7.5(2)

Eleventh Amendment did not bar relief, under Civil Rights Act, in suit brought by teacher against state education department and high school vice principal, seeking injunction prohibiting future gender and national origin discrimination.  Sherez v. State of Hawai'i Dept. of Educ., D.Hawai'i 2005, 396 F.Supp.2d 1138.  Federal Courts k   269;  Federal Courts k 272

"Normal" interactions with state are insufficient to support s 1983 conspiracy claim, while "abnormal" interactions may be used to support such claim;  what is "normal" depends upon specific actions relied on and their setting.  Fox News Network, L.L.C. v. Time Warner Inc., E.D.N.Y.1997, 962 F.Supp. 339.  Conspiracy k 7.5(3)

By enacting ss 1981, 1983 and 1985, Congress did not abrogate states' Eleventh Amendment immunity, but such immunity was expressly abrogated for violations of federal statutes prohibiting discrimination by recipients of federal financial assistance.  Parents for Quality Educ. With

33

Integration, Inc. v. Fort Wayne Community Schools Corp., N.D.Ind.1987, 662 F.Supp. 1475. Federal Courts k 266.1

City employee stated federal civil conspiracy claim on which relief could be granted, as he averred underlying federal statutory and constitutional basis for s 1983 conspiracy, and corporation and its corporate employees acting in their official corporate capacities could conspire with one another to violate another employee's federal civil rights. Butler v. City of Prairie Village, D.Kan.1997, 961 F.Supp. 1470, affirmed in part , reversed in part 172 F.3d 736. Conspiracy k 7.5(1); Conspiracy k 18

Municipal liability for conspiring to deprive citizen of his constitutional rights exists only where constitutional injury results from municipal policy or custom. Frazier v. City of Philadelphia, E.D.Pa.1996, 927 F.Supp. 881. Conspiracy k 7.5(1)

Female former employee alleged valid claim for conspiracy to violate her right to equal protection against village officials in their official capacities, although village was the only real defendant; village could be sued for conspiracy among its officials. Bertoncini v. Schrimpf, N.D.Ill.1989, 712 F.Supp. 1336. Conspiracy k 13

Municipalities and their agencies and employees are subject to suit under this section. Thompson v. State of N. Y., N.D.N.Y.1979, 487 F.Supp. 212. Conspiracy k 13

561. Special districts, persons liable

Inasmuch as a local body is now a "person" for purposes of s 1983 of this title, same definition of "person" would apply to this section. Owens v. Haas, C.A.2 (N.Y.) 1979, 601 F.2d 1242, certiorari denied 100 S.Ct. 483, 444 U.S. 980, 62 L.Ed.2d 407.

Members of city council who voted to deny plaintiff's application for 3.2 beer license were not clothed with complete immunity from suit as public officials but enjoyed instead a qualified privilege and could be held liable in damages if they abused their discretion in the performance of their official duties. Oberhelman v. Schultze, D.C.Minn.1974, 371 F.Supp. 1089, affirmed 505 F.2d 736. Civil Rights k 1376(4)

565. Investigators, persons liable

Criminal defendant failed to allege facts in complaint sufficient to establish that court investigator's actions were part of conspiracy to harm criminal defendant by withholding exculpatory evidence, and criminal defendant thus failed to state cause of action under s 1983, where he simply alleged that investigator engaged in improper and illegal conversations with defense attorney which constituted conspiracy to withhold exculpatory information from court.

Malloy v. Coleman, M.D.Fla.1997, 961 F.Supp. 1568. Conspiracy k 18

566. Law enforcement officials, persons liable--Generally
Immunity of judges and quasi-judicial officers from suit arising out of their conduct in performance of their official duties does not extend to law enforcement officers except in narrow area of activity where they are only performing orders issued by court.  Tracy v. Robbins, D.C.S.C.1966, 40 F.R.D. 108, appeal dismissed 373 F.2d 13.  Officers And Public Employees k 114

568. ---- Police chiefs and officers, law enforcement officials, persons liable
Police officers are not immune from liability under this subchapter.  Kauffman v. Moss, C.A.3 (Pa.) 1970, 420 F.2d 1270, certiorari denied 91 S.Ct. 93, 400 U.S. 846, 27 L.Ed.2d 84.  Civil Rights k 1376(6)
To the extent that female city police officer's claims of sex discrimination in promotion process by chief of police and city manager alleged that they acted in their official capacities, officer had no cause of action against them under this section, which governs conspiracy to deprive persons of equal protection;  to extent that they were sued in their individual capacities, officer stated a claim against them under this section.  Scott v. City of Overland Park, D.C.Kan.1984, 595 F.Supp. 520.  Conspiracy k 18

569. ---- Sheriffs, law enforcement officials, persons liable
For purpose of determining whether deputy sheriff was entitled to a good-faith immunity defense to civil rights action under this section and s 1983 of this title, if the deputy sheriff was indeed in a conspiracy to deprive judgment debtor of her property by abusing a state court procedure and writ of execution, deputy sheriff was not acting in good faith.  Hazo v. Geltz, C.A.3 (Pa.) 1976, 537 F.2d 747.  Conspiracy k 13
Sheriffs are not immune from liability to damages under this subchapter.  Peterson v. Stanczak, N.D.Ill.1969, 48 F.R.D. 426.  Civil Rights k 1376(6)

574. Public defenders, persons liable
An appointed defense counsel could be found liable under this section, assuming a prosecutor-defense attorney conspiracy is adequately pled.  Stewart v. Deghroony, E.D.Mo.1983, 566 F.Supp. 1256.  Conspiracy k 13

575. Schools and school boards, persons liable
University of Delaware was a "person" within, and could properly be sued pursuant to, s 1981 of this title dealing with equal rights under the law, civil action for deprivation of rights and conspiracy to interfere with civil rights under this section and s 1983 of this title and s 1343 of Title 28, giving district

courts original jurisdiction of civil rights actions. Scott v. University of Delaware, D.C.Del.1974, 385 F.Supp. 937. Civil Rights k 1346; Conspiracy k 13 ; Federal Courts k 222

575a. ---- Colleges and officials, schools and school boards, persons liable

State university president, vice president, and athletic director, acting in their official capacities as state officers, were immune, under Eleventh Amendment, from former track coach's ss 1985(3) claim for civil rights conspiracy, but not from claim which sought money damages against them as individuals. Wells v. Board of Trustees of California State University, N.D.Cal.2005, 393 F.Supp.2d 990. Federal Courts k 269

577. Conspiring with immune officials, persons liable

Private party is subject to liability under s 1983 if he conspires with or willfully engages in joint activity with state or its agents, even if state agent is immune to liability. Fox News Network, L.L.C. v. Time Warner Inc., E.D.N.Y.1997, 962 F.Supp. 339. Civil Rights k 1326(5)

Private individuals who have conspired with person who acted under color of state law may be held liable under s 1983 for their conduct even if coconspirator is immune from liability based on qualified or absolute immunity. Malloy v. Coleman, M.D.Fla.1997, 961 F.Supp. 1568. Civil Rights k 1373

Civil rights liability will attach to a private party where he is a willful participant in joint activity with the state or its agents; if such a conspiracy is shown, the private parties are not absolved of liability because one or all of the coconspirators who are state actors or officials are immune or because one or all of the state conspirators are not joined in the case, or are dismissed from the case. Chicarelli v. Plymouth Garden Apartments, E.D.Pa.1982, 551 F.Supp. 532. Conspiracy k 13

579. Intracorporate conspiracy doctrine, persons liable

Physician, whose review of plaintiff physician's surgical cases led to hospital's revocation of surgical privileges and allegedly related to denial of reinstatement of privileges seven years later, had personal interest sufficient to take him out of intraenterprise conspiracy doctrine for claim that he conspired to deny physician's rights to make and enforce contract on grounds of race, where he headed group practice that competed with plaintiff physician and had surgical privileges at same hospital; that personal interest destroyed unity interest with hospital and rendered reviewing physician capable of conspiring with hospital, even though he was member of hospital staff. Johnson v. Nyack Hosp., S.D.N.Y.1997, 954 F.Supp. 717. Conspiracy k 2

Because they were all members of the same collective entity,

"intra-corporate conspiracy" doctrine prohibited imposition of liability against school defendants under s 1985(3) for their alleged parts in school board's alleged deliberate indifference to teacher's sexual misconduct where there was no showing that any defendant attempted to conceal or destroy evidence. Hart v. Paint Valley Local School Dist., S.D.Ohio 2002, 2002 WL 31951264, Unreported.  Conspiracy k   2

My Notes on FRAP4 2nd set for coaf1 with subheaders
1. Construction
(1)This rule regarding time within which notice of appeal must be filed tolerates a commonsense approach to timely filing and does not insist upon literal compliance in cases in which it cannot fairly be exacted. Alley v. Dodge Hotel, C.A.D.C.1974, 501 F.2d 880, 163 U.S.App.D.C. 320. Federal Courts 670
(2)Former rule setting forth time for filing notice of appeal from conviction was liberally construed to effectuate an appeal where convicted and sentenced defendant timely attempts to give written n**otice of appeal but was prevented from doing so through no fault of his own or where appeal was fraudulently or deceptively precluded. Phelps v. U. S., C.A.10 (Okla.) 1967, 373 F.2d 194, certiorari denied 87 S.Ct. 1701, 387 U.S. 913, 18 L.Ed.2d 634. Criminal Law 1081(6)
2. Construction with statutory provisions
(3)(Appellate procedure rule governing reopening of the time to file an appeal trumped civil procedure rule governing relief from judgment, for purposes of determining timeliness of federal prisoner's attempts to obtain relief from dismissal of his pro se legal action, on ground that he did not receive timely notice of entry of the judgment of dismissal, which had been mailed to him at a prison in Kentucky, but not forwarded to him at the prison in Michigan to which he had been moved in the meantime; abrogating United States v. Brown, 179 F.R.D. 323 (D.Kan.1998). Clark v. Lavallie, C.A.10 (Colo.) 2000, 204 F.3d 1038. Federal Courts 656
(4)Time limit for filing notice of appeal in criminal cases was not a jurisdictional rule, but rather a claim-processing rule, that could be waived or forfeited. U.S. v. Neff, C.A.7 (Ill.) 2010, 598 F.3d 320. Criminal Law 1081(4.1)
(5)Time limit of the rule requiring a defendant's notice of appeal to be filed in the district court within 10 days after the entry of a judgment is not jurisdictional, but is merely a claim-processing rule that can be forfeited; the Court of Appeals enforces this time limit when the appellee stands on its rights. U.S. v. Shah, C.A.7 (Ill.) 2011, 665 F.3d 827.
10. Mistaken filing in court of appeals
(6)Motion to vacate district court judgment that sought solely to appeal, vacate, and overturn district court judgment and was filed within 30 days of district court judgment functioned as valid notice of appeal and preserved right to appeal, although the motion was erroneously filed with Court of Appeals. Washington v. Patlis, C.A.5 (Tex.) 1989, 868 F.2d 172. Federal Courts 666; Federal Courts 667
(7)Petition for review of administrative order which was erroneously filed in district court rather than court of appeals

was to be deemed filed in court of appeals on date of filing with district court, and thus, claimant's petition, filed in district court within one year of order, was timely. Boggs v. U.S. Railroad Retirement Bd., C.A.11 1984, 725 F.2d 620. Administrative Law And Procedure 722.1

12. Judgments and orders appealable

(8)*****Order refusing to grant an extension of time to appeal is appealable. In re Orbitec Corp., C.A.2 (N.Y.) 1975, 520 F.2d 358. Federal Courts 561

(9)Order of federal district court dismissing complaint but not dismissing action was not appealable order, were plaintiff could possibly have saved his cause of action by amending complaint. Ruby v. Secretary of U. S. Navy, C.A.9 (Cal.) 1966, 365 F.2d 385, certiorari denied 87 S.Ct. 1358, 386 U.S. 1011, 18 L.Ed.2d 442. Federal Courts 557

(10)Where judgment was rendered on April 27 and motion for new trial was overruled June 10, notice of appeal stating that appeal was taken from judgment entered on June 10 was sufficient to perfect an appeal from judgment of April 27, since that was the only appealable judgment entered in the cause. Wilson v. Southern Ry. Co., C.C.A.5 (Ga.) 1945, 147 F.2d 165. Federal Courts 666

(11)Plaintiff's appeal from district court's order dismissing his motion for return of property would be treated as civil appeal and, therefore, plaintiff timely filed his notice of appeal within 60-day limit for civil appeals, although he filed his notice of appeal after ten-day limit for criminal appeals; motions for return of property represent means by which criminal defendant can determine her rights in property, and not part of trial and punishment process that is criminal law. Hunt v. U.S. Dept. of Justice, C.A.5 (La.) 1993, 2 F.3d 96. Action 18; Federal Courts 668

44. ---- Coram nobis proceedings, criminal or civil time period, time for filing notice

50. Finality of judgment, time for filing notice--Generally

(12)For purposes of an appeal, a final judgment is the court's act or pronouncement which disposes of the matter under consideration and when a judge acts in a manner which clearly indicates his intention that the act shall be the final one in the case, and a notation of the act has been entered on the docket, the time to appeal begins to run, but if it is not clearly indicated that the judge's act was intended to be his final act in the case, then the time for appeal does not begin to run. Carnes v. U. S., C.A.10 (Okla.) 1960, 279 F.2d 378, certiorari denied 81 S.Ct. 88, 364 U.S. 846, 5 L.Ed.2d 69. Criminal Law 1069(5)

51. ---- Entry of judgment or order, finality of judgment, time for filing notice

(13)Rule permits a notice of appeal from a nonfinal decision to operate as a notice of appeal from the final judgment only when a district court announces a decision that would be appealable if immediately followed by the entry of judgment. Slayton v. American Exp. Co., C.A.2 (N.Y.) 2006, 460 F.3d 215, as amended, on remand 2008 WL 4501928. Federal Courts 668

54. ---- Docket entry, finality of judgment, time for filing notice

(14)Court of appeals in determining if it had jurisdiction to entertain an appeal filed on Mar. 2, 1973 would disregard unsworn affidavits which were signed by a district court deputy clerk stating that based on normal business practices an entry of a judgment dated January 30 would have been made on January 31 or February 1 and which contradicted docket date for judgment certified by court clerk. Brainerd v. Beal, C.A.7 (Ill.) 1974, 498 F.2d 901, certiorari denied 95 S.Ct. 655, 419 U.S. 1069, 42 L.Ed.2d 664, rehearing denied 95 S.Ct. 836, 420 U.S. 913, 42 L.Ed.2d 844. Courts 117

(15)Where notations were made by court on docket that verdicts were filed for plaintiffs and thereafter the court determined that the defendant should pay plaintiffs' attorneys' fees and added such amount to verdict and entered formal judgment in docket for total, and where defendant's notice of appeal was filed more than 30 days from first entry, but less than 30 days from second entry, notice of appeal was not too late. Danzig v. Virgin Isle Hotel, Inc., C.A.3 (Virgin Islands) 1960, 278 F.2d 580. Federal Courts 669

(16)Where, though record showed minute order for entry of judgment dated Apr. 6, 1955, entry dated Jan. 23, 1956, constituted only notation of a judgment in the civil docket in case, appeal filed Feb. 20, 1956, was timely. Randall Foundation, Inc. v. Riddell, C.A.9 (Cal.) 1957, 244 F.2d 803. Federal Courts 652.1

(17)Where trial court filed an opinion on January 6 which concluded with words "judgment must be entered for the plaintiffs" but docket entry of that date failed to include amount of recovery and formal judgment fixing amount of recovery was not filed until February 23, time for appeal ran from latter date. U.S. v. Higginson, C.A.1 (Mass.) 1956, 238 F.2d 439. Federal Courts 654

(18)Where judge signed findings of fact and conclusions of law reciting that "judgment is hereby ordered to be entered accordingly" and clerk's docket showed filing of the findings and conclusions as well as mailing of copies thereof and subsequently costs were taxed and then a formal judgment

was signed, under the circumstances, date of judgment for purpose of computing time for appeal, was considered as date that formal judgment was appropriately entered in docket by clerk rather than date of entry of findings and conclusions. Cedar Creek Oil & Gas Co. v. Fidelity Gas Co., C.A.9 (Mont.) 1956, 238 F.2d 298. Federal Courts  654

(19)Provision that time for appeal shall be computed from the entry of orders contemplates both an order and its entry in the docket in connection with such motions. Healy v. Pennsylvania R. Co., C.A.3 (Pa.) 1950, 181 F.2d 934. Federal Courts  656

(20)Where entry of clerk in the docket recited that judgment was rendered in favor of claimant, and counsel were directed to exchange briefs and that trial was continued until a future date, no final disposition occurred until written judgment was signed by the trial judge, and appeal taken by claimant within two days thereafter, though more than 30 days after entry by the clerk, was timely. Lucas v. Western Cas. & Sur. Co., C.A.10 (Okla.) 1949, 176 F.2d 506. Federal Courts  651

(21)Technically, notice of appeal cannot be filed until judgment is entered, which for purposes of computing time is when order is docketed. In re Peachtree Lane Associates, Ltd., N.D.Ill.1995, 188 B.R. 815, on remand 198 B.R. 272. Bankruptcy  3774.1

(22)Crucial date for determining timeliness of pro se litigant's notice of appeal was date on which district court's order dismissing litigant's appeal from bankruptcy court decision was entered on district court's docket sheet, not date on which order was signed, and therefore notice of appeal that was filed 29 days after entry of final judgment, but 31 days after order was signed, was timely. In re ANR-Advance Transp. Co., Inc., C.A.7 (Wis.) 2003, 73 Fed.Appx. 183, 2003 WL 21949582, Unreported. Bankruptcy  3774.1

frap4p3 begins here

59. ---- Dismissal of complaint or charges, finality of judgment, time for filing notice

(23)District court's order of May 27, 1955, denying plaintiffs' motion to vacate earlier order for dismissal of complaint with leave to amend and granting plaintiffs further leave to amend was not final judgment but left suit pending for further proceedings either by amendment of complaint or entry of final judgment, and district court's order of Mar. 25, 1957, dismissing the cause of action and directing that all relief be denied and the case, and consequently appeal within 30 days from entry thereof was timely. Jung v. K. & D. Min. Co., U.S.Ill.1958, 78 S.Ct. 764, 356 U.S. 335, 2 L.Ed.2d 806. Federal Courts  654

(24)Order granting government's motion to dismiss complaint on ground of immunity from liability under state law was not "final and appealable" and, thus, plaintiff's appeal was timely, as notice of appeal was filed within 60 days of trial court's second judgment granting government's second motion to dismiss; trial court's use of "without prejudice" in first judgment was ambiguous and, after first dismissal, trial court signed stipulation/order allowing plaintiff leave to file first amended complaint. Montes v. U.S., C.A.9 (Cal.) 1994, 37 F.3d 1347. Federal Courts 590

(25)District court did not enter separate order on separate document, but issued combined order and opinion, and thus tenant had 180 days to file his appeal of dismissal of his action against housing authority alleging violation of due process, where district court's order explained procedural posture of case and reasoning supporting its conclusion that it lacked subject-matter jurisdiction and district court included language ordering that case be dismissed for that reason. Bell v. Pleasantville Housing Authority, C.A.3 (N.J.) 2011, 2011 WL 3796144, Unreported.

63. ---- Multiple claims, finality of judgment, time for filing notice

(26)Notice of appeal that was premature, because it was filed after summary judgment against two defendants but while claims were still pending against another defendant, was nevertheless effective without filing of new notice of appeal after district court subsequently dismissed remaining claims without prejudice, since decision would have been appealable if it had been followed immediately by entry of judgment under rule governing judgment upon multiple claims or multiple parties. Outlaw v. Airtech Air Conditioning and Heating, Inc., C.A.D.C.2005, 412 F.3d 156, 366 U.S.App.D.C. 374. Federal Courts 668

(27)Order of Dec. 15, 1958, stating that no issue in action between contractor and school district remained undisposed of and that only remaining issues were between contractor and architects constituted a complete adjudication of contractor's claim against school district when taken in conjunction with 1957 order and judgment in favor of contractor and against school district which left unadjudicated claims against school district and architects for premature termination of contract, but such order was not appealable until contractor's claim against architects was disposed of by summary judgment on Nov. 7, 1960, and appeal taken by contractor on Dec. 6, 1960, from Dec. 15, 1958 order was timely, and appeal taken by contractor on Nov. 30, 1960 from the Nov. 7, 1960 judgment was also timely. Lundgren v.

5

Freeman, C.A.9 (Or.) 1961, 292 F.2d 489. Federal Courts 654

65. ---- Receipt of notice of appeal in district court, finality of judgment, time for filing notice

(28)Date used to determine timeliness of appeal for plaintiff's cross appeal was date clerk received notice of appeal, rather than subsequent date clerk entered notice on docket sheet, and thus, plaintiff's notice of appeal was timely, giving Court of Appeals jurisdiction over cross appeal. Shearson Lehman Bros., Inc. v. M & L Investments, C.A.10 (Utah) 1993, 10 F.3d 1510. Federal Courts 668

(29)Although notice of appeal and certificate of probable cause bore a filing date more than 30 days after entry of judgment in prisoner's civil rights suit, appeal was timely where certificate was also stamped as received within the 30-day period and although clerk's office was unable to verify exactly when the documents were received it suggested that the certificate may have been timely received, returned to prisoner and received again and filed with the appropriate notice of appeal and certificate cleared evidenced intent to appeal and the required notice was promptly filed on return of the certificate. Stevens v. Heard, C.A.5 (Tex.) 1982, 674 F.2d 320. Federal Courts 652.1

(30)Although petitioner's appeal from denial of habeas corpus was not filed until 40 days after date of entry of judgment and thus outside 30-day period of this rule, where pro se notice of appeal evidenced its signing and notarization five days after judgment, "received" stamp of district court clerk on reverse side of notice was dated 14 days after final judgment, and no explanation had been given for delay between receipt and filing, notice of appeal was timely filed. Deloney v. Estelle, C.A.5 (Tex.) 1981, 661 F.2d 1061, appeal reinstated 679 F.2d 372. Habeas Corpus 819

(31)Where final judgment was rendered on May 12, 1977 and notice of appeal was received by district court clerk on Monday, June 13, 1977, 30-day requirement of this rule for filing notice of appeal was satisfied though notice of appeal was not formally filed until June 28, 1977. Aldabe v. Aldabe, C.A.9 (Cal.) 1980, 616 F.2d 1089. Federal Courts 668

(32)Where notice of appeal and cover letter were stamped "filed, January 4, 1972," and final day for appeal was January 3, and strong possibility existed that notice was in fact received by the Opelousas division of the clerk on January 3, then forwarded to the Shreveport office of the clerk without first being stamped with date when received in the Opelousas office, appeal would not be dismissed as untimely. Da'Ville v. Wise, C.A.5 (La.) 1973, 470 F.2d 1364, certiorari denied 94

6

S.Ct. 170, 414 U.S. 818, 38 L.Ed.2d 50, certiorari denied 94
S.Ct. 40, 414 U.S. 818, 38 L.Ed.2d 50. Federal Courts 670
71. ---- Separate judgment document, finality of judgment,
time for filing notice
(33)A separate judgment document is not required to be filed
before a decision is "final" for purposes of appellate review.
Bankers Trust Co. v. Mallis, U.S.N.Y.1978, 98 S.Ct. 1117, 435
U.S. 381, 55 L.Ed.2d 357, rehearing denied 98 S.Ct. 2259,
436 U.S. 915, 56 L.Ed.2d 416. Federal Courts 584
(34)Where judgment of district court was set forth within 4-
page document including memorandum opinion by court, it did
not satisfy requirement of that every judgment "shall be set
forth on a separate document," and therefore 30-day appeal
period prescribed by rule 58, Federal Rules of Civil Procedure,
this title, never began to run, and appellants notice of appeal
was not untimely. Gregson & Associates Architects v.
Government of the Virgin Islands, C.A.3 (Virgin Islands) 1982,
675 F.2d 589. Federal Courts 654; Federal Courts 668
(35)Dismissals for lack of jurisdiction were never "entered,"
within provision of this rule requiring filing of notice of appeal
within 30 days of date of entry of judgment, and time limitation
for appealing did not commence to run, where district court's
docket sheets contained only notation referring to opinion as
opposed to any separate judgments and there were no
separate documents reflecting judgment of dismissal apart
from the memorandum itself. Caperton v. Beatrice Pocahontas
Coal Co., C.A.4 (Va.) 1978, 585 F.2d 683. Federal Courts
669
72. ---- Signing of judgment or order, finality of judgment, time
for filing notice
(36)Defendant's letter, which contained a notice of intention to
appeal from conviction and was delivered to a clerk of court,
was timely where it was received by the clerk nine days after
judgment and commitment were signed. U. S. v. Davis,
E.D.N.C.1962, 210 F.Supp. 84, affirmed 320 F.2d 660.
Criminal Law 1081(4.1)
75. ---- Miscellaneous judgments, finality of judgment, time for
filing notice
(37)Document marked and entered as "final judgment"
constituted judgment from entry of which time for appeal
commenced, rather than previous memorandum decision and
order adjudicating some but not all counts in action; subject
document was last document entered in case, effectively and
finally disposing of all claims in the litigation, which continued
with respect to various aspects through time of entry of the
final judgment. Bandag, Inc. v. Al Bolser Tire Stores, Inc.,

C.A.Fed.1983, 719 F.2d 392, 219 U.S.P.Q. 1049. Federal Courts 654

78. Entry of judgment or order, time for filing notice

(38)District court's bench ruling that it intended to grant summary judgment for respondent, entered before judgment and before parties had, at court's request, submitted proposed findings of fact and conclusions of law, was a "decision" under rule providing that notice of appeal filed after announcement of decision or order but before entry of judgment or order shall be treated as filed after such entry and on date thereof. FirsTier Mortg. Co. v. Investors Mortg. Ins. Co., U.S.1991, 111 S.Ct. 648, 498 U.S. 269, 112 L.Ed.2d 743, on remand 930 F.2d 1508. Federal Courts 668

(39)Employer's notice of appeal from ruling in favor of union enforcing arbitration award, filed several months before entry of final judgment, sprang forward to the date of final judgment, and thus Court of Appeals had jurisdiction over employer's appeal; employer and union had asserted competing claims, as union sought to enforce arbitration award and employer sought to vacate it, ruling enforcing arbitration award essentially foreclosed any relief on employer's complaint, and employer's belief that the ruling disposed of its claims was reasonable. A. Bauer Mechanical, Inc. v. Joint Arbitration Bd. of Plumbing Contractors' Ass'n and Chicago Journeymen Plumbers' Local Union 130, U.A., C.A.7 (Ill.) 2009, 562 F.3d 784. Federal Courts 668

(40)Procedural requirements for entry of judgment which triggers running of time for appeal under 28 U.S.C.A. § 2107 and Rule 4(a)(1) are a statement of judgment in a separate document, and entry of judgment by clerk on civil docket. Diamond by Diamond v. McKenzie, C.A.D.C.1985, 770 F.2d 225, 248 U.S.App.D.C. 169. Federal Courts 654

(41)   Memorandum opinion and entry of clerk of court did not constitute judgment where clerk did not mail copies of docket entry, defendant did not appeal within 30 days from entry memorandum and entry did not include word "judgment" and formal judgment subsequently entered was signed by court; notice of appeal filed within 30 days after entry of formal judgment was timely. Associated Press v. Taft-Ingalls Corp., C.A.6 (Ohio) 1963, 323 F.2d 114. Federal Civil Procedure 2579; Federal Courts 668

85. ---- Entry of judgment or order, commencement of filing period, time for filing notice

Notice of appeal was timely when filed within 30 days of entry of final judgment, notwithstanding that appeal was not filed within 30 days of earlier date on which court had entered order disposing of last post-trial motion and Rule of Appellate

8

Procedure, read literally, would have run 30-day period from disposition of that motion. Southern Union Co. v. Southwest Gas Corp., C.A.9 (Ariz.) 2005, 415 F.3d 1001, opinion amended on denial of rehearing 423 F.3d 1117, certiorari denied 126 S.Ct. 1342, 546 U.S. 1175, 164 L.Ed.2d 56. Federal Courts 669

(42)**Exception to rule of federal procedure, requiring every judgment and amended judgment to be set forth on separate document, for an "order disposing of a motion" to alter or amend judgment, applied to district court's order of remittitur in favor of police officer in arrestee's §§ 1983 action, and because no such document was ever prepared, time of entry of that order, for purposes of police officer's notice of appeal, was deemed to be 150 days after order was docketed. Kunz v. DeFelice, C.A.7 (Ill.) 2008, 538 F.3d 667, corrected. Federal Civil Procedure 2626; Federal Courts 669

(43)Notice of appeal was timely when filed within 30 days of entry of final judgment, notwithstanding that appeal was not filed within 30 days of earlier date on which court had entered order disposing of last post-trial motion and Rule of Appellate Procedure, read literally, would have run 30-day period from disposition of that motion. Southern Union Co. v. Southwest Gas Corp., C.A.9 (Ariz.) 2005, 415 F.3d 1001, opinion amended on denial of rehearing 423 F.3d 1117, certiorari denied 126 S.Ct. 1342, 546 U.S. 1175, 164 L.Ed.2d 56. Federal Courts 669

87. ---- Motions, commencement of filing period, time for filing notice

(44)Thirty-day period within which Government was required to file its appeal from suppression ruling began to run on date district court denied Government's motion for reconsideration rather than on date of district court's original suppression order. U.S. v. Ibarra, U.S.Wyo.1991, 112 S.Ct. 4, 502 U.S. 1, 116 L.Ed.2d 1, on remand 955 F.2d 1405. Criminal Law 1069(5)

(45)**Where the government, on the last day of the 30-day appeal period from grant of motion to suppress evidence, filed its motion for reconsideration, which was denied the same day, the 30 days' period within which appeal must be filed began to run from the date of the denial of the motion for reconsideration and appeal which was filed within 30 days thereafter was timely. U. S. v. St. Laurent, C.A.1 (Mass.) 1975, 521 F.2d 506, certiorari denied 96 S.Ct. 775, 423 U.S. 1049, 46 L.Ed.2d 637. Criminal Law 1069(5)

(46)**Where, following hearing on defendant's motion to vacate judgment, court had announced from the bench that the motion was denied and instructed attorneys to prepare an

order along that line, but where court's signed findings of fact and conclusion of law containing a formal denial of the motion were not filed until some sixteen months later, judge did not intend his declaration from the bench to be his final act so that the time to appeal the denial of the motion did not begin to run until formal findings and conclusions had been filed. Carnes v. U. S., C.A.10 (Okla.) 1960, 279 F.2d 378, certiorari denied 81 S.Ct. 88, 364 U.S. 846, 5 L.Ed.2d 69. Criminal Law 1069(5)

(47)Document filed by defendant in district court, raising objections to amended judgment that was entered after defendant was granted relief as to one charge on motion to vacate, was essentially motion for reconsideration, and therefore 10-day appeal period did not begin to run until after objections were decided by district court. U.S. v. Hadden, C.A.4 (S.C.) 2003, 73 Fed.Appx. 574, 2003 WL 21940667, Unreported. Criminal Law 1069(5)

89. ---- Multiple motions, commencement of filing period, time for filing notice

91. ---- Separate documents, commencement of filing period, time for filing notice

(48)**Where district court did not set judgment out in document separate from its opinion, but rather entered single document styled "Memorandum Opinion and Order Granting Summary Judgment and Judgment," final judgment was deemed entered 150 days after issuance of opinion, and 30-day period for filing notice of appeal began to run on that date. Mondragon v. Thompson, C.A.10 (N.M.) 2008, 519 F.3d 1078. Federal Courts 669

(49)**The 30-day period for plaintiffs to file notice of appeal of district court's order granting joint motion to dismiss remaining claims against defendants in civil rights action began to run 150 days after date of order, where district court did not enter judgment dismissing the case on a separate document. Chambers v. City of Fordyce, Arkansas, C.A.8 (Ark.) 2007, 508 F.3d 878. Federal Courts 669

(50)**Thirty-day period for filing notice of appeal from dismissal of case for lack of personal jurisdiction began to run after 150-day period following entry of order in civil docket when order was not set forth on separate document, as required by rule, and judgment was entered after 150 days, and therefore notice of appeal filed 176 days from entry of order dismissing case was timely. Menken v. Emm, C.A.9 (Ariz.) 2007, 503 F.3d 1050. Federal Courts 669

(51)**Time period for former employee to file notice of appeal from District Court order granting summary judgment in favor of former employer, in Title VII action for employment discrimination based on religion and retaliation, expired 180

days, rather than 30 days, after the order was issued, where District Court did not enter a separate order on a separate document, but issued a combined order and opinion. LeBoon v. Lancaster Jewish Community Center Ass'n, C.A.3 (Pa.) 2007, 503 F.3d 217, certiorari denied 128 S.Ct. 2053, 553 U.S. 1004, 170 L.Ed.2d 793. Federal Courts 669

95. ---- Notice, commencement of filing period, time for filing notice

(52)*Where no notice was sent to defendant or to any one on his behalf that trial court had entered an order allowing defendant to file notice of appeal without prepayment of costs, time to order transcript did not begin to run until counsel appointed for defendant, some three years after his sentence, acquired actual notice of such order, and therefore defendant's appeal would be deemed timely rather than abandoned. Blunt v. U.S., C.A.D.C.1957, 244 F.2d 355, 100 U.S.App.D.C. 266. Criminal Law 1069(1)

(53)**As a general rule, where there has been a failure or delay in giving notice on part of clerk, time for taking appeal runs from date of later actual notice or receipt of clerk's notice rather than from date of entry of order. Lohman v. U. S., C.A.6 (Ohio) 1956, 237 F.2d 645. Criminal Law 1069(5)

(54)Where, in coram nobis proceeding to set aside a judgment of conviction, district judge, on June 4, 1953, denied application, and defendant's attorney, upon whom proposed order and notice of settlement had been served, did not attend the settlement of order, and, on June 18 order was entered in clerk's office, but clerk did not mail notice thereof nor make note in docket of the mailing, 10 day period in which appeal could be taken commenced to run on June 22d when copy of order with notice of entry on June 18th was served upon defendant's attorney. U S. v. Dunbar, C.A.2 (N.Y.) 1954, 212 F.2d 654, certiorari denied 75 S.Ct. 73, 348 U.S. 848, 99 L.Ed. 668. Criminal Law 1069(5)

(55)**The ten-day period in which appeal must be taken does not begin to run until receipt of clerk's notice of entry of order. Oddo v. U.S., C.A.2 (N.Y.) 1949, 171 F.2d 854, certiorari denied 69 S.Ct. 1498, 337 U.S. 943, 93 L.Ed. 1747. Criminal Law 1069(5)

98. ---- Advisement of right to appeal, commencement of filing period, time for filing notice

(56)Time for filing notice of appeal does not commence to run until defendant has been advised of his right to appeal and effective assistance of counsel has been afforded. Hannigan v. U. S., C.A.10 (Kan.) 1965, 341 F.2d 587. Criminal Law 1081(4.1)

11

(57)Ten day period within which a defendant with appointed counsel who ceased his representation of defendant after sentence was required to file his notice of appeal did not commence to run until he was actually notified of his right to appeal and his right to have counsel to assist him. Boruff v. U. S., C.A.5 (Ga.) 1962, 310 F.2d 918. Criminal Law 1069(5)

105. Mailing of notice of appeal, time for filing notice

(58)(a)** Notice of appeal from judgment entered on January 29 was timely filed even though the notice of appeal was stamped as filed in the district court on March 1 where appellant's counsel had allowed two days for mailing the notice of appeal from Selma to Mobile, Alabama and where published service standards of the United States Post Office reflected that mail from Selma to Mobile was normally delivered overnight and delivery of the mailing in fact took three days. Gibbs v. Town of Frisco City, Alabama Police Dept., C.A.5 (Ala.) 1980, 626 F.2d 1218. Federal Courts 668

(b)**Where notice of appeal was mailed in time so that had clerk's office been open with deputy clerk in attendance in accordance with established schedule, notice would have been received in time, court would order notice which was not received in time filed as of timely date. U. S. v. Nunley, E.D.Tenn.1972, 369 F.Supp. 171. Criminal Law 1081(6)

107. Filing appeal before entry of judgment or order, time for filing notice--Generally

(59)That notice of appeal from conviction was filed before entry of judgment should be disregarded as an "irregularity not affecting substantial rights" and did not justify dismissal of appeal as premature. Lemke v. United States, U.S.Alaska 1953, 74 S.Ct. 1, 346 U.S. 325, 14 Alaska 423, 98 L.Ed. 3. Criminal Law 1081(4.1)

(60)*****Appellant's failure to file amended notice of appeal following district court's denial of his motion for reconsideration, so that notice of appeal predated judgment on reconsideration motion and did not technically encompass that judgment, did not preclude Court of Appeals from exercising its discretion to consider purely legal arguments first raised on reconsideration motion. Beason v. United Technologies Corp., C.A.2 (Conn.) 2003, 337 F.3d 271. Federal Courts 753

(61)Notice of appeal filed after magistrate judge ordered that judgment be entered but before entry of judgment, although technically premature, preserved all issues for appeal. Price v. Seydel, C.A.9 (Or.) 1992, 961 F.2d 1470. Federal Courts 668

(62)Court of Appeals had jurisdiction to consider fire-sprinkler inspector's appeal of summary judgment in favor of building manager on inspector's third-party claims in property insurer's

12

action, as building owner's subrogee, against inspector for negligence and breach of contract arising from damage caused by burst pipe, although inspector's notice of appeal was premature because district court had neither disposed of all of insurer's claims nor entered partial final judgment, where inspector would have been able to appeal if district court had entered hypothetical partial final judgment after it granted summary judgment to manager. Capitol Sprinkler Inspection, Inc. v. Guest Services, Inc., C.A.D.C.2011, 630 F.3d 217, 394 U.S.App.D.C. 73. Federal Courts  668

(63)Even if appeal of grant of injunction filed by appellants after district court asked appellees to prepare formal language of injunction but before district court signed injunction was premature, Court of Appeals would still have jurisdiction over appeal, under rule providing that notice of appeal filed after court announced decision but before entry of judgment should be treated as filed after such entry. Brotherhood of Locomotive Engineers v. Springfield Terminal Ry. Co., C.A.1 (Me.) 2000, 210 F.3d 18, certiorari denied 121 S.Ct. 571, 531 U.S. 1014, 148 L.Ed.2d 489. Federal Courts  667

(64)Fact that plaintiffs gave notice of appeal after district judge had filed his opinion but two days before judgment of dismissal was filed, was not such a substantial defect as to deprive court of appeals of jurisdiction of the appeal. Bates v. Batte, C.A.5 (Miss.) 1951, 187 F.2d 142, certiorari denied 72 S.Ct. 29, 342 U.S. 815, 96 L.Ed. 616. Federal Courts  668

133. ---- Reconsideration of judgment, altering or amending judgment,

(65)****District court's denial of motion for reconsideration restarted 30-day clock for plaintiff to file notice of appeal from amended final judgment, and started new 30-day period if plaintiff wished to file notice of appeal from order denying motion for reconsideration. Ysais v. Richardson, C.A.10 (N.M.) 2010, 603 F.3d 1175, certiorari denied 131 S.Ct. 163, 178 L.Ed.2d 97, rehearing denied 131 S.Ct. 692, 178 L.Ed.2d 522. Federal Courts  669

(66)*****Requirement that notice of appeal may not be filed before disposition of a timely motion for reconsideration did not apply where district court clerk did not transmit a copy of the notice of appeal and docket entries to the clerk of Court of Appeals; there was no risk of duplication where Court of Appeals did not know that notice of appeal had been filed and therefore dismissal of the appeal was not appropriate. Yadav v. Charles Schwab & Co., Inc., C.A.2 (N.Y.) 1991, 935 F.2d 540. Federal Courts  668; Federal Courts  722

(67)*****Second notice of appeal was timely filed in civil rights action, so that inadequate first notice of appeal would not be

13

considered; notice was filed within 30 days after district court reconsidered its prior order denying motion to alter or amend judgment on grounds it was untimely filed and proceeded for first time to reach motion on merits, even though district court had lost jurisdiction to reconsider prior order when first appeal was filed. Jusino v. Zayas, C.A.1 (Puerto Rico) 1989, 875 F.2d 986. Federal Courts  668

(68)*****District judge's order was intended to set new deadline for filing notice of appeal after judge acted on motion for reconsideration, and although deadline was beyond longest extension that judge was authorized to give appellant, appeal which was filed before new deadline was timely. Bernstein v. Lind-Waldock & Co., C.A.7 (Ill.) 1984, 738 F.2d 179. Federal Courts  669

(69)Appeal validly conferred jurisdiction on court of appeals even though it was filed while appellant had pending before district court a motion to reconsider its earlier denial of appellant's motion for new trial. Turner v. Evers, C.A.3 (Pa.) 1984, 726 F.2d 112. Federal Courts  659

134. ---- Reentry of judgment, altering or amending judgment, time for filing notice

(70)**Where original judgment inadvertently failed to incorporate conclusion of law as to non-infringement, and in response to motion, court re-entered the judgment with such conclusion added, reviewing court would treat the motion as one to amend the judgment, and cross-appeal taken within 30 days after the amended judgment would not be dismissed, though taken more than 40 days after original judgment. Southern States Equipment Corp. v. USCO Power Equipment Corp., C.A.5 (Ala.) 1953, 209 F.2d 111, 100 U.S.P.Q. 127. Federal Courts  654

135. ---- Rehearing, altering or amending judgment, time for filing notice

(71)**Motion for rehearing which asked court to consider grounds which were not previously presented because the plaintiffs had been satisfied that the court would rule in their favor on other grounds presented an argument that the legal grounds had not previously been argued because of mistake or excusable neglect and motion for rehearing could be treated as being made pursuant to rule 60, Federal Rules of Civil Procedure, this title, rather than rule 59 of the Federal Rules of Civil Procedure, so that the motion did not nullify notice of appeal. Lapeyrouse v. Texaco, Inc., C.A.5 (Tex.) 1982, 693 F.2d 581. Federal Courts  665.1

153. Reopening time for appeal, time for filing notice-- Generally

14

(72)**Under rule which permits district court to reopen period for appeal where party did not receive timely notice of entry of judgment, "notice" means written notice not actual notice; separate rule requires court clerk to give notice of judgment by mail, indicating that notice must be in writing, and writing requirement provides more certainty in litigation process. Scott-Harris v. City of Fall River, C.A.1 (Mass.) 1997, 134 F.3d 427, certiorari granted 117 S.Ct. 2430, 520 U.S. 1263, 138 L.Ed.2d 192, reversed 118 S.Ct. 966, 523 U.S. 44, 140 L.Ed.2d 79, certiorari denied 118 S.Ct. 1184, 523 U.S. 1003, 140 L.Ed.2d 315. Federal Courts  669

(73)**Denial of motion for reopening may not be based upon concept of excusable neglect; district judge retains some discretion to decide motion when nonreceipt has been proven and no other party would be prejudiced, but cannot deny relief based on failure of party to learn independently of entry of judgment during 30-day period for filing notices of appeal. Nunley v. City of Los Angeles, C.A.9 (Cal.) 1995, 52 F.3d 792. Federal Courts  655

(74)**Where a pro se litigant submits a late notice of appeal and alleges that he did not receive notice of the entry of the judgment or order from which he seeks to appeal within 21 days of its entry, that notice should be treated as a motion to reopen the time to file an appeal. Cordon v. Greiner, S.D.N.Y.2003, 274 F.Supp.2d 434. Federal Courts  669

154. ---- Written notice, reopening time for appeal, time for filing notice

(75)**Notice of entry of judgment contemplated by rule, governing extension of time to file notice of appeal due to failure to receive notice of entry of judgment, is written notice; oral communication is not sufficient to trigger relevant time periods under rule. Avolio v. County of Suffolk, C.A.2 (N.Y.) 1994, 29 F.3d 50, on remand 1995 WL 129195. Federal Courts  669

155. ---- Presumption of notice, reopening time for appeal, time for filing notice

(76)**Specific factual denial of receipt of notice of entry of judgment rebuts presumption of receipt for purposes of motion seeking extension of time for appeal by would-be appellant. Nunley v. City of Los Angeles, C.A.9 (Cal.) 1995, 52 F.3d 792. Federal Courts  655

III. EXTENSION OF PERIOD

211. Extension of period generally

(77)**Under certain unique circumstances, an appellate tribunal may have jurisdiction to hear an appeal that was not filed within prescribed time limits. Hernandez-Rivera v.

15

Immigration and Naturalization Service, C.A.9 1980, 630 F.2d 1352. Federal Courts 653

216. Power or jurisdiction of court of appeals, extension of period--Generally

217. ---- Abuse of discretion, power or jurisdiction of court of appeals, extension of period

(78)**Magistrate judge abused her discretion in denying motion for extension of time for appeal, when she based decision on her conclusion that appellate jurisdiction was lacking, which was matter reserved to Court of Appeals, and failed to render determination on issues of excusable neglect and good cause. Rios v. U.S. Dept. of Justice, C.A.10 (N.M.) 2002, 53 Fed.Appx. 40, 2002 WL 31781144, Unreported. United States Magistrates 31

223. Good cause, extension of period--Generally

(79)**Inquiry into whether good cause exists to consider otherwise untimely notice of appeal should focus on two distinct periods: first, district court should examine premailing delay to see if there is something akin to "excusable neglect" or "good cause" which excuses delay, and, second, district court should determine when document was mailed and whether, in ordinary course of events, clerk would have received letter by applicable filing deadline.

(80)**Provision that time for appeal may be extended not only upon showing of excusable neglect but also upon showing of "good cause" indicates that flexibility is intended in granting of extensions. Chipser v. Kohlmeyer & Co., C.A.5 (Ala.) 1979, 600 F.2d 1061. Federal Courts 655

235. Acceptance of appeal as grant of extension, extension of period

(81)**The district court's acceptance of notice of appeal would be construed as grant of additional time to file even though no formal order to that effect was entered. U. S. v. Williams, C.A.8 (Neb.) 1974, 508 F.2d 410. Criminal Law 1081(6)

239. ---- Notice of appeal constituting motion, motion for extension of time, extension of period

(82)**Pro se litigants' notice of appeal from adverse judgment in civil rights action implicitly contained application for extension of time to permit filing where litigants were notified of 30 days from Aug. 25 judgment within which notice of appeal had to be filed, joint notice of appeal was mailed on Sept. 22, letter languished in post office for three days or was misdelivered and remailed, and notice was received and marked "filed" one day after expiration of 30-day appeal period. Shah v. Hutto, C.A.4 (Va.) 1983, 704 F.2d 717, on rehearing 722 F.2d 1167, certiorari denied 104 S.Ct. 2354, 466 U.S. 975, 80 L.Ed.2d 827. Federal Courts 669

16

## IV. EXCUSABLE NEGLECT

271. Excusable neglect generally

(83)**An unaccountable lapse is not excusable neglect allowing for an extension of time to file a notice of appeal; the term "excusable neglect" refers to the missing of a deadline as a result of such things as misrepresentations by judicial officers, lost mail, and plausible misinterpretations of ambiguous rules. Abuelyaman v. Illinois State University, C.A.7 (Ill.) 2011, 2011 WL 6188446. Federal Courts  669

(84) "excusable neglect" is somewhat elastic concept and is not limited strictly to omissions caused by circumstances beyond control of movant. City of Chanute, Kan. v. Williams Natural Gas Co., C.A.10 (Kan.) 1994, 31 F.3d 1041, rehearing denied, certiorari denied 115 S.Ct. 1254, 513 U.S. 1191, 131 L.Ed.2d 135. Federal Courts  669

(85)**Whether "excusable neglect" exists to justify failure to file timely appeal requires equitable determination considering danger of prejudice to nonmovant, length of delay, movant's control over delay, and whether movant acted in good faith; late filings caused by inadvertence, mistake or carelessness, may be accepted as well as those caused by intervening circumstances beyond movant's control. U.S. v. Hooper, C.A.2 (N.Y.) 1993, 9 F.3d 257. Criminal Law  1069(1); Criminal Law  1069(6)

(86)**A finding of "excusable neglect" warranting extension of time for filing notice of appeal is no longer limited to situation where the party has not learned of the entry of judgment, but is open to a number of other situations in which tardiness is excusable and in which it is unfair to dismiss an appeal because of late filing of the notice. Feeder Line Towing Service, Inc. v. Toledo, P. & W. R. R. Co., C.A.7 (Ill.) 1976, 539 F.2d 1107. Federal Courts  669

273. ---- Specificity of finding, determination by district court, excusable neglect

(87)**Although trial court made no express finding of excusable neglect for failure to file notice of appeal within ten days after entry of judgment, such finding could be inferred where trial court did not grant motion within the 30-day extension period allowed by this rule for leave to appeal in forma pauperis; it would be considered that notice of appeal was timely filed. U. S. v. Gibson, C.A.8 (Minn.) 1978, 568 F.2d 111. Criminal Law  1081(6)

274. ---- Hearing, determination by district court, excusable neglect

(88)**Where civil litigant, unaided by counsel, files a motion for leave to appeal in forma pauperis beyond the inital deadline for appeal, but within the period during which he may seek

17

extension of time to appeal, the district court may not deny the appeal as untimely without first inquiring of the litigant whether the delay is due to excusable neglect and, if that inquiry raises disputed factual allegations, a formal hearing will be necessary to resolve the dispute. Alley v. Dodge Hotel, C.A.D.C.1974, 501 F.2d 880, 163 U.S.App.D.C. 320. Federal Courts 664

(89)Where accused at sentencing hearing had indicated his desire that an appeal be taken, district court was required to hold hearing to determine truth of accused's averment on motion to vacate sentence that he made timely request to his attorney to take an appeal but attorney had failed to do so and if court should find accused did make such a request court should further consider whether failure to abide by request was excusable neglect or instead required relief. Cartwright v. U.S., C.A.6 (Mich.) 1969, 410 F.2d 122. Criminal Law 1655(6)

281. Pro se petitioners, excusable neglect

(90)**An attempt by a defendant unrepresented by counsel to appeal after expiration of normal ten-day period may not be dismissed as untimely where 30-day extension would impart timeliness, without an invitation and an opportunity to show that tardiness is excusable. Johnson v. U. S., C.A.D.C.1968, 405 F.2d 1072, 132 U.S.App.D.C. 4. Criminal Law 1069(6)

(91)District court's grant of defendant's pro se motion to appoint counsel constituted excusable neglect warranting extension of time for defendant to file notice of appeal of his conviction upon guilty plea to three counts related to child pornography and his sentence; appointed counsel filed notice of appeal one day after his appointment. U.S. v. Silva, D.Mass.2011, 2011 WL 841050. Criminal Law 1081(6)

290. Prejudice, excusable neglect

(92)Where the record presents a strongly arguable claim of error, and delay beyond time allowable by district court is not shown to have prejudiced appellee , court has power and will entertain appeal. . Johnson v. Wilson, C.C.A.9 (Nev.) 1941, 118 F.2d 557. Federal Courts 651

(93)Plaintiffs in sex discrimination action would be granted leave to file appeal nunc pro tunc from dismissal order, where no prejudice to defendant was shown and failure to file timely notice of appeal appeared excusable under circumstances, including claim that attorney believed that dismissal "without prejudice" was not final. Torockio v. Chamberlain Mfg. Co., W.D.Pa.1972, 56 F.R.D. 82, affirmed 474 F.2d 1340. Federal Courts 669

291. Actions and statements of court and court personnel, excusable neglect

18

(94)**Plaintiff's motion to reconsider denial of leave to amend, which court properly viewed as a motion to alter or amend judgment, would have tolled 30-day period for filing a notice of appeal had it been timely but since motion was not filed within ten days as required by procedural rules, motion did not toll the 30-day period and the motion should have been dismissed as untimely by the district court; however, failure to file a notice of appeal within 30 days of denial of motion for leave to amend did not prevent the court of appeals from hearing the appeal since there was action by the district court that the plaintiff apparently relied upon in not filing a timely notice of appeal. Textor v. Board of Regents of Northern Illinois University, C.A.7 (Ill.) 1983, 711 F.2d 1387. Federal Courts 658

(95)Inmate's notice of appeal of dismissal of his petition for writ of habeas corpus filed after trial court denied motion to alter or amend the judgment after granting unauthorized extension of time within which to file the motion was, nevertheless, timely where petitioner's post-trial motion, if timely filed, would have postponed deadline for filing his appeal, government did not object to the timeliness of the motion, district court indicated that the motion was timely, and petitioner relied on that indication and filed his appeal within what the parties and district court believed to have been the new deadline. Inglese v. Warden, U. S. Penitentiary, C.A.11 (Ga.) 1982, 687 F.2d 362. Habeas Corpus 819

293. Failure to learn of entry of judgment or order, excusable neglect--Generally

(96)**Given appropriate circumstances, failure to hear that judgment has been entered may be basis for finding of excusable neglect sufficient to allow extension of time for filing notice of appeal, as may uncontrollable delays in mail delivery, unpredictable events affecting feasibility of appeal and plausible misconstructions, but not mere ignorance of law or rules. In re Cosmopolitan Aviation Corp., C.A.2 (N.Y.) 1985, 763 F.2d 507, certiorari denied 106 S.Ct. 593, 474 U.S. 1032, 88 L.Ed.2d 573. Federal Courts 669

(97)**Failure to learn of entry of judgment is major, but not only, reason for finding excusable neglect in seeking extension of time in which to appeal, and showing of other unique circumstances may render it unfair to dismiss appeal because of late filing of notice. Chipser v. Kohlmeyer & Co., C.A.5 (Ala.) 1979, 600 F.2d 1061. Federal Courts 655; Federal Courts 670

(98)**Excusable neglect such as will justify extension of time in which to file appeal is limited to situations where party has failed to learn of the entry of the order or judgment or in other

19

extraordinary circumstances where injustice would otherwise result. USM Corp. v. GKN Fasteners Ltd., C.A.1 1978, 578 F.2d 21. Federal Courts  653

(99)**Excusable neglect for failure to timely file notice of appeal may be found where party has failed to learn of an entry of judgment or, in extraordinary cases, where injustice would otherwise result. Benoist v. Brotherhood of Locomotive Engineers, C.A.8 (Mo.) 1977, 555 F.2d 671. Federal Courts  669

(100)**Though generally failure to learn of entry of judgment constitutes a major reason for "excusable neglect" warranting extension of time for filing of notice to appeal, district court has power to grant extensions on other grounds in extraordinary cases so that injustice may be avoided. Dugan v. Missouri Neon & Plastic Advertising Co., C.A.8 (Mo.) 1973, 472 F.2d 944. Federal Courts  669

(101)Failure to receive notice of order to be appealed from is the sort of contingency contemplated by the "excusable neglect" proviso of rule empowering district court to extend appeal time. National Life Ins. Co. v. Hartford Acc. & Indem. Co., E.D.Pa.1979, 475 F.Supp. 282. Federal Courts  655

(102)**Where temporary replacement for calendar clerk in plaintiffs' counsel's office missed entry of final judgment in newspaper, where counsel stated that he never received notice of entry of judgment from clerk's office, and where he stated he telephoned judge's chambers and was incorrectly advised that no judgment had been entered, plaintiffs were entitled, in exercise of court's discretion, to have judgment vacated and reentered to allow them to appeal within time limits set by subd. (a) of this rule. Vasquez v. Brezenoff, S.D.N.Y.1982, 93 F.R.D. 583. Federal Civil Procedure  2651.1

297. ---- Notice to counsel, failure to learn of entry of judgment or order, excusable neglect

(103)Plaintiff's attorney showed excusable neglect for having failed to file timely notice of appeal, and was entitled to leave to file notice of appeal out of time; attorney was ignorant of issuance of court's opinion until after time to appeal had lapsed, and while attorney should have searched notices of orders published in journal designated for publication of legal notices, attorney's failure to do so was deemed excused in view of court's practice of promptly providing actual copies of opinions and orders to parties by mail. Brignoli v. Balch Hardy & Scheinman, Inc., S.D.N.Y.1990, 739 F.Supp. 936. Federal Courts  670

298. ---- Number of counsel receiving notice, failure to learn of entry of judgment or order, excusable neglect

(104)A showing that plaintiff's trial counsel in actual charge of the matter did not receive notice of entry of judgment until expiration of time to appeal was sufficient showing of "excusable neglect" within this rule to permit extension of time for appeal, notwithstanding that plaintiff's attorney of record may have received notice of entry of judgment. Rensick v. Lehigh Valley R Co, S.D.N.Y.1951, 11 F.R.D. 76. Federal Courts 653

299. ---- Pro se parties, failure to learn of entry of judgment or order, excusable neglect

(105)In computing timeliness of pro se prisoners' appeals, any prison delay in transmitting to prisoner notice of district court's final order or judgment shall be excluded from computation of appellant's time for taking appeal. U.S. v. Grana, C.A.3 (N.J.) 1989, 864 F.2d 312. Criminal Law 1069(5)

(106)Trial court had jurisdiction to grant relief from judgment in habeas corpus proceeding after the expiration of the period for requesting an extension of time to appeal in order to allow the petitioner to take a timely appeal where the petitioner had been repeatedly transferred from jail to jail, had diligently informed the court of his change of address on each occasion, learned the entry of judgment denying habeas corpus relief too late to apply for relief from the time constraints for an appeal, and promptly sought relief from judgment within 30 days of learning of the entry of the judgment. Burkett v. Cunningham, C.A.3 (Pa.) 1987, 826 F.2d 1208. Habeas Corpus 792.1

(107)Considering that petitioner was proceeding pro se, was at all relevant times in federal custody, was being transferred from one federal institution to another during much of the time he had to file his notice of appeal, was under mistaken belief that his time ran from date of denial of his untimely motion for reconsideration, did not learn that that motion had been denied until nearly two months after its denial through no fault on his part, and attempted to obtain extension of time in which to file his notice of appeal and to make earlier finding of notice, petitioner's late filing of notice of appeal was made under circumstances which would have justified a finding of "excusable neglect," were such finding within court's power to make. Crumpton v. U. S., C.D.Cal.1980, 496 F.Supp. 774. Criminal Law 1081(6)

300. ---- Successors of corporate officers, failure to learn of entry of judgment or order, excusable neglect

(107)Considering that petitioner was proceeding pro se, was at all relevant times in federal custody, was being transferred from one federal institution to another during much of the time he had to file his notice of appeal, was under mistaken belief

21

that his time ran from date of denial of his untimely motion for reconsideration, did not learn that that motion had been denied until nearly two months after its denial through no fault on his part, and attempted to obtain extension of time in which to file his notice of appeal and to make earlier finding of notice, petitioner's late filing of notice of appeal was made under circumstances which would have justified a finding of "excusable neglect," were such finding within court's power to make. Crumpton v. U. S., C.D.Cal.1980, 496 F.Supp. 774. Criminal Law 1081(6)

301. ---- Miscellaneous failures, failure to learn of entry of judgment or order, excusable neglect

(108)**Where record showed that no written notice of denial of motion for new trial was mailed to client or his counsel who were in open court when the same was orally denied and court granted several weeks before client had to turn himself in, under circumstances, proceedings were too ambiguous to show with sufficient certainty that client or his attorney had actual notice of entry of order denying motion of new trial, and it was error for court of appeals to hold that notice of appeal was untimely. Rosenbloom v. U.S., U.S.Mo.1957, 78 S.Ct. 202, 355 U.S. 80, 2 L.Ed.2d 110. Criminal Law 1081(4.1)

327. Mail delay, excusable neglect

=><=(109)**District court properly found excusable neglect in failure to timely file cross appeal, supporting grant of extension nunc pro tunc, where notice was mailed between two cities in Oklahoma three days before it was due, but arrived a day late. Tarabishi v. McAlester Regional Hosp., C.A.10 (Okla.) 1991, 951 F.2d 1558, certiorari denied 112 S.Ct. 2996, 505 U.S. 1206, 120 L.Ed.2d 872. Federal Courts 669

(110)**Inexplicable 13-day delay between date of mailing of notice of appeal and receipt by district court constituted excusable neglect for late filing of notice justifying extension of time for filing; counsel reasonably believed that notice, mailed six days, and four working days, before filing deadline from law office five miles from courthouse, would arrive in timely manner. Ramseur v. Beyer, C.A.3 (N.J.) 1990, 921 F.2d 504. Federal Courts 670

(111)**Extension of time for filing notice of appeal was warranted following post office's late delivery of notice of appeal, despite appellant's omission of street number from address of court to which notice was sent, where there was no reason to believe, due to post office's proximity to courthouse, that delivery would be delayed. Scarpa v. Murphy, C.A.1 (Mass.) 1986, 782 F.2d 300. Federal Courts 669

(112)**Failure to timely file notice of appeal from conviction was caused by excusable neglect, where defendant indicated

in writing five days after entry of judgment and commitment order his desire to appeal and requested appointment of an attorney, defendant, by counsel, filed his notice of appeal 12 days after entry of judgment, defendant's counsel maintained he mailed notice of appeal seven days after entry of judgment in same building in which district court was located and expected notice to arrive in district court clerk's office ten days after entry of judgment, and defendant was not advised by district court that his notice of appeal was untimely. U.S. v. Reyes, C.A.4 (Va.) 1985, 759 F.2d 351, certiorari denied 106 S.Ct. 164, 474 U.S. 857, 88 L.Ed.2d 136. Criminal Law 1081(6)

(113)**Reliance on the normal course of delivery of mail is reasonable and, therefore, may be the basis for court to excuse an otherwise untimely filing of a notice of appeal. Sanchez v. Board of Regents of Texas Southern University, C.A.5 (Tex.) 1980, 625 F.2d 521, motion granted 633 F.2d 1210. Federal Courts  670

328. Misunderstanding of law, excusable neglect

(114)**Defendant's failure to file his appeal within ten days after judgment was excusable neglect on his part where defendant was ignorant of short filing deadline and court omitted to advise defendant of his right to appeal. U.S. v. Edwards, E.D.Tex.1982, 562 F.Supp. 57. Criminal Law 1081(6)

(115)**Failure of petitioner, who, although having prior criminal record and having served federal sentence, had not previously entered appeal to court of appeals, and who had no knowledge that former rules required that notice of appeal be filed within 10 days after entry of judgment, to file written notice of appeal with clerk of district court within 10 days after entry of judgment was due to excusable neglect. U. S. v. Brown, E.D.N.C.1966, 263 F.Supp. 777. Criminal Law 1081(6)

(116)**Failure of plaintiff in civil rights action to file timely notice of appeal was result of excusable neglect, and thus extension of time for filing appeal was warranted, even though plaintiff's factual statement as to reason for delay was somewhat lacking in specifics, where counsel inadvertently sent copy of order dismissing action to plaintiff's former address, plaintiff did not receive order for at least several weeks after it was issued, there was nothing to suggest defendants would suffer any prejudice as result of extension, and delay from extension was minimal and would have no impact on proceedings. George v. City of Wichita, Kansas, D.Kan.2005, 353 F.Supp.2d 1131. Federal Courts  669

335. Miscellaneous actions, excusable neglect

23

(117)**District court did not abuse its discretion in granting defendants extension of time to file third notice of appeal based on excusable neglect; defendants' resort to three separate notices of appeal reflected diligent effort to pursue appellate rights, and confusion was caused when plaintiff, the winning party, filed motion to amend after defendants had filed appeal and motion to amend did not really seek to challenge district court order but sought simply to add another citation to support judgment

Court of International Trade did not abuse its discretion in concluding that failure to file timely notice of appeal did not result from excusable neglect or good cause, and thus that extension for filing notice of appeal was unwarranted, where party elected to serve motion to rehear, which would have extended time for appeal, upon the Government by ordinary mail, only two days before deadline, rather than by certified or registered mail, which would have made the date of mailing the date of service; fact that the motion was not delivered at all, rather than merely delivered late, did not change the result. Penrod Drilling Co. v. U.S., C.A.Fed.1991, 925 F.2d 406. Customs Duties 84(3)

V. TOLLING OF PERIOD

361. Tolling of period generally

(118)**Generally, where a tolling petition or motion is seasonably made and entertained, the time for appeal does not begin to run until the disposition of the motion. Leishman v. Associated Wholesale Electric Co., U.S.Cal.1943, 63 S.Ct. 543, 318 U.S. 203, 87 L.Ed. 714, rehearing denied 63 S.Ct. 758, 318 U.S. 800, 87 L.Ed. 1163. See, also, U.S. v. Best, C.A.R.I.1954, 212 F.2d 743. Federal Courts 652.1

365. Motions tolling period generally, tolling of period

(119)**Time limit contained in federal rule governing appeals in civil cases is mandatory and jurisdictional; however, when party files motion for judgment notwithstanding the verdict, motion to amend or make additional findings of fact, motion to alter or amend the judgment, or motion for new trial, commencement of appeal period is tolled until the resolution of the motion. Wright v. Preferred Research, Inc., C.A.11 (Ala.) 1990, 891 F.2d 886. Federal Courts 652.1; Federal Courts 657; Federal Courts 658

(120)**Where petition for rehearing, motion for new trial, or motion to vacate, amend, or modify a judgment is seasonably made and entertained, time for appeal does not begin to run until disposition of the motion. Papanikolaou v. Atlantic Freighters, Limited, C.A.4 (Va.) 1956, 232 F.2d 663. Admiralty 108

367. Late motions, tolling of period

24

(121)**The filing of an untimely petition for rehearing which is not entertained or considered on its merits, or a motion for leave to file such a petition out of time, if not acted on or if denied by the trial court, cannot operate to extend the time for appeal, but where the court allows the filing, and, after considering the merits, denies the petition, the judgment of the court as originally entered does not become a "final judgment" until such denial, and the time for appeal runs from the date thereof. Bowman v. Lopereno, U.S.Cal.1940, 61 S.Ct. 201, 311 U.S. 262, 85 L.Ed. 177, on remand 118 F.2d 742. See, also, In re Bowman, C.A.Cal.1941, 118 F.2d 742. Appeal And Error 345.1

369. Amendment or making additional findings, tolling of period

(122)**Filing of motion to amend findings extended time for appeal from order dismissing petition for review of bankruptcy referee's order. In re Wyse, C.A.6 (Ohio) 1965, 340 F.2d 719. Bankruptcy 3773

(123)**In a rare exception to the rule that a party gets one shot at asking a district court to alter or amend a judgment, a district court will issue an order that changes matters of substance, or resolves a genuine ambiguity, in a judgment previously rendered, and the order is construed as a new judgment in the case; thus, the aggrieved party has a new ten-day period within which to file a motion to alter or amend, and the time for appealing will not begin until the new motion has been decided. Andrews v. E.I. Du Pont De Nemours and Co., C.A.7 (Ill.) 2006, 447 F.3d 510. Federal Civil Procedure 2658; Federal Courts 657

(124) Joint motion to amend judgment in Court of Federal Claims, which dismissed pursuant to stipulation, but was silent as to whether dismissal was with prejudice, functioned to amend judgment to provide that, with one exception, taxpayer's claims were dismissed with prejudice, effected "substantive" change to rights of parties and, thus, was properly characterized as motion to alter or amend judgment and tolled time to appeal, despite claim that motion was properly characterized as one to correct clerical mistakes; judgment was best characterized as voluntary dismissal, and such dismissals, pursuant to rule, were without prejudiceParties' stipulation to changes in judgment was functionally equivalent to motion to alter or amend judgment and, therefore, tolled time for appeal until approval of stipulation. Marine Midland Bank v. Slyman, C.A.2 (N.Y.) 1993, 995 F.2d 362. Federal Courts 657

(125)**If Court of Appeals characterizes unlabeled postjudgment motion as one to alter or amend judgment under

Rule 59(e), that motion tolls running of 30-day appeal period and requires new notice of appeal following entry of order disposing of the motion. Sanders v. Clemco Industries, C.A.8 (Mo.) 1988, 862 F.2d 161. Federal Courts 657

(126)Thirty-day period from entry of judgment for filing notice of appeal ceases to run if any one of several postjudgment motions are filed with district court, including motion seeking to alter or amend judgment; if such postjudgment motion is filed, new 30-day period in which to file notice of appeal commences to run once court enters order granting or denying postjudgment motion. Smith v. Hudson, C.A.6 (Tenn.) 1979, 600 F.2d 60, certiorari dismissed 100 S.Ct. 495, 444 U.S. 986, 62 L.Ed.2d 415. Federal Courts 668

(127)**A refusal to modify an original order requires that appeal be taken from such order, though time therefor is counted from later order refusing to modify original order. Bass v. Baltimore & O. Terminal R. Co., C.C.A.7 (Ill.) 1944, 142 F.2d 779, certiorari denied 65 S.Ct. 135, 323 U.S. 775, 89 L.Ed. 619. Federal Courts 561; Federal Courts 657

(128)Motion to alter or amend judgment suspends finality of a judgment for purposes of appeal, and full time for appeal commences to run anew from entry of order disposing of motion. Stubbs v. Hunter, D.S.C.1992, 806 F.Supp. 81. Federal Courts 657

377. ---- Reconsideration of judgment, altering or amending judgment, tolling of period

(129)**Plaintiff's motion for reconsideration tolled statutory period for filing notice of appeal, even though plaintiff failed to cite relevant rules of federal civil procedure in his motion, where motion plainly sought relief from judgment. McDonald v. OneWest Bank, F.S.B., C.A.10 (Colo.) 2012, 680 F.3d 1264. Federal Courts 669

(130)**Motion for reconsideration tolled time for appeal. Atkinson-Baker & Associates, Inc. v. Kolts, C.A.9 (Cal.) 1993, 7 F.3d 1452. Federal Courts 658

(131)**City's second postverdict motion requesting consideration on substantive issue and asking the court to reconsider its decision in earlier Rule 50(b) motion, which had been filed and ruled upon prior to the entry of final judgment, tolled time for filing notice of appeal and thus the second motion did not improperly present the opportunity for the appeal period to be tolled a second time. Finch v. City of Vernon, C.A.11 (Fla.) 1988, 845 F.2d 256. Federal Courts 668

(132)**Motion by former employee for trial court to "reconsider" its judgment in favor of former employer was cognizable under Rule 59(e), and as such, tolled running of

26

30-day appeal period, notwithstanding that C.A.11 (Ga.) 1988, 837 F.2d 1018. Federal Courts 658

(133)Appeal filed more than 30 days after date of entry of judgment was, nevertheless, timely, given appellant's filing motion requesting district court to reconsider its judgment in light of affidavit directed at heart of case, which would be treated as motion to alter or amend judgment, suspending finality of judgment until motion was decided. Marine Bank, Nat. Ass'n v. Meat Counter, Inc., C.A.7 (Ill.) 1987, 826 F.2d 1577. Federal Courts 657

(134)Defendants' motion for reconsideration suspended time for filing notice of appeal for all parties until after that motion was denied, and thus notice of appeal filed in June was timely as to both January and June judgments *****************

(135)Effect of filing motion for reconsideration was to suspend running of appeals period until motion was decided. Peabody Coal Co. v. Local Unions Numbers 1734, 1508 and 1548, United Mine Workers of America, C.A.6 (Ky.) 1973, 484 F.2d 78. Federal Courts 656

(136) Service  of motion for reconsideration stayed running of time for appeal. Pacific Maritime Ass'n v. Quinn, C.A.9 (Cal.) 1972, 465 F.2d 108. Federal Courts 656

378. ---- Rehearing, altering or amending judgment, tolling of period

(137) **Whether petition for rehearing extends time for appeal in bankruptcy case depends upon whether court "entertains" the petition. Ribaudo v. Citizens Nat. Bank of Orlando, C.A.5 (Fla.) 1958, 261 F.2d 929. Bankruptcy 3773

379. ---- Setting aside or vacation of judgment, altering or amending judgment, tolling of period

(138) Notice of appeal from a judgment that, while adverse to the appellant on some claims, is favorable to the appellant on the particular claim in question, does not serve to appeal from a subsequent amended judgment, which vacates the prior favorable judgment on the claim, substituting an adverse judgment in its place. Sorensen v. City of New York, C.A.2 (N.Y.) 2005, 413 F.3d 292. Federal Courts 768.1

(139)**Where a motion to vacate decree is permitted to be filed and taken under consideration before expiration of period allowed for taking an appeal, period for taking appeal is suspended, and notice of appeal duly filed after disposition of the motion is timely. U.S. ex rel. Harrington v. Schlotfeldt, C.C.A.7 (Ill.) 1943, 136 F.2d 935, certiorari denied 66 S.Ct. 680, 327 U.S. 781, 90 L.Ed. 1008. Federal Courts 657

380. ---- Setting aside or vacation of order, altering or amending judgment, tolling of period

(140)**Appeal from temporary restraining order prohibiting a supplier of natural gas from reducing allocations of gas to a customer in accordance with a plan for allocation of gas supplies during periods of short supply was not untimely, albeit that notice of appeal was filed more than 30 days after entry of order, where motion of defendants to vacate order within 30-day period qualified as a motion to alter or amend judgment, and appeal was taken within 30 days from denial of motion. Com. of Va. v. Tenneco, Inc., C.A.4 (Va.) 1976, 538 F.2d 1026. Federal Courts  657

(141)Plaintiffs' motions to set aside orders of dismissal and reinstate case terminated running of time for appeal. Dockery v. Travelers Co. of Hartford, Conn., C.A.5 (Ga.) 1965, 349 F.2d 1017. Federal Courts  656

385. ---- Service of motion, altering or amending judgment, tolling of period

(142)**Pro se prisoner's motion to vacate dismissal of complaint that was never served on defendant was timely, valid, suspended time for appeal, and nullified contemporaneous notice of appeal, even though motion to vacate was not served on defendants. Craig v. Lynaugh, C.A.5 (Tex.) 1988, 846 F.2d 11. Federal Civil Procedure 2658; Federal Courts  665.1

(143)**Motion for reconsideration requesting that judgment be altered or amended was adequate and thus tolled 60-day period during which government must file an appeal from judgment, notwithstanding that through inadvertence motion was not served on opposing counsel, where it was timely filed, opposing party took no formal action cognizable by the court to oppose the motion, and district judge gave movant implicit assurance that motion was timely by issuing memorandum and order explaining his ruling denying reconsideration and by not retracting that order sua sponte once he was informally advised of lack of service. St. Marys Hosp. Medical Center v. Heckler, C.A.7 (Wis.) 1985, 753 F.2d 1362, certiorari denied 105 S.Ct. 3502, 472 U.S. 1028, 87 L.Ed.2d 633. Federal Courts  658

387. New trial in civil action, tolling of period--Generally

(144)Generally, time for taking an appeal is suspended by a seasonably filed motion for new trial or petition for rehearing. Safeway Stores v. Coe, App.D.C.1943, 136 F.2d 771, 78 U.S.App.D.C. 19. Federal Courts  658

398. Modification or vacation of sentence, tolling of period

(145)**When a district court rules on a motion to modify an imposed sentence of imprisonment, a defendant is entitled to appeal that ruling despite the fact that his time to appeal his original sentence, as imposed at sentencing and memorialized

in the judgment of conviction, has expired. U.S. v. Lonjose, C.A.10 (N.M.) 2011, 663 F.3d 1292. Criminal Law 1023(14)

399. Relief from judgment or order, tolling of period--Generally

(146)Federal Appellate Rule 4(a)(5) under which a motion to extend time for filing a notice of appeal must be filed within 30 days after expiration of time to appeal does not apply to situations when notice of entry of judgment is not received until after 30-day period authorized for the motion; moreover, allowing relief in such circumstances under Federal Civil Rule 60(b)(1) permitting relief from judgment for mistake, inadvertence, surprise, or excusable neglect, is not contrary to policy underlying the time limitation because a motion for relief cannot be filed within 60 days if a party has no knowledge of entry of judgment. Wallace v. McManus, C.A.10 (Kan.) 1985, 776 F.2d 915. Federal Courts 669

402. ---- Time of motion, relief from judgment or order, tolling of period

(147)**Any motion that is not mentioned as something that will toll the time for filing notice of appeal is automatically handled as a motion for relief from a judgment or order filed beyond the 28-day period.

If civil rights plaintiff's motion for relief from judgment, which was in reality a motion to alter or amend judgment, was timely, it clearly operated to toll time for filing notice of appeal until district court entered an order disposing of it. Fischer v. U.S. Dept. of Justice, C.A.5 (La.) 1985, 759 F.2d 461. Federal Courts 669

439. ---- Sentence, criminal appeals, timeliness of particular appeals

(148)**Appeal of district court's final decision dismissing complaint was timely, even though notice of appeal was not filed until more than 60 days after court announced its decision, where court did not file separate entry of judgment with its decision, and appellants filed notice of appeal within 150 days of decision after district court denied their motion to vacate. Mathis v. Skaluba, C.A.10 (Wyo.) 2004, 94 Fed.Appx. 701, 2004 WL 537895, Unreported. Federal Courts 668

485. Issues reviewable, practice and procedure--Generally

(149)** Although plaintiff's timely notice of appeal named only order denying his motion for reconsideration, Court of Appeals would review not only denial of motion but also underlying order of dismissal for which reconsideration was sought, where plaintiff manifested intent, however awkwardly phrased, to appeal underlying order, and defendants' brief also assumed that review would cover underlying dismissal order. Moran Vega v. Cruz Burgos, C.A.1 (Puerto Rico) 2008, 537 F.3d 14. Federal Courts 666

(150)**Although Court of Appeals ordinarily would not address argument made for first time in petition for rehearing, consideration was warranted in cigarette importers' action challenging validity of New York contraband statutes as to argument proffering new interpretation of master settlement agreement (MSA) resolving multi-state tort litigation between states and tobacco manufacturers, given apparent importance of action and fact that anticompetitive effects of MSA involved disputed issues of fact for trial. Freedom Holdings, Inc. v. Spitzer, C.A.2 (N.Y.) 2004, 363 F.3d 149. Federal Courts  744

(151)**Timely appeal from order denying motion to alter or amend judgment brings up underlying judgment for review. Quality Prefabrication, Inc. v. Daniel J. Keating Co., C.A.3 (Pa.) 1982, 675 F.2d 77. Federal Courts  763.1

488. Remand, practice and procedure

(152)Remand was required, for determination of whether moving party received notice of entry of judgment, before deciding motion for extension of time to appeal on ground that would-be appellant did not receive notice and that no other party would be prejudiced by extension

(153)Court of Appeals could have remanded criminal defendant's case to district court for excusable neglect determination after defendant failed to timely file his notice of appeal; however, Court concluded that district court would find excusable neglect based on the facts presented and, thus, concluded that there was excusable neglect and that Court had jurisdiction over defendant's appeal. U.S. v. Reyes, C.A.4 (Va.) 1985, 759 F.2d 351, certiorari denied 106 S.Ct. 164, 474 U.S. 857, 88 L.Ed.2d 136. Criminal Law  1081(6)

(153)Court of Appeals could have remanded criminal defendant's case to district court for excusable neglect determination after defendant failed to timely file his notice of appeal; however, Court concluded that district court would find excusable neglect based on the facts presented and, thus, concluded that there was excusable neglect and that Court had jurisdiction over defendant's appeal. U.S. v. Reyes, C.A.4 (Va.) 1985, 759 F.2d 351, certiorari denied 106 S.Ct. 164, 474 U.S. 857, 88 L.Ed.2d 136. Criminal Law  1081(6)

(153)Court of Appeals could have remanded criminal defendant's case to district court for excusable neglect determination after defendant failed to timely file his notice of appeal; however, Court concluded that district court would find excusable neglect based on the facts presented and, thus, concluded that there was excusable neglect and that Court had jurisdiction over defendant's appeal. U.S. v. Reyes, C.A.4 (Va.) 1985, 759 F.2d 351, certiorari denied 106 S.Ct. 164, 474 U.S. 857, 88 L.Ed.2d 136. Criminal Law  1081(6)

30

491a. Objections to untimely reconsideration motion, practice and procedure

(154)**By failing to raise a defense of untimeliness to defendant's motion for reconsideration of postconviction motion until after the District Court had considered the merits of that motion, Government forfeited its ability to challenge that motion as untimely in the District Court. Lizardo v. U.S., C.A.3 (Virgin Islands) 2010, 619 F.3d 273, certiorari denied 131 S.Ct. 2444, 179 L.Ed.2d 1215. Criminal Law 1661

My Notes on FRAP4 caselaws listing of what went to COAF1 on
4/30 2014 of what went to COAF1 on 4/30 2014
(1) Alley v. Dodge Hotel, C.A.D.C.1974, 501 F.2d 880, 163
U.S.App.D.C. 320. Federal Courts 670
 (2)Phelps v. U. S., C.A.10 (Okla.) 1967, 373 F.2d 194, certiorari
denied 87 S.Ct. 1701, 387 U.S. 913, 18 L.Ed.2d 634. Criminal Law
1081(6)
(3)United States v. Brown, 179 F.R.D. 323 (D.Kan.1998). Clark v.
Lavallie, C.A.10 (Colo.) 2000, 204 F.3d 1038. Federal Courts  656
(4)U.S. v. Neff, C.A.7 (Ill.) 2010, 598 F.3d 320. Criminal Law
1081(4.1)
(5)U.S. v. Shah, C.A.7 (Ill.) 2011, 665 F.3d 827.
(6)Washington v. Patlis, C.A.5 (Tex.) 1989, 868 F.2d 172. Federal
Courts  666; Federal Courts  667
(7). Boggs v. U.S. Railroad Retirement Bd., C.A.11 1984, 725 F.2d
620. Administrative Law And Procedure  722.1
(8). In re Orbitec Corp., C.A.2 (N.Y.) 1975, 520 F.2d 358. Federal
Courts  561
(9)Ruby v. Secretary of U. S. Navy, C.A.9 (Cal.) 1966, 365 F.2d
385, certiorari denied 87 S.Ct. 1358, 386 U.S. 1011, 18 L.Ed.2d 442.
Federal Courts  557
(10)Wilson v. Southern Ry. Co., C.C.A.5 (Ga.) 1945, 147 F.2d 165.
Federal Courts  666
(11)Hunt v. U.S. Dept. of Justice, C.A.5 (La.) 1993, 2 F.3d 96.
Action  18; Federal Courts  668
 (12)Carnes v. U. S., C.A.10 (Okla.) 1960, 279 F.2d 378, certiorari
denied 81 S.Ct. 88, 364 U.S. 846, 5 L.Ed.2d 69. Criminal Law
1069(5)
(13)Slayton v. American Exp. Co., C.A.2 (N.Y.) 2006, 460 F.3d
215, as amended, on remand 2008 WL 4501928. Federal Courts  668
(14)Brainerd v. Beal, C.A.7 (Ill.) 1974, 498 F.2d 901, certiorari
denied 95 S.Ct. 655, 419 U.S. 1069, 42 L.Ed.2d 664, rehearing
denied 95 S.Ct. 836, 420 U.S. 913, 42 L.Ed.2d 844. Courts  117
(15)Danzig v. Virgin Isle Hotel, Inc., C.A.3 (Virgin Islands) 1960,
278 F.2d 580. Federal Courts  669
(16)Randall Foundation, Inc. v. Riddell, C.A.9 (Cal.) 1957, 244 F.2d
803. Federal Courts  652.1
(17)U.S. v. Higginson, C.A.1 (Mass.) 1956, 238 F.2d 439. Federal
Courts  654
(18). Cedar Creek Oil & Gas Co. v. Fidelity Gas Co., C.A.9 (Mont.)
1956, 238 F.2d 298. Federal Courts  654
(19)Healy v. Pennsylvania R. Co., C.A.3 (Pa.) 1950, 181 F.2d 934.
Federal Courts  656
(20)Lucas v. Western Cas. & Sur. Co., C.A.10 (Okla.) 1949, 176
F.2d 506. Federal Courts  651
(21). In re Peachtree Lane Associates, Ltd., N.D.Ill.1995, 188 B.R.
815, on remand 198 B.R. 272. Bankruptcy  3774.1

(22)In re ANR-Advance Transp. Co., Inc., C.A.7 (Wis.) 2003, 73 Fed.Appx. 183, 2003 WL 21949582, Unreported. Bankruptcy 3774.1

(23)Jung v. K. & D. Min. Co., U.S.Ill.1958, 78 S.Ct. 764, 356 U.S. 335, 2 L.Ed.2d 806. Federal Courts 654

(24). Montes v. U.S., C.A.9 (Cal.) 1994, 37 F.3d 1347. Federal Courts 590

(25). Bell v. Pleasantville Housing Authority, C.A.3 (N.J.) 2011, 2011 WL 3796144, Unreported.

(26)Outlaw v. Airtech Air Conditioning and Heating, Inc., C.A.D.C.2005, 412 F.3d 156, 366 U.S.App.D.C. 374. Federal Courts 668

(27). Lundgren v. Freeman, C.A.9 (Or.) 1961, 292 F.2d 489. Federal Courts 654

(28)Shearson Lehman Bros., Inc. v. M & L Investments, C.A.10 (Utah) 1993, 10 F.3d 1510. Federal Courts 668

(29)Stevens v. Heard, C.A.5 (Tex.) 1982, 674 F.2d 320. Federal Courts 652.1

(30)Deloney v. Estelle, C.A.5 (Tex.) 1981, 661 F.2d 1061, appeal reinstated 679 F.2d 372. Habeas Corpus 819

(31)Aldabe v. Aldabe, C.A.9 (Cal.) 1980, 616 F.2d 1089. Federal Courts 668

(32). Da'Ville v. Wise, C.A.5 (La.) 1973, 470 F.2d 1364, certiorari denied 94 S.Ct. 170, 414 U.S. 818, 38 L.Ed.2d 50, certiorari denied 94 S.Ct. 40, 414 U.S. 818, 38 L.Ed.2d 50. Federal Courts 670

(33). Bankers Trust Co. v. Mallis, U.S.N.Y.1978, 98 S.Ct. 1117, 435 U.S. 381, 55 L.Ed.2d 357, rehearing denied 98 S.Ct. 2259, 436 U.S. 915, 56 L.Ed.2d 416. Federal Courts 584

(34)Gregson & Associates Architects v. Government of the Virgin Islands, C.A.3 (Virgin Islands) 1982, 675 F.2d 589. Federal Courts 654; Federal Courts 668

(35)Caperton v. Beatrice Pocahontas Coal Co., C.A.4 (Va.) 1978, 585 F.2d 683. Federal Courts 669

(36)U. S. v. Davis, E.D.N.C.1962, 210 F.Supp. 84, affirmed 320 F.2d 660. Criminal Law 1081(4.1)

(37)Bandag, Inc. v. Al Bolser Tire Stores, Inc., C.A.Fed.1983, 719 F.2d 392, 219 U.S.P.Q. 1049. Federal Courts 654

78. Entry of judgment or order, time for filing notice

(38)FirsTier Mortg. Co. v. Investors Mortg. Ins. Co., U.S.1991, 111 S.Ct. 648, 498 U.S. 269, 112 L.Ed.2d 743, on remand 930 F.2d 1508. Federal Courts 668

(39)A. Bauer Mechanical, Inc. v. Joint Arbitration Bd. of Plumbing Contractors' Ass'n and Chicago Journeymen Plumbers' Local Union 130, U.A., C.A.7 (Ill.) 2009, 562 F.3d 784. Federal Courts 668

(40). Diamond by Diamond v. McKenzie, C.A.D.C.1985, 770 F.2d 225, 248 U.S.App.D.C. 169. Federal Courts 654

2

(41 )Associated Press v. Taft-Ingalls Corp., C.A.6 (Ohio) 1963, 323 F.2d 114. Federal Civil Procedure 2579; Federal Courts 668

(42)\*\* Kunz v. DeFelice, C.A.7 (Ill.) 2008, 538 F.3d 667, corrected. Federal Civil Procedure 2626; Federal Courts 669

(43) Southern Union Co. v. Southwest Gas Corp., C.A.9 (Ariz.) 2005, 415 F.3d 1001, opinion amended on denial of rehearing 423 F.3d 1117, certiorari denied 126 S.Ct. 1342, 546 U.S. 1175, 164 L.Ed.2d 56. Federal Courts 669

(44)U.S. v. Ibarra, U.S.Wyo.1991, 112 S.Ct. 4, 502 U.S. 1, 116 L.Ed.2d 1, on remand 955 F.2d 1405. Criminal Law 1069(5)

(45)U. S. v. St. Laurent, C.A.1 (Mass.) 1975, 521 F.2d 506, certiorari denied 96 S.Ct. 775, 423 U.S. 1049, 46 L.Ed.2d 637. Criminal Law 1069(5)

(46). Carnes v. U. S., C.A.10 (Okla.) 1960, 279 F.2d 378, certiorari denied 81 S.Ct. 88, 364 U.S. 846, 5 L.Ed.2d 69. Criminal Law 1069(5)

(47)U.S. v. Hadden, C.A.4 (S.C.) 2003, 73 Fed.Appx. 574, 2003 WL 21940667, Unreported. Criminal Law 1069(5)

(48)Mondragon v. Thompson, C.A.10 (N.M.) 2008, 519 F.3d 1078. Federal Courts 669

(49)Chambers v. City of Fordyce, Arkansas, C.A.8 (Ark.) 2007, 508 F.3d 878. Federal Courts 669

(50)Menken v. Emm, C.A.9 (Ariz.) 2007, 503 F.3d 1050. Federal Courts 669

(51)LeBoon v. Lancaster Jewish Community Center Ass'n, C.A.3 (Pa.) 2007, 503 F.3d 217, certiorari denied 128 S.Ct. 2053, 553 U.S. 1004, 170 L.Ed.2d 793. Federal Courts 669

(52)Blunt v. U.S., C.A.D.C.1957, 244 F.2d 355, 100 U.S.App.D.C. 266. Criminal Law 1069(1)

(53). Lohman v. U. S., C.A.6 (Ohio) 1956, 237 F.2d 645. Criminal Law 1069(5)

(54)U S. v. Dunbar, C.A.2 (N.Y.) 1954, 212 F.2d 654, certiorari denied 75 S.Ct. 73, 348 U.S. 848, 99 L.Ed. 668. Criminal Law 1069(5)

(55) . Oddo v. U.S., C.A.2 (N.Y.) 1949, 171 F.2d 854, certiorari denied 69 S.Ct. 1498, 337 U.S. 943, 93 L.Ed. 1747. Criminal Law 1069(5)

(56) Hannigan v. U. S., C.A.10 (Kan.) 1965, 341 F.2d 587. Criminal Law 1081(4.1)

(57). Boruff v. U. S., C.A.5 (Ga.) 1962, 310 F.2d 918. Criminal Law 1069(5)

(58)(a)Gibbs v. Town of Frisco City, Alabama Police Dept., C.A.5 (Ala.) 1980, 626 F.2d 1218. Federal Courts 668

(b). U. S. v. Nunley, E.D.Tenn.1972, 369 F.Supp. 171. Criminal Law 1081(6)

(59). Lemke v. United States, U.S.Alaska 1953, 74 S.Ct. 1, 346 U.S. 325, 14 Alaska 423, 98 L.Ed. 3. Criminal Law 1081(4.1)

(60)Beason v. United Technologies Corp., C.A.2 (Conn.) 2003, 337 F.3d 271. Federal Courts 753

(61). Coll v. First American Title Ins. Co., C.A.10 (N.M.) 2011, 642 F.3d 876. Federal Courts 668

(62)Capitol Sprinkler Inspection, Inc. v. Guest Services, Inc., C.A.D.C.2011, 630 F.3d 217, 394 U.S.App.D.C. 73. Federal Courts 668

(63). Brotherhood of Locomotive Engineers v. Springfield Terminal Ry. Co., C.A.1 (Me.) 2000, 210 F.3d 18, certiorari denied 121 S.Ct. 571, 531 U.S. 1014, 148 L.Ed.2d 489. Federal Courts 667

(64)(a)Bates v. Batte, C.A.5 (Miss.) 1951, 187 F.2d 142, certiorari denied 72 S.Ct. 29, 342 U.S. 815, 96 L.Ed. 616. Federal Courts 668 125. Contemporaneous filing of appeal and motion, time for filing notice

(64)(b). Fishbaugh v. Armour & Co., C.A.4 (Md.) 1950, 185 F.2d 541, certiorari denied 72 S.Ct. 361, 342 U.S. 914, 96 L.Ed. 683, rehearing denied 72 S.Ct. 563, 342 U.S. 950, 96 L.Ed. 706. Federal Courts 666

(65)Ysais v. Richardson, C.A.10 (N.M.) 2010, 603 F.3d 1175, certiorari denied 131 S.Ct. 163, 178 L.Ed.2d 97, rehearing denied 131 S.Ct. 692, 178 L.Ed.2d 522. Federal Courts 669

(66)Yadav v. Charles Schwab & Co., Inc., C.A.2 (N.Y.) 1991, 935 F.2d 540. Federal Courts 668; Federal Courts 722

(67). Jusino v. Zayas, C.A.1 (Puerto Rico) 1989, 875 F.2d 986. Federal Courts 668

(68). Bernstein v. Lind-Waldock & Co., C.A.7 (Ill.) 1984, 738 F.2d 179. Federal Courts 669

(69). Turner v. Evers, C.A.3 (Pa.) 1984, 726 F.2d 112. Federal Courts 659

(70)Southern States Equipment Corp. v. USCO Power Equipment Corp., C.A.5 (Ala.) 1953, 209 F.2d 111, 100 U.S.P.Q. 127. Federal Courts 654

(71) . Lapeyrouse v. Texaco, Inc., C.A.5 (Tex.) 1982, 693 F.2d 581. Federal Courts 665.1

153. Reopening time for appeal, time for filing notice--Generally

(72)Scott-Harris v. City of Fall River, C.A.1 (Mass.) 1997, 134 F.3d 427, certiorari granted 117 S.Ct. 2430, 520 U.S. 1263, 138 L.Ed.2d 192, reversed 118 S.Ct. 966, 523 U.S. 44, 140 L.Ed.2d 79, certiorari denied 118 S.Ct. 1184, 523 U.S. 1003, 140 L.Ed.2d 315. Federal Courts 669

(73)Nunley v. City of Los Angeles, C.A.9 (Cal.) 1995, 52 F.3d 792. Federal Courts 655

(74)Cordon v. Greiner, S.D.N.Y.2003, 274 F.Supp.2d 434. Federal Courts 669

(75)Avolio v. County of Suffolk, C.A.2 (N.Y.) 1994, 29 F.3d 50, on remand 1995 WL 129195. Federal Courts 669

(76)Nunley v. City of Los Angeles, C.A.9 (Cal.) 1995, 52 F.3d 792. Federal Courts  655

(77)Hernandez-Rivera v. Immigration and Naturalization Service, C.A.9 1980, 630 F.2d 1352. Federal Courts  653

(78)Rios v. U.S. Dept. of Justice, C.A.10 (N.M.) 2002, 53 Fed.Appx. 40, 2002 WL 31781144, Unreported. United States Magistrates  31 223. Good cause, extension of period--Generally

(79)Wright v. Deyton, C.A.11 (Ga.) 1985, 757 F.2d 1253. Federal Courts  670

(80). Chipser v. Kohlmeyer & Co., C.A.5 (Ala.) 1979, 600 F.2d 1061. Federal Courts  655

(81)U. S. v. Williams, C.A.8 (Neb.) 1974, 508 F.2d 410. Criminal Law  1081(6)

(82)Shah v. Hutto, C.A.4 (Va.) 1983, 704 F.2d 717, on rehearing 722 F.2d 1167, certiorari denied 104 S.Ct. 2354, 466 U.S. 975, 80 L.Ed.2d 827. Federal Courts  669

(83)Abuelyaman v. Illinois State University, C.A.7 (Ill.) 2011, 2011 WL 6188446. Federal Courts  669

(84)City of Chanute, Kan. v. Williams Natural Gas Co., C.A.10 (Kan.) 1994, 31 F.3d 1041, rehearing denied, certiorari denied 115 S.Ct. 1254, 513 U.S. 1191, 131 L.Ed.2d 135. Federal Courts  669

(85)U.S. v. Hooper, C.A.2 (N.Y.) 1993, 9 F.3d 257. Criminal Law 1069(1); Criminal Law  1069(6)

(86). Feeder Line Towing Service, Inc. v. Toledo, P. & W. R. R. Co., C.A.7 (Ill.) 1976, 539 F.2d 1107. Federal Courts  669

(87)U. S. v. Gibson, C.A.8 (Minn.) 1978, 568 F.2d 111. Criminal Law 1081(6)

(88)Alley v. Dodge Hotel, C.A.D.C.1974, 501 F.2d 880, 163 U.S.App.D.C. 320. Federal Courts  664290. Prejudice, excusable neglect

(89)Cartwright v. U.S., C.A.6 (Mich.) 1969, 410 F.2d 122. Criminal Law  1655(6)

(90)Johnson v. U. S., C.A.D.C.1968, 405 F.2d 1072, 132 U.S.App.D.C. 4. Criminal Law  1069(6)

(91)U.S. v. Silva, D.Mass.2011, 2011 WL 841050. Criminal Law 1081(6)

(92). Johnson v. Wilson, C.C.A.9 (Nev.) 1941, 118 F.2d 557. Federal Courts  651

(93)Torockio v. Chamberlain Mfg. Co., W.D.Pa.1972, 56 F.R.D. 82, affirmed 474 F.2d 1340. Federal Courts  669

(94). Textor v. Board of Regents of Northern Illinois University, C.A.7 (Ill.) 1983, 711 F.2d 1387. Federal Courts  658

(95). Inglese v. Warden, U. S. Penitentiary, C.A.11 (Ga.) 1982, 687 F.2d 362. Habeas Corpus  819

(96). In re Cosmopolitan Aviation Corp., C.A.2 (N.Y.) 1985, 763 F.2d 507, certiorari denied 106 S.Ct. 593, 474 U.S. 1032, 88 L.Ed.2d 573. Federal Courts  669

(97)Chipser v. Kohlmeyer & Co., C.A.5 (Ala.) 1979, 600 F.2d 1061. Federal Courts 655; Federal Courts 670

(98)USM Corp. v. GKN Fasteners Ltd., C.A.1 1978, 578 F.2d 21Federal Courts 653

(99)Benoist v. Brotherhood of Locomotive Engineers, C.A.8 (Mo.) 1977, 555 F.2d 671. Federal Courts 669

(100)Dugan v. Missouri Neon & Plastic Advertising Co., C.A.8 (Mo.) 1973, 472 F.2d 944. Federal Courts 669

(101)National Life Ins. Co. v. Hartford Acc. & Indem. Co., E.D.Pa.1979, 475 F.Supp. 282. Federal Courts 655

(102)Vasquez v. Brezenoff, S.D.N.Y.1982, 93 F.R.D. 583. Federal Civil Procedure 2651.1

(103). Brignoli v. Balch Hardy & Scheinman, Inc., S.D.N.Y.1990, 739 F.Supp. 936. Federal Courts 670

(104)Rensick v. Lehigh Valley R Co, S.D.N.Y.1951, 11 F.R.D. 76. Federal Courts 653

(105)U.S. v. Grana, C.A.3 (N.J.) 1989, 864 F.2d 312. Criminal Law 1069(5)

(106). Burkett v. Cunningham, C.A.3 (Pa.) 1987, 826 F.2d 1208. Habeas Corpus 792.1

(107)Crumpton v. U. S., C.D.Cal.1980, 496 F.Supp. 774. Criminal Law 1081(6)

(108)Rosenbloom v. U.S., U.S.Mo.1957, 78 S.Ct. 202, 355 U.S. 80, 2 L.Ed.2d 110. Criminal Law 1081(4.1)

(109). Tarabishi v. McAlester Regional Hosp., C.A.10 (Okla.) 1991, 951 F.2d 1558, certiorari denied 112 S.Ct. 2996, 505 U.S. 1206, 120

(110)Ramseur v. Beyer, C.A.3 (N.J.) 1990, 921 F.2d 504. Federal Courts 670

(111)Scarpa v. Murphy, C.A.1 (Mass.) 1986, 782 F.2d 300. Federal Courts 669

(112)U.S. v. Reyes, C.A.4 (Va.) 1985, 759 F.2d 351, certiorari denied 106 S.Ct. 164, 474 U.S. 857, 88 L.Ed.2d 136. Criminal Law 1081(6)

(113)Sanchez v. Board of Regents of Texas Southern University, C.A.5 (Tex.) 1980, 625 F.2d 521, motion granted 633 F.2d 1210. Federal Courts 670

(114)U.S. v. Edwards, E.D.Tex.1982, 562 F.Supp. 57. Criminal Law 1081(6)

(115). U. S. v. Brown, E.D.N.C.1966, 263 F.Supp. 777. Criminal Law 1081(6)

(116)George v. City of Wichita, Kansas, D.Kan.2005, 353 F.Supp.2d 1131. Federal Courts 669

(117). Romero v. Peterson, C.A.10 (N.M.) 1991, 930 F.2d 1502. Federal Courts 669

(118). Leishman v. Associated Wholesale Electric Co., U.S.Cal.1943, 63 S.Ct. 543, 318 U.S. 203, 87 L.Ed. 714, rehearing

denied 63 S.Ct. 758, 318 U.S. 800, 87 L.Ed. 1163. See, also, U.S. v. Best, C.A.R.I.1954, 212 F.2d 743. Federal Courts 652.1

(119)Wright v. Preferred Research, Inc., C.A.11 (Ala.) 1990, 891 F.2d 886. Federal Courts 652.1; Federal Courts 657; Federal Courts 658

(120)Papanikolaou v. Atlantic Freighters, Limited, C.A.4 (Va.) 1956, 232 F.2d 663. Admiralty 108

(121)Bowman v. Lopereno, U.S.Cal.1940, 61 S.Ct. 201, 311 U.S. 262, 85 L.Ed. 177, on remand 118 F.2d 742. See, also, In re Bowman, C.A.Cal.1941, 118 F.2d 742. Appeal And Error 345.1

(122). In re Wyse, C.A.6 (Ohio) 1965, 340 F.2d 719. Bankruptcy 3773

(123) Andrews v. E.I. Du Pont De Nemours and Co., C.A.7 (Ill.) 2006, 447 F.3d 510. Federal Civil Procedure 2658; Federal Courts 657 F.3d 1135. Federal Courts 657

(124)Marine Midland Bank v. Slyman, C.A.2 (N.Y.) 1993, 995 F.2d 362. Federal Courts 657

(1 25) Sanders v. Clemco Industries, C.A.8 (Mo.) 1988, 862 F.2d 161. Federal Courts 657

(126)Smith v. Hudson, C.A.6 (Tenn.) 1979, 600 F.2d 60, certiorari dismissed 100 S.Ct. 495, 444 U.S. 986, 62 L.Ed.2d 415. Federal Courts 668

(127)Bass v. Baltimore & O. Terminal R. Co., C.C.A.7 (Ill.) 1944, 142 F.2d 779, certiorari denied 65 S.Ct. 135, 323 U.S. 775, 89 L.Ed. 619. Federal Courts 561; Federal Courts 657

(128)Stubbs v. Hunter, D.S.C.1992, 806 F.Supp. 81. Federal Courts 657

(129) McDonald v. OneWest Bank, F.S.B., C.A.10 (Colo.) 2012, 680 F.3d 1264. Federal Courts 669

(130) . Atkinson-Baker & Associates, Inc. v. Kolts, C.A.9 (Cal.) 1993, 7 F.3d 1452. Federal Courts 658

(131) . Finch v. City of Vernon, C.A.11 (Fla.) 1988, 845 F.2d 256. Federal Courts 668

(132) Livernois v. Medical Disposables, Inc., C.A.11 (Ga.) 1988, 837 F.2d 1018. Federal Courts 658

(133) Marine Bank, Nat. Ass'n v. Meat Counter, Inc., C.A.7 (Ill.) 1987, 826 F.2d 1577. Federal Courts 657

(134) Fentron Industries, Inc. v. National Shopmen Pension Fund, C.A.9 (Wash.) 1982, 674 F.2d 1300. Federal Courts 669

(135) Peabody Coal Co. v. Local Unions Numbers 1734, 1508 and 1548, United Mine Workers of America, C.A.6 (Ky.) 1973, 484 F.2d 78. Federal Courts 656

(136) Pacific Maritime Ass'n v. Quinn, C.A.9 (Cal.) 1972, 465 F.2d 108. Federal Courts 656

(137)Ribaudo v. Citizens Nat. Bank of Orlando, C.A.5 (Fla.) 1958, 261 F.2d 929. Bankruptcy 3773

(138) Sorensen v. City of New York, C.A.2 (N.Y.) 2005, 413 F.3d 292. Federal Courts 768.1

(139) U.S. ex rel. Harrington v. Schlotfeldt, C.C.A.7 (Ill.) 1943, 136 F.2d 935, certiorari denied 66 S.Ct. 680, 327 U.S. 781, 90 L.Ed. 1008. Federal Courts 657

(140). Com. of Va. v. Tenneco, Inc., C.A.4 (Va.) 1976, 538 F.2d 1026. Federal Courts 657

(141). Dockery v. Travelers Co. of Hartford, Conn., C.A.5 (Ga.) 1965, 349 F.2d 1017. Federal Courts 656

(142)Craig v. Lynaugh, C.A.5 (Tex.) 1988, 846 F.2d 11. Federal Civil Procedure 2658; Federal Courts 665.1

(143)St. Marys Hosp. Medical Center v. Heckler, C.A.7 (Wis.) 1985, 753 F.2d 1362, certiorari denied 105 S.Ct. 3502, 472 U.S. 1028, 87 L.Ed.2d 633. Federal Courts 658

(144)Safeway Stores v. Coe, App.D.C.1943, 136 F.2d 771, 78 U.S.App.D.C. 19. Federal Courts 658

(145)U.S. v. Lonjose, C.A.10 (N.M.) 2011, 663 F.3d 1292. Criminal Law 1023(14)

(146)Wallace v. McManus, C.A.10 (Kan.) 1985, 776 F.2d 915. Federal Courts 669

(147)Blue v. International Broth. of Elec. Workers Local Union 159, C.A.7 (Wis.) 2012, 2012 WL 1071704. Federal Courts 669

(148)Mathis v. Skaluba, C.A.10 (Wyo.) 2004, 94 Fed.Appx. 701, 2004 WL 537895, Unreported. Federal Courts 668

(149)Moran Vega v. Cruz Burgos, C.A.1 (Puerto Rico) 2008, 537 F.3d 14. Federal Courts 666

(150)Freedom Holdings, Inc. v. Spitzer, C.A.2 (N.Y.) 2004, 363 F.3d 149. Federal Courts 744

(151)Quality Prefabrication, Inc. v. Daniel J. Keating Co., C.A.3 (Pa.) 1982, 675 F.2d 77. Federal Courts 763.1

(152). Nunley v. City of Los Angeles, C.A.9 (Cal.) 1995, 52 F.3d 792. Federal Courts 937.1

(153)U.S. v. Reyes, C.A.4 (Va.) 1985, 759 F.2d 351, certiorari denied 106 S.Ct. 164, 474 U.S. 857, 88 L.Ed.2d 136. Criminal Law 1081(6)

(154). Lizardo v. U.S., C.A.3 (Virgin Islands) 2010, 619 F.3d 273, certiorari denied 131 S.Ct. 2444, 179 L.Ed.2d 1215. Criminal Law 1661

Certificate of Service

I, Dr Chandan S. Vora do certify that this "Brief that was due on 4/21/2014..." was put in 1st class ordinary mail, postage prepaid or served in person on following on 4/19-/2014

(1)Clerk thro T. Smith, USCOAF1, , 1 Couthouse Way, Boston, MA 02210  put in Express mail

(2)Clerk, thro case manager(unknown name), US Court of Appeals, 3rd cir; US courthouse, 601 Market St., 21400 US Courthouse, Philadelphia, PA 19106(1 copy sufficient for both cases & others too as they scan it as per prior case managers)

(4)E. Holder, US attorney General, 950 PA Ave, Washington DC 20530

(5)PA Attorney General, Strawberry Sq, Harrisburgh, PA17120

(6) Atty Dinan, 95 Exchange Rd., Portland ME 04112

(7)DPW office, 625 Main st, Johnstown PA, 15901   who was also served 2/12/2014 motion, however did not get to list their name in that motion.

(8) City manager with all their personnel of JPD, Codes, Fire depts etc, corner of Main Market st, Johnstown, PA 15901

(9) Psychiatric Ward Director, Dr Patel with all their staff doctors etc, Good Samaritan Hospital, 7th Foor, as per 814-534-9000 no., Johnstown, PA 15905

(10)DAs with its staff, CCC, 2nd Floor, Ebensburg, PA 15931

(11) Ex Judge of CCC Caram Abood, 709 Franklin St., 2nd Floor, Johnstown, PA 15901

(12)Mag Grecek, 1340 Franklin St., Johnstown, PA15905

(13)James L. Madara, M.D., C.E.O. & Executive Vice President, American Medical Association(henceforth in future pleadings as AMEA ) 515 N. State St, F115, Chicago, Ill60654

(14)President Commissioner, Incharge of CC, CCC, Ebensburg, PA15931

(15)Clerk of Courts including CCC Judges like Krunemacker, Creany, Tuwoliski, Kiniry, Long, etc CCC, Ebensburg, PA 15931                    (16)President, CEO, Scott Becker, Memorial Hospital, 1086 Franklin St., Johnstown, PA 15905

(17)Mag Musulin, Central Park Complex basement, Johnstown, PA 15901

(18)Ron W. Repak, 173 Gerry LN, 15904 (formerly Director of JRA, when 511 Robb Ave Duplex was demolished illegally etc.)                    (19)Director & CEO of Johnstown Redevelopment Authority, 4th Floor, Public Safety Building, 401 Washington St, Johnstown, PA 15901

(20)Secretary, delivered to The Director, Bureau of Hearings & Appeals, P.O. Box 2675, Harrisburg, PA 17105-2675

*Chandan Vora*

1

Conclusion *for USDCWPA, 1st, 3rd cirs.*

Vora discovered around 10:15 P.M. that all orders, including orders with my handwritten Notes on them with express mail reciepts too there & paid money to Staples in cash with reciept for them, got taken by Staple"s 2 workers who were there at 9P.M.on 4/18/2014 motivated to defeat anything in 1st cir as Vora has to use printers of people offering such services, so Vora should not be penalized for them as there is not enough time to get them printed again as it has to go out prior to noon by giving it to post office so, circumstances are beyond Vora's control in such bad health condition so court should be able to extend deadline on 13-2416 case, when Staples workers offered to help me to put them in Lee Ann Shaw's vehicle, as they are gone as they seem to be part of conspirators, as they volunteered to help me & all money was paid, so do show what Vora has been asserting through, what got sent to me as well as what with my handwritten comments on them, the pleadings so I have no choice but send them without the orders in them of all kinds as they are in USDCME, COAF1 files too in both cases 13-2416, 13-2417 cases as Vora sent one copy for both cases when they said, they scan them so one copy is sufficient. Even Einstein cannot beat these odds as I am sending them without those pages that Vora had gotten them printed at Staples at Galleria drive on 4/18/2014. Vora was injured in ME accident because of their motives to restrain trade, competition in the market of remedies & services to prevent Vora getting any clients & to eliminate her from this market completely even by inflicting very severe injuries on me and did severely restrain trade, competition as I was not able to make those advertising trips too, enjoy life too etc and does show how badly a person is affected by such fabricated charges ruining everything in life that even Judges refer to these fabricated charges the way Mag Kravachuk did and I do not and will not violate laws of any land including India where I had a better life with no such fabricated charges against me, as I never knew what courts looked like until 1983 when Death Inquest of M.E. Criste was conducted & seeing the rigging done then, had doubts about justice in this land ever since 1971 seeing how badly major class people lie with no sense of justice at all and if I have to return to India, will do so even though conspirators have made it very tough & unable to take very hard life there without gas, 24 hr water supply, continuous electricity, good food as I understand from my older sister that there is no food at all there & Gospel of Christian, Hindu religion causing population explosion in India

1

it has become very miserable life & I have not been able to make a trip to India at all since 1978 fall & never was given a chance to earn anything when I was well & not injured like this and found the practices in this land are in reality genocide tactics, taking lives of nonfit people, neurologic people of minority group, out of ongoing RICO, antitrust, continuous discrimination schemes against minority group people like Vora, not giving them the benefits of any kind on pretextual excuses & trying to force them to violate the laws of the land in which they were born & then take their lives with no decent life given to them for their merits at all & unless there are connections, a person cannot succeed on merits in this land it looks like if they come from most minority group like Vora. All charges against Vora should be dismissed totally being total fraud, causing great havoc because of ongoing antitrust, RICO activities etc inflicting injuries of all kinds. severely restraining competition, monopolising the market of remedies & services to just M.D.s with Insurance cos part of it too & just paying them for their services when Vora's remedies are naturopathy for which medical practice license not required as per Reisinger v. Comwlth... 399 A.2d 1160 & doing everything possible to preserve that monopoly even with murders worldwide & Vora should be granted the same privilege which M.D.s get with compensation from Insurance cos for Vora's services & remedies & courts should order the city of Johnstown with these conspirators to build the brick duplex back with no requirement of survey etc as the solid brick structure with good shed was there earlier & city with conspirators deeds were nothing more than severe banditory, severely retraining trade, competition in the market of remedies when they had no right to be on my curtilage pursuant to Amend.4 just for minor fire damage & grant treble the damages to Vora with all windows & doors double plated as Vora had it on 511 Robb Ave duplex & order the conspirator city to give my all trailors back which they removed from my driveway wilfully, maliciosly pursuant to their illegal motives, antitrust, RICO schemes etc., to drive me out of business totally, severely restraining competition even in this disabled condition as they had no right to be on my curtilage and forcing on me their genocidal tactics to eliminate the competitor completely out of the market of remedies & services, far superior to theirs than anybody else can provide and  give Vora all the privileges that M.D.s get and prevent genocide of neurologic people like Vora whom the western world does not give more than 10 yrs to live for their motives of preserving monopoly in the market of remedies & services just to M.Ds & if necessary Vora will provide more details on it

2

if cert is granted or if lower courts in federal system decide to grant justice to Vora as to this date no loss of wages were put in Vora's pockets to which Vora is entitled by law as Abood with PA courts did everything illegally with no remand order in CCC1985-2043 case joined with accident cases of 1983 which disabled Vora thoroughly & took life of Vora's witness in 1985-141 case & saw in 07/21/2014 paper that President of SFC in the years 1982-83 expired, who did nothing justly, fairly, honestly as such due to illegal motives of his with conspirators, so I should be granted treble the damages of all kinds for all their misdeeds beginning from 1969 due to ulterior motives & Vora will supply this amended conclusion to all parties served once it gets put in, in USDCWPA.

Respectfully Submitted,
Chandan Vora

*Chandan Vora.*

3

Replacements Corp. v. Air Preheater Co., Inc., E.D.Pa.1973, 356 F.Supp. 872. Antitrust And Trade Regulation k 650 (118) 15uscas2s.n 105* Issue of whether manufacturer of heavy duty (HD) truck transmissions engaged in monopoly conduct was for jury in antitrust action; jury found that manufacturer had willfully acquired or maintained its monopoly power through long-term agreements (LTAs) with original equipment manufacturers (OEMs) that amounted to de facto exclusive dealing contracts having power to foreclose competition frommarketplace. ZF Meritor, LLC v. Eaton Corp., D.Del.2011, 769 F.Supp.2d 684. Antitrust And Trade Regulation k 687; Antitrust And Trade Regulation k 980( conduct to reimburse physicians for their services by insurance cos for their remedy services and not Vora for her superior services thro her remedies is monopoly conduct that amounted to de facto exclusive dealing contracts having power to foreclose competition in the market place of rendering services thro use of superior  remedies for human health by not paying her the cost, expenses for it with time consuming services just like those of physicians by anybody including insurance cos. unless billed by certified registered physician in the state or states of USA ,  for more than 6mths to years or for lifetime when it cannot be brought to the initial condition of human body prior to injury.)

(119)15uscas2s.n. 112. Leveraging, monopoly generally
 Durable medical equipment supplier stated monopoly leveraging claim against hospitals where it alleged that hospitals had monopoly power in market for short-term, acute care, that they used that power, with specific intent of foreclosing competition, to gain unfair competitive advantage in durable medical equipment markets, and that they engaged in exclusionary and predatory conduct that artificially foreclosed supplier from dominant share of those markets. Advanced Health-Care Services, Inc. v. Radford Community Hosp., C.A.4 (Va.) 1990, 910 F.2d 139, on remand 846 F.Supp. 488.  Antitrust And Trade Regulation k 972(3)

(120) Allegations by jewelry transportation facilitator that pricing arrangement with national air carrier delivery company would have been profitable for company in year that company terminated agreement, and that delivery company subsequently offered a lower price to jewelers themselves than to facilitators, were sufficient to infer that delivery company, by terminating agreement with facilitator, sought to achieve an anticompetitive end, as required to state a claim for monopoly leveraging under the Sherman Act.  A.I.B. Express, Inc. v. FedEx Corp., S.D.N.Y.2004, 358 F.Supp.2d 239.  Antitrust And Trade Regulation k 972(3)

(121) Use of monopoly power attained in one market to gain competitive advantage in second market ("monopoly leveraging") requires proof of threatened or actual monopoly in second market.  Spruce Oil Corp. v. Archer-Daniels-Midland Co., D.Colo.1994, 870 F.Supp. 1005.  Antitrust And Trade Regulation k   620

(122)Essence of "leveraging" variant of monopolization claim is use of monopoly power at one stage of production or in one market to gain monopoly or competitive advantage at another stage of production or in another, related market.  Trans Sport, Inc. v. Starter Sportswear, Inc., N.D.N.Y.1991, 775 F.Supp. 536, affirmed
964 F.2d 186.  Antitrust And Trade Regulation k   620

(123) 15uscas2s.n.120. Predatory conduct generally, monopoly generally
Direct evidence of intent to vanquish rival in honest competitive struggle cannot help to establish antitrust violation;  it also must be shown that defendant sought victory through unfair or predatory means, and thus, evidence of conduct is indispensable.  William Inglis & Sons Baking Co. v. ITT Continental Baking Co., Inc., C.A.9 (Cal.) 1981, 668 F.2d 1014, certiorari denied 103 S.Ct. 57, 459 U.S.
825, 74 L.Ed.2d 61, certiorari denied 103 S.Ct. 58, 459 U.S. 825, 74 L.Ed.2d 61. Antitrust And Trade Regulation k   977(3)

(124)*Specific intent to monopolize may be inferred from predatory conduct, or conduct that is in itself independent of violation of antitrust laws or that has no legitimate business justification other than to destroy or damage competition. Illinois Bell Telephone Co. v. Haines and Co., Inc., N.D.Ill.1989, 744 F.Supp. 815, affirmed 905 F.2d 1081, 15 U.S.P.Q.2d 1353, rehearing denied , vacated on other grounds 111 S.Ct. 1408, 499 U.S. 944, 113 L.Ed.2d 462, on remand 932 F.2d 610, 19U.S.P.Q.2d 1159.  Antitrust And Trade Regulation k   976**

(125) 15uscas2s.n.121. 121. Predatory pricing, monopoly generally—Generally
Plaintiff alleging predatory pricing must show, first, that defendant would be able to achieve monopoly position in relevant market, and second, that it could sustain that position after it wields its power and  raises prices.  Dial A Car, Inc. v. Transportation, Inc., C.A.D.C.1996, 82 F.3d 484, 317 U.S.App.D.C. 240, rehearing and suggestion for rehearing  in banc denied.  Antitrust And Trade
Regulation k   832

(126)In order to establish violation of Sherman Act provision prohibiting predatory pricing, plaintiffs must show that: defendant possessed monopoly power in monopoly power by

anticompetitive conduct.  Morgan v. Ponder, C.A.8 (Mo.) 1989, 892 F.2d 1355.

Antitrust And Trade Regulation k   832

(127)Before court confronted with allegation of predatory pricing can determine whether defendant in fact has been selling at "unremunerative prices," or below cost, court must decide precisely what constitutes "cost" against which price is to be measured.  Sunshine Books, Ltd. v. Temple University, C.A.3 (Pa.) 1982, 697 F.2d90.  Antitrust And Trade Regulation k  833

(128) 15uscas2s.n.124.  Average variable costs, predatory pricing, monopoly generally

"Predatory pricing", in violation of Sherman Act, is presumed to occur when seller prices below reasonably anticipated average variable cost.  Irvin Industries, Inc.v. Goodyear Aerospace Corp., C.A.2 (N.Y.) 1992, 974 F.2d 241, on remand 803F.Supp. 951.  Antitrust And Trade Regulation k 976Irvin Industries, Inc.v. Goodyear Aerospace Corp., C.A.2 (N.Y.) 1992, 974 F.2d 241, on remand 803F.Supp. 951.  Antitrust And Trade Regulation k   976

(129) 15uscas2s.n.127. 127. ---- Marginal costs, predatory pricing, monopoly generally

If defendant's prices are below average total cost and above short run marginal cost, there is circumstantial evidence of predatory intent for purposes of monopolization and price discrimination claims, but inference of predatory intent may not rest solely on prices of that nature;  if defendant's prices are below short run marginal cost, circumstantial evidence is strong enough to create rebuttable presumption of predatory intent for monopolization and price discrimination purposes.  McGahee v. Northern Propane Gas Co., C.A.11 (Ga.) 1988, 858 F.2d 1487, rehearing denied 865 F.2d 1274, certiorari denied 109 S.Ct. 2110, 490 U.S. 1084, 104 L.Ed.2d 670.

(130)Predatory pricing policy could have been established in antitrust suit against petroleum company upon showing that latter charged price which, although above marginal or average variable cost, was below its short-run profit-maximizing price, and that barriers to entry were great enough to prevent other entry before

predator could reap benefits of his oligopolistic or monopolistic market position. Hanson v. Shell Oil Co., C.A.9 (Ariz.) 1976, 541 F.2d 1352, certiorari denied 97S.Ct. 813, 429 U.S. 1074, 50 L.Ed.2d 792.  Antitrust And Trade Regulation k887

(131) 15uscas2s.n.147. Rule that group boycotts are per se violations of ss 1 to 7 of this title is not limited in application to only commercial boycotts, meaning presumably boycotts directed against other traders.  Washington State Bowling

38

Proprietors Ass'n v. Pacific Lanes, Inc., C.A.9 (Wash.) 1966, 356 F.2d 371, certiorari denied 86 S.Ct.1590, 384 U.S. 963, 16 L.Ed.2d 674.  Antitrust And Trade Regulation k  567 (132) 15uscas2s.n. 156. Tying arrangements, monopoly generally--Generally

Proof that party has sufficient economic power with respect to tying product to appreciably restrain free competition in the market for the tied product and that a "not insubstantial" amount of interstate commerce is affected is necessary only to bring into play doctrine of per se illegality of tying arrangement under ss 1to 7 of this title.  Fortner Enterprises, Inc. v. U.S. Steel Corp., 89 S.Ct. 1252, 394 U.S. 495, 22 L.Ed.2d 495. Antitrust And Trade Regulation k569;  Antitrust And Trade Regulation k  571. (Insurance cos have sufficient economic power in the market of w.r.t. reimbursements for expenses incurred on cost, purchasing cost or making the  remedies to soothe injuries and /or take care of them to render a person as he/she was prior to injuries by any means, methods or techniques by anybody in the world and restricting themselves for payment of it to M.D's  and their recommended products of chemical drugs for it etc that are inferior in its effects as a whole only in USA is totally unreasonable,  and offering saying that '"we will pay $300 for it if you sign the form relieving us in all respects with respect to all types of liabilities from everything in all respects" saying orally that you did not seek services of medical world of M.D.s and hospitals confined to the services of such people', is the tied product with itself as the relevant product market with geographic market as USA; is a tying agreement in the worldwide geographic market as well as amounts to sort of bribe taking advantage of strenuous financial situation of person injured  who uses any kind of services available for it even including their own genious of coming up with discoveries that are more superb than those of M.D.'s is nothing but predatory acts violating antitrust statutes, rendering person homeless on pretextual excuses by all these conspirators etc. is illegal under 15usca s1-s27 and making illegal demands like "give us 50% of the business profits otherwise business will not see the light of the day" with other unfair, predately, unreasonable, willful activiites due to conspiratorial activities of all kinds including of antitrust, RICO, civil rights violation etc.as well as exclusionary, unfair conduct as signing such paper form is exclusionary dealing arrangement)

(133) A seller need not refuse to sell his tying product outright in order to induce purchasers to enter an illegal tying agreement but may offer discounts for those who purchase both tying and tied products or threaten litigation against those

39

who refuse to accept whole package and thereby induce an illegal tying agreement.

George R. Whitten, Jr., Inc. v. Paddock Pool Builders, Inc., C.A.1 (Mass.) 1970, 424 F.2d 25, certiorari denied 91 S.Ct. 54, 400 U.S. 850, 27 L.Ed.2d 88, on remand 376 F.Supp. 125. Antitrust And Trade Regulation k 569( same comment as in note(132) above of opinions quoted.)

(134) Fundamental economic evil in tying arrangement deemed unlawful under antitrust laws lies in ability of producer who possesses market dominance in one particular product to impose upon his vendee obligation to purchase other products as to

which producer possesses no market dominance and consequent foreclosure to other producers of nondominant products of such markets for their merchandise. Susserv. Carvel Corp., C.A.2 (N.Y.) 1964, 332 F.2d 505, 141 U.S.P.Q. 609, certiorari granted 85 S.Ct. 158, 379 U.S. 885, 13 L.Ed.2d 91, 143 U.S.P.Q. 465, certiorari dismissed 85 S.Ct. 1364, 381 U.S. 125, 14 L.Ed.2d 284, 145 U.S.P.Q. 743. Antitrust And Trade Regulation k 569

(135)Vice of tying arrangements lies in use of economic power in one market to restrict competition on merits in another, regardless of source from which power is derived and whether power takes form of monopoly or not. Lessig v. Tidewater Oil Co., C.A.9 (Cal.) 1964, 327 F.2d 459, certiorari denied 84 S.Ct. 1920, 377 U.S. 993, 12 L.Ed.2d 1046. Antitrust And Trade Regulation k 571

(136) For antitrust purposes, supplying an inoperable product which becomes useful only upon acceptance of another product or service from the same seller or lesser can amount to an unlawful tie-in even if there is no mention of the necessity for the other product or service until after the inoperable product is supplied. MDC Data Centers, Inc. v. International Business Machines Corp., E.D.Pa.1972, 342 F.Supp.502. Antitrust And Trade Regulation k 569

(137) For antitrust purposes, supplying an inoperable product which becomes useful only upon acceptance of another product or service from the same seller or lesser can amount to an unlawful tie-in even if there is no mention of the necessity for the other product or service until after the inoperable product is supplied. MDC Data Centers, Inc. v. International Business Machines Corp., E.D.Pa.1972, 342 F.Supp.502. Antitrust And Trade Regulation k 569

(138) A tying arrangement violates ss 1 to 7 of this title when tying products, by virtue of either uniqueness or consumer appeal, give defendant sufficient economic power in tying product to accomplish tie-in and a not insubstantial amount of

commerce in tied product is affected.  Lee Nat. Corp. v.
Atlantic Richfield Co., E.D.Pa.1970, 308 F.Supp. 1041.
Antitrust And Trade Regulation k   569; Antitrust And Trade
Regulation k   571
(139) *Two essential elements of an illegal tie-in is that
defendants possess monopoly power or, at the very least, a
high degree of economic control in the market for the tying
service, and that the result of the tie-in was a substantial
restraint upon competition in the market for the tied service.
Centanni v. T. Smith & Son,
Inc., E.D.La.1963, 216 F.Supp. 330, affirmed 323 F.2d 363.
Antitrust And Trade  Regulation k   569;  Antitrust And Trade
Regulation k   664**
(140) 15uscas2s.n. 157. ---- Separate or distinct products,
tying arrangements, monopoly generally
In order to show illegal tying arrangement, plaintiff must
demonstrate:  that actual tie exists between two separate
products, such that purchase of one is conditioned on
purchase of other;  that seller has sufficient market power in
tying product to compel acceptance of tied product; (here it
would be document to be signed relieving them of all liabilities
w.r.t. everything on the incident with just itself as the relevant
market and geographic market would be USA) and that tie
affects a not insubstantial amount of interstate commerce in
market for tied product. Wells Real Estate, Inc. v. Greater
Lowell Bd. of Realtors, C.A.1 (Mass.) 1988, 850 F.2d 803,
certiorari denied 109 S.Ct. 392, 488 U.S. 955, 102 L.Ed.2d
381.  Antitrust And Trade Regulation k   569 (see opinion
no.132 too as tie affects a not insubstantial amount of
interstate commerce in geographic market of USA for tied
product)__*check it
(141) 15uscas2s.n. 158. Exclusive dealing contract between
anesthesiologist and hospital which established independent
contractor relationship was "tying agreement" or "tying
arrangement," for purposes of sections of the Sherman Anti-
Trust Act which address business competition and are
designed to prevent restraints that have significant effect on
such competition [15 U.S.C.A. ss 1, 2], with hospital's tying
service being
performance of surgery and tied service being performance of
anesthesiology by anesthesiologist or one of the doctors
working with or for him, as patient wishingto purchase service
of surgery at  hospital had to also purchase tied service of
anesthesiology at  hospital through services of the
anesthesiologist. Ezpeleta v.

41

Sisters of Mercy Health Corp., N.D.Ind.1985, 621 F.Supp. 1262, affirmed 800 F.2d119.  Antitrust And Trade Regulation k 593___check from here if time extd

(142) 15uscas2s.n. 362. ---- Boycotts, refusals to deal, combination or conspiracy

*Concerted activity constitutes "group boycott" and is considered per se in restraint of trade when there is a purpose either to exclude a person or group from the market or to accomplish some other  anticompetitive objective, or both. De Filippo v. Ford Motor Co., C.A.3 (Pa.) 1975, 516 F.2d 1313, certiorari denied 96 S.Ct. 216, 423  U.S. 912, 46 L.Ed.2d 141. Antitrust And Trade Regulation k
567;  Antitrust And Trade Regulation k   976

(143) 15uscas2s.n.415* 415. ---- Threat of injury, persons entitled to maintain action

Even though he is not currently conducting business in market allegedly encumbered with illegal conduct, aggrieved party may retain sufficient interest to seek andobtain injunctive relief against  violation of antitrust laws if he demonstrates significant threat of injury from impending violation of antitrust laws or from
contemporary violation likely to continue or recur.  Walker v. Providence Journal Co., C.A.1 (R.I.) 1974, 493 F.2d 82. Antitrust And Trade Regulation k   963(3)

(144) 15uscas2s.n.425. 425. Property owners, persons entitled to maintain action

Property owners had standing to bring antitrust action against developer, city, city officials, and city urban renewal authority for alleged elimination of competition among buyers and developers in real estate market in city area pursuant to planned condemnation of owners' land.  Oberndorf v. City and County of Denver,D.Colo.1986,  653 F.Supp. 304.  Antitrust And Trade Regulation k   960

(***** among contractors who are able to fix place in coordination with Vora who has industrial engineering background too besides very wide scientific background, developers pursuant to planned condemnation of my house which just suffered minor fire damage)******

(145)Gold run, Ltd v. Board of County Commissioners, 38 Colo. App44, 554 P.2d 317 (1976).
(146)Upah v. Thornton Authority, 632 F. Supp. 1279, 1280-81.
(147)Cedar-Riverside Associates v US, 459 F Supp. 1290 (D. Minn 1978)
(148)City of Lafayette v. Louisiana  Light & Power Co., 435US389, 55 L Ed 2d364, 98 S.Ct.1123 (1978).

Statement of Case or cases resulting from ME, Sanford incident.
(1) Dr Vora was unable to advertise at all in a safe & sound fashion for her business, as business never saw the light of the day to this date, ever since I got the licence from the state on it since 19,￼  as threatened by 3 white girls in Pittsburgh at Mariam Center in 1992 year demanding & telling me "Give us 50% of the business profits otherwise business will not see the light of the day," claiming to be relatives of Duquesne University faculty members, as even Verizon Inc. did not keep its promise as promised by the Italian origin lady incharge then as part of Bell Atlantic prior to payment of money for entire year that website will be put on as I want it with burncure etc Affidavits with my curriculum vita etc too, even in reduced version & then it became Verizon Inc. with all employes becoming employees of Verizon Inc including that Italian origin lady; fraudulently, all being part & parcel of conspirators claiming that nothing can be put on the website as I want it with no proof copy supplied to me of the pictures thay wanted to put up & nothing was done rightly other than 1 page that they supplied to me as proof copy & nothing else until I discovered it thro UPJ's cooperation to see what conspirators were upto, trying to put me in prison for medical practice for 20 yrs as they had picture of a male wearing medical Dr's gown with sthethescope in his neck, with no burncure etc. Affidavits etc. put on, without which there would have been no fee paying clients at all, in spite of hassling with them for 6 months hoping that they will do it & the website would not pop up at all the way the website of Kantilal Gugalia pops up by just putting his name in the address column. I just could not take chances with these conspirators, that I was forced to cancel the contract, as could not afford to go to prison for 20 yrs with severe expenses to defend that kind of charge, seeing what they have been doing to this date to get my trade secrets, retraining Trade, competition etc in the market of remedies & services, & since I like to travel & enjoy, it was the most economic way of advertising & driver's license is a must for it, as it is difficult to fight for a license, time & again, to fight again now for it,  when I am very busy with antitrust cases, only hope to be able to earn my livelihood in this horrifying condition in cooperation with my brother & sisters when US people grants them right papers for it (as even I had se vere problems even to get visa back again to USA in 1978) like me & be ablr to earn as

1

equal partners in the co. with SSBs, with courts requiring the people seeking my services, to pay into SSO too besides my fees etc as well as requires courts of law to award Loss of wages for life to me with payments made to SSO too when they award Loss of wages for life to me, as all got started severely in USA ever since I came to this land again, by these conspirators, conspiratorially, severely restraining, trade, competition in the market of remedies & services. J. Ucci, Jaworoski are all part of it & I knew SFC is Irish origin Catholic School & likewise is Duquesne University, East European catholic School, which includes Polish, Russians too etc. & SFC attorney Nick Fisfis is Law School Professor at Duquesne University, so never trusted catholic origin people at all seeing what SFC did & have been doing & seeing what was done to Ramanujan too in UK & India in British time,, so had no faith in anybody as such, & could not take chances of ending up in prison for 20 years for medical practice the way these advertising cos wanted to do the job, knowing the fact of ongoing conspiratorial etc activities of all kinds ever since I came to IU IN, in USA, so I felt safe in doing things my way. Even my younger sister was visiting me in USA then & I offered her to accompany me to see part of USA, which she declined & departed to go to her daughter's place & after dropping off my sister at the airport, I started out for New Hampshire legal business with deadline to be met there for my appearance there, with advertising trip simultaneously. Apparantly these conspirators had & have very long hands, they followed me all the way it seems even in ME. I did see these 2 white girls seated in the Parking lot in the SUV on the RHS of the road, with car running, not knowing their identity at that time, perpendicular to me, which made me distrust them totally from very beginning, so I tried to be cautious & was going straight at the speed limit permitted on that road & I was right about them, as they tried to create Aug 12th 83 nightmare in my life again by fully pressing their gas peddle & hitting my vehicle on the front side of the front pane with peddle fully pressed on gas peddle that full force of thr impact was on the front side passenger door, pushing my vehicle very close in the oncoming traffic lane, as I think it was 3 lane road with middle lane too for vehicles going my way & I think, as a precaution, I had moved in the left lane, so the impact may have put my vehicle I think very close in the lane going other way & I was fortunate that all oncoming cars stopped on time

2

to prevent headon collission, as I cannot remember all the details on lanes etc. until, I get my driver's license back & be able to go to Sanford to check on the road, as, probably all seem to know what these girls were upto, that I did not die in headon collission which got avoided by me holding steering wheel very tightly, in spite of great force trying to push my car in the oncoming traffic lane & I would have died if they managed to do that, & if my younger sister was in the car on the front passenger seat, she would have died the way Mrs M.E. Criste was pronounced dead at Lee Hospital when medical world failed totally to discover her head wound that was bleeding profusely, that there was not a single drop of blood left in her body, & all was done maliciously, wilfully, egregiously pursuant to their antitrust, RICO, civil rights etc. schemes of all kinds & they did not transport the people of Criste's car promptly to the hospital whose vehicle was hit & as per Police report Criste's car was hit on the front side of the front pane as claimed by Lorretto Police, with SFC people involved, as I do not have any memory on it at all, as I was seated behind the front passenger seat, on rear side as per records, & nobody discovered the head injury of Mrs Criste until after her death, as they tried to figure out what caused her death & they claim, after she had died, Drs turned her over, & found the head wound & she was pronounced dead in exactly the same fashion which the Note (that was put in my parent's home in 1976 at Rajnandgaon in India) had said, saying "In the name of Jesus Christ, a person who has committed sin, blood should spill & the person must die," telling me clearly that all was pursuant to their antitrust, RICO etc open ended schemes & conspiratorial activities of all kinds, as they figured all the achievements that I had achieved were out of illegal sexual activities, for which reason, a rubber tube was inserted in my Hymen, by a white nurse of european origin, at OSU on pretext of testing my kidneys at Dr. Wise's office & after I had submitted computer program in operating systems course which I was just auditing with the permission of Dr. Foulk, & was not registered for it & Math dept paid for the computer programs run by me then as they had 2 Ph.Ds in Math from OSU then officially taking that course, one white of european origin, one of Indian origin at Columbus, Ohio, & nobody was able to submit complete correct program on it except me & I had 256 options on that program, which city of Johnstown, with their Earthmover's got

3

it from 5111/2 Robb Ave side, & then Dr Rowland of OSU Health Clinic Dr., for students with conspirators, had fabricated a venereal disease of Trichomonasis in summer or fall of 1981 in order to appoint a less qualified guy by the name of D. Berghelia from Romania for whom OSU had gotten a visa for him giving him a Professor's salary which they had not done for me & I was not even aware of the fact that Trichomonasis is a venereal disease of Iranian origin then at all until Dr. Bostert told me in 1991 Dec declaring that it is a venereal disease, & cannot be cured at all & everything was fabricated on Trichomonasis & University system horribly discrminated against me  & all was done, wilfully, maliciously, egregiously etc & never knew antitrust statutes then at all, & all was done with motive to create a 2nd amanujan in my life &/or restrain trade, competition in the market of services & remedies of which I was not aware of then, but did know that ongoing conspiratorial activities are involved. It was OSU Health Clinic who had mailed to me those fabricated medical records to Lorretto at my Lorretto address then & postal date of Lorretto post office on the envelope was 8/11/1983 which I saw when I got released from MH in Oct 1983 as all were trying to make sure that I dont get hired back at SFC & dont get to go to Ann Arbor, MI for which job offer of Dr Roland of Computer Science & Electrical Engineering had sent to me in writing with admission there, which they made it disappear from my house in Lorretto, when I was in hospital & landlord had come to hospital for the keys to the house, claiming something important for him to do there, & K. Stem went along with him to make me give the keys to him, so did show conspiratorial activities as they made that disappear from University of MI, Ann Arbor too, to make sure that I dont get awarded Loss of Wages for life (clearly showing SFC administrative people were involved having such long hands, as my landlord was not that powerful at all & was related to Mrs. Criste) as the Drs. then clearly acknowledged that I was disabled very badly & had thought 3 times that I will pass away as hospital had sent telegram to my parents telling what had happened to me & was in very bad condition & informed my parents that they are not going to put me in the plane in that condition for them to take care of me, as I will expire on the way when they telegramed back to do that). All this shows clearcut conspiratorial activities of all kinds to severely restrain trade, competition in the market of

4

remedies & services & since I had no health insurance at all & had to go to New Hampshire for some legal matter there on some citation of cop in New Hampshire as conspiratorial, antitrust, RICO etc activities were quite widespread with motive to create a 2nd Ramanujan in my life &/or restrain trade, competition in the market of remedies & services, so had to get the car fixed to be able to go there, so was practically up late in the evening, to get that done, so had no time for anything else & knew my remedies are far better than those of medical world remedies & was worried about who will pay for it, as my experiences in PA were quite bad on it, & could not afford to pay anything out of my pockets then & I had to pay everything out of my pockets, even to get the car running & after I had taken care of New Hampshire legal matter, I had to go back to ME to take care of everything else on storage charges, fixing things & be able to come back to PA to my home of 511 Robb Ave, so I refused to go to Hospital too then. It took me several days just for that, however I did manage to get my trailor, & my car back to PA slowly, including using some backroads too, giving more mileage than normal, & then had to spend time to get work done on my car, trailor both here in Johnstown, by the person who had done work on my vehicles & had to pay their charges too, all of which got removed from my house by these conspirators with city personnel in cohorts with them as I cannot even recall all these names & addresses without my own records in writing from them. Since the motives of these conspirators were no good, I had to preserve the evidence of how severe damage was being done by these conspirators, in spite of me taking all pictures of it at various stages, all of which was removed by these conspirators, when they barred me from my own house, refusing to let me fix it, when it could have been fixed easily, as I distrusted all these conspirators from very beginning, more so after the Supreme Devotee of God had made an appearance in the form of Jain monk, telling me clearly that "Conspiratorial activities of Italian origin people with their supporters & workers are still continuing, so be careful, innocent person is in prison" in 1996 ending or 1997 year when E. Catlin was charged with Arson for setting totally delapidated 609, 613 Franklin St buildings of R & D. Williams in which I, E. Catlin, Hosmer Jr. were tenants without utilities of all kinds, most of the time, definitely from 1992-1996 for which HUD funds were being used too in

5

cohorts with the city to renovate the structures around 90 decay beginning, as I had taken no steps to do anything for Catlin when he wrote letters to me for my help, to take his case to get him out of prison & when he agreed to pay my charges, at my rate, in writing, if US courts do not take it as civil rights case, & figured he might do that as his letters from prison were telling me quite bad conditions & food in prison, so as a good neigbour trusted his written assurances to me (that were produced in USDCWPA in Catlin's case, which he did not keep at all & cops decided to retaliate against me with city in cohorts with them for trying to preserve justice) then only after the appearance was made to me, I went about investigating, taking pictures of buildings to give sound proof etc on it which these conspirators made it disappear totally from my house of 511 Robb Ave with everything related to that was removed from 535 Oakland Ave & Robb Ave, so knew how great fraud with continuing antitrust, Rico, civilrights schemes etc are being perperated by these conpirators, & how they set places on fire to make pretextual excuses, etc. for them taking all important papers, possessions of mine to prevent the truth to come out conspiratorially, all in furtherance of their continuing conpiratorial, antitrust, RICO, civilrights schemes etc against me & my family members too probably &/or trying to create a 2nd Ramanujan in my life, so could not bank on pictures, records at all as I knew they will do the same thing all over again, so I had no choice, but to put the vehicles in storages to preserve the evidence on ME case too, & knowing very well that my vehicles did bring me back home to Johnstown all the way from ME State & had low mileage on them, & did not get a single second off to do anything else other than try to preserve my claims for damages & defend the fabricated charges of these conspirators pursuant to their antitrust, RICO, civil rights etc schemes of these conspirators, &/or trying to create 2nd Ramanujan in my life, severely restraining trade, competition in the market of remedies & services & will keep on doing that & nothing seem to restrain them, so I am paying these storage charges to this date too & was glad that I did that as they go about destroying all evidence on it too.  T. Perry with the Irish origin girl in her car refused to give me their names, addresses, with insurance cos. name, address at all, & I had no choice but to give a call to cops etc as vehicles were totally out of order, both car & trailor & had to be

6

towed to the place which cops suggested & since I had to sleep in my own car & needed to go to New Hampshire to appear for hearing, work had to be done on the car as an emergency to be able to rest & go for hearing to New Hampshire, & I was fortunate that the mechanics there were able to do it, on payment of cash outright to them, otherwise they refused to do it. Even then T. Perry with her Irish origin girl friend refused to give any information to me and I had to try to get it from cops, all in violation of laws, both of State Statutes & US Statutes too, all cost money too with plenty of time needed for it & the claimed Insurance co. as the insurance co of T. Perry did not even take the trouble to approach me to compensate me for anything & only Progressive Insurance co contacted me after I had made several calls to ME state, & at all times they identified themselves as Progressive Ins cos workers, co that was the insurance co of T. Perry, so how can I believe now what Dinan is saying that the insurance co is different when he with Progressive Ins co never provided the name & address of the co. locally in ME, & their headquarters at any time in writing to me by certified mail with return receipt as different one than what they portrayed as the Progressive Ins. Co insuring T. Perry's car with the phone no. they had given me in the State of ME as that of Progressive Ins. Co. in the State of ME as T Perry's Insurer or even by 1st class ordinary mail other than as Progressive Ins. co, so does show severe antitrust, RICO, civil rights violation schemes etc. & activities of all kinds including conspiratorial activities of all kinds &/or trying their best to create a 2nd Ramanujan in my life, which are still continuing as when anything has to go out to MEUSDC or to 1st cir. all my possessions whereever I put them get ransacked, & they spread it around at the closest spot to me in walking distance, less than a mile from public library & where I rest for the nightime, on open porch &/or conspirators try to fabricate some very serious criminal charges pursuant to their open ended schemes against me on which they did not succeed so far, as I do not have the ability to walk to U-Haul too everyday to put anything there or get anything from there except on Sundays as that too can take me anywhere from 45 mins to over 3 hrs sometimes depending on my condition & pains as such, in Johnstown, so law requires that I should not be made to suffer for their deeds as such.

Note with particularity, that T. Perry with her Insurance co. given by

7

cops as Progressive Ins. Co. are totally dodging on service too, when service by certified mail with return receipt got accepted at her Sanford address given in the Police report at Appellate stage initially when USDCME failed to conduct service on them in IFP thro US Marshall, so Vora had no choice when 1st cir said that parties must be served too, so Vora conducted service at Appellate stage by certified mail with return receipt which is good service as per US laws as well as the laws of ME state, & after that all of them started dodging & only once papers came back, so Vora remailed them on the same address saying that once service has gotten accepted, it is good for court purposes on my claims & after that all pleadings got accepted by them & then Dinan made his appearance on behalf of Progressive Ins. Co & T. Perry too as service got conducted locally in ME, as well as headquarters of her Insurance Co by certified mail with return receipt which cops had written as her Insurance Co & I had called their local office too with the phone number given to me by the cops there, as her Insurance Cos phone number, all of which got removed by the city personnel when they took my place with all my property over, in their possession, so I have none of those now & all phone numbers are gone with the records in the house on phone cos. bills, as I was using landline phone then, all part & parcel of conspiratorial activities of all kinds, antitrust, RICO etc schemes &/or trying to create a 2nd Ramanujan in my life & at no time the representatives of Progressive Ins co. made no mention of the cos name that Atty Dinan is claiming to be her Insurance Co. & they always represented to me as the Ins. Co. of Theory Perry with the policy number given by the cops then as the policy of Progressive Ins. Co, all of which got removed by these conspirators when city took over everything, perpetuating total fraud, persuant to their open schemes & motives & paid for the damage to my Ford Fairmont as total loss & just paid what Blue book said as its value with no consideration for low milaege on it. These conspirators are working together, no question left in my mind on it now as Progressive Insurance Co representatives always portrayed as her Insurance co with the Policy number given to me by the cops in Sanford as their policy, as a result, I do not put anything beyond these Irish origin attorney of theirs, as even N. & C. Mcgough did the same thing in PA with their Jewish origin attorney L.A. Silverman when they went & cancelled the fleet Insurance on the

8

car which hit Criste's car as planned by them, after the so called portrayed as an accident on 8/12/1983 & made it effective prior to the accident with no conscience & remorse at all & filed a totally false Affidavit in the courts of law with all attorneys going blindly for what N. McGough wrote fraudulently in his Affidavit & State courts here then went blindly for their falsehoods, when it had Insurance of more than 4 million 500,000 dollars on it as it was part of the fleet of more than 15 vehicles in it & C. McGough was part & parcel of her father's Lumber Co. working for him & he donated that vehicle just for the purpose & goals they wanted to achieve pursuant to their open ended schemes, & PA State Govt went along with that fraud duping Vora all the way through, so I have no faith left in them anymore & T. Corbett was & is part of it too, as the city claims, Corbett went along with what city of Johnstown did of demolishing my sound & safe structure of 511 duplex taking all my property when it could have been fixed for minor fire damage don't to it as set by conspirators to achieve their goals, all pursuant to their open ended schemes &/or trying to create a 2nd Ramanujan in my life, severely restraining Trade, competition in the market of remedies & services for human beings especially in USA.

9

My notes for cts on 15uscas26p1

4. Purpose

(1)Injunctive relief under this section has three primary purposes: putting an end to illegal conduct; depriving violators of benefits of their illegal conduct; and restoring competition in marketplace. Arthur S. Langenderfer, Inc. v. S.E. Johnson Co., C.A.6 (Ohio) 1984, 729 F.2d 1050, certiorari denied 105 S.Ct. 510, 469 U.S. 1036, 83 L.Ed.2d 401, certiorari denied 105 S.Ct. 511, 469 U.S. 1036, 83 L.Ed.2d 401, on subsequent appeal 917 F.2d 1413, rehearing denied, certiorari denied 112 S.Ct. 274, 502 U.S. 899, 116 L.Ed.2d 226, certiorari denied 112 S.Ct. 51, 502 U.S. 808, 116 L.Ed.2d 29.

(2)Purpose of a civil injunction suit in antitrust cases against large corporations is not to punish defendants but to prevent a continued violation of §§ 1 to 7 of this title, to the injury of the public. U. S. v. Procter & Gamble Co., D.C.N.J.1959, 170 F.Supp. 689.

34. Antitrust violation, elements of cause of action

(3)A private antitrust plaintiff must demonstrate violation of antitrust laws and right either to treble damage remedy under section 15 of this title or to injunctive relief under this section. Out Front Productions, Inc. v. Magid, C.A.3 (Pa.) 1984, 748 F.2d 166.

(4)In action by professional football players, unemployed because of folding of one association, to enjoin another from claimed hiring boycott, in view of substantial showing of probability that antitrust laws were being violated and that plaintiffs would suffer irreparable harm not compensable in terms of damages and in view of public interest and other considerations, preliminary injunctive relief was warranted. Bowman v. National Football League, D.C.Minn.1975, 402 F.Supp. 754

35. Interstate commerce, elements of cause of action

(5)An intent to restrain interstate commerce justifies equitable interposition by injunction without necessity of actual injury at time of bringing suit, if there be a dangerous probability that such injury will happen, since this section directs itself against probability as well as against completed result. Bedford Cut Stone Co. v. Journeyman Stone Cutters' Ass'n of North America, U.S.Ind.1927, 47 S.Ct. 522, 274 U.S. 37, 71 L.Ed. 916.

(6)Plaintiff could obtain injunction for violation of §§ 1 and 2 of this title, even though the acts done in pursuance of the monopoly which injured plaintiff in business or property were a part of intrastate commerce. Greenleaf v. Brunswick-Balke-Collender Co., E.D.Pa.1947, 79 F.Supp. 362.

37. ---- Actual injury, elements of cause of action

1

(7)Actual loss of trade is not prerequisite to injunctive relief in unfair competition case, where plaintiffs' good will and reputation are injured or threatened with injury by defendant who falsely represents source or quality of one specific product as being that of another specific product. Revlon, Inc. v. Regal Pharmacy, Inc., E.D.Mich.1961, 29 F.R.D. 169, 132 U.S.P.Q. 187.

39. ---- Public injury, elements of cause of action
(8)Where conduct in restraint of trade is of kind prohibited by § 1 of this title, and there is public injury, private plaintiff has right to bring action for treble damages for injury to his business or property and for injunction. Klor's, Inc. v. Broadway-Hale Stores, Inc., C.A.9 (Cal.) 1958, 255 F.2d 214, certiorari granted 79 S.Ct. 23, 358 U.S. 809, 3 L.Ed.2d 54, reversed and remanded on other grounds 79 S.Ct. 705, 359 U.S. 207, 3 L.Ed.2d 741.
my notes on 15uscas26p2 for cts

77. Injury, preliminary or temporary relief--Generally
(9)Although section of Clayton Act allowing any person to sue for injunctive relief against threatened loss or damage by violation of antitrust laws has lower threshold standing requirement, plaintiffs must nonetheless make sufficient showing of potential or threatened antitrust injury to meet customary requirements for grant of preliminary injunctive relief. Christian Schmidt Brewing Co. v. G. Heileman Brewing Co., Inc., C.A.6 (Mich.) 1985, 753 F.2d 1354, certiorari dismissed 105 S.Ct. 1155, 469 U.S. 1200, 84 L.Ed.2d 309.

79. ---- Harms constituting injury, preliminary or temporary relief
(10)*The threat that a party will be driven out of business if a preliminary injunction is not granted may constitute irreparable harm. Optivision, Inc. v. Syracuse Shopping Center, Associates, N.D.N.Y.1979, 472 F.Supp. 665.
(11)Probable elimination of potential competition is one ground for injunctive relief under §§ 12 to 27 of this title. Allis-Chalmers Mfg. Co. v. White Consol. Industries, Inc., D.C.Del.1969, 294 F.Supp. 1263, reversed on other grounds 414 F.2d 506, certiorari denied 90 S.Ct. 567, 396 U.S. 1009, 24 L.Ed.2d 501.
(12)Dealer in motion picture accessories was entitled to temporary injunction restraining manufacturer and distributor from refusing to sell to dealer, where it appeared that dealer's losses constituted substantial portion of its total business, that refusal might result in permanent loss of customers and loss of good will and it did not appear that defendant would suffer appreciable loss if injunction were granted. Poster Exchange, Inc. v. National Screen Service Corp., N.D.Ga.1961, 198

2

F.Supp. 557, affirmed 305 F.2d 647.

88. Maintenance of status quo, preliminary or temporary relief

(13)Where trial court is satisfied that an illegal conspiracy to violate antitrust laws exists and that refusal to deal is in furtherance of the conspiracy, it will issue a preliminary injunction to preserve the status quo. Interphoto Corp. v. Minolta Corp., S.D.N.Y.1969, 295 F.Supp. 711, affirmed 417 F.2d 621.

121. Conduct or activities enjoinable generally

(14)*Affirmative action may be required of defendants under injunctive provision of this section whenever necessary, not only to proscribe future conduct but also to redress antitrust violation proved, to undo what could have been prevented, or to cure the ill effects of illegal conduct. In re Multidistrict Vehicle Air Pollution, C.D.Cal.1973, 367 F.Supp. 1298, affirmed 538 F.2d 231.

126. Criminal activity, conduct or activities enjoinable

(15)To extent that hospital demonstrated viable claim under federal or Wisconsin antitrust law independent of its claim under medicare fraud statute, district court had authority to enjoin criminal activity complained of. West Allis Memorial Hosp., Inc. v. Bowen, C.A.7 (Wis.) 1988, 852 F.2d 251.

134. Product disparagement, conduct or activities enjoinable

(16)If disparagement of plaintiff's products is shown and if it is shown to be for purpose of restraining trade in violation of the antitrust laws, then injunctive relief might be available in a final decree after trial on the merits. N. W. Controls, Inc. v. Outboard Marine Corp., D.C.Del.1970, 317 F.Supp. 698.

137. Restraints of trade, conduct or activities enjoinable

(17)In determining the right to injunction against restraints of interstate commerce, §§ 1 to 7 and 12 to 27 of this title are of paramount authority, and their prohibitions must be given full effect, irrespective of whether the things prohibited are lawful or unlawful at common law or under local statutes. Duplex Printing Press Co. v. Deering, U.S.N.Y.1921, 41 S.Ct. 172, 254 U.S. 443, 65 L.Ed. 349, 18 Ohio Law Rep. 366189. ----

(18)Municipalities, persons entitled to maintain action, practice and procedure

States and municipalities are "persons" within meaning of antitrust laws such that a state or municipality may sue and be sued for alleged violation of the federal acts. Schiessle v. Stephens, N.D.Ill.1981, 525 F.Supp. 763.

210. ---- Injury, complaint, practice and procedure

(19)Allegations of owners of new cancer treatment center that if alleged antitrust conspiratorial activity of defendant physicians and hospitals would constitute continuing injury to owners if allowed to continue were sufficient to withstand

motion to strike claim for injunctive relief. Swarthmore Radiation Oncology, Inc. v. Lapes, E.D.Pa.1992, 812 F.Supp. 517.

216. ---- Miscellaneous complaints sufficient, practice and procedure

(20)Complaint by Negro persons who had sought to purchase or rent real property in the area, by white persons who had sought to sell or lease property in area to Negroes and by Negro real estate brokers and salesmen alleging that the defendant board of realtors and others were violating the antitrust laws by conspiring to prevent Negroes from owning or renting property in white neighborhoods in Akron, Ohio and other parts of Summit County was sufficient to state a claim upon which relief could be granted under the antitrust laws and a claim within the jurisdiction of the federal court. Bratcher v. Akron Area Bd. of Realtors, C.A.6 (Ohio) 1967, 381 F.2d 723, 13 Ohio Misc. 224, 42 O.O.2d 23, 42 O.O.2d 243.

(21)Complaint which alleged that defendants conspired to restrain plaintiff in its interstate and foreign business and to destroy plaintiff in its business, by improper competition, to the detriment of the public, stated a claim under § 15 of this title and this section. Atlantic Heel Co. v. Allied Heel Co., C.A.1 (Mass.) 1960, 284 F.2d 879

223. ---- Res judicata, defenses, practice and procedure

(22)Where defendant in trespass and ejectment action in state court attempted to raise issue that plaintiffs had violated §§ 1 and 2 of this title, but demurrer of plaintiff was sustained, judgment for plaintiff in that action did not preclude defendant from thereafter bringing suit in federal court against the plaintiff and others to enjoin alleged violation of §§ 1 and 2 of this title, since no judgment can be conclusive as to issues denied adjudication in action in which it was rendered. Gamco, Inc. v. Providence Fruit & Produce Bldg., C.A.1 (R.I.) 1952, 194 F.2d 484, certiorari denied 73 S.Ct. 11, 344 U.S. 817, 97 L.Ed. 636

237. Scope and form of relief, practice and procedure-- Generally

(23)When a private litigant is engaged in enforcement of the same antitrust laws, under basically the same statutory authority as given the government, and is acting as a private attorney general, the court must make available to the private litigant the same equitable remedies as are given the government under a parallel statute. International Tel. & Tel. Corp. v. General Tel. & Electronics Corp., D.C.Hawai'i 1972, 351 F.Supp. 1153, affirmed in part, reversed in part on other grounds 518 F.2d 913, on remand 449 F.Supp. 1158.

238. ---- Factors considered, scope and form of relief, practice

4

and procedure

(24)Continuing effects of past illegal conduct are important factors to consider in determining whether to grant injunctive relief for violation of antitrust laws. Wilk v. American Medical Ass'n, N.D.Ill.1987, 671 F.Supp. 1465, affirmed 895 F.2d 352, rehearing denied, certiorari denied 110 S.Ct. 2621, 496 U.S. 927, 110 L.Ed.2d 642, rehearing denied 111 S.Ct. 6, 497 U.S. 1046, 111 L.Ed.2d 822

239. ---- Equitable considerations, scope and form of relief, practice and procedure

(25)Equity will grant relief for fraud and deception pursued by labor union to undermine and destroy employers' rights. Bittner v. West Virginia-Pittsburgh Coal Co., C.C.A.4 (W.Va.) 1926, 15 F.2d 652. Labor And Employment 1968; Labor And Employment 2063

15uscas26p4 begins here

241. ---- Duration, scope and form of relief, practice and procedure

(26)Injunctive relief of three-year duration would issue against retail sellers of gasoline in antitrust suit, even though plaintiffs recovered only nominal damages and sellers had apparently ceased their illegal conduct after filing of litigation; sellers' obstructionist conduct, including willfully false testimony, in conjunction with their conspiracy to fix prices, warranted conclusion that likelihood of recidivism on their part was great, their continued and future illegal activity posed probability of substantial damages, and necessities of public interest warranted injunction. Coleman v. Cannon Oil Co., M.D.Ala.1993, 849 F.Supp. 1458. Antitrust And Trade Regulation 995

243. ---- *(find legal meaning)Divestiture, scope and form of relief, practice and procedure

(27)Where plaintiff, in private antitrust suit, alleged monopoly in restraint of trade and that such was injuring plaintiff, divestiture could be an appropriate form of relief under this section. Burkhead v. Phillips Petroleum Co., N.D.Cal.1970, 308 F.Supp. 120

(28)Permanent injunction would be appropriate in price discrimination case even though plaintiff failed to prove actual damages. Hampton v. Graff Vending Co., C.A.5 (Tex.) 1973, 478 F.2d 527, certiorari denied 94 S.Ct. 69, 414 U.S. 859, 38 L.Ed.2d 109, rehearing denied 94 S.Ct. 609, 414 U.S. 1087, 38 L.Ed.2d 493

My notes on 15uscas26p1-4 caselaws for parties, for ref. as "15uscas26p1-4 (case no)" .

(1) Arthur S. Langenderfer, Inc. v. S.E. Johnson Co., C.A.6 (Ohio) 1984, 729 F.2d 1050, certiorari denied 105 S.Ct. 510, 469 U.S. 1036, 83 L.Ed.2d 401, certiorari denied 105 S.Ct. 511, 469 U.S. 1036, 83 L.Ed.2d 401, on subsequent appeal 917 F.2d 1413, rehearing denied, certiorari denied 112 S.Ct. 274, 502 U.S. 899, 116 L.Ed.2d 226, certiorari denied 112 S.Ct. 51, 502 U.S. 808, 116 L.Ed.2d 29

(2) U. S. v. Procter & Gamble Co., D.C.N.J.1959, 170 F.Supp. 689.

(3) Out Front Productions, Inc. v. Magid, C.A.3 (Pa.) 1984, 748 F.2d 166

(4) Bowman v. National Football League, D.C.Minn.1975, 402 F.Supp. 754

(5) . Bedford Cut Stone Co. v. Journeyman Stone Cutters' Ass'n of North America, U.S.Ind.1927, 47 S.Ct. 522, 274 U.S. 37, 71 L.Ed. 916.

(6) Greenleaf v. Brunswick-Balke-Collender Co., E.D.Pa.1947, 79 F.Supp. 362.

(7) Revlon, Inc. v. Regal Pharmacy, Inc., E.D.Mich.1961, 29 F.R.D. 169, 132 U.S.P.Q. 187

(8) Klor's, Inc. v. Broadway-Hale Stores, Inc., C.A.9 (Cal.) 1958, 255 F.2d 214, certiorari granted 79 S.Ct. 23, 358 U.S. 809, 3 L.Ed.2d 54, reversed and remanded on other grounds 79 S.Ct. 705, 359 U.S. 207, 3 L.Ed.2d 741

(9) Christian Schmidt Brewing Co. v. G. Heileman Brewing Co., Inc., C.A.6 (Mich.) 1985, 753 F.2d 1354, certiorari dismissed 105 S.Ct. 1155, 469 U.S. 1200, 84 L.Ed.2d 309.

(10) Optivision, Inc. v. Syracuse Shopping Center, Associates, N.D.N.Y.1979, 472 F.Supp. 665.

(11) Allis-Chalmers Mfg. Co. v. White Consol. Industries, Inc., D.C.Del.1969, 294 F.Supp. 1263, reversed on other grounds 414 F.2d 506, certiorari denied 90 S.Ct. 567, 396 U.S. 1009, 24 L.Ed.2d 501

(12) Poster Exchange, Inc. v. National Screen Service Corp., N.D.Ga.1961, 198 F.Supp. 557, affirmed 305 F.2d 647.

(13) . Interphoto Corp. v. Minolta Corp., S.D.N.Y.1969, 295 F.Supp. 711, affirmed 417 F.2d 621.

(14) In re Multidistrict Vehicle Air Pollution, C.D.Cal.1973, 367 F.Supp. 1298, affirmed 538 F.2d 231

(15) West Allis Memorial Hosp., Inc. v. Bowen, C.A.7 (Wis.) 1988, 852 F.2d 251.

(16) N. W. Controls, Inc. v. Outboard Marine Corp., D.C.Del.1970, 317 F.Supp. 698.

(17) Duplex Printing Press Co. v. Deering, U.S.N.Y.1921, 41

S.Ct. 172, 254 U.S. 443, 65 L.Ed. 349, 18 Ohio Law Rep. 366189. ----

(18) Schiessle v. Stephens, N.D.Ill.1981, 525 F.Supp. 763.

(19) Swarthmore Radiation Oncology, Inc. v. Lapes, E.D.Pa.1992, 812 F.Supp. 517.

(20) Bratcher v. Akron Area Bd. of Realtors, C.A.6 (Ohio) 1967, 381 F.2d 723, 13 Ohio Misc. 224, 42 O.O.2d 23, 42 O.O.2d 243

(21) Atlantic Heel Co. v. Allied Heel Co., C.A.1 (Mass.) 1960, 284 F.2d 879

(22) Gamco, Inc. v. Providence Fruit & Produce Bldg., C.A.1 (R.I.) 1952, 194 F.2d 484, certiorari denied 73 S.Ct. 11, 344 U.S. 817, 97 L.Ed. 636

(23) International Tel. & Tel. Corp. v. General Tel. & Electronics Corp., D.C.Hawai'i 1972, 351 F.Supp. 1153, affirmed in part, reversed in part on other grounds 518 F.2d 913, on remand 449 F.Supp. 1158.

(24) Wilk v. American Medical Ass'n, N.D.Ill.1987, 671 F.Supp. 1465, affirmed 895 F.2d 352, rehearing denied, certiorari denied 110 S.Ct. 2621, 496 U.S. 927, 110 L.Ed.2d 642, rehearing denied 111 S.Ct. 6, 497 U.S. 1046, 111 L.Ed.2d 822

(25) Bittner v. West Virginia-Pittsburgh Coal Co., C.C.A.4 (W.Va.) 1926, 15 F.2d 652. Labor And Employment 1968; Labor And Employment 2063

(26) Coleman v. Cannon Oil Co., M.D.Ala.1993, 849 F.Supp. 1458. Antitrust And Trade Regulation 995

(27) . Burkhead v. Phillips Petroleum Co., N.D.Cal.1970, 308 F.Supp. 120

(28) Hampton v. Graff Vending Co., C.A.5 (Tex.) 1973, 478 F.2d 527, certiorari denied 94 S.Ct. 69, 414 U.S. 859, 38 L.Ed.2d 109, rehearing denied 94 S.Ct. 609, 414 U.S. 1087, 38 L.Ed.2d 493

Notes on FRCP9 to be sent to cts
9. ---- Malice, state of mind
*Newsmedia*
 (1)Complaint charging newspaper and other persons with malice in
publication of allegedly libelous article was sufficient to establish
basis for showing of actual malice.  Belli v. Orlando Daily
Newspapers, Inc., C.A.5 (Fla.) 1967, 389 F.2d 579, certiorari denied
89 S.Ct. 88, 393 U.S. 825, 21 L.Ed.2d 96. Libel And Slander  83
*JPD*
(2)Arrestee adequately alleged that city police officer initiated
criminal proceeding against him with malice, as required to state
claim for malicious prosecution under Florida law; arrestee averred
malice generally, which was permissible under federal procedural
rules, and arrestee alleged that officer knew or should have known
that charges he made against arrestee were false, no probable cause
existed for charges, and officer's actions were taken in absence of
lawful authority. Blackshear v. City of Miami Beach,, S.D.Fla.2011,
2011 WL 3211514. Malicious Prosecution  31; Malicious
Prosecution  32
**City, Creany, Williams and county, Italian origin people like
Budzina etc involved as misuse of HUD funds is violation of federal
law as they claimed $48000 was used to renovate 609, 613 Franklin
st bldgs with no utilities as such was whistle blowing activity of
Vora, Catlin etc** "find the law"
(3)California police officer's punitive damages claim under
Government Code whistleblower provision would not be stricken for
failure to plead malice; officer's allegations that city and individual
officers retaliated against him for his whistleblowing activities were
sufficient to infer intent to injure. Neveu v. City of Fresno,
E.D.Cal.2005, 392 F.Supp.2d 1159. Federal Civil Procedure  636;
Federal Civil Procedure  1137
(4)Conclusory allegations of oppression, fraud, or malice complied
with federal pleading standards for a claim for punitive damages
under California law. Clark v. State Farm Mut. Auto. Ins. Co.,
C.D.Cal.2005, 231 F.R.D. 405. Damages  151; Federal Civil
Procedure  636
(5) In libel action, charge in declaration that letter was maliciously
written concerning plaintiff was a sufficient charge of malice,
without alleging further facts showing malice, under this rule. Love
v. Commercial Casualty Ins. Co., S.D.Miss.1939, 26 F.Supp. 481.
Federal Civil Procedure  636
(6) General allegation of malice in libel suit was sufficient to state
claim under this rule. Stearn v. MacLean-Hunter Limited,
S.D.N.Y.1969, 46 F.R.D. 76. Federal Civil Procedure  633.1
10. ---- Motive or bad faith, state of mind
*Perry Progressive case*
(7) Where gravamen of employee's complaint against labor union

1

was charge of denial of fair representation and not simply alleged collusion of union and employer and "conspiracy" allegation was included to indicate motive or bad faith, employee's complaint against union for failure to fairly represent employee was not subject to dismissal for failure to plead specific and detailed facts. Nuest v. Westinghouse Air Brake Co., S.D.Ill.1970, 313 F.Supp. 1228. Federal Civil Procedure 1793.1

*Perry Progressive case*

11. ---- Information and belief, state of mind

(8) Federal rule requiring particularity in pleading fraud claims permits allegations based on "information and belief" when essential information lies uniquely within another party's control, but only if pleading sets forth specific facts upon which belief is reasonably based. Hollander v. Etymotic Research, Inc., E.D.Pa.2010, 726 F.Supp.2d 543, 96 U.S.P.Q.2d 1662, reconsideration denied. Federal Civil Procedure 636

*Perry, Progressive case*

(9) When facts relating to alleged fraud are peculiarly within the perpetrator's knowledge, the heightened pleading standard for fraud claims is relaxed, and fraud may be pled on information and belief, although plaintiff must still set forth the factual basis for his belief. U.S. ex rel. Foster v. Bristol-Myers Squibb Co., E.D.Tex.2008, 587 F.Supp.2d 805. Federal Civil Procedure 636

*JPD*

(10) Municipal liability claim of civil rights plaintiff alleging that city had policy or custom of inadequately and improperly investigating citizens' complaints of police misconduct fell within exception to heightened pleading requirement allowing allegations on information and belief, where complaint showed reasonable basis for believing that evidence of particulars to support alleged conclusions regarding established municipal policy was in control of defendant city and could be revealed through discovery. Alves v. Lemoure, D.Mass.1992, 794 F.Supp. 34. Civil Rights 1395(5)

**applies to all**

12. Mistake

(11) Subd. (b) of this rule providing that fraud or mistake be stated with particularity does not entail exhaustive cataloging of facts but only sufficient factual specificity to provide assurance that plaintiff has investigated the alleged fraud and reasonably believes that wrong has occurred. duPont v. Wyly, D.C.Del.1973, 61 F.R.D. 615. Federal Civil Procedure 636

(12) Heightened pleading requirements did not apply to state prisoner's pro se civil rights complaint, in which he alleged denial of access to the courts in violation of the due process clause, infliction of cruel and unusual punishment by denying essential medical treatment, and retaliation for seeking to use the legal process to petition for redress of grievances. Thomson v. Washington, C.A.7

2

(Ill.) 2004, 362 F.3d 969, on remand 2008 WL 151367. Civil Rights 1395(7); Federal Civil Procedure 657.5(3)

(13) There is no heightened pleading standard in § 1983 actions; rather, the general and less stringent requirements of the Federal Rules of Civil Procedure apply. Allen v. Pennsylvania Soc. for Prevention of Cruelty to Animals, M.D.Pa.2007, 488 F.Supp.2d 450. Civil Rights 1394

*City etc*

16. Conversion

(14) Under Pennsylvania law, claim for conversion does not require showing of fraud or mistake, and so does not need to be pleaded with particularity. Freedom Medical Inc. v. Gillespie, E.D.Pa.2007, 634 F.Supp.2d 490. Federal Civil Procedure 636; Conversion And Civil Theft 158

(15) Requirements of Rule 9(b) requiring particularity in complaint alleging fraud did not apply to complaint seeking recovery based on claims of conversion and misappropriation of property. In re Harvard Knitwear, Inc., Bkrtcy.E.D.N.Y.1993, 153 B.R. 617. Federal Civil Procedure 1636.1

17. Extortion

(16) Stringent pleading requirements for fraud or mistake did not apply to civil Racketeer Influenced and Corrupt Organizations Act (RICO) extortion allegation. McLaughlin v. Anderson, C.A.2 (Conn.) 1992, 962 F.2d 187. Federal Civil Procedure 636

(17) Property owner was not required to plead with particularity his claim that city officials violated Racketeer Influenced and Corrupt Organizations Act (RICO) by conspiring to impose arbitrary and bogus requirements on his intended use of particular parcel of land, where owner alleged predicate acts of extortion, not fraud. Ferluga v. Eickhoff, D.Kan.2006, 408 F.Supp.2d 1153. Federal Civil Procedure 636(18) 19. Libel

** news media on Iran**

(18) A complaint in libel action alleging that defendant produced and exhibited an inferior motion picture imputing its authorship to plaintiff, a well-known and competent producer, was not defective for failure to set forth in full the alleged libelous matter, since simple and concise pleadings are mandatory under these rules, and libel is not one of the matters listed in this rule requiring averments of which should be stated with particularity. Carroll v. Paramount Pictures, S.D.N.Y.1942, 3 F.R.D. 95. Federal Civil Procedure 706

52. Jurisdiction, capacity

*Mcgough*

(19) In action by automobile driver against following vehicle driver's employer and employer's liability insurer for injuries sustained in rear-end collision, if plaintiff wanted to assert claim against employer's insurer in its capacity as employer's driver's insurer, complaint was required to allege that insurer was obligated under

3

policy that provided coverage of claims against driver as well as against his employer or was otherwise required to give notice that insurer was being sued as driver's insurer, notwithstanding fact that under Louisiana direct action statute, LSA-R.S. 22:655, it was not necessary to name driver as defendant in order to assert claim against his insurer. Liles v. Riblet Products of Louisiana, Inc., C.A.5 (La.) 1975, 514 F.2d 721. Insurance  3571

III. FRAUD

89. Fraud in inducement

*SFC & Univ system*

(20) Doctor satisfied rule that averments of fraud be pleaded with particularity in asserting claim against nursing home and related defendants which alleged that she was fraudulently induced to accept position of nursing home's medical director, except as to one executive's alleged statements about doctor's ability to participate in his corporate ventures, inasmuch as complaint sufficiently identified alleged misrepresentations respecting quality of healthcare services at facility, job's responsibilities, and business opportunities that would be available to doctor, identified authors of alleged misrepresentations, and identified setting in which misrepresentations were made, and also alleged facts showing that authors had motive and opportunity to induce doctor to leave her existing position and take over as nursing home's medical director and acted with deliberate and reckless misconduct. Dooley v. Metropolitan Jewish Health System, E.D.N.Y.2003, 2003 WL 22171876, Unreported. Federal Civil Procedure  636

(21) New York entertainment marketing executive sufficiently pled damages element of fraudulent inducement claim against employer; executive requested compensatory damages of $1 million and punitive damages of $9 million for loss of business and diminution of earning capacity resulting from damage to his career development and advancement incurred during employment as result of lack of staff, budget, introductions, and eventually full time status. Stamelman v. Fleishman-Hillard, Inc., S.D.N.Y.2003, 2003 WL 21782645, Unreported. Fraud  47

92. Factual allegations, fraud

*Verizon Inc with their employees*

(22) To satisfy dictates of rule with respect to pleading fraud, plaintiff may not simply allege nonperformance of a promise; in order to properly convert a contract claim into a tort claim for fraud, the allegedly defrauded party must allege specific facts from which reasonable trier of fact could directly or indirectly infer that promisor intended not to honor his obligations at the time the promise was made. Drexel Burnham Lambert Group, Inc. v. Microgenesys, Inc., S.D.N.Y.1991, 775 F.Supp. 660. Federal Civil Procedure  636

93. Conclusory allegations, fraud--Generally

*news media*

4

(23)Conclusory allegations that defendant newspaper was actuated by actual malice and wantonly and wrongfully intended to injure plaintiff, and acted malevolently, sufficiently alleged actual malice without allegation of facts upon which proof could be based, although newspaper stories included in complaint assertedly disclosed investigation of facts. Arizona Biochemical Co. v. Hearst Corp., S.D.N.Y.1969, 302 F.Supp. 412. Libel And Slander  83

100. Incorporation, fraud
*all conspirators cases pleadings*
(24)Claim that plaintiff was induced fraudulently to enter into stock purchase agreement (SPA) alleged fraud with sufficient particularity by incorporating pleading in two other actions mentioning 26 occasions of fraudulent behavior. Nycal Corp. v. Inoco PLC, S.D.N.Y.1997, 968 F.Supp. 147. Federal Civil Procedure  636

102. Inconsistency, fraud
*all opp. Parties including Progressive*
(25)Complaint may demonstrate the false or misleading character of a statement, in satisfaction of rule requiring that fraud be pled with particularity, by identifying inconsistent contemporaneous statements made by the defendants or inconsistent contemporaneous information that was available to the defendants. Rasidescu v. Midland Credit Management, Inc., S.D.Cal.2006, 435 F.Supp.2d 1090. Federal Civil Procedure  636

103. Information and belief, fraud--Generally
*applicable to all parties*
(26)Allegations of fraud may be based on information and belief when facts in question are peculiarly within opposing party's knowledge and complaint sets forth factual basis for plaintiff's belief. Scheidt v. Klein, C.A.10 (Okla.) 1992, 956 F.2d 963. Federal Civil Procedure  636

(27)While allegations of fraud based on information and belief usually do not satisfy the degree of particularity required by this rule relating to pleading special matters, the particularity requirement may be satisfied if the allegations are accompanied by a statement of the facts upon which the belief is founded. Schlick v. Penn-Dixie Cement Corp., C.A.2 (N.Y.) 1974, 507 F.2d 374, certiorari denied 95 S.Ct. 1976, 421 U.S. 976, 44 L.Ed.2d 467. See, also, Stormfeld v. Great Atlantic & Pac. Tea Co., Inc., D.C.N.Y.1980, 484 F.Supp. 1264; Ross v. Warner, D.C.N.Y.1979, 480 F.Supp. 268; Fair v. Shearson Hayden Stone, Inc., D.C.N.Y.1978, 461 F.Supp. 137; Arpet, Ltd. v. Homans, D.C.Pa.1975, 390 F.Supp. 908. Federal Civil Procedure  636

104. ---- Miscellaneous actions, information and belief, fraud
*applicable to all opp parties*
(28)Securities purchasers' complaint, which alleged that corporation and individual defendants made misstatement and/or omission of material fact with scienter upon which securities purchasers relied

5

that proximately caused securities purchasers' loss, was sufficient to satisfy rule requiring particularity in pleading fraud for purposes of securities purchasers' Rule 10b-5 claim, despite fact securities purchasers' allegations were based on information and belief. In re Checkers Securities Litigation, M.D.Fla.1994, 858 F.Supp. 1168. Federal Civil Procedure 636

(29)Fact that some of plaintiff's allegations were based on information and belief did not defeat claims under the Racketeer Influenced and Corrupt Organizations Act (RICO) based on predicate acts of mail and wire fraud; because allegations involved deception by defendant, factual basis for fraud lay with defendants, justifying a complaint that pleaded fraud partially based upon information and belief. Official Publications, Inc. v. Kable News Co., Inc., S.D.N.Y.1991, 775 F.Supp. 631. Racketeer Influenced And Corrupt Organizations 70

*may apply to McGough car insurance with conspirators*
(30)Fact that commercial lessor based several of its allegations on "information and belief" in its fraudulent conveyance action against lessee, its corporate successor, and successor's subsidiary did not require finding that lessor failed to allege fraud with sufficient particularity; facts alleged in complaint revealed lessor's belief that transfer was fraudulent because successor knew of lessee's obligations under lease, but nonetheless transferred lessee's assets with intent of avoiding any obligations lessee owed to lessor under lease, and defendants offered no response to lessor's allegation that facts relevant to its fraudulent conveyance claim were within defendants' knowledge and control. Jersey Realty and Inv. Co. v. Emco Mfg. Co., Inc., D.Kan.1999, 187 F.R.D. 649. Federal Civil Procedure 636

113. Amendment of complaint, fraud--Generally
*for all cases*
(31)In circumstances where plaintiffs specifically request leave to amend fraud claim in event that court is inclined to dismiss for failure to comply with federal pleading requirements, failure to grant leave to amend is abuse of discretion, unless plaintiff has acted in bad faith or amendment would be futile. Estate of Axelrod v. Flannery, D.Conn.2007, 476 F.Supp.2d 188. Federal Civil Procedure 1838

(32)Fraud and negligent misrepresentation plaintiff would be allowed to amend claim in order to comply with rule requiring fraud to be pled with particularity, even though deadline for filing amendments had passed, absent showing that failure to timely seek amendment had been willful; contested issue of whether claims had been sufficiently pled was pending before court at time deadline passed. Madison River Management Co. v. Business Management Software Corp., M.D.N.C.2005, 351 F.Supp.2d 436. Federal Civil Procedure 840

(33)Commercial vehicle insurer could amend its complaint in Racketeer Influenced and Corrupt Organizations Act (RICO) action against travel brokerage company and its principal to cure its failure to plead predicate acts of mail or wire fraud with sufficient particularity, given possibility that insurer could sufficiently allege such acts. United States Fire Ins. Co. v. United Limousine Service, Inc., S.D.N.Y.2004, 303 F.Supp.2d 432. Federal Civil Procedure 839.1

(34)Franchisee's vague and conclusory allegations of fraud against franchisor fell far short from Rule 9(b)'s particularity threshold; however, information contained in franchisee's affidavit suggested that franchisee could plead fraud with requisite specificity entitling franchisee to leave to amend complaint. Hengel, Inc. v. Hot 'N Now, Inc., N.D.Ill.1993, 825 F.Supp. 1311. Federal Civil Procedure 636

(35)Insurer that brought action against former agents alleging violation of statute prohibiting "twisting" would be given leave to amend complaint to allege elements of misrepresentation with particularity. Kentucky Cent. Life Ins. Co. v. LeDuc, N.D.Cal.1992, 814 F.Supp. 832. Federal Civil Procedure 839.1

114. ---- Summary judgment, amendment of complaint, fraud

(36) Summary judgment opposition would be treated as de facto amendment or supplement to complaint's allegations of fraud underlying vehicle buyers' Racketeer Influenced and Corrupt Organizations Act (RICO) claims against foreign automobile distributor and seller and their owners; although complaint did not describe alleged frauds with sufficient particularity, opposition and related discovery material cited gave sufficient notice of acts alleged and basis for associating owners with their alleged commission. Bonilla v. Trebol Motors Corp., C.A.1 (Puerto Rico) 1998, 150 F.3d 77, certiorari denied 119 S.Ct. 1574, 526 U.S. 1098, 143 L.Ed.2d 670. Federal Civil Procedure 636

115. Bill of particulars, fraud

(37)In stockholder's derivative action, failure of paragraphs alleging breaches of duties of defendant officers and directors toward corporate defendant to allege fraud with fine particularity was not fatal defect, since, if defendants were unable to file responsive pleading or could not properly prepare for trial, relief was available to them under rule 12(e) of these rules regarding bill of particulars and other rules. Perrott v. U.S. Banking Corporation, D.C.Del.1944, 53 F.Supp. 953. Corporations And Business Organizations 2102

(38)Defendant's motion for bill of particulars was granted as to allegations of complaint that certain acts and representations were false and fraudulent, where circumstances constituting fraud were not stated with particularity as required by this rule. McCarthy v. Schumacher, S.D.N.Y.1939, 1 F.R.D. 8. Federal Civil Procedure 1019

116. More definite statement, fraud

7

(39)Complaint alleging fraudulent misrepresentations as to term of proffered employment failed to satisfy a pleading requirement of this rule where plaintiff did not set forth the time or place of the alleged misrepresentation, but the sanction of dismissal was not appropriate and motion to dismiss would be treated as motion for more definite pleading, where in all other respects the complaint adequately described the nature of the misrepresentations and the consequences suffered by plaintiff as a result. DuSesoi v. United Refining Co., W.D.Pa.1982, 540 F.Supp. 1260. Federal Civil Procedure 636; Federal Civil Procedure 957

*Dinan's brief*

(40)Where it is alleged that requirements of this rule requiring that circumstances of fraud or mistake be stated with particularity have not been complied with, motion for more definite statement is to be granted only if pleading is so vague or ambiguous that moving party cannot frame responsive pleading. Cottman Transmission Systems, Inc. v. Dubinsky, E.D.Pa.1982, 95 F.R.D. 351. Federal Civil Procedure 1018.1

(41) Remedy for vague complaint is not motion to dismiss but rather motion for more particular statement of claim. United Ins. Co. of America v. B. W. Rudy, Inc., E.D.Pa.1967, 42 F.R.D. 398. Federal Civil Procedure 945; Federal Civil Procedure 1771

117. Discovery, fraud

*all complaints of opp. Parties*

(42)In RICO mail and wire fraud case, in regards to details of just when and where mail or wires were used, dismissal should not be automatic once district court determines that rule requiring that fraud be pled with particularity was not satisfied, e.g., where specific allegations of plaintiff make it likely that defendant used interstate mail or telecommunications facilities, and specific information as to use is likely in exclusive control of defendant, court should make second determination as to whether claim as presented warrants allowance of discovery and if so, thereafter provide opportunity to amend the defective complaint. In re Lupron Marketing and Sales Practices Litigation, D.Mass.2003, 295 F.Supp.2d 148. Federal Civil Procedure 1789

(43)Fraudulent concealment, like any other sort of fraud, must be pleaded with particularity, and plaintiffs must offer distinct averments as to time when mistake, concealment, or misrepresentation was discovered, and what discovery is, so that court may clearly see, whether by exercise of ordinary diligence, discovery might not have been before made. Bilick v. Eagle Elec. Mfg. Co., Inc., E.D.N.Y.1992, 807 F.Supp. 243. Federal Civil Procedure 636

(44)Complaint alleging fraud is not deficient for failing to state every detail that might be proper subject for interrogatories. In re Sunrise Securities Litigation, E.D.Pa.1992, 793 F.Supp. 1306.

8

Federal Civil Procedure  636

(45)Where plaintiffs who instituted action alleging instances of securities and investment fraud alleged that all defendants acted together in all aspects of securities investment ventures, plaintiffs could not make judgments about extent of each defendant's participation until discovery was permitted; thus, relaxation of this rule was necessary. Pridgen v. Farmer, E.D.N.C.1983, 567 F.Supp. 1457. Federal Civil Procedure  636

Under these rules specific details of fraud are left to discovery. In re King's Place, Inc., Bkrtcy.E.D.Pa.1980, 6 B.R. 305. Federal Civil Procedure  1272.1

118. Dismissal of complaint, fraud

*all parties*

(47)Motion to dismiss fraud claim asserted against estate of famous musician by clothing manufacturer which had contracted with licensee of estate for use of musician's signature, name, and likeness on clothing was granted by default where manufacturer did not respond to motion to dismiss on that point, as required by local rules, but rather acted as if motion had not been brought. Estate of Lennon by Lennon v. Screen Creations, Ltd., S.D.N.Y.1996, 939 F.Supp. 287. Federal Civil Procedure  1825

*Dinan's brief*

(48)If pleaded facts and supporting allegations permit inference of colorable claim for fraud and afford defendant notice as to which actions or communications are alleged to have been fraudulent, complaint will withstand dismissal motion alleging failure to plead fraud with particularity. In re Midlantic Corp. Shareholder Litigation, D.N.J.1990, 758 F.Supp. 226. Federal Civil Procedure 636

119. Striking of pleadings, fraud

*all parties*

(49)Where paragraphs of complaint, even if insufficient under subdivision (b) of this rule to allege a cause of action based on fraud, coupled with other allegations of complaint, were sufficient as alleging a cause of action on contract, motion to strike paragraphs on ground that plaintiff in attempting to allege fraud had not done so with particularity required by said subdivision was denied. American Foods v. Dezauche, W.D.N.Y.1947, 74 F.Supp. 681. Federal Civil Procedure  1131

120. Failure to object, fraud

(50)Licensor of electronic bow hunting target system pled fraud with sufficient particularity in its action against licensee, where any confusion as what licensor was claiming as fraud had been clarified by its motion for summary judgment, and licensee failed to challenge sufficiency of pleadings in motion to dismiss for failure to state a claim, or move for more definite statement. Buckmasters, Ltd. v. Action Archery, Inc., M.D.Ala.1996, 915 F.Supp. 1188. Federal

Civil Procedure 636

155. ---- Corporate officers and directors, parties, elements of fraud action

(51)In cases of corporate fraud, the particularity pleading standard is relaxed since the circumstances may make it difficult to attribute particular fraudulent conduct to each defendant as an individual. 625 3rd St. Associates, L.P. v. Alliant Credit Union, N.D.Cal.2009, 633 F.Supp.2d 1040. Federal Civil Procedure 636

168. Misrepresentations, elements of fraud action

*Catlin & all others*

(52)Plaintiffs alleged fraud claim against law firm with sufficient specificity, by alleging that attorney in firm made fraudulent misrepresentations to induce plaintiffs' participation in real estate mortgage investment scheme by averring that attorney introduced himself as one handling paperwork for investment, gave plaintiffs documents to sign after advising that he had prepared documents and that they were all in proper order, failed to explain contents, and advised plaintiffs that he was protecting their interests, despite knowledge that statements were not true, and that one plaintiff lacked mental capacity to understand documents and other plaintiff lacked understanding of documents. Smith v. Jenkins, D.Mass.2009, 626 F.Supp.2d 155. Federal Civil Procedure 636

*Verizon Inc*

(53)Advertisers pled with sufficient particularity claim that owners and operators of internet search engines and websites fraudulently misrepresented to them that they would place their advertisements in "highly targeted" manner, where advertisers alleged that they bought ad placements from defendants precisely because of their promise and contractual obligation to deliver targeted advertising through specific products. In re Yahoo! Litigation, C.D.Cal.2008, 251 F.R.D. 459. Federal Civil Procedure 636

*all conspiratorily*

(54)Product developer, who was proceeding pro se, particularly pled the facts and circumstances of his fraudulent misrepresentation claim against pest-control company, though developer's description of his technology that was allegedly converted by the company was simple; developer asserted that company initiated discussions with him regarding a potential joint business venture, developer's representative visited the company and presented technology samples, negotiations failed, and years later developer identified in a trade journal a product of company that allegedly incorporated developer's technology, and developer described the technology and listed company's products that incorporated it. McQueen v. Woodstream Corp., D.D.C.2008, 248 F.R.D. 73. Federal Civil Procedure 636

170. Reliance, elements of fraud action--Generally

(55)Defense of fraud may be set up without showing particular

10

reliance, simply to prevent injustice of allowing recovery on fraudulently stated accounts, even though reliance and damages would have to be proven in action seeking affirmative relief on grounds of fraud under North Carolina law. Frank M. McDermott, Ltd. v. Moretz, C.A.4 (N.C.) 1990, 898 F.2d 418, rehearing denied. Federal Civil Procedure 636

171. ---- Miscellaneous actions, reliance, elements of fraud action

(56)New York entertainment marketing executive sufficiently pled reliance element of fraudulent inducement claim in connection with prospective employer's oral representations; though employer alleged that general manager statement that employment would begin upon operating board's approval put executive on notice the representations were contingent, manager allegedly also sent executive e-mail on day of offer letter indicating that representations were approved by board, and while representations were not included in offer letter, neither were they explicitly excluded therefrom. Stamelman v. Fleishman-Hillard, Inc., S.D.N.Y.2003, 2003 WL 21782645, Unreported. Fraud 46

173. ---- Factual allegations, scienter, elements of fraud action

(57)Lenient standard for pleading scienter in a fraud complaint will be satisfied even if plaintiffs do not allege facts which demonstrate that defendant had a motive for committing fraud, so long as plaintiffs adequately identify circumstances indicating conscious behavior by defendant. Griffin v. McNiff, S.D.N.Y.1990, 744 F.Supp. 1237, affirmed 996 F.2d 303. Federal Civil Procedure 636

176. ---- Miscellaneous actions, scienter, elements of fraud action

(58)In action for aiding and abetting fraud, under New York law, brought by lender to licensee of fragrance product trademarks against licensor, lender sufficiently alleged licensor's intention to defraud lender, as element of underlying fraud, with particularity, as required under federal rule's heightened pleading standards, by alleging that licensor deliberately concealed sham consulting agreement from lender as well as information regarding licensee's royalty payment problems. IMG Fragrance Brands, LLC v. Houbigant, Inc., S.D.N.Y.2010, 759 F.Supp.2d 363. Federal Civil Procedure 636

(59)Allegation in fraud complaint that defendant did not intend to perform promise was sufficient averment of intent. Dah Chong Hong, Ltd. v. Silk Greenhouse, Inc., M.D.Fla.1989, 719 F.Supp. 1072. Federal Civil Procedure 636

177. Recklessness, elements of fraud action

(60)An egregious refusal to see the obvious, or to investigate the doubtful, may in some cases give rise to an inference of recklessness, as required for scienter in pleading claim of fraud with particularity. Glidepath Holding B.V. v. Spherion Corp., S.D.N.Y.2007, 590 F.Supp.2d 435. Federal Civil Procedure 636; Fraud 13(3

11

180. Damages, elements of fraud action
(61)Failure to state correct measure of damages in fraud action under New York law does not entitle defendant to dismissal for insufficiency. PdP Parfums de Paris, S.A. v. International Designer Fragrances, Inc., E.D.N.Y.1995, 901 F.Supp. 581. Federal Civil Procedure 1789

315a. Authorship rights, miscellaneous frauds
(62)Although researcher's complaint against author of academic article did not plead exact date, place or time of author's alleged fraud, complaint was sufficiently precise to meet federal rule's heightened pleading requirement for fraud, where complaint alleged that researcher was injured by contributing to academic article in reliance upon author's misrepresentation that researcher would be given co-author acknowledgment on published article, and that researcher did not receive authorship credit. Giordano v. Claudio, E.D.Pa.2010, 714 F.Supp.2d 508. Federal Civil Procedure 636

316. Attorneys, miscellaneous frauds
(63)Client pled fraud claim against attorney with sufficient particularity, where client alleged that attorney told him that "standard practice" among plaintiff's lawyers and their clients was for lawyer to retain all money received as settlements until conclusion of all related litigation, that that was not standard practice in legal community, that attorney knew that he was not telling truth, that client relied on attorney's statements, that his reliance was reasonable, and that he suffered injury as result. Hewlette v. Hovis, E.D.Va.2004, 318 F.Supp.2d 332. Federal Civil Procedure 636
(64)Allegedly defrauded home purchaser's allegations against closing attorneys provided for them by vendor, that they failed to mention irregularities in transaction or inform purchasers of their right to obtain counsel of their own choosing, were sufficient to state claim for fraud, under aider and abettor theory. Vaughn v. Consumer Home Mortgage, Inc., E.D.N.Y.2003, 2003 WL 21241669, Unreported. Attorney And Client 129(2)

328. ---- Limitations, concealment, miscellaneous frauds
(65)By alleging that biostatistical company willingly provided inaccurate information, while attempting to keep its name off studies supplied by medical device manufacturer that led to Food and Drug Administration (FDA) approval, complaint alleged fraud with sufficient particularity to support inference that biostatistical company fraudulently hid its alleged involvement in injury caused patient by allegedly faulty device and to support inference that company fraudulently concealed causes of action, so as to preclude dismissal of claims against company on limitations grounds under Pennsylvania law. Wawrzynek v. Statprobe, Inc., E.D.Pa.2005, 422 F.Supp.2d 474. Federal Civil Procedure 636

331. Consumer protection, miscellaneous frauds
(66)Even if the heightened pleading standard for fraud claims

applied to claims under Vermont's consumer fraud act, residential condominium unit owners' allegations that developer violated the act by failing to fully and accurately disclose the expected fees, that most of the changes to the fee assessments were inaccurately characterized as minor and buried in hundreds of pages of documents, that they did not understand the impact of the revision, and that the change materially affected the owners' financial obligations within months of closings on units satisfied the heightened pleading standard for fraud claims. Bergman v. Spruce Peak Realty, LLC, D.Vt.2012, 2012 WL 931991. Federal Civil Procedure 636

332. Consumer credit, miscellaneous frauds

*(67)Judgment debtor's allegations that collection agency, as court-appointed special process server for writ of execution, and agency's officer and employees made fraudulent misrepresentations upon which debtor relied and that she was damaged as result of collectors' wrongful conduct, were pled with particularity, as required for fraud claim, under Massachusetts law, including that collectors misrepresented their status as constables, both orally and in writing, that collectors misrepresented character, amount, and legal status of debt and threatened to take actions, such as selling her vehicle, which they had no intention or authority to take, and that debtor relied on collector's misrepresentations by filing petition in bankruptcy to stop sale of her vehicle and by borrowing money to pay for fees and costs. Andrews v. South Coast Legal Services, Inc., D.Mass.2008, 582 F.Supp.2d 82. Federal Civil Procedure 636

337a. ---- License agreements, contracts or agreements, miscellaneous

*sfc

(68)Allegations were sufficient, under Delaware law, to state a claim of fraud with particularity against licensee company's president; licensor alleged that licensee's president falsely represented and omitted facts concerning his idea to develop a "virtual store" concept to comply with license agreement, knew or believed that the representations were false or made with a reckless indifference to the truth, intended for licensor to rely on, and that licensor did in fact rely on, representations of what a virtual store would look like, and that licensor was injured by its reliance because the virtual stores delivered were not the virtual stores for which licensor contracted. MIG Investments LLC v. Aetrex Worldwide, Inc., D.Del.2012, 2012 WL 1118633. Federal Civil Procedure 636

342. Corporations, miscellaneous frauds

*sfc

(69)Complaint pled fraud claim against president of two corporations with adequate particularity by specifically alleging that president engaged in fraud in connection with letter and that president played at least some meaningful role in allegedly

13

fraudulent conduct of affiliated corporate defendants. Future Tech Intern., Inc. v. Tae Il Media, Ltd., S.D.Fla.1996, 944 F.Supp. 1538. Federal Civil Procedure 636

*city., Long, KINIRY, Ayers, Tuwolisky, All DAs, cops

343a. Cover-up claims, miscellaneous frauds

*city., Long, KINIRY, Ayers, Tuwolisky, All DAs, cops

(70)Commodity Futures Trading Commission (CFTC) alleged "cover up" claim under Commodity Exchange Act (CEA) with sufficient particularity; complaint alleged time of false statement, the "speaker," date of letter, addressee of letter, and why statement was fraudulent. U.S. Commodity Futures Trading Com'n v. Amaranth Advisors, L.L.C., S.D.N.Y.2008, 554 F.Supp.2d 523, reconsideration denied. Federal Civil Procedure 636

349. Employment, miscellaneous frauds--Generally

(71)Discharged at-will employee of nonprofit health organization sufficiently identified each person making fraudulent promises to him, as required to state claim under Idaho law against his employer for fraud with sufficient particularity required by federal rule, when he identified the names of three persons within the organization who had allegedly made fraudulent promises of job security to him. Tolman v. American Red Cross, D.Idaho 2012, 2012 WL 892312. Federal Civil Procedure 636

(72)Allegations in complaint claiming that university's medical school informed professor that there was an ongoing search for a vacancy in her field, stating that medical school's dean of faculty and department chair recruited her and signed employment letter promising to enthusiastically recommend her for tenure so as to induce her to join medical school faculty, and explaining why promise was fraudulent, were pled with sufficient particularity to give university and medical school notice of the nature of fraud claim so as to form a defense. Hirsch v. Columbia University, College of Physicians and Surgeons, S.D.N.Y.2003, 293 F.Supp.2d 372. Federal Civil Procedure 636

(73)Former employees pled fraud with specificity, though they did not mention fraud in any of their pleadings until they asserted theory of fraud in their opposition to employer's motion for summary judgment, where they identified time and place of alleged misrepresentation, described act that they contend amounted to fraud, and what employer gained by alleged fraud. Franz v. Iolab, Inc., a div. or subsidiary of Johnson & Johnson, Inc., E.D.La.1992, 801 F.Supp. 1537. Federal Civil Procedure 636

353. False advertising, miscellaneous frauds

(74)Seller of products used to maintain freshness of produce during transport met heightened pleading standards for fraud, in Lanham Act claim against its competitor for displaying allegedly false video about seller on website, video about seller's freshness processes, comparing them unfavorably with those used by competitor, had

14

displayed video on website on an ongoing basis, and explained how statements in video were misleading because seller's process was not harmful to the environment and competitor's process was not more environmentally friendly in comparison. TransFresh Corp. v. Ganzerla & Assoc., Inc., N.D.Cal.2012, 2012 WL 994674. Federal Civil Procedure 636

364. Interference with commercial relationships, miscellaneous frauds

(75)Software developer pled with sufficient particularity claim that competitor was liable for attempted monopolization, interference with prospective economic advantage, and unfair competition due to its intentional misrepresentation to developer's prospective customers that developer had infringed competitor's copyright, in order to dissuade customers from purchasing developer's software products, where developer specified who made statements, when and where they were made, and why they were false. Meridian Project Systems, Inc. v. Hardin Const. Co., LLC, E.D.Cal.2005, 404 F.Supp.2d 1214. Federal Civil Procedure 636

(76)New Jersey attorney's general averment, that client's employer and supervisor knew that attorney represented client, was sufficient to state under rule that governed pleading fraud that defendants knew that contract existed between attorney and client, for purpose of claim under New York law that client's employer and supervisor tortiously interfered with his retainer agreement with client. Marks v. Struble, D.N.J.2004, 347 F.Supp.2d 136. Federal Civil Procedure 636

367. Judgments by fraud, miscellaneous frauds

(77)A petition to open or vacate a judgment of the court on the ground of fraud should state distinctly the particular acts of fraud and coercion relied on, specifying by whom and what manner they perpetrate, with such definiteness and reasonable certainty that the court might see that, if proved, they would warrant the setting aside of the judgment. Girard Trust Bank v. Martin, C.A.3 (Pa.) 1977, 557 F.2d 386, certiorari denied 98 S.Ct. 612, 434 U.S. 985, 54 L.Ed.2d 479. Federal Civil Procedure 2659

(78)On petition to have a judgment vacated, on ground that it was procured by fraud, the facts constituting the alleged fraud must be definitely and positively alleged. Independence Lead Mines Co. v. Kingsbury, C.A.9 (Idaho) 1949, 175 F.2d 983, certiorari denied 70 S.Ct. 249, 338 U.S. 900, 94 L.Ed. 554. Federal Civil Procedure 2659

368. Leases, miscellaneous frauds

(79)Consumers who brought action against business services corporation, dealers and infomercial actor, stemming from leasing of e-commerce services and products, properly described nature and operation of scheme in which defendants were alleged to have participated, as required to plead common-law fraud claim with

15

particularity under federal rules; complaint charged that infomercial and statements made by dealers at time that consumers signed leases all contained misrepresentations that they relied upon in signing them, and identified specific misrepresentations. Zito v. Leasecomm Corp., S.D.N.Y.2003, 2003 WL 22251352, Unreported. Federal Civil Procedure 636

372. Mail and wire fraud, miscellaneous frauds--Generally

(80)Specific allegations of omissions and misrepresentations in explanation of benefits letters (EOBs) were adequate to provide reasonable inference of fraudulent intent, as required for predicate acts of mail and wire fraud on claim under Racketeer Influenced and Corrupt Organizations Act (RICO) based upon insurers' alleged scheme to under-reimburse beneficiaries and medical care providers by manipulating "usual, customary, and reasonable" (UCR) data. American Medical Ass'n v. United Healthcare Corp., S.D.N.Y.2008. 588 F.Supp.2d 432. Federal Civil Procedure 636

(81)Neither mail fraud nor wire fraud requires that a plaintiff plead that the defendant made misrepresentations of fact; even routine business communications in these media may suffice to make a scheme of false dealing into a federal offense. Bendzak v. Midland Nat. Life Ins. Co., S.D.Iowa 2006, 440 F.Supp.2d 970. Fraud 41; Postal Service 35(11.1); Telecommunications 1014(9)

373. ---- Miscellaneous mail and wire fraud actions, miscellaneous frauds

(82)Allegations of mail fraud, replete with examples of fraudulent statements, explanations for why the statements were fraudulent and the identity of the particular fraudulent statements provided, and each defendant's role in those statements, alleged fraud under Racketeer Influenced and Corrupt Organizations Act (RICO) with sufficient particularity. State Farm Mut. Auto. Ins. Co. v. Grafman. E.D.N.Y.2009, 655 F.Supp.2d 212. Federal Civil Procedure 636

(83)Insurers pled with sufficient particularity claim that neurologist, medical professional corporations, and management companies engaged in mail fraud in connection with their alleged scheme to abuse New York's no-fault insurance regime in order to obtain payment for medical services and diagnostic tests that were not medically necessary or were never performed, where complaint included exhibits detailing dates and specific instances of fraudulent submissions mailed by defendants and alleged that each defendant was connected to scheme such that each defendant could have reasonably foreseen that use of mail was essential element of alleged fraud. Allstate Ins. Co. v. Rozenberg, E.D.N.Y.2008, 590 F.Supp.2d 384. Federal Civil Procedure 636

(84)Particularity as to mailings themselves was unnecessary where plaintiffs alleged that mails and wires were used in furtherance of scheme to defraud and plaintiffs otherwise adequately alleged details of overall fraud scheme. American Medical Ass'n v. United

16

Healthcare Corp., S.D.N.Y.2008, 588 F.Supp.2d 432. Federal Civil Procedure 636

(85)Complaint alleging mail/wire fraud was pled with sufficient particularity, though complaint did not state particulars of communications but instead alleged only that defendants knowingly used United States mails and/or interstate wire transmissions in furtherance of scheme or artifice to defraud, where complaint as whole gave defendants adequate notice of basis of mail and wire fraud charges. In re National Mortg. Equity Corp. Mortg. Pool Certificates Securities Litigation, C.D.Cal.1986, 636 F.Supp. 1138. Federal Civil Procedure 636

385a. Omission, miscellaneous frauds Claim of fraud by omission is subject to

396. ---- Statutory predicate acts, RICO claims, miscellaneous frauds

(86)Pro se allegations that municipal building inspector had attempted to extort real property of owner through mail fraud in violation of Racketeer Influenced and Corrupt Organizations Act (RICO) were sufficiently particular to satisfy rule that required pleading of claims of fraud with particularity, where owner stated that employee had sent false information to attorney general's office during particular time period and one misstatement was that "common halls were missing, broken not working." Dickey v.

(87)Kennedy, D.Mass.2008, 583 F.Supp.2d 183. Federal Civil Procedure 636

(87)Allegations of workers, that company, its officers and employees recruited the workers to come from the Philippines to work in the United States, using fraudulent visa applications, false promises, and misrepresentations regarding the terms and conditions of employment, then forced the workers to live in severely crowded housing and to work long hours in country clubs and hotels in Florida and New York, and threatened workers with arrest, imprisonment, deportation, cancellation of their visas, loss of work, lawsuits, and black-listing were sufficient to satisfy heightened pleading standard for fraud-related predicate acts of mail, wire, and immigration document fraud which supported their civil Racketeer Influenced and Corrupt Organizations Act (RICO) claims. Magnifico v. Villanueva, S.D.Fla.2011, 783 F.Supp.2d 1217. Federal Civil Procedure 636

(88)Consumers pled with sufficient particularity claim that debt-buying company, debt collection agency, process service company, and others violated Racketeer Influenced and Corrupt Organizations Act (RICO) by engaging in scheme to fraudulently obtain default judgments against them and others in state debt collection actions, where complaint included at least twenty allegedly fraudulent statements and eighteen acts involving use of mail and wires over three years in furtherance of alleged fraud, alleged facts giving rise to strong inference of fraudulent intent, and established defendants'

17

conscious misbehavior or recklessness with respect to preparing
false filings with state courts. Sykes v. Mel Harris and Associates,
LLC, S.D.N.Y.2010, 757 F.Supp.2d 413. Federal Civil Procedure
636

398. ---- Pro se parties, RICO claims, miscellaneous frauds
(89) Plaintiff's claims under the Racketeer Influenced and Corrupt
Organizations Act (RICO) would not be dismissed for failure to
plead fraud with particularity, where plaintiff was pro se and alleged
that he had been denied access to government documents that could
support his claim; moreover, plaintiff alleged enough facts for
defendants to be aware of the claims against which they had to
defend. Lathrop v. Juneau & Associates, Inc. P.C., S.D.Ill.2004, 220
F.R.D. 322. Federal Civil Procedure 636; Federal Civil Procedure
657.5(1)

400. RICO claims involving mail and wire fraud, miscellaneous
frauds--Generally
*sfc & conspirators with their supporters & workers)
(90) Plaintiff who relies upon acts of mail and wire fraud as basis for
Racketeer Influenced and Corrupt Organizations Act (RICO) claim
must do more than make loose references to mailings and telephone
calls; instead, plaintiff must, within reason, describe time, place, and
content of mail and wire communications, identify parties to these
communications, and allege facts from which it reasonably may be
inferred that defendants engaged in scheme with fraudulent intent.
Jepson, Inc. v. Makita Corp., C.A.7 (Ill.) 1994, 34 F.3d 1321.
Racketeer Influenced And Corrupt Organizations 70
(91)Influenced and Corrupt Organizations Act (RICO) claim against
lender and others, where the complaint alleged that defendants used
the mails and interstate telephone system in furtherance of a pattern
of racketeering activity and collection of unlawful debt and to
otherwise defraud plaintiffs, and the complaint outlined the alleged
scheme to defraud them of their home and pled a time frame for the
scheme, specific persons, entities, and times connected with the
fraud, and the general contents of the alleged fraudulent
communications between defendants and the debtors. Williams v.
Equity Holding Corp., E.D.Va.2007, 498 F.Supp.2d 831. Federal
Civil Procedure 636
*CCC under Creany etc)
(92)Mail fraud was sufficiently alleged, as predicate act in Racketeer
Influenced and Corrupt Organizations Act (RICO) suit claiming that
village mayor and chief constables operated village court as RICO
enterprise through which motorists were illegally ticketed and fined,
through allegations by one claimant that he received mailed written
notices directing him to appear in village court regarding traffic
citation, even though notices themselves contained nothing
fraudulent. Wood v. Incorporated Village of Patchogue of New
York, E.D.N.Y.2004, 311 F.Supp.2d 344. Postal Service 35(8)

18

(93)Allegations by investors that management of corporation committed mail fraud, wire fraud, and securities fraud, as predicate acts under the Racketeer Influenced and Corrupt Organizations Act (RICO), were sufficient to satisfy particularity requirement, and were allegations of pattern of racketeering activity; alleged misstatements to public and private investors occurred repeatedly over several year period, all in furtherance of alleged fraudulent scheme. In re Sahlen & Associates, Inc. Securities (94)Litigation, S.D.Fla.1991, 773 F.Supp. 342. Federal Civil Procedure 636

(94)Amended Racketeer Influenced and Corrupt Organizations Act (RICO) complaint satisfied Rule 9(b) with respect to its allegations of mail fraud; allegations against defendant attorneys included failure to advise plaintiff of settlements or recoveries, forging of estate endorsements upon settlement drafts and preparing, mailing and filing understated fees due estate, and there were numerous examples of specific time, place, participants, and contents of alleged misrepresentations. Wiener v. Napoli, E.D.N.Y.1991, 772 F.Supp. 109. Postal Service 48(4.1)

402. Real estate transactions, miscellaneous frauds
*sfc*, Lorain Borro, City personnel on offer, my possessions at house & Robb Ave bldg

(95)Complaint of partnership which desired to purchase building gave "fair" notice to building owner of substance of partnership's claim of misrepresentation; complaint alleged fraud with sufficient particularity by stating that employee of owner twice assured partner that letter of intent would be signed, but later informed partner that owner would be unable to sign letter of intent. American Town Center v. Hall 83 Associates, C.A.6 (Mich.) 1990, 912 F.2d 104. Federal Civil Procedure 636

(96)Realty trader's complaint against realty brokers that they induced her to enter into a certain realty exchange by misrepresentation of the value of property she was to receive for what she was to give and that she relied on such representation and made the exchange and now learned of the falsity of such representation and by reason thereof sustained damages, stated a cause of action predicated on fraud. Page v. Comert, C.A.D.C.1957, 243 F.2d 245, 100 U.S.App.D.C. 139. Federal Civil Procedure 691

(97)Common-law fraud counts of complaint in connection with sale of lots in subdivision were pleaded with sufficient particularity where complaint described specifically the nature of the fraudulent scheme complained of and the devices allegedly used to pressure and defraud purchasers in acquiring land, and identified the category of documents and other material complained of and the nature of the information which plaintiff claimed the documents either omitted or misrepresented; classification of each of the numerous documents and other advertising material and techniques was unnecessary. Husted v. Amrep Corp., S.D.N.Y.1977, 429 F.Supp. 298. Federal

Civil Procedure  636; Fraud  43

407. Telecommunications, miscellaneous frauds

*Verizon Inc*

(98)Customer's allegations of fraud, under California statutory and common law, satisfied requirement that fraud be pleaded with particularity when customer alleged that telecommunications company made specific material misrepresentations or omissions regarding its products, service plan, and insurance policy in fliers and other advertising and promotional materials, that misrepresentations or omissions were made with intent not to perform and to induce customer to enter into contract in reliance thereon, and that customer justifiably relied on misrepresentations or omissions and suffered damages as a result. Von Grabe v. Sprint PCS, S.D.Cal.2003, 312 F.Supp.2d 1285. Federal Civil Procedure 636

FRCP9p20 begins here

VII. CONDITIONS PRECEDENT

516. Computation of damages, special damages

(99)A plaintiff or counterplaintiff is not required to allege in usual detail and particularity the damages allegedly suffered; where the putative wrong is of such a nature as to preclude, at time of filing the action, the ascertainment with certainty of the amount of damages, it would be a perversion of fundamental principles of justice to deny all relief to the wronged person merely because the precise computation or manner of proof of damages is not alleged in the complaint. Everco Industries, Inc. v. O. E. M. Products Co., N.D.Ill.1974, 63 F.R.D. 662, 183 U.S.P.Q. 331. Federal Civil Procedure 679

*520. Business losses, special damages--Generally

*city*

(100)Complaint of dairy farm and its owners put herbicide manufacturer on notice of types of special damages they sought, as required by pleading rules, in action related to alleged forced sale of land to pay debts stemming from herbicide usage, where complaint stated that they sought recovery for "loss of profits due to property or crop damage," "loss of business due to property or crop damage," "loss of production due to property or crop damage," "reasonable mitigation costs and expenses," and "loss of the use of land due to property or crop damage," and, in final prayer for relief, they requested "special damages," and, even if these statements were insufficient, manufacturer conducted discovery specifically regarding sale. Adams v. U.S., D.Idaho 2011, 2011 WL 4738537. Damages  146; Damages  147; Damages  148

*fire etc, dumping garbage etc*

(101)Allegations in complaint satisfied special pleading requirement for special damages where complaint specified damages as property that had been rendered unmarketable, lost business opportunity

given loss of potential real estate sale, and response costs incurred in assessing and containing damage caused by solvent contamination. Italiano v. Jones Chemicals, Inc., M.D.Fla.1995, 908 F.Supp. 904. Federal Civil Procedure 639

525. Defamation, libel or slander, special damages

*JPD's false charges, newsmedia's derogatory articles*

(102)Where complaint alleged that customer had enjoyed good reputation in community, that after defamation by agents of store she suffered pain, humiliation, and embarrassment, and that when she returned to teaching profession she would be handicapped by criminal charge brought against her by store and where husband made specific claim for loss of consortium and alleged additionally that he suffered pain, humiliation and embarrassment, defamation complaint adequately alleged special damages to the extent specificity was demanded by this rule. Rannels v. S. E. Nichols, Inc., C.A.3 (Pa.) 1979, 591 F.2d 242. Libel And Slander 89(2)

(103)In libel action against a newspaper which published article which was libelous per se, complaint alleging loss by 42 year old plaintiff of $19,000 a year position as corporation treasurer, subsequent inability to obtain higher annual salary than $10,000, loss of annual pension of $9,671, with possible increment in event of salary increase to which he would have been entitled if retaining position until 65 years of age, sufficiently stated special damages within subdivision (g) of this rule, requiring special damages to be specifically stated. Stevenson v. Hearst Consol Publications, C.A.2 (N.Y.) 1954, 214 F.2d 902, certiorari denied 75 S.Ct. 110, 348 U.S. 874, 99 L.Ed. 688. Federal Civil Procedure 706

(104)An amended and supplemental complaint, praying damages for injury to plaintiff's reputation, business and profession and for mental stress and suffering because of alleged false accusations by individual defendant, in radio broadcast and telecast by corporate defendant, that plaintiff was unethical and conducted himself improperly and unfairly, unlawfully "smeared" numerous people and institutions, and gave false testimony before Congressional Committee, pleaded special damages, if required, in substantial compliance with both West's Ann.Civ.Code, § 45a and this rule. Sargent v. National Broadcasting Co., N.D.Cal.1955, 136 F.Supp. 560. Libel And Slander 89(3)

527. Disparagement, special damages

21

Notes on FRCP9 to be sent to cts Listing of case laws on opinions sent to cts only as cts wanted complete opinions printed:

(1)Belli v. Orlando Daily Newspapers, Inc., C.A.5 (Fla.) 1967, 389 F.2d 579, certiorari denied 89 S.Ct. 88, 393 U.S. 825, 21 L.Ed.2d 96. Libel And Slander  83

(2)Blackshear v. City of Miami Beach,, S.D.Fla.2011, 2011 WL 3211514.

(3)Neveu v. City of Fresno, E.D.Cal.2005, 392 F.Supp.2d 1159.

(4)Clark v. State Farm Mut. Auto. Ins. Co., C.D.Cal.2005, 231 F.R.D. 405. Damages  151; Federal Civil Procedure  636

(5) Love v. Commercial Casualty Ins. Co., S.D.Miss.1939, 26 F.Supp. 481.

(6) Stearn v. MacLean-Hunter Limited, S.D.N.Y.1969, 46 F.R.D. 76.

(7) Nuest v. Westinghouse Air Brake Co., S.D.Ill.1970, 313 F.Supp. 1228.

(8) . Hollander v. Etymotic Research, Inc., E.D.Pa.2010, 726 F.Supp.2d 543, 96 U.S.P.Q.2d 1662, reconsideration denied. Federal Civil Procedure  636

(9) . U.S. ex rel. Foster v. Bristol-Myers Squibb Co., E.D.Tex.2008, 587 F.Supp.2d 805.

(10) Alves v. Lemoure, D.Mass.1992, 794 F.Supp. 34. Civil Rights  1395(5)

(11) duPont v. Wyly, D.C.Del.1973, 61 F.R.D. 615. Federal Civil Procedure  636

(12) . Thomson v. Washington, C.A.7 (Ill.) 2004, 362 F.3d 969, on remand 2008 WL 151367. Civil Rights  1395(7); Federal Civil Procedure  657.5(3)

(13) Allen v. Pennsylvania Soc. for Prevention of Cruelty to Animals, M.D.Pa.2007, 488 F.Supp.2d 450. Civil Rights  1394

(14) Freedom Medical Inc. v. Gillespie, E.D.Pa.2007, 634 F.Supp.2d 490. Federal Civil Procedure  636; Conversion And Civil Theft  158

(15) . In re Harvard Knitwear, Inc., Bkrtcy.E.D.N.Y.1993, 153 B.R. 617

(16) . McLaughlin v. Anderson, C.A.2 (Conn.) 1992, 962 F.2d 187.

(17) Ferluga v. Eickhoff, D.Kan.2006, 408 F.Supp.2d 1153. Federal Civil Procedure  636

(18) Carroll v. Paramount Pictures, S.D.N.Y.1942, 3 F.R.D.

95. Federal Civil Procedure  706
(19) Liles v. Riblet Products of Louisiana, Inc., C.A.5 (La.)
1975, 514 F.2d 721.
(20) Dooley v. Metropolitan Jewish Health System,
E.D.N.Y.2003, 2003 WL 22171876, Unreported. Federal Civil
Procedure  636
(21) Stamelman v. Fleishman-Hillard, Inc., S.D.N.Y.2003,
2003 WL 21782645, Unreported. Fraud  47
(22) Drexel Burnham Lambert Group, Inc. v. Microgenesys,
Inc., S.D.N.Y.1991, 775 F.Supp. 660. Federal Civil Procedure
636
(23) Arizona Biochemical Co. v. Hearst Corp., S.D.N.Y.1969,
302 F.Supp. 412.
(24) . Nycal Corp. v. Inoco PLC, S.D.N.Y.1997, 968 F.Supp.
147.
(25) Rasidescu v. Midland Credit Management, Inc.,
S.D.Cal.2006, 435 F.Supp.2d 1090.
(26) Scheidt v. Klein, C.A.10 (Okla.) 1992, 956 F.2d 963
(27) Schlick v. Penn-Dixie Cement Corp., C.A.2 (N.Y.) 1974,
507 F.2d 374, certiorari denied 95 S.Ct. 1976, 421 U.S. 976,
44 L.Ed.2d 467. See, also, Stormfeld v. Great Atlantic & Pac.
Tea Co., Inc., D.C.N.Y.1980, 484 F.Supp. 1264; Ross v.
Warner, D.C.N.Y.1979, 480 F.Supp. 268; Fair v. Shearson
Hayden Stone, Inc., D.C.N.Y.1978, 461 F.Supp. 137; Arpet,
Ltd. v. Homans, D.C.Pa.1975, 390 F.Supp. 908.
(28) In re Checkers Securities Litigation, M.D.Fla.1994, 858
F.Supp. 1168.
(29) Official Publications, Inc. v. Kable News Co., Inc.,
S.D.N.Y.1991, 775 F.Supp. 631.
(30) Jersey Realty and Inv. Co. v. Emco Mfg. Co., Inc.,
D.Kan.1999, 187 F.R.D. 649.
(31) Estate of Axelrod v. Flannery, D.Conn.2007, 476
F.Supp.2d 188.
(32) Madison River Management Co. v. Business
Management Software Corp., M.D.N.C.2005, 351 F.Supp.2d
436. Federal Civil Procedure  840
(33) United States Fire Ins. Co. v. United Limousine Service,
Inc., S.D.N.Y.2004, 303 F.Supp.2d 432. Federal Civil
Procedure  839.1
(34) Hengel, Inc. v. Hot 'N Now, Inc., N.D.Ill.1993, 825 F.Supp.
1311.
(35) Kentucky Cent. Life Ins. Co. v. LeDuc, N.D.Cal.1992, 814

F.Supp. 832.

(36) Bonilla v. Trebol Motors Corp., C.A.1 (Puerto Rico) 1998, 150 F.3d 77, certiorari denied 119 S.Ct. 1574, 526 U.S. 1098, 143 L.Ed.2d 670. Federal Civil Procedure  636

(37) Perrott v. U.S. Banking Corporation, D.C.Del.1944, 53 F.Supp. 953.

(38) McCarthy v. Schumacher, S.D.N.Y.1939, 1 F.R.D. 8. Federal Civil Procedure  1019

(39) . DuSesoi v. United Refining Co., W.D.Pa.1982, 540 F.Supp. 1260.

(40) Cottman Transmission Systems, Inc. v. Dubinsky, E.D.Pa.1982, 95 F.R.D. 351.

(41) United Ins. Co. of America v. B. W. Rudy, Inc., E.D.Pa.1967, 42 F.R.D. 398.

(42) In re Lupron Marketing and Sales Practices Litigation, D.Mass.2003, 295 F.Supp.2d 148. Federal Civil Procedure 1789

(43) Bilick v. Eagle Elec. Mfg. Co., Inc., E.D.N.Y.1992, 807 F.Supp. 243.

(44) In re Sunrise Securities Litigation, E.D.Pa.1992, 793 F.Supp. 1306.

(45) Pridgen v. Farmer, E.D.N.C.1983, 567 F.Supp. 1457. Federal Civil Procedure  636

(46) In re King's Place, Inc., Bkrtcy.E.D.Pa.1980, 6 B.R. 305.

(47) Estate of Lennon by Lennon v. Screen Creations, Ltd., S.D.N.Y.1996, 939 F.Supp. 287.

(48) In re Midlantic Corp. Shareholder Litigation, D.N.J.1990, 758 F.Supp. 226.

(49) . American Foods v. Dezauche, W.D.N.Y.1947, 74 F.Supp. 681.

(50) Buckmasters, Ltd. v. Action Archery, Inc., M.D.Ala.1996, 915 F.Supp. 1188.

(51) 625 3rd St. Associates, L.P. v. Alliant Credit Union, N.D.Cal.2009, 633 F.Supp.2d 1040. Federal Civil Procedure 636

(52) Smith v. Jenkins, D.Mass.2009, 626 F.Supp.2d 155.

(53) In re Yahoo! Litigation, C.D.Cal.2008, 251 F.R.D. 459.

(54) McQueen v. Woodstream Corp., D.D.C.2008, 248 F.R.D. 73

(55) Frank M. McDermott, Ltd. v. Moretz, C.A.4 (N.C.) 1990, 898 F.2d 418, rehearing denied. Federal Civil Procedure  636

(56) Stamelman v. Fleishman-Hillard, Inc., S.D.N.Y.2003,

2003 WL 21782645, Unreported. Fraud  46
(57) Griffin v. McNiff, S.D.N.Y.1990, 744 F.Supp. 1237,
affirmed 996 F.2d 303.
(58) IMG Fragrance Brands, LLC v. Houbigant, Inc.,
S.D.N.Y.2010, 759 F.Supp.2d 363.
(59) Dah Chong Hong, Ltd. v. Silk Greenhouse, Inc.,
M.D.Fla.1989, 719 F.Supp. 1072.
(60) Glidepath Holding B.V. v. Spherion Corp., S.D.N.Y.2007,
590 F.Supp.2d 435.
(61) PdP Parfums de Paris, S.A. v. International Designer
Fragrances, Inc., E.D.N.Y.1995, 901 F.Supp. 581. Federal
Civil Procedure  1789
(62) Giordano v. Claudio, E.D.Pa.2010, 714 F.Supp.2d 508.
(63) Hewlette v. Hovis, E.D.Va.2004, 318 F.Supp.2d 332.
Federal Civil Procedure  636
(64) Vaughn v. Consumer Home Mortgage, Inc.,
E.D.N.Y.2003, 2003 WL 21241669, Unreported. Attorney And
Client  129(2)
(65) Wawrzynek v. Statprobe, Inc., E.D.Pa.2005, 422
F.Supp.2d 474. Federal Civil Procedure  636
(66) Bergman v. Spruce Peak Realty, LLC, D.Vt.2012, 2012
WL 931991.
(67) Andrews v. South Coast Legal Services, Inc.,
D.Mass.2008, 582 F.Supp.2d 82.
(68) MIG Investments LLC v. Aetrex Worldwide, Inc.,
D.Del.2012, 2012 WL 1118633.
(69) Future Tech Intern., Inc. v. Tae Il Media, Ltd.,
S.D.Fla.1996, 944 F.Supp. 1538.
(70) U.S. Commodity Futures Trading Com'n v. Amaranth
Advisors, L.L.C., S.D.N.Y.2008, 554 F.Supp.2d 523,
reconsideration denied. Federal Civil Procedure  636
(71) Tolman v. American Red Cross, D.Idaho 2012, 2012 WL
892312.
(72) Hirsch v. Columbia University, College of Physicians and
Surgeons, S.D.N.Y.2003, 293 F.Supp.2d 372. Federal Civil
Procedure  636
(73) Franz v. Iolab, Inc., a div. or subsidiary of Johnson &
Johnson, Inc., E.D.La.1992, 801 F.Supp. 1537.
(74) TransFresh Corp. v. Ganzerla & Assoc., Inc.,
N.D.Cal.2012, 2012 WL 994674.
(75) Meridian Project Systems, Inc. v. Hardin Const. Co., LLC,
E.D.Cal.2005, 404 F.Supp.2d 1214. Federal Civil Procedure

636
(76) Marks v. Struble, D.N.J.2004, 347 F.Supp.2d 136.
Federal Civil Procedure  636
(77) Girard Trust Bank v. Martin, C.A.3 (Pa.) 1977, 557 F.2d
386, certiorari denied 98 S.Ct. 612, 434 U.S. 985, 54 L.Ed.2d
479. Federal Civil Procedure  2659
(78) Lead Mines Co. v. Kingsbury, C.A.9 (Idaho) 1949, 175
F.2d 983, certiorari denied 70 S.Ct. 249, 338 U.S. 900, 94
L.Ed. 554. Federal Civil Procedure  2659
(79) Zito v. Leasecomm Corp., S.D.N.Y.2003, 2003 WL
22251352, Unreported.
(80) American Medical Ass'n v. United Healthcare Corp.,
S.D.N.Y.2008, 588 F.Supp.2d 432. Federal Civil Procedure
636
(81)Bendzak v.Midland Nat. Life Ins. Co., S.D.Iowa 2006, 440
F.Supp.2d 970. Fraud  41
(82) State Farm Mut. Auto. Ins. Co. v. Grafman,
E.D.N.Y.2009, 655 F.Supp.2d 212
(83) Allstate Ins. Co. v. Rozenberg, E.D.N.Y.2008, 590
F.Supp.2d 384.
(84) American Medical Ass'n v. United Healthcare Corp.,
S.D.N.Y.2008, 588 F.Supp.2d 432. Federal Civil Procedure
636
(85) . In re National Mortg. Equity Corp. Mortg. Pool
Certificates Securities Litigation, C.D.Cal.1986, 636 F.Supp.
1138. Federal Civil Procedure  636
(86) Dickey v. Kennedy, D.Mass.2008, 583 F.Supp.2d 183.
Federal Civil Procedure  636
(87) Magnifico v. Villanueva, S.D.Fla.2011, 783 F.Supp.2d
1217.
(88) Sykes v. Mel Harris and Associates, LLC, S.D.N.Y.2010,
757 F.Supp.2d 413.
(89) Lathrop v. Juneau & Associates, Inc. P.C., S.D.Ill.2004,
220 F.R.D. 322.
(90) Jepson, Inc. v. Makita Corp., C.A.7 (Ill.) 1994, 34 F.3d
1321. RICO 70
(91) Williams v. Equity Holding Corp., E.D.Va.2007, 498
F.Supp.2d 831.
(92) Wood v. Incorporated Village of Patchogue of New York,
E.D.N.Y.2004, 311 F.Supp.2d 344. Postal Service  35(8)
(93) In re Sahlen & Associates, Inc. Securities Litigation,
S.D.Fla.1991, 773 F.Supp. 342.

(94) Wiener v. Napoli, E.D.N.Y.1991, 772 F.Supp. 109. Postal Service  48(4.1)

(95) . American Town Center v. Hall 83 Associates, C.A.6 (Mich.) 1990, 912 F.2d 104. Federal Civil Procedure  636

(96) Page v. Comert, C.A.D.C.1957, 243 F.2d 245, 100 U.S.App.D.C. 139. Federal Civil Procedure  691

(97) Husted v. Amrep Corp., S.D.N.Y.1977, 429 F.Supp. 298. Federal Civil Procedure  636; Fraud  43

(98) Von Grabe v. Sprint PCS, S.D.Cal.2003, 312 F.Supp.2d 1285. Federal Civil Procedure  636

(99) Everco Industries, Inc. v. O. E. M. Products Co., N.D.Ill.1974, 63 F.R.D. 662, 183 U.S.P.Q. 331. Federal Civil Procedure  679

(100) Adams v. U.S., D.Idaho 2011, 2011 WL 4738537. Damages  146; Damages  147; Damages  148

(101) . Italiano v. Jones Chemicals, Inc., M.D.Fla.1995, 908 F.Supp. 904. Federal Civil Procedure  639

(102) Rannels v. S. E. Nichols, Inc., C.A.3 (Pa.) 1979, 591 F.2d 242. Libel And Slander  89(2)

(103) Stevenson v. Hearst Consol Publications, C.A.2 (N.Y.) 1954, 214 F.2d 902, certiorari denied 75 S.Ct. 110, 348 U.S. 874, 99 L.Ed. 688. Federal Civil Procedure  706

(104) Sargent v. National Broadcasting Co., N.D.Cal.1955, 136 F.Supp. 560. Libel And Slander  89(3)

Jurisdictional Statement as Petition for Certiorari

Motion for Injunction on these conspirators with treble the amount on award of damages of all kinds after what they have put me thro & my family members due to continuing conspiratorial activities of all kinds including those pursuant to antitrust, civil rights, RICO etc illegal schemes as all types of injuries proscribed by these statutes are present in Vora's case for their unconstitutional, fraudulent, antitrust, RICO etc misconduct, &, invalidation of condemnation order & ordering the city of Johnstown as part of conspirators, who demolished my brick duplex house of 511-511 1/2 Robb Ave, illegally, to build the duplex brick structure back, at their expense completely, as Perry etc are working together, as 511 Robb Ave duplex (ground now) is still zoned in business area with business license from the State & Central Tax Bureau is, on that place and city was demanding that I meet requirements of Special permit that got started by them in 2003, from me when they did not require it for others who had such business licenses and just making illegal demands from me when I had the licence from state since 8/1/1990, so indeed was falling under the exceptions granted to those who had business license previously from State showing clearcut all types of illegal activities on their part and my house satisfied all business needs of mine in the market of remedies and services.

Now comes Vora & avers in support of above, as antitrust, RICO, etc activities of these conspirators are continuing with earliar activities by them of breaking my windows, stealing my property of all kinds, which is still continuing, etc & now telling me survey costing $400 to $800 is required to put up anything on the grounds of 511 Robb Ave duplex place, a totally illegal way of just harrassing me and in furtherance of their antitrust, RICO, civil rights violation of Vora etc schemes of restraining trade, competition in the market of remedies in USA for their own illegal deeds of demolishing my brick duplex house, taking everything from it, so they can force me to give my trade secrets to them & then kill me the way it was done to Ramanujan, in British time in India, which they tried several times with failure.

(0)Vora is setting the contents of 4/4-/2014 "Motion to file in excess wordings of 4/4-/2014 ...40,000 words..." here as if in full by reference thereto, to be able to meet previous ruling on words & had said I could file another motion on it & numbering of paragraphs here is after 4/4/2014 "Motion to file in excess ..." .

(29) Presenting answer to question no. (28) by setting brief pages of 5/30/2013 with all supplements on it, sent to 1st, 3rd cirs, USSC on application no12A546 here as if in full by reference thereto as permitted in antitrust cases pleadings and all were served with it other than parties 11, 13, 14, 16-20 & if conspirators have not vanished with it will send in Appendix if required and request the court to defer the Appendix if required(which may not be required

1

being in IFP as everything is in the records) to be sent as Dinan does not cooperate at all.

(30)Since the conspirators stole original of 1996 medical records which Vora discovered on 5/28/2013 & original offer of Optometry Division of 1971 of IU, Bloomington, IN with same amount of Assistantship as Math Dept. there, Vora cannot produce them as it would have led courts to see that Vora is indeed very well qualified and Vora's Affidavits signed by witnesses as seen on pages of Facebook that can easily be accessed by govt officers without putting in a request of a friend, on Facebook, with most uptodate information on it, & it is on website older version with no indication there that of naturopathy which does not require medical practice license as per 399 A.2d 1160

"http://home.earthlink.net/~chandansvora" & still do show that in the market of remedies & services, Vora's remedies & services are far superior than medical world's remedies & services, & in antitrust cases reference to websites and pages on it are permitted as seen in one of the case laws quoted by Vora in earliar pleadings, however Vora does have reduced version of 1996 records, & all subsequent records of MH which courts should accept it as predatory acts of these conspirators trying to injure Vora severel;y, restraining competition in the market of remedies, which is nothing but full of fraud of mental illness by these conspiratorial M.D.s , just to preserve the acheived monopoly of M.D.s in the market of services & remedies & in furtherance of all types of conspiratorial activities, antitrust, RICO, civil rights violation of Vora illegal schemes of theirs, so Vora's claims are not incredible as claimed by Dinan who did not answer my brief at all earliar 1st time it went to 1st cir and COAF1 went blindly then with Dinan with tag of atty, so injunctive relief is a must.

(31)My remedy suppresses cough & cold too as I was subjected to severe cold by CC Prison officials with CCC in order to make sure that I do not receive 12/22/2011, 2/17/2012 orders in USDCWPA cases 11-253J, 12-26J of RICO, antitrust, civil rights violation of Vora schemes etc. in suits etc and Vora has no choice, but to set here the pages of 5/30/2012-21 thro 65(b) here as if in full by reference there to & pages of it will be enclosed for parties mentioned earliar who were not served with them earliar when it went thro in 1st & 3rd cirs. if Vora gets time to search for it & find it & if it is still there, as dont put anything beyond these conspirators, & it was sent to USSC with Motion for Extension of time to file certiorari in PA cases, with words 15USCAss s1, s2 whereever they occur replaced with words 15USCFAss s1-s27.

(32)Vora has demonstrated in her 5/30/2012 brief sent to COAF1 & 3, USSC in application no. 12A546, which is being set here as if in full by reference there to, that Vora's remedies are nothing, but naturopathy as when you squeeze peanuts, a person gets peanut oil

2

and water and they are considered as ingredients for it occurring naturally in nature so as per Appj(ii)15USCAs15(185) case law, it is naturopathy which does not require medical practice license at all & is a business with mercantile license for it sufficient from Central Tax Bureau with State license on it which Vora produced, time & again in lower courts, so they are being set forth here as if in full by reference thereto.

(33) Vora is setting forth the opinions here as if in full by refernce there to attached here in par(39) and since antitrust activities have not ceased as indicated in Motions for Injunction of 1/23/2013, 7/3/2013, 4/4/2014, statute of limitation does not start running for it as everything was done pursuant to it, entitling Vora to treble damages of all kinds & unless injunction is put on these conspirators, they just & will not stop on their predatory deeds of fabricating such destructive diagnosis of paranoid, schizophrenic, history of psychiatric illness, psychiatric illness in a nuerologic person like Vora to preserve their achieved monopoly in the market of remedies in USA; disappearing with important statutes, laws that Vora zeroxed as they dont stay in Vora's head without the zerox copies in front of her & whenever they get a chance, my remedy disappears even in the preparation stages as happened at 824 Sherman St place in 2012 in December, elsewhere too, including at 657 Main st in March 2014 that was prepared already, with people of black origin knowing quite well that my remedies are far superior than medical world's remedies as I was forced to prepare my scarfree burn remedy in front of black supervisor of Bethlehem Haven in 92 year; besides malicious, predatory, wilful motives to restrain trade, competition trying to steal my trade secrets as done on my research & creative work in academic world, for themselves, damaging competition, Vora,s business by injuring it severely.

(34)A private claim under antitrust laws survive death of antitrust defendants & executors are equally liable for it, so even though many like N. McGough, T Strayer, Gergeley etc perished, antitrust claims still survive. Appj(ii)15USCAs15(18).

(35)Vora has been wilfully, maliciously prevented to let her business take off the grounds and that does not prevent the antitrust injury suit to go thro with all types of damages awarded in treble the amount just like what M.D. earns over $250,000 a year, being unique & far superior to medical world's remedies & have been inhumanely, wilfully, maliciously torturing Vora to eliminate her completely from the market of remedies & services for human health, even if they have to eliminate her from the world to preserve achieved monopoly even thro fraud, deceit, wilful, malicious, predatory, continuously discriminatory activities of all kinds besides other motives of RICO, etc. as indicated in her prior pleadings. Because of Vora's neurologic condition, nothing very much stays in her head & for this reason Vora had put it down in writing whenever it occurred

3

to her head, so courts should consider it as exceptional circumstances case, as Vora was deprived of all her pleadings scientific books, Notes etc., time & again from her places of abode, illegally & are continuing in this homeless state too, due to ongoing conspiratorial activities of all kinds, antitrust, RICO, civil rights violation, etc schemes against Vora not adequately compensated at all after disabling her & putting her in this severely neurologic condition which even USCode book admits under Immigration & Naturalisation act that it is a very debilitating condition in a human being, that she can hardly bend up & down, that easily, without severe pain & at times cannot even write or take a step or type too, & Vora has to get this out unless USSC, COAF1 grant more time as exceptional cases.

(36)Since Vora does not have very much time, Vora is setting all the opinions that Vora chose that are applicable to her cases verbatim of 15USCAs15 here in par (39) as if in full by refernce thereto.

(37)Even if business is intrastate having or affecting interstate commerce, it is sufficient & fact remains that Vora's remedies are far superior than medical world's remedies as seen from Vora's website and Facebook pages and Vora's remedy do prolong life of people who at any time have been observed not to be able to control their leg going vertically upwards, & as a matter of fact, medical world is taking their lives wilfully, maliciously, to preserve the achieved monopoly by them by giving them chemical drugs which they cannot tolerate at all and creating obstructions in the path of people like Vora who can give them relief, fraudulently, as well as to preserve the achieved monopoly in the market of services & remedies wilfully, maliciously, severely restraining competition in this market, a very common practice by M,D,s practically world over and more so in the Western countries & Vora does not make any false assertions as Vora achieved the stature of Full Professor with tenure in knowledge ever since 1970 when Vora caught Spanier's mistake and if Vora was of white color, major class people & US would have recognized Vora as having those qualifications & would have given right rank, right salary right then with sponsorship and Vora is stating, in that achieved status of knowledge that Vora's remedies are far superior to medical world's remedies & all this is being stated under penalty of perjury pursuant to US laws.

(38)Vora is setting the contents of all opinions given to courts earlier here as if in full by reference thereto in spite of them being wiped out by conspirators wilfully, maliciously etc. pursuant to their schemes.

4

(39)Applicable opinions to Vora's causes of action of 15USCAs15 & can be called Appj(ii)15USCAs15

1. Constitutionality

(1)*Provision for suit for treble damages by aggrieved private persons is constitutional exercise of commerce power, even when person authorized to sue has no appreciable impact on interstate commerce, where business practice which is subject to suit has adverse effect upon commerce. Lehrman v. Gulf Oil Corp., C.A.5 (Tex.) 1972, 464 F.2d 26, certiorari denied 93 S.Ct. 687, 409 U.S. 1077, 34 L.Ed.2d 665. Commerce  80

13. ---- Compensation of individual victims, purpose

(2)*In the passage of this section Congress intended to give to a private person who had been injured by a violation of the antitrust laws the benefit of the final disposition of any criminal or equitable proceeding, growing out of conspiracy, instituted by the government against the same defendants. Twin Ports Oil Co. v. Pure Oil Co., D.C.Minn.1939, 26 F.Supp. 366. Antitrust And Trade Regulation 958

15uscas15d1p2 begins here

18. Law governing--Generally

(3)*Where the statutory basis for antitrust suit under this section was §§ 1 to 7 and 12 to 27 of this title, the nature of the action, the time of its accrual and the character of the damages sought were federal questions not state. Winkler-Koch Engineering Co. v. Universal Oil Products Co., S.D.N.Y.1951, 100 F.Supp. 15. Federal Courts  402

36. Elements of action

(4)*In order for dealer to establish private antitrust cause of action against manufacturer for territorial restrictions, it must be established that there was antitrust infraction and that dealer had suffered fact of damage in consequence of that infraction. Pitchford v. PEPI, Inc., C.A.3 (Pa.) 1975, 531 F.2d 92, certiorari denied 96 S.Ct. 2649, 426 U.S. 935, 49 L.Ed.2d 387, on remand 435 F.Supp. 685, on remand 440 F.Supp. 1175. Antitrust And Trade Regulation 958; Antitrust And Trade Regulation  963(2)

41. Intent

(5)*A plaintiff in an antitrust suit under §§ 12 to 27 of this title need not show a specific intent to monopolize or unreasonably restrain trade in a certain field, nor is it necessary to show an express agreement between two defendants in order to establish a conspiracy, but it is enough that a concert of action is contemplated and that defendants conform to the arrangement, and if unreasonable restraint of trade or monopoly results as a consequence of defendants' business arrangements an unlawful intent to do so may

1

be inferred. Fred Johnson Cement Block Co. v. Waylite Co., D.C.Minn.1960, 182 F.Supp. 914. Antitrust And Trade Regulation 976

43. Interstate commerce

(6)*A complaint alleging that plaintiff solicited contracts for poster advertising as did a defendant, that a defendant with others conspired to monopolize all branches of outdoor advertising business in Pacific Coast area, and that the conspiracy, with its effect of interstate commerce, caused plaintiff great expense and loss of profits and prevented plaintiff from establishing a business in San Francisco to its great injury and damage stated a cause of action for triple damages under this section and was improperly dismissed on ground that allegations of damage were directed to local acts of defendants rather than to any restraint of interstate commerce in posters. C. E. Stevens Co. v. Foster & Kleiser Co., U.S.Wash.1940, 61 S.Ct. 210, 311 U.S. 255, 85 L.Ed. 173. Commerce 62.10(2)

47. Accrual of right of action

(7)*Under this section expressly providing that recovery for antitrust law violations is to be given to any person thereby injured in his business or property, plaintiff's right of action for treble damages for such violations accrued when plaintiff was injured in its business or property, and originated in Kansas, where the business or property was located, notwithstanding none of defendants were ever licensed under Kansas law to transact business in that state. Electric Theater Co. v. Twentieth Century-Fox Film Corp., W.D.Mo.1953, 113 F.Supp. 937. Limitation Of Actions 58(1)

49. Stay of proceedings

(8)*Court of appeals should have stayed shipper's action against associations for treble damages under antitrust laws instead of dismissing action, since treble damage action for past conduct cannot be easily reinstated at a later time, and claims are subject to statute of limitations and are likely to be barred by time. Carnation Co. v. Pacific Westbound Conference, U.S.Cal.1966, 86 S.Ct. 781, 383 U.S. 213, 383 U.S. 932, 15 L.Ed.2d 709. Federal Courts 921

52. ---- Exclusive nature of jurisdiction

(9)*Federal antitrust claims were not precluded on theory that they had been adjudicated in state court proceedings, both because the state courts had not in fact purported to do so and because jurisdiction of federal antitrust suits is exclusively in the federal courts. Kurek v. Pleasure Driveway and Park Dist. of Peoria, Ill., C.A.7 (Ill.) 1978, 583 F.2d 378, certiorari denied 99 S.Ct. 873, 439 U.S. 1090, 59 L.Ed.2d 57. Courts 489(8); Judgment 828.16(4)

54. ---- Pendent jurisdiction

(10)*Dutch corporation, which was subject to extraterritorial service of process pursuant to Clayton Act statute that permits service of process in district inhabited by defendant, was subject to pendent personal jurisdiction with respect to state law claims that

2

arose out of same operative facts as federal claim and that were within district court's pendent subject matter jurisdiction, where corporation would not incur significant additional burden in defending state law aspects of case and would not have to engage in significant, additional discovery or significantly alter conduct of trial; declining to follow Wilensky v. Standard Beryllium Corp., 228 F.Supp. 703 (D.Mass.). Amtrol, Inc. v. Vent-Rite Valve Corp., D.Mass.1986, 646 F.Supp. 1168. Federal Courts  17

55. ---- Primary jurisdiction

(11)*Antitrust complaint by plaintiff air carrier seeking treble damages and asserting various acts which defendant carrier allegedly took with predatory intent and purpose of eliminating plaintiff carrier as a viable competitor was sufficient to state a cause of action within jurisdiction of court notwithstanding claim that the acts were within the exclusive jurisdiction of the Civil Aeronautics Board [now Surface Transportation Board]. Aloha Airlines, Inc. v. Hawaiian Airlines, Inc., D.C.Hawai'i 1972, 349 F.Supp. 1064, affirmed 489 F.2d 203, certiorari denied 94 S.Ct. 2612, 417 U.S. 913, 41 L.Ed.2d 217. Antitrust And Trade Regulation  972(3)

58. ---- Interstate commerce, jurisdiction

(12)Subject-matter jurisdiction is established over an antitrust claim if defendant's overall business activity, not merely particular conduct in question, has substantial effect on interstate commerce. Justice v. National Collegiate Athletic Ass'n, D.C.Ariz.1983, 577 F.Supp. 356. Commerce  62.10(1)

(13)Test of jurisdiction in civil antitrust actions for treble damages is not that the acts complained of affect the business engaged in interstate commerce, but that the offensive acts affect the interstate commerce of such business or any business, and it is not the economic consequences to interstate commerce which confer jurisdiction but only those anticompetitive consequences which the antitrust laws are designed to prevent. C. A. Page Pub. Co. v. Work. S.D.Cal.1959, 178 F.Supp. 184, affirmed 290 F.2d 323, certiorari denied 82 S.Ct. 121, 368 U.S. 875, 7 L.Ed.2d 76, affirmed 290 F.2d 334. Antitrust And Trade Regulation  961; Antitrust And Trade Regulation  969; Commerce  62.10(1)

60. ---- Amount in controversy, jurisdiction

(14)Complaint for damages for alleged violation of the antitrust laws by purported conspiracy between insurance carriers to deny insurance to plaintiff, if brought under this section relating to monopolies and combinations in restraint of trade, was within jurisdiction of federal district court without respect to amount in controversy. Bader v. Zurich General Accident & Liability Ins. Co., S.D.N.Y.1952, 12 F.R.D. 437. Federal Courts  332

61. ---- Diversity of citizenship, jurisdiction

(15)(ME case defty )In action for damages under this section, jurisdiction is not based on diversity of citizenship, but on the fact

3

that action arises under a law of the United States. Christian v. International Ass'n of Machinists, D.C.Ky.1925, 7 F.2d 481. See, also, Bishop v. American Preservers' Co., C.C.Ill.1892, 51 F. 272. Federal Courts  208

(16)This section establishing jurisdiction of federal district court over private antitrust suits controls actions based on antitrust laws even where diversity or federal question, coupled with claim in excess of jurisdictional amount, exists in satisfaction of more general jurisdictional requirements. Hall v. E. I. Du Pont De Nemours & Co., E.D.N.Y.1970, 312 F.Supp. 358. Antitrust And Trade Regulation  969

64. ---- Corporations, jurisdiction

(17)Texas manufacturer acted with requisite intent to purposefully avail itself of benefits and protections of Massachusetts law by sending 60 e-mails containing allegedly disparaging statements about Massachusetts competitor to individuals who had provided Massachusetts street addresses, and thus was subject to specific personal jurisdiction in Massachusetts in competitor's suit for false advertising, defamation, commercial disparagement, intentional interference with existing and prospective business relationships, and violation Sherman Act, where manufacturer maintained and controlled list of persons to whom e-mails were sent and created and distributed e-mails, and e-mails appeared designed to ensure that customers who read it would not purchase competitor's products. First Act, Inc. v. Brook Mays Music Co., D.Mass.2004, 311 F.Supp.2d 258. Antitrust And Trade Regulation  969; Federal Courts  79

72. Substitution of parties

(18)A private claim under antitrust laws survives death of defendant, and executors may be substituted as party defendants for a deceased defendant. Elyria-Lorain Broadcasting Co. v. Lorain Journal Co., N.D.Ohio 1957, 185 F.Supp. 808. Abatement And Revival  52; Federal Civil Procedure  362

76. ---- Short and plain statement of claim, pleadings

(19)In action for treble damages for violation of the antitrust laws, the pleader is required only to set forth a plain and simple statement of his case and it is not necessary to set out in detail the acts complained of nor the circumstances from which the pleader draws his conclusions that violation of such laws have occurred, and that the pleader has been damaged. Louisiana Farmers' Protective Union v. Great Atlantic & Pac. Tea Co. of America, C.C.A.8 (Ark.) 1942, 131 F.2d 419. Antitrust And Trade Regulation  972(1)

(20)Radiologist and provider of diagnostic imaging services adequately alleged that they had suffered an antitrust injury caused by competitors' anticompetitive conduct where they alleged that competitors' illegal conduct harmed them in their business and had decreased the price, quality, and output of the provision of diagnostic

4

imaging services, and that their claimed injuries, harm to their goodwill and reputation, the elimination from the market of their competing services, and decreased revenue and profits, were caused by competitors' allegedly anticompetitive conduct. New York Medscan LLC v. New York University School of Medicine, S.D.N.Y.2006, 430 F.Supp.2d 140. Antitrust And Trade Regulation 972(5)

77. ---- Conspiracy, pleadings

(21)*Physician stated federal antitrust claim based on allegations that other physicians in area engaged in restraint of trade by conspiring to secure nonrenewal of her admission privileges at hospital in order to limit competition by reducing number of physicians in her specialty area available to patients in relevant market. Mahmud v. Kaufmann, S.D.N.Y.2007, 496 F.Supp.2d 266. Antitrust And Trade Regulation 593

82. Separate and distinct claims

(22)*Claim for treble damages in civil antitrust action and claim for injunctive relief were separate and distinct causes of action based on separate sections of this chapter, even though it was proper to join them in one complaint. Sablosky v. Paramount Film Distributing Corp., E.D.Pa.1952, 13 F.R.D. 138. Action 38(2)

84. ---- Permissive or compulsory counterclaims

(23)*Action under this section for injunctive relief and treble damages was not subject to dismissal on ground that plaintiff's claim should have been raised as a compulsory counterclaim in a prior pending action by one of the defendants against plaintiff, where the prior action was still pending. Bellmore Sales Corp. v. Winfield Drug Stores, Inc., S.D.N.Y.1960, 187 F.Supp. 161. Federal Civil Procedure 1784

86. Dismissal

(24)*Early dismissals are not favored in actions alleging violations of the antitrust laws. Speed Auto Sales, Inc. v. American Motors Corp., E.D.N.Y.1979, 477 F.Supp. 1193. Federal Civil Procedure 1822.1

(25)*Summary dismissal in private antitrust action should be sparingly granted because of nature of issues involved and because it may be difficult to plead more precisely the effects on interstate commerce until discovery has been had. Chapiewsky v. G. Heileman Brewing Co., D.C.Wis.1968, 297 F.Supp. 33. See, also, South Carolina Council of Milk Producers, Inc. v. Newton, C.A.4 (S.C.) 1966, 360 F.2d 414, certiorari denied 87 S.Ct. 295, 385 U.S. 934, 17 L.Ed.2d 215. Federal Civil Procedure 2484

(26)*On defendants' motions to dismiss on ground that complaint in antitrust action did not state a claim against defendants, court was required to accept as true allegations of complaint constituting alleged cause of action and damages suffered by plaintiff by reason of acts alleged to have been committed by defendants, and motions

5

were required to be overruled if allegations of ultimate facts would justify a recovery. Brownlee v. Malco Theatres, W.D.Ark.1951, 99 F.Supp. 312. Federal Civil Procedure 1827.1; Federal Civil Procedure 1835

87. Summary judgment

(27)*"Plus factors" required to survive summary judgment motion in Sherman Act antitrust action, i.e. additional circumstances which, when viewed in conjunction with parallel acts alleged, can serve to allow fact-finder to infer conspiracy, may include common motive to conspire, evidence that shows that parallel acts were against apparent individual economic self-interest of alleged conspirators, or evidence of high level of interfirm communications. Twombly v. Bell Atlantic Corp., C.A.2 (N.Y.) 2005, 425 F.3d 99, certiorari granted 126 S.Ct. 2965, 548 U.S. 903, 165 L.Ed.2d 949, reversed 127 S.Ct. 1955, 550 U.S. 544, 167 L.Ed.2d 929. Federal Civil Procedure 2484

(28)*Because of nature of issues and difficulty of pleading precisely effects on interstate commerce before discovery, summary disposition of private antitrust actions should be sparingly granted; the moving party must positively and clearly demonstrate that there is no genuine issue of fact, and any doubt as to existence of such an issue is resolved in the opponent's favor. LoCicero v. Humble Oil & Refining Co., E.D.La.1970, 319 F.Supp. 1133. Federal Civil Procedure 2484; Federal Civil Procedure 2546; Federal Civil Procedure 2552

(29)*In a private antitrust action, there was no burden on the plaintiff on defendant's motion for summary judgment to submit his evidence on affidavits or to establish his case in his pretrial deposition taken by the defendants. Leh v. General Petroleum Corp., S.D.Cal.1958, 165 F.Supp. 933. Federal Civil Procedure 2544

92. Jury trial

(30)*The right to trial by jury applies to treble damages suits under antitrust laws, and is, in fact, an essential part of Congressional plan for making competition rather than monopoly the rule of trade. Beacon Theatres, Inc. v. Westover, U.S.Cal.1959, 79 S.Ct. 948, 359 U.S. 500, 3 L.Ed.2d 988. Jury 14(1.2)

(31)*A defendant counterclaiming for treble damages under this section would be entitled to jury trial of antitrust issues as of right upon making timely demand for jury trial. Container Co. v. Carpenter Container Corp., D.C.Del.1949, 9 F.R.D. 261, 82 U.S.P.Q. 253. Jury 14(1.2)

93. Evidence generally

(32)*In antitrust suit alleging conspiracy among aluminum distributor's competitors and mills, district court erred by excluding hearsay statements of mill representatives before testing whether they were admissible pursuant to exception to hearsay rule for statements of co-conspirators; court was required to make co-

6

conspirators preliminary factual determination as to whether a conspiracy existed. Champagne Metals v. Ken-Mac Metals, Inc., C.A.10 (Okla.) 2006, 458 F.3d 1073, on remand 2007 WL 4115994, on remand 2008 WL 5205204. Evidence  261

(33)*Oklahoma peer review privilege was not applicable in case involving antitrust suit by licensed Oklahoma physician specializing in cardiovascular, thoracic, vascular and endovascular surgery, and his corporation, against entities and individuals that had allegedly interfered with their ability to practice medicine; public interest in private enforcement of federal antitrust claims was too strong to permit exclusion of relevant and possibly crucial evidence by application of peer review privilege, particularly where the peer review proceedings themselves were alleged to be a sham. Cohlmia v. Ardent Health Services, LLC, N.D.Okla.2006, 448 F.Supp.2d 1253. Antitrust And Trade Regulation  593

94. Direct or circumstantial evidence

(34)*Neither knowledge of conspiracy to restrain and monopolize trade, nor participation therein, need be proved by direct evidence in civil action for damages for violation of the antitrust laws. Flintkote Co. v. Lysfjord, C.A.9 (Cal.) 1957, 246 F.2d 368, certiorari denied 78 S.Ct. 54, 355 U.S. 835, 2 L.Ed.2d 46. Antitrust And Trade Regulation  977(2); Antitrust And Trade Regulation  977(3)

105. ---- Injury, burden of proof

(35)*Trial and appellate courts alike must observe the practical limits of the burden of proof which may be demanded of a treble damage plaintiff who seeks recovery for injuries from a partial or total exclusion from a market; damage issues in these cases are rarely susceptible to the kind of concrete, detailed proof of injury which is available in other contexts. Zenith Radio Corp. v. Hazeltine Research, Inc., U.S.Ill.1969, 89 S.Ct. 1562, 395 U.S. 100, 23 L.Ed.2d 129, 161 U.S.P.Q. 577, on remand 418 F.2d 21. Antitrust And Trade Regulation  984; Federal Courts  877

125. ---- Supreme Court review

(36)*Where rulings by court of appeals seemed to threaten effectiveness of private antitrust action as vital means for enforcing antitrust policy, United States Supreme Court granted certiorari. Perma Life Mufflers, Inc. v. International Parts Corp., U.S.Ill.1968, 88 S.Ct. 1981, 392 U.S. 134, 20 L.Ed.2d 982. Federal Courts  456

(37)*Certiorari was granted to determine whether decisions of federal courts were in conformity with prior United States Supreme Court decision relating to availability of summary judgment in antitrust litigation. First Nat. Bank of Ariz. v. Cities Service Co., U.S.N.Y.1968, 88 S.Ct. 1575, 391 U.S. 253, 20 L.Ed.2d 569, rehearing denied 89 S.Ct. 63, 393 U.S. 901, 21 L.Ed.2d 188. Federal Courts  457

(38)*Certiorari was granted in action to recover treble damages for alleged violation of federal antitrust laws in respect to

7

defendants' alleged conspiracy to monopolize distribution of standard accessories to motion picture exhibitors in area, because of importance of questions presented in enforcement of federal antitrust laws. Lawlor v. National Screen Service Corp., U.S.Pa.1955, 75 S.Ct. 865, 349 U.S. 322, 99 L.Ed. 1122. Federal Courts  452

(39)*Although federal jurisdiction was sought only on ground of diversity, where complaint relied upon breach of §§ 1 and 2 of this title, and counterclaims were similarly bottomed on such sections, question as to whether doctrine of collateral estoppel precluded subsequent litigation of issues raised by counterclaims which were dismissed without adjudication upon determination of original suit would be determined by United States Supreme Court upon consideration of federal law and procedure and would depend upon whether any issue of fact or law remained for decision after original action was decided. Partmar Corp. v. Paramount Pictures Theatres Corp., U.S.Cal.1954, 74 S.Ct. 414, 347 U.S. 89, 98 L.Ed. 532, rehearing denied 74 S.Ct. 527, 347 U.S. 931, 98 L.Ed. 1083. Federal Courts  402; Judgment  634

II. STANDING GENERALLY

162. Common law, standing generally

(40)*A person who has been injured in his trade or business by activities of an unlawful monopoly, combination or restraint is entitled to recover damages in an action at law for the loss suffered, recovery being sustainable both at common law and under this section. Caraway v. Ford Motor Co., W.D.Mo.1957, 148 F.Supp. 776. Antitrust And Trade Regulation  958

163. Statutory basis, standing generally

(41)*A civil action for treble damages under this section is not based upon existence of a monopoly or attempt to monopolize, in and of itself, but this section gives a right of action to a private litigant based on acts done pursuant to a monopoly or attempt to monopolize that directly injure or damage him in his business or property. Duff v. Kansas City Star Co., C.A.8 (Mo.) 1962, 299 F.2d 320, 132 U.S.P.Q. 483. Antitrust And Trade Regulation  963(2)

173. Engaging in business, standing generally--Generally

(42)*Provision of this section authorizing treble damage recovery by any person "who shall be injured in his business or property by reason of anything forbidden in the antitrust laws" does not restrict remedy only to those having actual going business. Denver Petroleum Corp. v. Shell Oil Co., D.C.Colo.1969, 306 F.Supp. 289. Antitrust And Trade Regulation  964; Antitrust And Trade Regulation  965

(43)*This section authorizing recovery of treble damages by any person injured in his "business" or "property" by anything forbidden by antitrust laws does not manifest the congressional intent to distinguish between the rights of persons who are put out of business and the rights of persons who are kept out of business by conspiracy,

8

and hence fact that a complainant never actually engaged in business does not establish that it had no "business" within the protection of this section. Delaware Val. Marine Supply Co. v. American Tobacco Co., E.D.Pa.1960, 184 F.Supp. 440, affirmed 297 F.2d 199, certiorari denied 82 S.Ct. 867, 369 U.S. 839, 7 L.Ed.2d 843. Antitrust And Trade Regulation 963(1)

175. ---- Entering market or industry generally, engaging in business, standing generally

(44)*One need not have an actual going business to establish a private antitrust injury under sections 12 to 27 of this title; recovery can be had for a wrongfully frustrated attempt to enter a business. Hayes v. Solomon, C.A.5 (Tex.) 1979, 597 F.2d 958, rehearing denied 602 F.2d 1246, certiorari denied 100 S.Ct. 1028, 444 U.S. 1078, 62 L.Ed.2d 761. Antitrust And Trade Regulation 963(1)

184. Relevant market, standing generally--Generally

(45)*Antitrust plaintiff need not be either competitor or consumer in relevant market in order to have antitrust standing. Westchester Radiological Associates, P.C. v. Empire Blue Cross and Blue Shield, Inc., S.D.N.Y.1987, 659 F.Supp. 132. Antitrust And Trade Regulation 964; Antitrust And Trade Regulation 965

186. ---- Volume of business, relevant market, standing generally

(46)*Plaintiff need not do particular volume of business in relevant market in order to have standing to complain about illegal antitrust activities in the market. Southwest Suburban Bd. of Realtors, Inc. v. Beverly Area Planning Ass'n, C.A.7 (Ill.) 1987, 830 F.2d 1374. Antitrust And Trade Regulation 960

189. Participation by plaintiff in illegal activity, standing generally

(47)*Where one party to illegal contract acts under economic duress, the party's participation does not preclude right of action under §§ 1 to 7 of this title. Goldlawr, Inc. v. Shubert, E.D.Pa.1967, 268 F.Supp. 965. Antitrust And Trade Regulation 908

III. VIOLATION OF ANTITRUST LAWS

224. Interstate commerce, violation of antitrust laws--Generally

(48)*Plaintiff in an antitrust suit need not himself be in interstate commerce, and it is
suffic ient that the combination which is the cause of his injury seeks to restrain such commerce. Ring v. Spina, C.C.A.2 (N.Y.) 1945, 148 F.2d 647. Antitrust And Trade Regulation 961

(49)*Business practice benign on its face, with powerful effect on interstate commerce may be subject of suit for treble damages by single victim of practice whose own operation is relatively small and whose own effect on interstate commerce is insignificant. Lehrman v. Gulf Oil Corp., C.A.5 (Tex.) 1972, 464 F.2d 26, certiorari denied 93 S.Ct. 687, 409 U.S. 1077, 34 L.Ed.2d 665. Commerce 80

228. ---- Intrastate or local activities or enterprises, interstate commerce, violation of antitrust laws

(50)*Allegations in complaint as to manner in which a

conspiracy, even if "local" in nature, affects interstate commerce are sufficient to preclude dismissal of complaint in action under §§ 1 to 7 and 12 to 27 of this title for injunction and treble damages. City of Fort Lauderdale v. East Coast Asphalt Corp., C.A.5 (Fla.) 1964, 329 F.2d 871, certiorari denied 85 S.Ct. 187, 379 U.S. 900, 13 L.Ed.2d 175. Commerce  62.14

(51)*A complaint for treble damages, alleging an attempt by defendants to acquire a monopoly and that the business of defendants was manufacturing, assembling, selling, and distributing electrical apparatus manufactured or assembled in their various factories and principal places of business and sold to various persons throughout the several states, sufficiently shows that interstate commerce is involved. Lynch v. Magnavox Co., C.C.A.9 (Cal.) 1938, 94 F.2d 883. Commerce  62.14

(52)*Plaintiff could recover threefold damages for violation of §§ 1 and 2 of this title, even though the acts done in pursuance of the monopoly which injured plaintiff in business or property were a part of intrastate commerce. Greenleaf v. Brunswick-Balke-Collender Co., E.D.Pa.1947, 79 F.Supp. 362. Antitrust And Trade Regulation 961; Antitrust And Trade Regulation  995

232. ---- Market share controlled by plaintiff, interstate commerce, violation of antitrust laws

(53)*Conduct charged to be in violation of antitrust laws must be reasonably calculated to prejudice public interest by unduly restricting free flow of interstate commerce; but it is immaterial that plaintiff bringing suit for treble damages under §§ 1 to 7 of this title has only small share of interstate commerce. Lehrman v. Gulf Oil Corp., C.A.5 (Tex.) 1972, 464 F.2d 26, certiorari denied 93 S.Ct. 687, 409 U.S. 1077, 34 L.Ed.2d 665. Commerce  80

233. ---- Intrastate injuries, interstate commerce, violation of antitrust laws

(54)*If Congress has the power to make acts illegal, it can authorize a recovery for damages caused by those acts, although suffered wholly within the boundaries of a state. Chattanooga Foundry & Pipe Works v. City of Atlanta, U.S.Tenn.1906, 27 S.Ct. 65, 203 U.S. 390, 51 L.Ed. 241.

239. Restraint of trade or commerce, violation of antitrust laws

(55)*In treble damages action under this section, statutory criteria for recovery are satisfied when plaintiff has alleged and proved unlawful restraint of trade and damage to himself growing out thereof. Switzer Bros., Inc. v. Locklin, C.A.7 (Ill.) 1961, 297 F.2d 39, 131 U.S.P.Q. 405, certiorari denied 82 S.Ct. 934, 369 U.S. 851, 8 L.Ed.2d 9, 133 U.S.P.Q. 703, certiorari denied 82 S.Ct. 935, 369 U.S. 851, 8 L.Ed.2d 9, 133 U.S.P.Q. 703. Antitrust And Trade Regulation  972(8)

(56)*Person injured in business and property by acts done in furtherance of conspiracy to eliminate him as competitor in interstate

trade by unfair means may recover damages, though unlawful purpose is not accomplished to such extent as to constitute unreasonable restraint of such trade. Albert Pick-Barth Co. v. Mitchell Woodbury Corp., C.C.A.1 (Mass.) 1932, 57 F.2d 96, certiorari denied 52 S.Ct. 503, 286 U.S. 552, 76 L.Ed. 1288. Antitrust And Trade Regulation 963(1)

242. Conspiracies in restraint of trade, violation of antitrust laws

(57)*Allegations that certain trucking companies conspired to monopolize trade and commerce in transportation of goods and engaged in concerted activities to institute actions in state and federal proceedings to resist and defeat applications for operating rights by other companies stated cause of action by latter trucking companies against former. California Motor Transport Co. v. Trucking Unlimited, U.S.Cal.1972, 92 S.Ct. 609, 404 U.S. 508, 30 L.Ed.2d 642. Antitrust And Trade Regulation 972(3)

(58)Complaint of gas burner manufacturer that association and its members had conspired to restrain interstate commerce in the manufacture, sale and use of gas burners by reason of association's unreasonable failure to approve manufacturer's gas burners resulting in a refusal by utility members of association to supply gas for use in manufacturer's burners, was sufficient to state a claim for treble damages. Radiant Burners, Inc. v. Peoples Gas Light & Coke Co., U.S.Ill.1961, 81 S.Ct. 365, 364 U.S. 656, 5 L.Ed.2d 358. Antitrust And Trade Regulation 972(3)

(59)Complaint by professional football player against professional football league for treble damages and injunctive relief because of alleged conspiracy by league to monopolize and control organized professional football and destroy competitive league with the result that player was prevented from becoming a player-coach to his damage, stated a cause of action under this section. Radovich v. National Football League, U.S.Cal.1957, 77 S.Ct. 390, 352 U.S. 445, 1 L.Ed.2d 456, rehearing denied 77 S.Ct. 716, 353 U.S. 931, 1 L.Ed.2d 724. Antitrust And Trade Regulation 972(3)

(60)*Conspiracy was the gravamen of complaint in antitrust treble damage action brought on basis that exhibitors of motion pictures and distributors conspired to monopolize distribution and exhibition of pictures in area; plaintiff exhibitor was not required to show explicit contractual agreements in order to prove a conspiracy, but must demonstrate more than that alleged coconspirators engaged in course of conduct in which they would have engaged regardless of the others' conduct. Dahl, Inc. v. Roy Cooper Co., C.A.9 (Cal.) 1971, 448 F.2d 17. Antitrust And Trade Regulation 972(4); Antitrust And Trade Regulation 977(3)

(61)Complaint alleging a conspiracy by former employer and by stock exchange to terminate plaintiff's employment as salesman of securities and to prevent his further employment in that capacity or business and seeking treble damages was sufficient on its face.

11

Cowen v. New York Stock Exchange, N.D.N.Y.1966, 256 F.Supp. 462, affirmed 371 F.2d 661. Antitrust And Trade Regulation 972(4

246. Boycotts, violation of antitrust laws

(62)*Consumers of compulsory automobile insurance in Puerto Rico had antitrust standing to assert boycott claim against private automobile insurers who allegedly coerced and intimidated an insurance broker and the broker's clients because the broker attempted to sell compulsory automobile insurance in Puerto Rico through insurers other than the Puerto Rico Joint Underwriting Association (JUA), although the consumers were not targets of the alleged boycott. Arroyo-Melecio v. Puerto Rican American Ins. Co., C.A.1 (Puerto Rico) 2005, 398 F.3d 56. Antitrust And Trade Regulation 967

(63)*Security salesman who alleged in effect that his competence for business had been established by being hired by two of nation's giants in security business plus high passing grade in industry's uniform quality examinations and that he was victim of prohibited antitrust pressures, so that, after being successfully hired, and fired, by two large dealers, he was unable to obtain even chance for employment by others because of boycott growing out of express or tacit agreement that one member firm would not hire person who had either been rejected or discharged by another member firm stated claim for relief, under liberal construction of complaint. Quinonez v. National Ass'n of Securities Dealers, Inc., C.A.5 (Tex.) 1976, 540 F.2d 824. Antitrust And Trade Regulation 972(3)

(64)*Private treble damage actions may be brought to redress boycott, coercion and intimidation under the provisions of §§ 1 to 7 of this title. Cooperativa De Seguros Multiples De Puerto Rico v. San Juan, D.C.Puerto Rico 1968, 289 F.Supp. 983. Antitrust And Trade Regulation 958

250. Tying arrangements, violation of antitrust laws

(65)*For purposes of establishing standing to maintain private antitrust action, area of economy threatened with a breakdown of competitive conditions because of a tying agreement is the market for the tied product, and those who will be approximately injured thereby, and thus have standing to sue, in addition to the party subjected to the tie, are competitors in the tied product. Southern Concrete Co. v. U. S. Steel Corp., C.A.5 (Ga.) 1976, 535 F.2d 313, rehearing denied 540 F.2d 1085, certiorari denied 97 S.Ct. 1113, 429 U.S. 1096, 51 L.Ed.2d 543. Antitrust And Trade Regulation 965

(66)*Company that developed and manufactured accessories and add-ons, including memory cards, for popular video game system adequately pled defendant's power in tying online market, whose share it alleged to be approximately 66%; plaintiff had not improperly ignored products that might be reasonably interchangeable but instead had included two products in alleged market and alleged differences regarding others that physically

12

excluded them from relevant market, and because it had also alleged per se tying claim that affected a substantial volume of commerce, it was not necessary to rigorously define market for product. Datel Holdings Ltd. v. Microsoft Corp., N.D.Cal.2010, 712 F.Supp.2d 974. Antitrust And Trade Regulation 592

251. Monopolizing trade, violation of antitrust laws

(67)*A complaint for treble damages alleging that defendants entered into a plan, scheme, or conspiracy, and pursuant thereto entered into a plan, scheme, or combination in restraint of trade, to effect or attempt to effect a monopoly in the manufacture, sale, and distribution of radio loudspeakers in interstate commerce, pleaded an attempt to monopolize by means of a conspiracy. Lynch v. Magnavox Co., C.C.A.9 (Cal.) 1938, 94 F.2d 883. Antitrust And Trade Regulation 972(4)

(68)*Where a company attempted to monopolize the manufacture and sale of coated wire nails, and as part of its plan engaged in various illegal and unfair practices, such as hindering its competitors from obtaining raw materials and the necessary machines, bribing their factory employees to disclose factory conditions and to send out defective goods, and bribing office employees to disclose the names of their customers and their contracts, and then selling to such customers below cost, a competitor attacked in these ways has a right of action for damages under this section, since, while no action lies for unfair practices, damages are recoverable thereunder for monopolizing, or attempting to monopolize, and acts which are a part of the monopolizing, or attempting to monopolize, are a subject for damages. American Steel Co. v. American Steel & Wire Co., D.C.Mass.1916, 244 F. 300.

252. Litigation, violation of antitrust laws

(69)*Medical manufacturer that sued competitors with regard to manufacturer's electrical muscle stimulation devices alleged cognizable antitrust injury, as required to establish Sherman Act standing; purported sham litigation brought by competitors as means of limiting manufacturer's ability to compete against them, as well as purported wrongful disparagement of manufacturer's products, constituted conduct that antitrust laws appropriately targeted. Alternative Electrodes, LLC v. Empi, Inc., E.D.N.Y.2009, 597 F.Supp.2d 322. Antitrust And Trade Regulation 963(3)

257. Fraud, violation of antitrust laws

(70)*Finding of fraud will support a treble damage action under sections 1 to 7 of this title if all the other elements of a cause of action thereunder are found. State of N. C. v. Chas. Pfizer & Co., Inc., E.D.N.C.1974, 384 F.Supp. 265, 182 U.S.P.Q. 657, affirmed 537 F.2d 67, 189 U.S.P.Q. 262, certiorari denied 97 S.Ct. 183, 429 U.S. 870, 50 L.Ed.2d 150, 191 U.S.P.Q. 710. Antitrust And Trade Regulation 958

261. Licensing, violation of antitrust laws

13

(71)*Mandatory licensing scheme for use of hash-based technology by major record companies that collectively owned rights to vast majority of copyrighted sound recordings sold in United States effectively raised costs for distributor of file-sharing application that utilized peer-to-peer technology and reduced distributor's ability to compete effectively with other intrabrand retailers selling major record companies' music, and thus distributor sufficiently alleged antitrust injury, as required for distributor to have antitrust standing. Arista Records LLC v. Lime Group LLC, S.D.N.Y.2007, 532 F.Supp.2d 556. Antitrust And Trade Regulation 963(3)

IV. ANTITRUST INJURY

15uscas15d1p7 begins here

303. ---- Existence of business or property, business or property within section, antitrust injury; & 306. Creation of rights in persons injured, antitrust injury

(72)*Allegations that plaintiff's existing business was radically decreased, that it lost profits of at least $12.8 million, and that it incurred legal expenses in conducting a defense in state court action brought by patentee for unfair competition, sufficiently stated plaintiff's harm and, thus, a claim for violations of sections 12 to 27 of this title through patentee's enforcement of allegedly fraudulently obtained patents involving a tack-welded frame lid. Indium Corp. of America v. Semi-Alloys, Inc., N.D.N.Y.1984, 591 F.Supp. 608, 224 U.S.P.Q. 404. Antitrust And Trade Regulation  972(5)

306. Creation of rights in persons injured, antitrust injury

307. Impairing economic position, antitrust injury

(73)*Owners of condominiums in ski area and corporations involved in rental and management of such condominiums sufficiently pleaded antitrust injury, as element of standing, where they alleged that their economic interests were severely impaired as result of practices of ski area operator and related entities in refusing to extend discounted rates for sports area, offering sports area access and greater lift ticket discounts to those who entered management agreements with related entities, and diverting and steering callers to toll free number to related entities. Zschaler v. Claneil Enterprises, Inc., D.Vt.1997, 958 F.Supp. 929. Antitrust And Trade Regulation  972(5)

(74)"Injury" referred to means an act or occurrence which impaired the economic position of the plaintiff. Muskin Shoe Co. v. United Shoe Machinery Corp., D.C.Md.1958, 167 F.Supp. 106. Limitation Of Actions  58(1)

310. Specific injuries required, antitrust injury

(75)*Allegations as to injury to plaintiff's business and property and loss of business in sale of safety belts manufactured by defendant, loss of business in sale of other equipment, increased cost to plaintiff in purchasing safety belts from unauthorized sources and

14

damage to plaintiff's good will, name and reputation in trade, of excess of price to plaintiff over other defendants, diversion of trade from plaintiff to another defendant on items manufactured by defendant manufacturer and related items were sufficient, on dismissal motion, to show specific injury to business under this section. Wholesale Auto Supply Co. v. Hickok Mfg. Co., D.C.N.J.1963, 221 F.Supp. 935. Antitrust And Trade Regulation 972(5)

316. ---- Anticompetitive effect, competitive injury, antitrust injury

(76)*Media research company sufficiently alleged an injury of the type that the antitrust laws were intended to prevent and the type of injury that the alleged violation would be likely to cause, and therefore sufficiently plead an antitrust injury for purposes of establishing standing to bring Sherman Act monopolization claim; company, which specifically alleged that despite its superior product it had been stymied in its attempts to compete in the relevant market by competitor's anticompetitive conduct and that it was effectively precluded from gaining contracts with broadcast networks to measure their program viewership over cable, sufficiently alleged its intention to enter the business and its preparedness to enter into the business. ErinMedia, LLC v. Nielsen Media Research, Inc., M.D.Fla.2005, 401 F.Supp.2d 1262. Antitrust And Trade Regulation 963(3); Antitrust And Trade Regulation 972(5)

326. ---- Benefit to public, public or private injury, antitrust injury

(77)If defendant violated § 2 of this title by monopolizing motion picture business in city, a theater owner who suffered loss would be entitled to judgment even though the public were benefited. William Goldman Theatres v. Loew's, Inc., E.D.Pa.1944, 54 F.Supp. 1011, reversed on other grounds 150 F.2d 738. Antitrust And Trade Regulation 963(3)

329. ---- Per se violations, public or private injury, antitrust injury

(78)Private treble damage complaint asserting a per se violation of §§ 1 to 7 of this title need not allege or offer proof of public injury. Arthur Murray, Inc. v. Reserve Plan, Inc., C.A.8 (Mo.) 1969, 406 F.2d 1138, on remand 301 F.Supp. 621. Antitrust And Trade Regulation 972(5)

(79)Unless a per se violation of antitrust laws was established in action under §§ 1 to 7 of this title, plaintiff was required to prove that public at large had suffered or would suffer economic harm as result of alleged violation, that is, that there had been appreciable lessening in service or availability of products to public or that public had been deprived of product or service of over-all superiority. Parmelee Transp. Co. v. Keeshin, N.D.Ill.1960, 186 F.Supp. 533, affirmed 292 F.2d 794, certiorari denied 82 S.Ct. 376, 368 U.S. 944, 7 L.Ed.2d 340, rehearing denied 82 S.Ct. 437, 368 U.S. 972, 7 L.Ed.2d 401. Antitrust And Trade Regulation 963(3)

331. ---- Discrimination in price, services or facilities, public or

private injury, antitrust injury

(80)If act complained of is illegal under § 13 of this title, plaintiff is entitled to civil remedy of treble damages given by this section, regardless of whether there is a public injury or not, and such civil remedy is not limited to competitors of the buyer, but is specifically granted to any person injured. Kentucky-Tennessee Light & Power Co. v. Nashville Coal Co., W.D.Ky.1941, 37 F.Supp. 728. Antitrust And Trade Regulation  963(1); Antitrust And Trade Regulation  987

332. Severity of injury, antitrust injury

(81)Mere fact that plaintiff has not suffered severe monetary injury does not serve to bar him from enforcing rights granted by antitrust laws. Ingram v. Phillips Petroleum Co., D.C.N.M.1966, 252 F.Supp. 674. Antitrust And Trade Regulation  963(1)

341. Avoiding effects of illegal activity, antitrust injury

(82)Airport operator, whose aircraft dealership was terminated, was not required to exhaust every possible avenue to avoid effects of aircraft manufacturer's and distributor's alleged activity in violation of §§ 1 to 7 of this title but could maintain action for injury which flowed naturally and expectedly from such activity. Fontana Aviation, Inc. v. Beech Aircraft Corp., C.A.7 (Ill.) 1970, 432 F.2d 1080, certiorari denied 91 S.Ct. 872, 401 U.S. 923, 27 L.Ed.2d 826. Antitrust And Trade Regulation  962

343. Per se violations, antitrust injury

(83)For an aggrieved party to state a claim for relief under §§ 1 to 7 of this title, it is necessary to allege only a per se violation of such sections, although in a treble damage action, allegations of a per se violation plus resultant damages must be made. McBeath v. Inter-American Citizens for Decency Committee, C.A. 5 (Tex.) 1967, 374 F.2d 359, certiorari denied 88 S.Ct. 216, 389 U.S. 896, 19 L.Ed.2d 214. See, also, Herrmann v. Atlantic Richfield Co., W.D.Pa.1974, 65 F.R.D. 585, motion denied 72 F.R.D. 182. Antitrust And Trade Regulation  972(3); Antitrust And Trade Regulation  972(5)

347. Discrimination in price, services or facilities, antitrust injury

(84)Though section 13 of this title, which makes it unlawful for any person engaged in commerce, to pay or grant, or to receive or accept, anything of value as a commission, brokerage or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with sale or purchase of goods, may describe a per se violation for which no showing of anticompetitive effect is required in a government enforcement action, the requirement of antitrust injuries still obtains in a private action brought under this section stating that any person injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor. Abernathy v. Bausch & Lomb Inc., N.D.Tex.1983, 97 F.R.D. 470. Antitrust And Trade Regulation  847; Antitrust And Trade Regulation  852; Antitrust And Trade Regulation  963(1)

16

349. Market share, antitrust injury

(85)Assuming that operator of Japanese language tours of northern California would be able to substantiate alleged conspiracy among its competitors to eliminate the tour operator from Japanese language tour market, and assuming that tour operator's survey evidence was valid and admissible, tour operator met burden of establishing injury attributable to the conspiracy and not to other factors, as required for treble damages under Clayton Act, § 4, 15 U.S.C.A. § 15, with evidence from which jury could conclude that tour operator's market share, and hence its profits, would have been larger but for the alleged conspiracy. Dolphin Tours, Inc. v. Pacifico Creative Service, Inc., C.A.9 (Cal.) 1985, 773 F.2d 1506. Antitrust And Trade Regulation  977(2)

(86)In interpreting this section relating to award of treble damages for antitrust violation courts allow damages only to those who have suffered some diminution of their ability to compete and confine recovery to those who have been injured by restraints on competitive forces in economy so that not all those who may be able to trace an economic loss to a violation of antitrust laws can recover thereunder; plaintiff must allege and prove that the illegal restraint of trade injured his competitive position in the business in which he is or was engaged. GAF Corp. v. Circle Floor Co., C.A.2 (N.Y.) 1972, 463 F.2d 752, certiorari dismissed 93 S.Ct. 3058, 413 U.S. 901, 37 L.Ed.2d 1045. Antitrust And Trade Regulation  963(1)

351. Pecuniary losses generally, antitrust injury

(87)*In order to maintain an action it is not sufficient to show that the defendants might have been subjected to criminal prosecution by the government, or to corrective or coercive proceedings at the instance of the Interstate Commerce Commission, but it must be shown that the complainant sustained pecuniary damages. Keogh v. Chicago & N.W. Ry. Co., C.C.A.7 (Ill.) 1921, 271 F. 444, certiorari denied 41 S.Ct. 537, 256 U.S. 699, 65 L.Ed. 1177, affirmed 43 S.Ct. 47, 260 U.S. 156, 67 L.Ed. 183.

352. Modest amounts lost, antitrust injury

(88)Fact that purchaser of hearing aid was deprived only of money, albeit a modest amount, as result of alleged antitrust violations by the manufacturers did not mean that she did not sustain a "property injury" for purposes of the Clayton Act. Reiter v. Sonotone Corp., U.S.Minn.1979, 99 S.Ct. 2326, 442 U.S. 330, 60 L.Ed.2d 931, on remand 602 F.2d 179, on remand 486 F.Supp. 115. Antitrust And Trade Regulation  963(3)

364. Elimination from market, antitrust injury

(89)Party alleging violations of the antitrust laws need not necessarily await elimination from market before bringing private cause of action under the Clayton Act; in order to make out private cause of action for damages under the Act, party must allege injury to business or property resulting from violation of the antitrust laws.

17

Johnson v. Greater Southeast Community Hosp. Corp., C.A.D.C.1991, 951 F.2d 1268, 293 U.S.App.D.C. 1, on remand 789 F.Supp. 427, on remand 903 F.Supp. 140. Antitrust And Trade Regulation 972(5)

15uscas15d1p8 my notes begin here

365. Employment, antitrust injury

(90)Loss of employment by sales supervisor, if proved, would be injury to business or property entitling supervisor to bring treble damage civil antitrust suit. Dailey v. Quality School Plan, Inc., C.A.5 (Tex.) 1967, 380 F.2d 484. Antitrust And Trade Regulation 963(1)

(91)One who has been damaged by loss of employment as a result of a violation of the antitrust laws is "injured in his business or property" within this section governing recovery of threefold damages. Nichols v. Spencer Intern. Press, Inc., C.A.7 (Ind.) 1967, 371 F.2d 332. Antitrust And Trade Regulation 963(1)

Employees of high-tech companies sufficiently alleged a per se violation of the Sherman Act, as required to state claim against their employers for conspiracy in restraint of trade in violation of Clayton Act; complaint alleged that employers were high-tech companies in the market for skilled labor, where cold calling to lure employees away from competitors played an important role in determining salaries and labor mobility, that the labor market for skilled high-tech labor was national, and that employers had succeeded in lowering the compensation and mobility of their employees below what would have prevailed in a lawful and properly functioning labor market. In re High-Tech Employee Antitrust Litigation, N.D.Cal.2012, 2012 WL 1353057. Antitrust and Trade Regulation 935

366. Exclusion, antitrust injury

*Me case*

(92)Jury's factual findings that defendants with the power and intent to exclude plaintiff from particular market entered into common scheme or plan to restrain plaintiff's business by preventing him from advertising in newspaper established, as a matter of law, that defendants had engaged in the type of anticompetitive conduct Congress intended to prohibit by sections 1 to 7 of this title and that further finding that plaintiff suffered monetary damages of a determined amount by reason of defendants' conduct established, as a matter of law, that plaintiff was among the class of private persons authorized by this section to seek redress for such conduct. Gough v. Rossmoor Corp., C.A.9 (Cal.) 1973, 487 F.2d 373. Federal Civil Procedure 2242

374. Profits, antitrust injury

(93)Brazilian ferrosilicon producers suffered antitrust injury from lost profits due to exclusion from market allegedly caused by domestic producers' fraudulent antidumping petition that resulted in

International Trade Commission (ITC) imposing antidumping duties on Brazilian producers, as required for Brazilian producers' antitrust standing to pursue claim that domestic producers conspired to file fraudulent antidumping petition in violation of Sherman Act, where ITC determined that antidumping duties would not have been assessed absent domestic producers' misrepresentations and omissions in filing antidumping petition. Companhia Brasileira Carbureto de Calcio-CBCC v. Applied Indus. Materials Corp., D.D.C.2012, 2012 WL 3553750. Antitrust and Trade Regulation 964

*sfc*

(94)To establish antitrust standing under "lost profits" theory, terminated sales agent for sand and gravel producer had to produce evidence linking termination of contract to alleged antitrust scheme which was in place at time of termination and that agent was terminated pursuant to and as part of that scheme. O.K. Sand and Gravel, Inc. v. Martin Marietta Corp., S.D.Ind.1992, 819 F.Supp. 771, on reconsideration, affirmed 36 F.3d 565. Antitrust And Trade Regulation 963(3)

377. Reputation and goodwill, antitrust injury

(95)Chiropractors suffered economic injury and injury to reputations as result of national medical association's conspiracy in unreasonable restraint of trade and, therefore, suffered antitrust injury. Wilk v. American Medical Ass'n, N.D.Ill.1987, 671 F.Supp. 1465, affirmed 895 F.2d 352, rehearing denied, certiorari denied 110 S.Ct. 2621, 496 U.S. 927, 110 L.Ed.2d 642, rehearing denied 111 S.Ct. 6, 497 U.S. 1046, 111 L.Ed.2d 822, certiorari denied 111 S.Ct. 513, 498 U.S. 982, 112 L.Ed.2d 524. Antitrust And Trade Regulation 977(2)

V. PARTICULAR PERSONS INJURED

(96)Physician who alleged that hospitals had violated Sherman Act by conspiring to eliminate him as a competitor, by engaging in exclusive dealing and a group boycott, and controlling a monopoly share of market, had antitrust standing under Clayton Act to bring action against hospitals; causal connection/defendant intent element of standing analysis was satisfied, as physician's claimed harm clearly resulted from alleged conspiracy that prevented him from competing in market, and was type of injury antitrust laws were meant to redress. Angelico v. Lehigh Valley Hosp., Inc., C.A.3 (Pa.) 1999, 184 F.3d 268, on subsequent appeal 85 Fed.Appx. 308, 2004 WL 75383, certiorari denied 125 S.Ct. 67, 543 U.S. 814, 160 L.Ed.2d 19. Antitrust And Trade Regulation 963(3)

*settlement on accident cases*

(97)If two stockholders in commercial laundry businesses were coerced, by unlawful conspiracy to create monopoly, into executing covenants restricting them from competing in diaper, linen, and laundry businesses for certain periods of time, they were injured in

their "business or property" within this section entitling them to sue for injuries in business or property. New Sanitary Towel Supply, Inc. v. Consolidated Laundries Corp., S.D.N.Y.1962, 211 F.Supp. 276, adhered to on reargument 213 F.Supp. 123. Antitrust And Trade Regulation 963(3)

## V. PARTICULAR PERSONS INJURED

424. Employees, particular persons injured
*sfc, educational insttns on passing exams thro sophisticated technology i.e. cheating etc.*

(98)Former employee in paper lithograph label industry who alleged that he had been discharged because of his failure to participate in a bid rigging scheme and that he had been boycotted because of that failure had standing to sue under sections 12 to 27 of this title for the alleged injury caused by the boycott as that injury flowed from a violation of antitrust policy and was of the type which the antitrust laws were intended to prevent. Ostrofe v. H.S. Crocker Co., Inc., C.A.9 (Cal.) 1984, 740 F.2d 739, certiorari dismissed 105 S.Ct. 1155, 469 U.S. 1200, 84 L.Ed.2d 309. Antitrust And Trade Regulation 963(3)

(99)Employees who were allegedly discharged for their refusal to implement pricing program which violated Robinson-Patman Act established standing to bring private antitrust action under Clayton Act; there was causal connection between their injury and alleged antitrust violation, retaliatory discharge was an "antitrust injury" of type which antitrust laws were intended to forestall, injury to discharged employees was direct, danger of duplicative recoveries or complex apportionment of damages was slight, and there were no more immediate class of potential plaintiffs who could be expected to vindicate violation of antitrust laws. Ashmore v. Northeast Petroleum Div. of Cargill, Inc., D.Me.1994, 843 F.Supp. 759. Antitrust And Trade Regulation 963(3)

427. Health care providers, particular persons injured

(100)Physician who alleged that hospitals had violated Sherman Act by conspiring to eliminate him as a competitor, by engaging in exclusive dealing and a group boycott, and controlling a monopoly share of market, had antitrust standing under Clayton Act to bring action against hospitals; causal connection/defendant intent element of standing analysis was satisfied, as physician's claimed harm clearly resulted from alleged conspiracy that prevented him from competing in market, and was type of injury antitrust laws were meant to redress. Angelico v. Lehigh Valley Hosp., Inc., C.A.3 (Pa.) 1999, 184 F.3d 268, on subsequent appeal 85 Fed.Appx. 308, 2004 WL 75383, certiorari denied 125 S.Ct. 67, 543 U.S. 814, 160 L.Ed.2d 19. Antitrust And Trade Regulation 963(3)

(101)Since change in malpractice coverage had increased costs for doctors, thus striking at their business or property, and since no one is more directly injured by conspiracy among insurance sellers

20

than those who buy insurance, doctors who were named as plaintiffs had standing to bring action alleging that insurance companies had violated nation's antitrust laws by conspiring to shrink malpractice coverage available to Rhode Island doctors. Barry v. St. Paul Fire & Marine Ins. Co., C.A.1 (R.I.) 1977, 555 F.2d 3, certiorari granted 98 S.Ct. 391, 434 U.S. 919, 54 L.Ed.2d 275, affirmed 98 S.Ct. 2923, 438 U.S. 531, 57 L.Ed.2d 932. Antitrust And Trade Regulation 963(3)

(102)For purposes of motion to dismiss, licensed Oklahoma physician specializing in cardiovascular, thoracic, vascular and endovascular surgery, and his corporation, showed antitrust injury needed for antitrust standing in suit against entities and individuals that had allegedly interfered with their ability to practice medicine; they alleged that defendants, individually and in combinations, improperly used the peer review process in order to drive them out of the market and thus harm competition, directly interfered with their existing and potential patients, including those with "high risk" medical or financial profiles, to prevent them from exercising free choice in the market, and engaged in per se illegal boycott to cut off access to supply, facility or market necessary to enable them to compete. Cohlmia v. Ardent Health Services, LLC, N.D.Okla.2006, 448 F.Supp.2d 1253. Antitrust And Trade Regulation  963(3)

(103)Physician had standing to maintain action against hospital alleging that revocation of his staff privileges violated Sherman Act provisions governing unreasonable restraints of trade and monopolization; physician clearly alleged that illegal restraint was directed not merely at clinic that he had established but against him as result of setting up clinic, and alleged direct economic injury traceable to defendants' actions. Miller v. Indiana Hosp., W.D.Pa.1992, 814 F.Supp. 1254, affirmed 975 F.2d 1550, certiorari denied 113 S.Ct. 1366, 507 U.S. 952, 122 L.Ed.2d 744, rehearing denied 113 S.Ct. 1883, 507 U.S. 1045, 123 L.Ed.2d 501. Antitrust And Trade Regulation  963(3)

(104)Nurse midwife established requisite close relationship between injury to her private home birth practice and her teaching activities at local hospitals and defendant physicians' alleged anticompetitive conduct necessary to give her standing to sue for treble damages under Clayton Act. Sweeney v. Athens Regional Medical Center, M.D.Ga.1989, 709 F.Supp. 1563. Antitrust And Trade Regulation  963(3)

(105)Class of physicians had standing to sue health insurer for antitrust violations even though physicians may not have been participants in same relevant market as insurer; class of physicians asserted injury to their business or property as result of alleged antitrust violations. Ocean State Physicians Health Plan, Inc. v. Blue Cross & Blue Shield of Rhode Island, D.R.I.1988, 692 F.Supp. 52, affirmed 883 F.2d 1101, certiorari denied 110 S.Ct. 1473, 494 U.S.

1027, 108 L.Ed.2d 610. Antitrust And Trade Regulation 963(3)
15uscas15d1p9 my notes begin here

VI. CAUSAL CONNECTION BETWEEN INJURY AND
VIOLATION

482. Proximate cause or result, causal connection between injury
and violation

(106)Gist of civil action for conspiracy to monopolize is not
merely unlawful conspiracy but is damage to individual plaintiff
resulting proximately from acts of defendant which constitute a
violation of the antitrust laws. Association of Western Rys. v. Riss &
Co., C.A.D.C.1962, 299 F.2d 133, 112 U.S.App.D.C. 49, certiorari
denied 82 S.Ct. 1555, 370 U.S. 916, 8 L.Ed.2d 498. Antitrust And
Trade Regulation 963(1); Antitrust And Trade Regulation 963(2)

486. Reasonable probability of causal connection between injury and
violation

(107)Person seeking damages for loss of wages in antitrust cases
must establish with reasonable probability existence of some causal
connection between defendant's wrongful act and some loss of
anticipated revenue, and once that has been accomplished, jury will
be permitted to make just and reasonable estimate of damage based
on relevant data. Flintkote Co. v. Lysfjord, C.A.9 (Cal.) 1957, 246
F.2d 368, certiorari denied 78 S.Ct. 54, 355 U.S. 835, 2 L.Ed.2d 46.
Antitrust And Trade Regulation 976

(108)A relaxed standard governs determination whether a
plaintiff's injury is causally related to a defendant's antitrust
violation, such as a tying arrangement; if it appears to a reasonable
probability that defendant's illegality was a material cause of
plaintiff's injury, the causation test is satisfied and defendant must
establish that the injury was caused by factors other than his antitrust
violation if he is to defeat plaintiff's showing. In re Data General
Corp. Antitrust Litigation, N.D.Cal.1980, 490 F.Supp. 1089, 207
U.S.P.Q. 549. Antitrust And Trade Regulation 963(2); Antitrust
And Trade Regulation 977(2)

488. Material or substantial causal connection between injury and
violation

(109)Plaintiff's burden of proving fact of damage under Clayton
Act is satisfied if illegality is shown to be a material cause of the
injury; a plaintiff need not exhaust all other possible causes of injury
to satisfy that burden. Indian Coffee Corp. v. Procter & Gamble Co.,
C.A.3 (Pa.) 1985, 752 F.2d 891, certiorari denied 106 S.Ct. 180, 474
U.S. 863, 88 L.Ed.2d 150. Antitrust And Trade Regulation 977(5)

497. ---- Elimination from market, direct or indirect injury, causal
connection between injury and violation

(110)In action for treble damages under this section, complaint
alleged injury direct and specific enough when it charged that
defendants conspired by course of predatory tactics to put plaintiffs
out of business and thereby destroy the interstate trade between the

plaintiffs and a distributor who distributed merchandise to plaintiffs and others throughout the United States. Schulman v. Burlington Industries, Inc., S.D.N.Y.1966, 255 F.Supp. 847. Antitrust And Trade Regulation 972(5)

499. ---- Engaging in business for certain time period, direct or indirect injury, causal connection between injury and violation

(111)If defendants entered into conspiracy to create monopoly in interstate commerce and principal purpose of conspiracy was to injure diaper, linen, and laundry businesses in which individual plaintiffs held stock but defendants went further and coerced individual plaintiffs to give up right to engage in those businesses for a period of time, and corporations holding those covenants were controlled by some of the defendants and were enforceable by some of the defendants through the allegedly controlled corporations, injury to individual plaintiffs was "direct" and plaintiffs could recover damages. New Sanitary Towel Supply, Inc. v. Consolidated Laundries Corp., S.D.N.Y.1962, 211 F.Supp. 276, opinion adhered to on reargument 213 F.Supp. 123. Antitrust And Trade Regulation 963(3)

500. ---- Lessening of competition, direct or indirect injury, causal connection between injury and violation

(112)Recovery and damages under this section is available to those who have been directly injured by lessening of competition and withheld from those who seek windfall of treble damages. Conference of Studio Unions v. Loew's Inc., C.A.9 (Cal.) 1951, 193 F.2d 51, certiorari denied 72 S.Ct. 367, 342 U.S. 919, 96 L.Ed. 687. Antitrust And Trade Regulation 963(2)

507. ---- Economic area, target area of illegal activity, causal connection between injury
And violation

(113)Where injury to plaintiff allegedly flowed directly from defendants' group boycott or refusal to deal, and plaintiff was alleged target of conspiracy, plaintiff was adequate representative of that sector of economy threatened by the alleged anticompetitive acts of defendants and had standing under this section. Midland Telecasting Co. v. Midessa Television Co., Inc., C.A.5 (Tex.) 1980, 617 F.2d 1141, certiorari denied 101 S.Ct. 361, 449 U.S. 954, 66 L.Ed.2d 219. Antitrust And Trade Regulation 965

553. Other factors contributing to injury, causal connection between injury and violation

(114)Violation of antitrust laws is answerable in treble damages for injury to another by unlawful act even though other factors may have contributed to injury. Switzer Bros., Inc. v. Locklin, C.A.7 (Ill.) 1961, 297 F.2d 39, 131 U.S.P.Q. 405, certiorari denied 82 S.Ct. 934, 369 U.S. 851, 8 L.Ed.2d 9, 133 U.S.P.Q. 703, certiorari denied 82 S.Ct. 935, 369 U.S. 851, 8 L.Ed.2d 9, 133 U.S.P.Q. 703. Antitrust And Trade Regulation 958

554. Particularity of allegations, causal connection between injury and violation

(115)In action for damages for violation of §§ 1 to 7 of this title, proximate cause is not required to be alleged with unusual particularity, notwithstanding that allegation of such fact is jurisdictional. Package Closure Corp. v. Sealright Co., C.C.A.2 (N.Y.) 1944, 141 F.2d 972. Antitrust And Trade Regulation  972(5)

(116)Antitrust standing requirements of Clayton Act do not require plaintiffs to plead every fact necessary to tie allegedly anticompetitive conduct to injury; so long as facts alleged, viewed in light most favorable to plaintiffs, indicate that plaintiffs have suffered antitrust injury, then plaintiffs have met their threshold burden. Davis v. Southern Bell Tel. & Tel. Co., S.D.Fla.1991, 755 F.Supp. 1532, reconsideration denied. Antitrust And Trade Regulation  963(1); Antitrust And Trade Regulation  972(3)

VII. DIRECT OR INDIRECT PURCHASERS
15uscas15d2p1 begins here for my notes on injn and cert to ussc on 1/24/2013
"          " "p2   "        "

IX. VENUE

X. DAMAGES AND INTEREST GENERALLY
15uscas15d2p3 begins here

807. Compensation or salary, damages and interest generally

(117)*If former employee established that she was discharged in violation of antitrust laws, loss of salary and other employee benefits would be element of possible damages recoverable. Bowen v. Wohl Shoe Co., S.D.Tex.1975, 389 F.Supp. 572. Antitrust And Trade Regulation  985

811. Earnings, damages and interest generally

(118)***In assessing damages to be allowed to plaintiff who had been forced out of business by defendant's anticompetitive practice, allowance should have been made for plaintiff's earnings after leaving business. Lehrman v. Gulf Oil Corp., C.A.5 (Tex.) 1972, 464 F.2d 26, rehearing denied 504 F.2d 760, certiorari denied 93 S.Ct. 687, 409 U.S. 1077, 34 L.Ed.2d 665. Antitrust And Trade Regulation  985

812. Equipment of business, damages and interest generally

(119)*Antitrust law does not require plaintiff to retain possession of a business oppressed by an antitrust violation until the business is bankrupted or directly shut down by violator and does not preclude grant of damages for loss of future profits, good will and fair market value of business equipment when plaintiff has been forced to sell business due to antitrust violations. Pollock & Riley, Inc. v. Pearl Brewing Co., C.A.5 (Tex.) 1974, 498 F.2d 1240, rehearing denied 504 F.2d 760, certiorari denied 95 S.Ct. 1427, 420 U.S. 992, 43 L.Ed.2d 673. Antitrust And Trade Regulation  985

817. Profits or losses, damages and interest generally--Generally

(120)***In antitrust action, if jury should find that defendants conspired to violate antitrust laws, loss of profits which would have been realized by plaintiff except for misconduct of defendants would be recoverable as an item of damages. Cape Cod Food Products v. National Cranberry Ass'n, D.C.Mass.1954, 119 F.Supp. 900. Antitrust And Trade Regulation 985

818. ---- Future profits, profits or losses, damages and interest generally

(121)*Where jury could have inferred that terminated dealer's sale of service station inventory to new lessee was forced sale with no allowance for goodwill or value of going business, dealer had not received fair market value of his business and thus dealer, who could not sell business for fair market value and also recover future profits, was not precluded from recovering future profits. Arnott v. American Oil Co., C.A.8 (S.D.) 1979, 609 F.2d 873, certiorari denied 100 S.Ct. 1852, 446 U.S. 918, 64 L.Ed.2d 272. Fraud 60

819. ---- Sales lost, profits or losses, damages and interest generally

(122)*Where clause in service agreement reserving right in defendant to suspend agreement as to any machines in which other suppliers' paper was used was illegal as a tie-in sales of paper and supplies lost to plaintiff because defendant threatened to cancel customer's service contract if it continued to use plaintiff's supplies entitled plaintiff to additional damages for lost sales. Advance Business Systems & Supply Co. v. SCM Corp., C.A.4 (Md.) 1969, 415 F.2d 55, certiorari denied 90 S.Ct. 928, 397 U.S. 920, 25 L.Ed.2d 101. Antitrust And Trade Regulation 985

820. ---- Engaging in business, profits or losses, damages and interest generally

(123)Plaintiff, which sought to engage in the business of producing plastic holders for six-packs of canned beverages, was not barred from recovering damages from manufacturer of plastic holders for six-packs of canned beverages under antitrust laws merely because it was a manufacturer; plaintiff could recover lost profits as a manufacturer even though it had not yet started manufacturing, if it had reasonable prospects of doing so which defendant manufacturer snuffed out. Grip-Pak, Inc. v. Illinois Tool Works, Inc., C.A.7 (Ill.) 1982, 694 F.2d 466, 217 U.S.P.Q. 1287, certiorari denied 103 S.Ct. 2430, 461 U.S. 958, 77 L.Ed.2d 1317, on remand 651 F.Supp. 1482. Antitrust And Trade Regulation 964; Antitrust And Trade Regulation 985

825. Trade improvement, damages and interest generally

(124)In beer distributor's action against brewing company for violation of the antitrust laws, improved trade for distributor if the illegal restraint were removed, was one item of damage properly assessable. Johnson v. Joseph Schlitz Brewing Co., E.D.Tenn.1940, 33 F.Supp. 176, affirmed 123 F.2d 1016. Antitrust And Trade

25

Regulation 985

834. Questions for court, damages and interest generally

(125)Unless rebutted by one of the affirmative defenses under section 13 of this title, showing of competitive injury as part of prima facie case is sufficient to support injunctive relief, and to authorize further inquiry by courts into whether plaintiff is entitled to treble damages under sections 12 to 27 of this title. Falls City Industries, Inc. v. Vanco Beverage, Inc., U.S.Ind.1983, 103 S.Ct. 1282, 460 U.S. 428, 75 L.Ed.2d 174, on remand 705 F.2d 463. Antitrust And Trade Regulation 987; Antitrust And Trade Regulation 995

## XI. MEASUREMENT OR COMPUTATION OF DAMAGES

861. Measurement or computation of damages generally

(126)***Although plaintiff in antitrust action must establish damage resulting from the violation of the antitrust laws, proof that there was some damage is all that is required. First Delaware Val. Citizens Television, Inc. v. CBS, Inc., E.D.Pa.1975, 398 F.Supp. 925. Antitrust And Trade Regulation 977(1)

878. Pecuniary loss to business or property, measurement or computation of damages

(127)***Damages recoverable under this section are both punitive and compensatory, and the measure of such damages is the pecuniary loss to plaintiff's business or property resulting proximately from the conspiracy or combination. Twentieth Century-Fox Film Corp. v. Brookside Theatre Corp., C.A.8 (Mo.) 1952, 194 F.2d 846, certiorari denied 72 S.Ct. 1035, 343 U.S. 942, 96 L.Ed. 1348. Antitrust And Trade Regulation 985; Antitrust And Trade Regulation 986

879. Assumptions, inferences or estimates, measurement or computation of damages

(128)*Under antitrust laws, a party must show with some certainty that it suffered injury as a result of defendants' actions, but once it shows injuries, amount of damages can be estimated. Montreal Trading Ltd. v. Amax Inc., C.A.10 (N.M.) 1981, 661 F.2d 864, certiorari denied 102 S.Ct. 1634, 455 U.S. 1001, 71 L.Ed.2d 868. Antitrust And Trade Regulation 963(2); Antitrust And Trade Regulation 984

(129)The amount of damages in antitrust case need not depend on precise proof but can be based on assumptions if the assumptions rest on an adequate base. Hobart Bros. Co. v. Malcolm T. Gilliland, Inc., C.A.5 (Ga.) 1973, 471 F.2d 894, certiorari denied 93 S.Ct. 2736, 412 U.S. 923, 37 L.Ed.2d 150. Antitrust And Trade Regulation 984

880. Approximations, measurement or computation of damages

(130)It was incumbent on ore mill men, who sought to recover treble damages from mining companies for combination and conspiracy to monopolize source, fix price, and control market for

26

vanadium ore and its products, to prove with reasonable certainty that they suffered damages as proximate result of conspiracy or monopoly, but, having established factum of damages amount thereof could be fairly approximated by jury. Union Carbide & Carbon Corp. v. Nisley, C.A.10 (Utah) 1961, 300 F.2d 561, certiorari dismissed 83 S.Ct. 13, 371 U.S. 801, 9 L.Ed.2d 46. Antitrust And Trade Regulation 977(3); Antitrust And Trade Regulation 977(5); Antitrust And Trade Regulation 983

882. Pro rated damages, measurement or computation of damages

(131)Where injured corporation on whose behalf minority shareholders brought derivative action alleging violations of securities and antitrust laws would not reap windfall if recovery were allowed, where railroad which owned 93% of corporation's stock prior to and during alleged illegal transactions was in process of reorganization and subject to control of court-appointed trustees and where creditors of stockholder as well as general public and corporation had interests best served by allowing full recovery, defendants' liability would not be limited to pro rata liability amounting to only 7% of damage allegedly sustained by corporation as result of violations of antitrust and securities laws. In re Pittsburgh & Lake Erie R. Co. Securities and Antitrust Litigation, E.D.Pa.1974, 387 F.Supp. 906. Antitrust And Trade Regulation 983; Securities Regulation 154.1

887. Fees, measurement or computation of damages

(132)Award of $10,200 as treble damages under §§ 1 to 7 of this title, to Tennessee walking horse breeder-raiser-trainer for breeders' and exhibitors' association's suspension of breeder-raiser-trainer's membership in association and refusal to register breeder-raiser-trainer's horses and colts was not clearly erroneous, even though quite low, where breeder-raiser-trainer had lost 17 stud fees at $200 each. Courtesy Chevrolet, Inc. v. Tennessee Walking Horse Breeders' & Exhibitors' Ass'n of America, C.A.9 (Cal.) 1968, 393 F.2d 75, certiorari denied 89 S.Ct. 301, 393 U.S. 938, 21 L.Ed.2d 274. Federal Courts 877

890. ---- Future profits, going concern value of business, measurement or computation of damages

(133)Specific elements to be considered in calculating "good will" value of a business in a civil antitrust suit are the amount of profits the business has made over and above an amount fairly attributable to return on capital investment and to labor of owner, and whether there is a reasonable prospect that this additional profit will continue into future, considering all circumstances existing and known as of date of the valuation. Kestenbaum v. Falstaff Brewing Corp., C.A.5 (Tex.) 1975, 514 F.2d 690, certiorari denied 96 S.Ct. 1412, 424 U.S. 943, 47 L.Ed.2d 349. Antitrust And Trade Regulation 985

891. ---- Reputation and goodwill, going concern value of

business, measurement or computation of damages

(134)Since measure of damages in antitrust cases is pecuniary loss to claimant's business or property, and since loss of goodwill or loss of business' value as going concern is one method of computing antitrust plaintiff's pecuniary loss, distributor was not precluded as matter of law from recovering damages for loss of its goodwill and reputation if successful in its suit against manufacturer seeking treble damages and injunctive relief. Eastern Dental Corp. v. Isaac Masel Co., Inc., E.D.Pa.1980, 502 F.Supp. 1354. Antitrust And Trade Regulation 985

(135)Calculation of loss of profits while continuing in business and loss of goodwill value when business was terminated would adequately compensate corporations which had engaged in put and call business and which brought civil antitrust action against association of put and call dealers after corporations' owner had been suspended from association. Vandervelde v. Put & Call Brokers & Dealers Ass'n, S.D.N.Y.1972, 344 F.Supp. 118, supplemented 344 F.Supp. 157. Antitrust And Trade Regulation 985
894

(136)***Even where cartel, monopolist, or price fixing conspiracy inflates the price of a product to the injury of its customers, damages are measured by the difference between the price paid and the uninflated price, with the result trebled pursuant to Clayton Act. Three Crown Ltd. Partnership v. Salomon Bros., Inc., S.D.N.Y.1995, 906 F.Supp. 876. Antitrust And Trade Regulation 985
893. Market comparison, measurement or computation of damages

(137)Farmers' organization presented sufficient evidence from which its damages, due to dairy cooperatives' antitrust violations, could be calculated, where milk pooling market used as yardstick was sufficiently comparable to other markets such that extrapolation of organization's performance in that market to others would provide just and reasonable estimate of its damages. National Farmers' Organization, Inc. v. Associated Milk Producers, Inc., C.A.8 (Mo.) 1988, 850 F.2d 1286, rehearing denied, certiorari denied 109 S.Ct. 1535, 489 U.S. 1081, 103 L.Ed.2d 840, amended 878 F.2d 1118. Antitrust And Trade Regulation 985
15uscas15d2p4 begins here  *start here again to check anything missing due to wipe out*
895. Profits or losses, measurement or computation of damages--Generally

(138)***Federal district court in action by plaintiff rail carrier against defendant rail carrier for acts of joint rate cancellations and increased reciprocal switching charges in the aggregate which allegedly demonstrated defendant's monopolization or attempted monopolization of the relevant market, could measure damages by the business losses allegedly sustained by plaintiff. Delaware and

28

Hudson Ry. Co. v. Consolidated Rail Corp., N.D.N.Y.1987, 654 F.Supp. 1195. Antitrust And Trade Regulation 985

896. ---- Future profits, profits or losses, measurement or computation of damages

(139)***Plaintiff need not retain possession of a business oppressed by antitrust violation until the business is bankrupt or directly shut down by the violator; rather, he may voluntarily close his business and still collect future lost profits if he can show that the defendants' antitrust violations forced him out of business. Malcolm v. Marathon Oil Co., C.A.5 (Ga.) 1981, 642 F.2d 845, rehearing denied 651 F.2d 1016, certiorari denied 102 S.Ct. 975, 454 U.S. 1125, 71 L.Ed.2d 113. Antitrust And Trade Regulation 985

(140)***In action under this section, damages to be recoverable need not be capable of calculation with absolute exactness, and loss of prospective profits from a business is an item for which recovery may be had. Twentieth Century-Fox Film Corp. v. Brookside Theatre Corp., C.A.8 (Mo.) 1952, 194 F.2d 846, certiorari denied 72 S.Ct. 1035, 343 U.S. 942, 96 L.Ed. 1348. Antitrust And Trade Regulation 984; Antitrust And Trade Regulation 985

897. ---- Net profits or losses, measurement or computation of damages

(141)***Measure of damages is net profits that would have reasonably accrued and have been earned by plaintiff but for defendant's violation of antitrust laws; and it is anticipated profits which plaintiff reasonably could have earned but for monopoly that are quantum of damages recoverable. Siegfried v. Kansas City Star Co., W.D.Mo.1961, 193 F.Supp. 427, affirmed 298 F.2d 1, certiorari denied 82 S.Ct. 831, 369 U.S. 819, 7 L.Ed.2d 785. Antitrust And Trade Regulation 985

899. ---- Estimates, profits or losses, measurement or computation of damages

(142)***A complaint alleging that defendants conspired to drive plaintiff out of business of manufacturing milk bottle hoods by fixing prices of hoods and caps in combination below prices necessary to realize reasonable profits, and that as a result plaintiff was compelled to close its business and lost its investment, and, profits estimated at $275,000 on basis of past experience, was not dismissible as failing to show actionable wrong or because of insufficiency as to proximate cause or damages. Package Closure Corp. v. Sealright Co., C.C.A.2 (N.Y.) 1944, 141 F.2d 972. Antitrust And Trade Regulation 972(6)

900. ---- Costs or expenses generally, profits or losses, measurement or computation of damages

(143)Distributor of manufacturer's patented pharmaceutical products could suffer economic damages necessary for award of treble damages if it had been injured in its ability to compete and had suffered losses as a result of manufacturer's alleged Robinson-

Patman Act violation, even if it had failed to make payments required under contract; distributor's injury was not limited to contract payments that it actually made. Innomed Labs, LLC v. ALZA Corp., C.A.2 (N.Y.) 2004, 368 F.3d 148. Antitrust And Trade Regulation 987

(144)Where only nominal incremental operating expenses would have been incurred if defendants had not refused to sell watches to plaintiff, gross profits on sales was properly considered in assessing damages flowing from violation of Sherman Act, sections 1 to 7 of this title. Trabert & Hoeffer, Inc. v. Piaget Watch Corp., C.A.7 (Ill.) 1980, 633 F.2d 477. Antitrust And Trade Regulation 985

902. ---- Customers lost, profits or losses, measurement or computation of damages

(145)Where defendants' antitrust violations undoubtedly made material contribution to plaintiff's loss, fact that plaintiff could not show exactly how many customers it lost did not prevent lost business profits from being recovered as damages in antitrust action. Bowl America Inc. v. Fair Lanes, Inc., D.C.Md.1969, 299 F.Supp. 1080. Antitrust And Trade Regulation 983

903. ---- Market conditions, profits or losses, measurement or computation of damages

(146)If defendants were guilty of excluding plaintiff from market as a competitor of defendant corporation they could not properly complain of lack of evidence of loss of profits on part of plaintiff which projected its loss of profits upon assumption that plaintiff had remained sole seller of product and that its and defendant corporation's roles were reversed. Cherokee Laboratories, Inc. v. Rotary Drilling Services, Inc., C.A.5 (Tex.) 1967, 383 F.2d 97, certiorari denied 88 S.Ct. 816, 390 U.S. 904, 19 L.Ed.2d 870. Antitrust And Trade Regulation 985

906. ---- Competitor's profits or losses, measurement or computation of damages

(147)In action under §§ 1 to 7 and 12 to 27 of this title, by moving picture exhibitor against moving picture producers, distributors, and exhibitors for an injunction and to recover treble damages for monopolizing first run moving pictures and for depriving plaintiff of first run moving pictures, measure of damages, if plaintiff should establish injury would be plaintiff's loss, determined either by direct proof of such loss or by proof of what another exhibitor similarly situated made. Fanchon & Marco v. Paramount Pictures, S.D.Cal.1951, 100 F.Supp. 84, affirmed 215 F.2d 167, certiorari denied 73 S.Ct. 950, 345 U.S. 964, 97 L.Ed. 1383, certiorari denied 75 S.Ct. 293, 348 U.S. 912, 99 L.Ed. 715. Antitrust And Trade Regulation 985

911. Sales by plaintiff, measurement or computation of damages

(148)Fact that distributor made isolated sales to customer after loss of customer's account did not negate total damage distributor

suffered as result of manufacturer's disparagement of distributor in effort to enforce illegal territorial restraints. Hobart Bros. Co. v. Malcolm T. Gilliland, Inc., C.A.5 (Ga.) 1973, 471 F.2d 894, certiorari denied 93 S.Ct. 2736, 412 U.S. 923, 37 L.Ed.2d 150. Antitrust And Trade Regulation 985

XII. PERSONS LIABLE FOR DAMAGES

941. Participant in illegal activity generally, persons liable for damages

(149)Where a company was engaged in a single continuous attempt to monopolize business, those joining in the unlawful attempt at different times became liable for the resulting injury. American Steel Co v. American Steel & Wire Co, D.C.Mass.1916, 244 F. 300. Antitrust And Trade Regulation 968

(150)One who participates in and furthers another's violation of antitrust laws may be held liable with such alleged wrongdoer. Data Digests, Inc. v. Standard & Poor's Corp., S.D.N.Y.1967, 43 F.R.D. 386. Antitrust And Trade Regulation 968

943. Direct participation, persons liable for damages

(151)Corporation, allegedly member of conspiracy to overcharge on purchases of steel and concrete conduit pipe was liable for any damages proved which were occasioned by sales by coconspirators even though corporation may not have directly participated in or benefited from, such activity. State of Wash. v. American Pipe & Const. Co., W.D.Wash.1968, 280 F.Supp. 802. Antitrust And Trade Regulation 968

945. Conspiracy member liability generally, persons liable for damages

(152)(a)Once damage has occurred, each coconspirator is accountable for damage caused by overt act of any member pursuant to or in furtherance of illegal plan. State of Wash. v. American Pipe & Const. Co., W.D.Wash.1968, 280 F.Supp. 802. Conspiracy 13

(152)(b)Corporations, which were charged with having joined a conspiracy which continued from 1928 to time of filing of complaint, but which were not formed until 1949, could be held as fully liable for acts committed before 1949 as could the original or earlier participants in the conspiracy. Walder v. Paramount Publix Corp., S.D.N.Y.1955, 132 F.Supp. 912. Antitrust And Trade Regulation 968

947. Contractual relationship with plaintiff, persons liable for damages

(153)Moving picture distributors, as members of general conspiracy in restraint of trade, are liable for damages, though not having contract with aggrieved exhibitor. Majestic Theatre Co. v. United Artists Corp., D.C.Conn.1930, 43 F.2d 991. Antitrust And Trade Regulation 968

948. Joint and several liability, persons liable for damages

(154)Since defendants in an antitrust action are jointly and

severally liable, the fact that, in the instant case, the alleged actual damage caused plaintiff by two of the defendants was small proportionately did not diminish their liability. Solomon v. Houston Corrugated Box Co., Inc., C.A.5 (Tex.) 1976, 526 F.2d 389. Antitrust And Trade Regulation 992; Federal Civil Procedure 1695

(155)An antitrust action is a tort action; thus, in multidefendant antitrust actions, coconspirator joint tort-feasors are jointly and severally liable for entire amount of the damage caused by their acts. Wainwright v. Kraftco Corp., N.D.Ga.1973, 58 F.R.D. 9. Antitrust And Trade Regulation 958; Antitrust And Trade Regulation 992

950. Immunity from liability, persons liable for damages-- Generally

(156)Officials of state agency were not entitled to dismissal of antitrust claims asserted against them upon basis of immunity under "state action" exemption where there were allegations that their actions were not taken in good faith and therefore not pursuant to a clearly articulated state policy. Huron Valley Hosp., Inc. v. City of Pontiac, E.D.Mich.1985, 612 F.Supp. 654, affirmed in part, appeal dismissed in part 792 F.2d 563, certiorari denied 107 S.Ct. 278, 479 U.S. 885, 93 L.Ed.2d 254. Antitrust And Trade Regulation 902

951. ---- Attorneys, immunity from liability, persons liable for damages

(157)An attorney is not immunized from antitrust liability, but may be found individually liable under antitrust laws if he exceeds his role as legal advisor and becomes an active participant in formulating policy decisions with client to restrain competition; this is demonstrated by pleading and proving that attorney exerted his power and influence so as to direct client to engage in complained of acts for an anticompetitive purpose. Brown v. Donco Enterprises, Inc., C.A.6 (Ky.) 1986, 783 F.2d 644. Antitrust And Trade Regulation 968

959. Agents, persons liable for damages

(158)Individual liability under antitrust laws can be imposed upon corporate agents only where agents are actively and knowingly engaged in a scheme designed to achieve anticompetitive ends; to support a determination of liability under this standard, evidence must demonstrate that an agent exerted his influence so as to shape corporate intentions. Brown v. Donco Enterprises, Inc., C.A.6 (Ky.) 1986, 783 F.2d 644. Antitrust And Trade Regulation 968

(159)An action by coal buyer against its president, the seller, and seller's president to recover treble damages under this section for payment of commissions by seller to buyer's president was not dismissible as against seller's president on ground that president was merely the agent of selling corporation, since under § 24 of this title, a violation of antitrust laws by a corporation is deemed to be also a violation by individual officers or agents of such corporation who have authorized or done any of acts constituting such violation.

32

Kentucky-Tennessee Light & Power Co. v. Nashville Coal Co., W.D.Ky.1941, 37 F.Supp. 728. Antitrust And Trade Regulation 967; Antitrust And Trade Regulation  968

961. Common ownership of corporations, persons liable for damages

(160)Where defendant muffler corporation and its parent corporation availed themselves of privilege of doing business through separate corporations, fact of common ownership would not save them from any of obligations imposed by antitrust law on separate entities. Perma Life Mufflers, Inc. v. International Parts Corp., U.S.Ill.1968, 88 S.Ct. 1981, 392 U.S. 134, 20 L.Ed.2d 982. Antitrust And Trade Regulation  575

(161)That defendants in antitrust case were parent and wholly owned subsidiary and did not hold themselves out as competitors did not insulate them from liability upon claim under section 1 of this title. Cromar Co. v. Nuclear Materials & Equipment Corp., C.A.3 (Pa.) 1976, 543 F.2d 501. Antitrust And Trade Regulation  544

962. Corporate liability for acts of others, persons liable for damages

(162)Seller of wetland mitigation credits stated claims against its competitor's manager for violation of the Sherman Act and unfair competition under Florida law, although seller did not allege any facts that would warrant piercing the corporate veil, where seller alleged that manager directly participated, through its management of competitor, in competitor's decision to unlawfully restrain competition. Longleaf Mitigation Development Co., LLC v. Florida Mitigation Providers, LLC, M.D.Fla.2007, 519 F.Supp.2d 1233. Antitrust And Trade Regulation  968; Corporations And Business Organizations  1970

966. Governmental bodies, persons liable for damages--Generally

(163)Interscholastic league funded, staffed and operated by personnel of state university was state agency or governmental body and neither it nor its director, while acting within the scope of his duties in determining that sli de rule failed to meet requirements of "standard slide rule" and was thus barred from use in slide rule contest, was liable in suit brought by slide rule manufacturer alleging conspiracy in restraint of trade. Saenz v. University Interscholastic League, C.A.5 (Tex.) 1973, 487 F.2d 1026. Antitrust And Trade Regulation  968

(164)Fact that mining companies were government agents would not relieve them from liability for alleged violations of antitrust laws, where there was nothing in agency contract to justify inference that government intended to transgress antitrust laws, and contract did not purport to authorize companies to fix prices, restrain trade, or achieve monopoly in vanadium industry. Union Carbide & Carbon Corp. v. Nisley, C.A.10 (Utah) 1961, 300 F.2d 561, certiorari dismissed 83 S.Ct. 13, 371 U.S. 801, 9 L.Ed.2d 46. Antitrust And Trade Regulation  902

33

967. ---- Foreign governments, governmental bodies, persons liable for damages

(165)Corporations charged with conspiracy to restrain trade were not insulated from treble damage action under anti-trust laws by fact that their conspiracy involved some acts by agents of foreign government. Continental Ore Co. v. Union Carbide & Carbon Corp., U.S.Cal.1962, 82 S.Ct. 1404, 370 U.S. 690, 8 L.Ed.2d 777. Antitrust And Trade Regulation 902

971. Officers or directors of corporations, persons liable for damages

(166)A corporate officer or director can be held personally liable for damages arising out of an antitrust violation where he participated in the unlawful acts, or where he has acquiesced or ratified the actions of other officers or agents of the corporation which were in violation of sections 1 to 7 of this title. Higbie v. Kopy-Kat, Inc., E.D.Pa.1975, 391 F.Supp. 808. Antitrust And Trade Regulation 968

(167)Officer of corporation charged with violation of antitrust laws is not relieved from individual liability merely because officer was acting on behalf of the corporation in participating in alleged conspiracy, if illegal acts on officer's part are proved. Maternity Trousseau, Inc. v. Maternity Mart of Baltimore, Inc., D.C.Md.1961, 196 F.Supp. 456. Corporations And Business Organizations 2016

(168)Individual directors, who were persons acting for corporation within scope of their employment, could be held personally liable in treble damage action brought under this section and § 13a of this title against the corporation in whose behalf they had acted. Cott Beverage Corp. v. Canada Dry Ginger Ale, Inc., S.D.N.Y.1956, 146 F.Supp. 300, 112 U.S.P.Q. 261, appeal dismissed 243 F.2d 795. Antitrust And Trade Regulation 968

975. Successor corporations, persons liable for damages

(169)Where corporation was created to receive asset of older corporation and newly formed corporation expressly agreed to assume obligations of older corporation, newly formed corporation could be sued for treble damages under this section for activities of older corporation. Gordon v. Loew's Inc., D.C.N.J.1956, 147 F.Supp. 398, affirmed 247 F.2d 451. Antitrust And Trade Regulation 968

XIII. COST OF SUIT

1002. Mandatory nature of award, cost of suit

(170)Award of costs to prevailing plaintiff in private antitrust action is mandatory. Seven Gables Corp. v. Sterling Recreation Organization Co., W.D.Wash.1988, 686 F.Supp. 1418. Antitrust And Trade Regulation 990

(171)Establishment of antitrust violations by defendant and award of damages to plaintiffs required that there also be awarded to plaintiffs the cost of the suit, including a reasonable attorney's fee. Power Replacements Corp. v. Air Preheater Co., Inc., E.D.Pa.1973, 356 F.Supp. 872. Antitrust And Trade Regulation 989

34

1004. Injury as prerequisite, cost of suit

(172)Plaintiffs who proved both antitrust injury and fact of damage were entitled to costs and attorney fees under Clayton Act, even though they failed to prove amount of damages. Breaux Bros. Farms, Inc. v. Teche Sugar Co., Inc., W.D.La.1992, 792 F.Supp. 1436, reversed on other grounds 21 F.3d 83, certiorari denied 115 S.Ct. 425, 513 U.S. 963, 130 L.Ed.2d 339. Antitrust And Trade Regulation 989

1011. ---- Expert witness fees, items recoverable, cost of suit

(173)In antitrust action, district court did not err in permitting plaintiffs to recover costs of expert witness fees where testimony of expert witnesses was crucial or indispensable to case. Paschall v. Kansas City Star Co., C.A.8 (Mo.) 1982, 695 F.2d 322, on rehearing 727 F.2d 692, certiorari denied 105 S.Ct. 222, 469 U.S. 872, 83 L.Ed.2d 152, rehearing denied 105 S.Ct. 406, 469 U.S. 1001, 83 L.Ed.2d 340. Antitrust And Trade Regulation 991

1014. ---- Service of process costs, items recoverable, cost of suit

(174)Prevailing antitrust plaintiff was entitled, upon its petition to recover attorney fees and costs, to an award for costs of service of process, filing fees, photocopies, originals of deposition transcripts, original trial transcripts, copies of deposition transcripts and of trial transcripts, fees, mileage, and subsistence of witnesses who appeared and of those witnesses who, believed to be necessary, appeared but did not testify, and for costs of computerized legal research; however, plaintiff was entitled to recover as costs for expert witnesses only amount specified by section 1821 of Title 28. International Wood Processors v. Power Dry, Inc., D.C.S.C.1984, 598 F.Supp. 299, affirmed 792 F.2d 416. Antitrust And Trade Regulation 991

XVI. DEFENSES OR JUSTIFICATIONS

1173. ---- Coercion, plaintiff as participant in illegal activity, defenses or justifications

(175)Corporation which had failed to sue for injunctive and/or treble damage relief under §§ 12 to 27 of this title or to report purportedly illegal activities of larger electrical equipment manufacturers instead of participating in alleged conspiracy giving rise to treble damage antitrust actions against corporation for alleged overcharges on its sales of power switch-gear assemblies could not avoid liability on theory of economic coercion. Commonwealth Edison Co. v. Allis-Chalmers Mfg. Co., N.D.Ill.1965, 245 F.Supp. 889. Antitrust And Trade Regulation 962

1174. ---- Complete involvement, plaintiff as participant in illegal activity, defenses or justifications

(176)Proper for consideration is a plaintiff's conduct when he has become completely involved voluntarily and participated in monopolistic scheme in which defendant also participates; such participation is "defense" to extent that defendant can raise issue of

plaintiff's participatory conduct, but even such evidence will not automatically bar recovery. Pearl Brewing Co. v. Jos. Schlitz Brewing Co., S.D.Tex.1976, 415 F.Supp. 1122. Antitrust And Trade Regulation 908

15uscas15d2p6 begins here

1176. ---- Unclean hands, plaintiff as participant in illegal activity, defenses or justifications

(177)Fact that plaintiffs, designers administrators of group dental health programs, had been found guilty of operating dental service plan and engaging in practice of dentistry in violation of N.J.S.A. 17:48 C-1 to 48 C-36 (1968) and N.J.S.A. 45:6-1 to 6-47 (1963) did not preclude their maintenance of action against not-for-profit corporations engaged in operating dental health plans in New Jersey charging conspiracy to restrain trade, conspiracy to monopolize dental health care programs, tortious interference with business and violation of N.J.S.A. §§ 56:9-3 and 56:9-4 (1970). Health Corp. of America, Inc. v. New Jersey Dental Ass'n, D.C.N.J.1977, 424 F.Supp. 931. Antitrust And Trade Regulation 963(3)

(178)Claims of unfair competition or unclean hands do not constitute defense to antitrust action. Magna Pictures Corp. v. Paramount Pictures Corp., C.D.Cal.1967, 265 F.Supp. 144, 153 U.S.P.Q. 591. Antitrust And Trade Regulation 908; Equity 65(1)

(179)Defense of "unclean hands" because of perpetuation of unlawful monopoly by plaintiff was not available to defendant magazine publishers who were charged by plaintiff with violations of § 1 of this title, since defense of "unclean hands" in antitrust cases, if not completely abolished, is of extremely limited applicability. Interborough News Co. v. Curtis Pub. Co., S.D.N.Y.1952, 108 F.Supp. 768. Equity 65(1)

1177. ---- Economic strength or duress of parties, plaintiff as participant in illegal activity, defenses or justifications

(180)Plaintiffs who do not bear equal responsibility for creating and establishing illegal monopolistic scheme, or who are required by economic pressures to accept such agreement, should not be barred from recovery in antitrust action simply because they are participants. Premier Elec. Const. Co. v. Miller-Davis Co., C.A.7 (Ill.) 1970, 422 F.2d 1132, certiorari denied 91 S.Ct. 56, 400 U.S. 828, 27 L.Ed.2d 58. Antitrust And Trade Regulation 908

1191. Noerr-Pennington doctrine, defenses or justifications

(181)Noerr-Pennington doctrine did not bar claims brought by manufacturer of ultrasonic flow meters (UFMs) for nuclear power plants against competing manufacturer and marketer, stemming from purported unfair trade practices; alleged false and disparaging statements about UFMs at issue were not only made in regulatory submissions to Nuclear Regulatory Commission (NRC), but also were widely disseminated to customers and potential customers. Caldon, Inc. v. Advanced Measurement & Analysis Group, Inc.,

W.D.Pa.2007, 515 F.Supp.2d 565. Antitrust And Trade Regulation 296

36)1195. Selection of customers, defenses or justifications

(183)Defense that single trader is free to select his customers as he sees fit had no application in private antitrust litigation, where unlawfulness of defendant's conduct had already been adjudicated and measure of damages recoverable for such conduct was only issue for determination. Osborn v. Sinclair Refining Co., C.A.4 (Md.) 1963, 324 F.2d 566. Antitrust And Trade Regulation 979
1197. State court actions, defenses or justifications

(184)Plaintiff's successfully suing in state court on claim that might have been but was not made basis for state or federal antitrust relief does not bar subsequent federal antitrust suit. Hayes v. Solomon, C.A.5 (Tex.) 1979, 597 F.2d 958, rehearing denied 602 F.2d 1246, certiorari denied 100 S.Ct. 1028, 444 U.S. 1078, 62 L.Ed.2d 761. Antitrust And Trade Regulation 958

(185)Reisinger v. Com., State Bd. of Medical Ed. and Leicensure 41 Pa Cmwlth 553, 399 A. 2d. 1160, Pa Cmwlth, 1979.

Respectfully Submitted,
Chandan Vora  *Chandan Vora*
Certificate of Service
I, Dr Chandan S. Vora do certify that this "Complaint with conclusion etc ..." was put in 1st class ordinary mail, postage prepaid or served in person on following on 7/24-/2014 & given in person to            (0)Clerk, USDCWPA, Rm 208, Johnstown, PA 15901                    & serving on some parties on whom service got conducted hoping that 1st cir & USDCME takes jurisdiction of all these antitrust motivated cases & hope they say so in writing, so serving them as got written jointly and courts can decide on it.
(1)Clerk thro T. Smith, USCOAF1, , 1 Couthouse Way, Boston, MA 02210
(2)Clerk, thro case manager(unknown name), US Court of Appeals, 3rd cir; US courthouse, 601 Market St., 21400 US Courthouse, Philadelphia, PA 19106(1 copy sufficient for both cases & others too as they scan it as per prior case managers)
(4)E. Holder, US attorney General, 950 PA Ave, Washington DC  20530
(5)PA Attorney General, Strawberry Sq, Harrisburgh, PA17120
(6) Atty Dinan, 95 Exchange Rd., Portland ME 04112
(7)DPW office, 625 Main st, Johnstown PA, 15901   who was also served 2/12/2014 motion, however did not get to list their name in that motion.
(8) City manager with all their personnel of JPD, Codes, Fire depts etc, corner of Main Market st, Johnstown, PA 15901
(9) Psychiatric Ward Director, Dr Patel with all their staff doctors etc, Good Samaritan Hospital, 7th Foor, as per 814-534-9000 no., Johnstown, PA 15905
(10)DAs with its staff, CCC, 2nd Floor, Ebensburg, PA 15931
(11) Ex Judge of CCC Caram Abood, 709 Franklin St., 2nd Floor, Johnstown, PA 15901
(12)Mag Grecek, 1340 Franklin St., Johnstown, PA15905
(13)James L. Madara, M.D., C.E.O. & Executive Vice President, American Medical Association(henceforth in future pleadings as AMEA ) 515 N. State St, F115, Chicago, Ill60654
(14)President Commissioner, Incharge of CC, CCC, Ebensburg, PA15931
(15)Clerk of Courts including CCC Judges like Krunemacker, Creany, Tuwoliski, Kiniry, Long, etc CCC, Ebensburg, PA 15931
(16)President, CEO, Scott Becker, Memorial Hospital, 1086 Franklin St., Johnstown, PA 15905
(17)Mag Musulin, Central Park Complex basement,

21

Johnstown, PA 15901
(18)Ron W. Repak, 173 Gerry LN, 15904 (formerly Director of
JRA, when 511 Robb Ave Duplex was demolished illegally
etc.)
(19)Director & CEO of Johnstown Redevelopment Authority,
4th Floor, Public Safety Building, 401 Washington St,
Johnstown, PA 15901

*Chandan Vora,*

CHANDAN VORA , with mailing address: c/o Budget
Transmission, 340 Bedford st, Johnstown, PA 15901